UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERIC L. JEFFRIES,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CENTRE LIFE INSURANCE COMPANY,<br>et al.,<br><br>　　　　Defendants. | Case No. C-1-02-351<br><br>(Judge Beckwith)<br>(Magistrate Judge Hogan)<br><br>**REPLY MEMORANDUM IN**<br>**SUPPORT OF DEFENDANTS'**<br>**EMERGENCY MOTION TO TAKE**<br>**DEPOSITIONS OUT OF TIME** |

**I.    BACKGROUND**

In his opposition memorandum, Plaintiff creates a revisionist history of the progress of this case in an attempt to divert the Court's attention from the obstructionist tactics he has engaged in to delay this case and avoid discovery sought by Defendants. Although he continues to complain that Defendants have delayed this case, it is Plaintiff's actions that have created the most significant delay.[1] A brief summary follows:

- When Dr. Hartings sought one more session in order to complete his independent medical examination of Mr. Jeffries, Plaintiff objected. Mr. Jeffries continued in his refusal to complete Dr. Hartings' examination from August 2002 until this Court ordered him to attend the final session in January 2003. *See* January 5, 2003 Magistrate's Report (Doc. 30), pp. 3-4.

- When Defendants identified an infectious disease specialist in Boston to conduct an independent medical examination, Plaintiff objected because the doctor was too close geographically to Defendants' headquarters. After Defendants found another medical doctor in Cincinnati to conduct the examination (Dr. Bullard), Plaintiff refused to attend it unless Defendants agreed to limit the time of the IME. This Court found that to be an "unreasonable" condition and ordered him to see Dr. Bullard. *See* Magistrate's Report (Doc. 30), p. 4.

---

[1] Plaintiff spends the first several pages of his brief rehashing his discovery disputes. This Court issued its decision regarding these issues in its August 5, 2003 Order. These arguments are the subject of his recent objection to the Magistrate's Order and have nothing to do with Defendants' efforts to complete lay witness discovery -- the subject of the instant Motion.

- When this Court ordered Plaintiff to produce financial information on November 8, 2002 (Doc. 18), Plaintiff refused to provide this information – and continues to refuse to provide it. *See* Defendants' Motion for Sanctions. Not only did Plaintiff's counsel ignore Defendants' repeated requests to arrange for review of the records, he also improperly conditioned Mr. Jeffries' August 19, 2003 deposition on Defendants' agreement to forego the Court-ordered discovery.

- When defense counsel attempted to proceed with the deposition of Mr. Jeffries on August 19, 2003, Plaintiff canceled it. The correspondence of counsel speaks for itself. On the morning of August 19, defense counsel wrote:

    > Your objection to a two-part or multi-day deposition of Mr. Jeffries (contained in your August 15, 2003 letter) is noted. We would like to be in a position to complete it in one session, but you have made it impossible to do so. Because you have continued to refuse to comply with the Court's November 8, 2002 Order and produce the documents requested, we cannot fully prepare for your client's deposition.
    >
    > Unfortunately, we do not have the luxury of time. ***Judge Hogan has ordered us to get this case moving. We intend to do so despite these unnecessary roadblocks. We will be at your office today ready to take your client's deposition.*** We hope that we will receive the documents that you have been ordered to produce at your earliest opportunity so that we can complete his deposition at a later time. *See* 8/19/03 letter to Mike Roberts, Ex. 1 to the Declaration of William R. Ellis. (Emphasis added).

- Because Plaintiff's counsel objected to a multi-part deposition, he refused to go forward with Mr. Jeffries' deposition. In his letter confirming the cancellation, Plaintiff's counsel notes: "As we discussed, this morning at 10:40, the deposition of Mr. Jeffries will not proceed this afternoon." *See* 8/19/03 letter to Bill Ellis, Ex. 2 to Ellis Declaration. In a follow-up letter later that day, defense counsel said:

    > I wanted to make a couple of points relating to your decision to *cancel* Mr. Jeffries' deposition today. . . . This morning we wrote to say that we needed to move forward with the discovery as Judge Hogan had ordered. But instead of proceeding forward with Mr. Jeffries' deposition and noting for the record your objection to continuing it in progress, you chose to *cancel* it. *See* 8/19/03 letter to Mike Roberts, Ex. 3 to Ellis Declaration. (Emphasis added).

## II. ARGUMENT

### A. Plaintiff's Counsel Canceled Dr. Jeffries' Deposition.

Although this exchange of letters establishes without question that Plaintiff's counsel unilaterally canceled his client's deposition, he now takes revisionist history to new heights and claims that Defendants "voluntarily elected not to proceed with Mr. Jeffries' deposition." Plaintiff's Memo. at p. 6. Nothing could be further from the truth. As the correspondence demonstrates, after acknowledging Plaintiff's objection to the multi-day deposition of Mr. Jeffries, defense counsel stated unequivocally:

> We intend [to get this case moving] despite these unnecessary roadblocks. *We will be at your office today ready to take your client's deposition.* See 8/19/03 letter to Mike Roberts, Ex. 1 to Ellis Declaration. (Emphasis added).

In the follow-up letter later that day, defense counsel noted that it was "your decision to *cancel* Mr. Jeffries' deposition today," and stated that "instead of proceeding forward with Mr. Jeffries' deposition and noting for the record your objection to continuing it in progress, you chose to *cancel it*." See 8/19/03 letter to Mike Roberts, Ex. 3 to Ellis Declaration. (Emphasis added).

Plaintiff's counsel never responded to this second letter confirming his decision to cancel Mr. Jeffries' deposition. Had this representation been erroneous, Plaintiff's counsel would no doubt have challenged it. But he did not.

In an effort to be cooperative and acquiesce to Plaintiff's request that Mr. Jeffries' deposition take place in a single sitting, Defendants filed the instant Motion in order to try once again to obtain the financial information this Court ordered Mr. Jeffries to produce almost a year ago and get it before his deposition. Clearly, this was the wrong approach. Plaintiff now argues that Defendants wasted their one chance to take his deposition on August 19. Apparently, Plaintiff's counsel believes that he can cancel his client's deposition, later claim that he was

willing to go forward with it and then assert that Defendants waived any opportunity to take the Plaintiff's deposition in this case. This Court cannot permit Plaintiff's counsel to get away with these tactics. Mr. Jeffries' deposition must go forward and the long-awaited documents should be made available before his deposition.

### B.  Plaintiff's Counsel Consistently Refuses to Provide Information This Court Ordered Him To Produce.

Plaintiff continues to defy the Court's November 8, 2003 Order and has unilaterally concluded that the information ordered by the Court is now irrelevant. He argues in his Memorandum that the Order is "outdated." Plaintiff's decision to ignore the Order does not render it moot. Indeed, to continually claim that the information is irrelevant in spite of the Court Order to the contrary is not only sanctionable, it further delays Defendants' attempt to proceed with the case. In a nutshell, Plaintiff has used his refusal to produce Court-ordered information to withhold Plaintiff's deposition.

On August 13, 2003, Plaintiff served his "Supplemental Response to Certain Document Requests and Responses to Defendants' Second and Third Set of Document Production Requests." In response to Request No. 21, to which a complete answer had been ordered by the Court, Mr. Roberts defied the Court's November 8, 2003 Order and stated in part:

> Nothing about Mr. and Mrs. [sic] financial records could possibly [sic] impact the determination of the cause of Mr. Jeffries' undisputed disability. Accordingly, the information will not be produced.

*See* Plaintiff's supplemental responses.

Plaintiff has previously objected to production of this information as irrelevant and the Court rejected this claim. In light of the Court's Order, no additional proof of relevancy is required, despite Plaintiff's request. Moreover, Plaintiff's position is flawed. He is the <u>Plaintiff</u> in this lawsuit. It is certainly reasonable to expect that he will have to produce information he

may not want to disclose. He will at the very least have to appear for a deposition. Such is the nature of litigation. He claims to be totally disabled by a physical ailment. His financial records provide an objective view of his physical activities. As the Court has already ruled, Defendants are well within their rights to obtain this information.

Plaintiff's decision to defy the Court's Order, withhold his financial information and cancel his deposition is consistent with his tactics throughout this case. Plaintiff has crossed the globe and gathered opinions from physicians who support his view of disability. While it is true that Plaintiff has provided these hand-selected opinions to Defendants, every time Defendants seek to perform any independent investigation, Plaintiff builds a roadblock. Indeed, this case began when Plaintiff refused to attend the medical examination requested by Defendants. When the Court ordered him to attend the examination of Dr. Hartings, he did, but did not complete it until ordered by the Court <u>again</u> to do so. The Court ordered him to produce his financial information almost a year ago. His initial response was simply to ignore the Order. Now, he has tied his refusal to produce the information to the deposition that he clearly does not want to attend.

The truth is that Mr. Jeffries does not want to give a deposition. He fights any attempt by Defendants to look beyond the selected information he can control and which he chooses to dispense. As the Plaintiff, however, Mr. Jeffries has an obligation to prosecute his case. This includes an obligation to abide by the Court's orders, whether he agrees with them or not, provide Court-ordered information and to attend his deposition.

### C.  The Depositions of Mr. Jeffries' Treating Physicians Should Proceed Forward.

Defendants also seek to complete the depositions of Mr. Jeffries' treating physicians, but have met with a wall of silence from Plaintiff's counsel regarding scheduling. On three separate

occasions, defense counsel sought confirmation of Plaintiff's counsel's availability for these depositions and have yet to hear from him. In the first of these letters (August 12, 2003), defense counsel wrote:

> . . . we have not been able to schedule the depositions of Mr. Jeffries' treating physicians before the end of August. You indicated that you would not object to doing these depositions after the close of lay witness discovery and we have now learned that at least two of the doctors are available on September 11 and 12. Hopefully, that day will work for you so that we can complete these depositions at that time. Let me know or have Cindy call Christy so that we can confirm these dates.

*See* 8/12/03 letter to Mike Roberts, Ex. 1 to Declaration of Peter M. Burrell.

Despite this request to confirm his availability on these dates, Plaintiff's counsel did not respond. Just two days later, defense counsel again wrote Plaintiff's counsel about the treating physician depositions, asking:

> "Finally, are you available on September 11 and 12 for depositions of Mr. Jeffries' treating physicians? *I need to know as soon as possible*."

*See* 8/14/03 letter to Mike Roberts, Ex. 2 to Burrell Declaration. Again there was no response. Finally, on August 19, 2003, because Plaintiff's counsel had not bothered to respond to either letter, defense counsel wrote to say that they would "go ahead and schedule the September 11 and 12 dates [in order to] get Mr. Jeffries' doctors on line." *See* 8/19/03 letter to Mike Roberts, Ex. 3 to Burrell Declaration.

There is no question that Plaintiff's counsel has ignored every one of these requests. But he says that he has not failed to cooperate. In fact, he characterizes Defendants' assertion that he has failed to cooperate as a "patent falsehood." But the record speaks for itself. Plaintiff's counsel received three written requests regarding his availability for these depositions. He has not yet responded. If Plaintiff defines cooperation as a failure to communicate, then he has indeed cooperated.

## III.   CONCLUSION

These games must stop.  The parties must move this case forward and work with each other to complete discovery.

Defendants are committed to doing so.  To that end, Defendants have scheduled Plaintiff's deposition; they have scheduled the depositions of Plaintiff's treating physicians; they have arranged to make ten (10) more deponents available for Plaintiff during the week of September 22; they have agreed to make these deponents available after the close of lay witness discovery.  Also, although Defendants took two depositions of Plaintiff's doctors on the East Coast in early July, the West Coast depositions of Drs. Bastien and Sandman scheduled for the following week were cancelled due to the illness of Dr. Bastien.

Much more discovery remains to be scheduled.  Plaintiff has named twelve (12) experts.  They are located in Canada, Maine, Wisconsin, California, and Cincinnati.  Defendants have named four (4) experts, one of whom Plaintiff has already deposed.  Defendants are willing to set aside much of the last week of September and the first two weeks of October to complete these depositions.

But given the barrage of accusations of unethical conduct made by Plaintiff's counsel, the invective that drips from Plaintiff's most recent letters and pleadings and the roadblocks he continues to erect (refusal to produce Court-ordered information, cancellation of Plaintiff's deposition and failure to respond to requests for availability), it will be a difficult task.  Again, defense counsel remains committed to keeping their eye on the ball and getting this case ready for trial.  The question remains:  is Plaintiff's counsel so committed?  Or does he want to continue these eternal sideshows that have nothing to do with the issues to be litigated?  His

recent appeal of this Court's last discovery Order and his actions during the last several weeks suggest the latter.

In the final analysis, however, this endless finger-pointing, accusations and attempts to lay blame will not accomplish anything constructive. For that reason, Defendants suggest a constructive solution to the ongoing problems which would include a Court Order requiring that:

(1) the deposition of Plaintiff take place on September 10 as now noticed and that Defendants have an opportunity to review the Court-ordered information prior to that deposition;

(2) the depositions of Mr. Jeffries' treating physicians take place as noticed on September 11, 12 and 16;[2]

(3) the depositions of the 10 witnesses identified by Plaintiff take place in Massachusetts as scheduled during the week of September 22, 2003;

(4) the parties identify available dates during the last week of September and the first two weeks of October and begin scheduling convenient dates for expert depositions on those dates; and

(5) the parties report to the Court by September 16 the results of their scheduling efforts.

Respectfully submitted,

/s/ William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

---

[2] Defense counsel recently learned that Dr. McClellan is only available on September 16, 2003. *See* 9/2/03 letter to Mike Roberts, Ex. 4 to Burrell Declaration.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon Michael A. Roberts, Graydon, Head & Ritchey, 1900 Fifth Third Center, 511 Walnut Street, Cincinnati, Ohio 45202, by hand delivery this 2ND day of September 2003.

*/s/ William R. Ellis*

184865.1