```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF OHIO
                          WESTERN DIVISION

Eric Jeffries,                  )
                                )
            Plaintiff,           ) Case No. C-1-02-351
                                )
    vs.                         )
                                )
Centre Life Insurance Co.,      )
et al.,                         )
                                )
            Defendants.          )
```

O R D E R

This matter is before the Court on two discovery disputes. In the first disagreement, Defendant Centre Life Insurance Company wants to obtain Plaintiff's financial records in order to learn if the activities reflected therein jibe with Plaintiff's claim that he is physically disabled. Magistrate Judge Hogan at first ruled that Plaintiff's financial records were discoverable but reversed that decision once Centre Life claimed that Plaintiff suffers from a mental disorder. The second disagreement revolves around recent news that Plaintiff's son suffers from an auto-immune disease. Plaintiff's son's condition potentially makes it more likely that Plaintiff's condition is physical and not mental. Defendant would like to conduct further discovery into Plaintiff's son's medical condition. Plaintiff has submitted documents relevant to these two issues to the Court for in camera review.

A. Financial Records

Centre Life wants to examine Plaintiff's financial records in order to test his claim of physical disability. Centre Life believes that the financial records are relevant

because, for example, Plaintiff's Visa bill might show that he has been skiing in Aspen or otherwise engaging in activities inconsistent with physical disability. Centre Life also argues that examination of Plaintiff's financial records would support its theory that Plaintiff has obsessive compulsive personality disorder and that this disorder is responsible for his physical problems. The Court agrees with Plaintiff that Centre Life's contention that he is disabled because of a mental disorder makes Plaintiff's financial records irrelevant.

  The problem with Centre Life's argument is that it leads the unwary into thinking about Plaintiff's claim of physical disability in overly-simplistic terms. In other words, the generic term "physical disability" tends to cause one to think or believe that the claimant is unable to engage in any activity that requires more than minimal physical exertion. In this case, however, we are not dealing with a generic claim of physical disability, but rather a specific claim of "total disability" under the terms of the insurance contract. The insurance contract in this case states that the terms "total disability" and "totally disabled" mean:

> that due to Injury or Sickness, the Insured:
>
> 1. is substantially unable to perform the material duties of his/her occupation; and
>
> 2. is receiving care by a Physician which is appropriate for the condition causing the disability.

<u>See</u> Complaint, Ex. 1, Insurance Policy, Part 1. The amendment to the policy goes on to limit coverage to two years if "total

disability" results from a mental disorder or substance abuse disorder:

> If a Total Disability or other covered loss is due to a Mental Disorder and/or Substance Abuse Disorder, the number of months for which any benefits shall be payable under the Policy during the lifetime of the Insured shall not exceed in the aggregate a total of 24 months.
>
> "Mental Disorder and/or Substance Abuse Disorder" means a manifestation of any disorder in the then current issue of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association (APA).  Such disorders include, but are not limited to, personality, psychotic, emotional, or behavioral disorders, or disorders relatable to substance abuse or dependency.

Id. at Amendment to Policy.  In its first amended answer and counterclaim, Centre Life states that it "admits that as of May 15, 2003, after independent medical examinations were received and reviewed, Centre Life has determined that Mr. Jeffries is totally disabled in his occupation due to a mental disorder as defined in his policy."  See id. ¶ 16.

Centre Life now admits that Plaintiff is disabled under the terms of the policy and that he is unable to perform the material duties of his occupation.  As so far seems to be undisputed, the nature of Plaintiff's illness manifests itself in cognitive impairments which preclude him from performing his occupation.  But, because Centre Life admits that Plaintiff is unable to perform his occupation, the issue becomes not whether Plaintiff is totally disabled, but why he is totally disabled.  Plaintiff's former occupation involved executing mergers and acquisitions, not digging ditches.  The fact that Plaintiff's

financial records may indicate that he is able to engage in activities which require physical exertion does not tend to contradict a claim of cognitive impairment.  Moreover, while the financial records might tend to support or rebut a claim of total disability, an issue no longer disputed, they would not be reflective of the cause of Plaintiff's illness, the issue is which is disputed.  In other words, the Court finds that Plaintiff's financial records are not relevant to the issue of etiology.

     Centre Life also argued, however, that the financial records would show whether Plaintiff is managing his accounts or trading stocks, activities which would contradict a claim of cognitive impairment.  The Court has reviewed <u>in camera</u> the financial documents submitted by Plaintiff as well as an affidavit submitted by Plaintiff's wife.  According to Mrs. Jeffries, she has handled all of their family's financial matters since Mr. Jeffries became ill in 1998.  Furthermore, while Mr. Jeffries does maintain an IRA with Provident Bank and a deferred compensation account with U.S. Bank, except for small money market positions, both accounts consist entirely of Provident Financial Group, Inc. common stock in which there appears to be no active trading.  Otherwise, the Jeffries' maintain a couple of checking accounts, one savings account, and the typical consumer and retail credit cards.  There are no privately managed investment accounts.  Nothing in the records submitted, however, indicates that Plaintiff is able to handle complicated financial

transactions.  In fact, Mrs. Jeffries states that Plaintiff does not handle any financial matters at all.

Finally, the financial records are merely cumulative on the issue of the diagnosis of obsessive compulsive personality disorder ("OCPD").  Disregarding for a moment the fact that one of Centre Life's experts agrees that Plaintiff does not have OCPD,[1] Centre Life appears to have a pretty good idea of Plaintiff's activities and travels from its own surveillance of Plaintiff as well as other documents and evidence already produced by Plaintiff.  That evidence should be sufficient for Centre Life to argue that Plaintiff is unusually preoccupied with his medical condition.  The financial records would only add quantity, but not quality, to what is already known.

Accordingly, for the reasons stated, Plaintiff need not produce his financial records.  Judge Hogan's decision on this issue was not clearly erroneous or contrary to law.

### B. Plaintiff's Son's Medical Records

Plaintiff's son has recently been diagnosed with an auto-immune disorder.  At trial, Plaintiff proposes to present the testimony of his son's physician, Dr. Deverajan, who would testify that: 1) he has treated Plaintiff's son; 2) his son has a particular auto-immune illness; and 3) the medical records attesting to such facts are authentic.  Other expert testimony

---

[1] Dr. Clionsky testified: "I don't believe he [Plaintiff] has a diagnosis of obsessive compulsive disorder."  Clionsky Dep. at 81.

would establish that the fact that Plaintiff's son has an auto-immune illness makes it more likely that Plaintiff also has an auto-immune illness. Centre Life would like to review the son's medical records, and then perhaps depose the son's physician and conduct its own independent medical examination of Plaintiff's son. The Court will permit Centre Life to have access to the medical records which make the diagnosis as well as any relevant office treatment notes and Dr. Deverajan's curriculum vitae. The Court will not, however, permit Centre Life to depose Dr. Deverajan or conduct an independent medical examination of Plaintiff's son.

The nature of the illness documented in the records presented to the Court shows that the diagnosis was based on a pathological examination of a tissue biopsy. To the Court, this means that the diagnosis was based on objective medical evidence and, therefore, absent some procedural error in performing the lab test, the diagnosis itself is not open to serious dispute. The Court's own brief research indicates that although this illness has not definitively been shown to be caused by genetics, it has been observed to occur in familial clusters. The medical records presented show, however, that diagnosing this disease is rather efficiently done through lab testing. Therefore, it would seem likely that, given the array of physicians Plaintiff has seen to date, Plaintiff would have already been diagnosed with this illness if in fact he has it. Therefore, to a large extent, the fact that Plaintiff apparently has not been diagnosed with

the same illness as his son hurts his case as much as it helps. Thus, it is unwarranted to open up new avenues of discovery on collateral matters which seem to neither particularly hurt Defendant's case nor particularly aid Plaintiff's case.

In addition, the Court notes that Plaintiff's sister has been diagnosed with lupus, also an auto-immune disease. Thus, there is already evidence on record which supports the theory that the presence of an auto-immune disease in one family member lends credence to the theory that Plaintiff has an auto-immune disease as well. Consequently, the evidence of Plaintiff's son's auto-immune illness is largely cumulative of a theory already presented by Plaintiff's experts. Therefore, Centre Life is unlikely to suffer any serious prejudice if discovery is limited to review of the medical records only.

Finally, the Court notes that permitting an independent medical examination to confirm or dispel the diagnosis would also apparently require Plaintiff's son to undergo a second biopsy. It would be unconscionable to subject this young boy to a second invasive procedure in furtherance of discovery on a collateral matter. Accordingly, the Court will not permit Centre Life to perform an independent medical examination of Plaintiff's son.

For the reasons stated, Centre Life may have access to Plaintiff's son's office treatment notes and the lab tests which diagnose the presence of the auto-immune illness. Production of these records shall be limited to Centre Life's attorneys and reviewing physicians and/or experts. Centre Life may obtain Dr.

Deverajan's curriculum vitae, but will not be permitted to depose Dr. Deverajan nor conduct an independent medical examination of Plaintiff's son.

The records submitted for <u>in camera</u> review by Plaintiff will be placed in the record under seal for purposes of appellate review.

**IT IS SO ORDERED**


Date October 8, 2003        /s Sandra S. Beckwith
                                Sandra S. Beckwith
                            United States District Judge