UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ERIC L. JEFFRIES,** | ) : | CASE NO. C-1-02-351 |
| Plaintiff, | ) : | JUDGE BECKWITH |
| | | MAGISTRATE JUDGE HOGAN |
| v. | ) : | |
| **CENTRE LIFE INSURANCE CO., et. al.,** | ) : | |
| Defendants. | ) | |

AFFIDAVIT OF
PETER CINQ MARS

---

PETER CINQ MARS, being duly sworn, deposes and says:

1. I am the Network Director for Disability Management Services, Inc. ("DMS").

2. There are an estimated 20 "backup" tapes for each DMS location (Springfield, Boston, Syracuse) for a total of 60 tapes.

3. "Backup" tapes are stored off site for disaster recovery purposes. Since the tapes are kept for this purpose, it is anticipated that they would have to be accessed only in the rare event of a full scale catastrophe which resulted in irretrievable loss of on site data.

4. These tapes are kept marked "perpetual storage," since as disaster recovery storage, it is not expected that the tapes will have to be called back. Because of this set up, the storage facility charges DMS $100.00 per tape for retrieval and return of the tapes by its offsite storage company. Tape retrieval from storage would cost

$6,000.00.

5. These "backup" tapes represent the entirety of DMS' disaster recovery information.

6. The data stored on the "backup tapes" are not kept in searchable format. The data would need to be loaded and stripped of irrelevant and proprietary information, and then it would be in searchable format.

7. The information contained on the "backup" tapes is not limited to emails. There is DMS proprietary information stored on the tapes which would need to be purged from the tapes before delivery of the "backup" tapes to the outside firm.

8. The proposed email search is to be performed on select individuals. As such, unrelated emails would have to be eliminated from the "backup" tapes prior to delivery to the outside firm.

9. Each tape would require 6-8 hours to restore. To restore each of 60 offsite tapes, plus set up and break down the separate hardware environment to effect this, would take an estimated eight (8) weeks.

10. In order to accomplish this, DMS personnel and hardware, including a server, tape drive and client machine would need to be dedicated to the task.

11. The one time cost for a low end server with sufficient hard drive for these data stores would be approximately $10,000 for the entire restore period.

12. The one time cost for a DLT drive would be approximately $3,000 for the entire restore period.

13. The one time cost for a PC would be approximately $1,000 for the entire restore period.

14. The cost of the dedicated hardware for eight (8) weeks would total approximately $14,000.00.

15. DMS does not have IT personnel available to dedicate to this project. A consulting resource would need to be hired for the eight (8) weeks. Standard industry rate for

        consulting is $100.00 per hour for a total of $32,000 in order to accomplish the restoration in preparation for delivery to the outside firm.

16.    This analysis assumes only a search of email boxes of the "backup" tapes. To also prepare the tapes for a search of other programs, such as office software Microsoft Word and the DMS claims system (which is proprietary software) would significantly increase the cost figures as noted above.

*(signature)*
PETER CINQMARS

Sworn to and subscribed before me
this 3rd day of October 2003.

*(signature)*
NOTARY PUBLIC