UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, et al., | : | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF DR. FREY AND MOTION FOR PROTECTIVE ORDER** |
| Defendants. | : | |

**I.     INTRODUCTION**

It has not been Defendants' habit to approach the Court with each of Plaintiff's discovery transgressions. Rather, counsel for Defendants have attempted to resolve these disputes directly. As the latest filing by Plaintiff indicates, this approach has not been successful. Plaintiff has moved to exclude the anticipated report of Kirk Frey, M.D., Ph.D. Dr. Frey is a neurologist, who has been engaged by Defendants to offer an opinion regarding the PET and SPECT scans Mr. Jeffries has sought during the course of his claim.

It is true that Dr. Frey's report has not yet been received by Defendants and for that reason has not yet been disclosed to Plaintiff. This is due to Plaintiff's impediment of Defendants' attempts to obtain the information needed for Dr. Frey to review. Specifically, counsel for Plaintiff has interfered with Defendants' request for information from Dr. Pretorius. In part, Dr. Frey is responding to the opinion of Dr. Pretorius and his records are crucial to Dr. Frey's analysis. Moreover, it was recently discovered during the deposition of Dr. Byron Hyde that there are additional SPECT scans which had never been given to Defendants. Unless

and until Dr. Frey has all relevant information in his possession, he cannot issue a report. Once again, Plaintiff and his counsel have attempted to filter the information to which Defendants have access.

## II.     ARGUMENT

### A.     Plaintiff Has Interfered With Defendants' Efforts To Obtain Information For Dr. Frey To Review.

On August 15, 2003, counsel for Plaintiff served counsel for Defendants with a one-page report authored by Harold T. Pretorius. Dr. Pretorius reported that on August 5, 2003 he had performed a brain SPECT scan on Mr. Jeffries. Dr. Pretorius then offered an opinion interpreting the results of that scan and in particular opined that the scan could prove or disprove the existence of psychiatric disease.

After receipt of this report, counsel for Defendants consulted with experts in brain imaging and in particular, identified Kirk Frey, M.D., Ph.D. as a person who would offer an opinion regarding Dr. Pretorius' interpretation of his brain SPECT scan. To this end, the records of Dr. Pretorius were subpoenaed on August 26, 2003. *See* Affidavit of Christine L. Zerges, attached hereto as Exhibit A at ¶ 4. The subpoena requested that Dr. Pretorius respond with a full and complete copy of his file by September 12, 2003. *Id.* On September 11, 2003, a paralegal from Defendants' office spoke with Dr. Pretorius who advised that Dr. Pretorius was assembling color scans which would be ready for pick up the next day. *See* Zerges Affidavit at ¶ 6. It was anticipated that Wood & Lamping would collect the scans directly from Dr. Pretorius' office.

On September 12, 2003, Ms. Zerges spoke with a woman named Verge from Dr. Pretorius' office to determine where she should pick up the color scans. *See* Exhibit A at ¶ 7. Verge reported that Dr. Pretorius had spoken with Mr. Roberts that morning and was told by Mr.

Roberts that Wood & Lamping did not want the color films. *See* Exhibit A at ¶ 8. Verge advised that Ms. Zerges would need to speak directly with Dr. Pretorius to clarify. *See* Exhibit A at ¶ 9.

After several attempts, Ms. Zerges finally spoke to Dr. Pretorius on September 15, 2003. *See* Exhibit A at ¶ 10. Dr. Pretorius advised that his records had been prepared and given to Mr. Roberts. *See* Exhibit A at ¶ 11. This was contrary to the mandate of the subpoena served upon Dr. Pretorius and was done without consultation with Wood & Lamping.

On September 16, 2003, following conversations with Mr. Roberts' office, a single sheet of color scans with no other documentation was received from Mr. Roberts' office. On that same day, Ms. Zerges sent a letter to Dr. Pretorius requesting that the entirety of the file be released to Wood & Lamping. *See* Exhibit A at 12.

It was clear that the one-page color scan was not the entirety of Dr. Pretorius' file. Review of the scan indicated that Dr. Pretorius' report relied upon information that was not contained within the scan. On September 26, 2003 Peter Burrell once again wrote Dr. Pretorius and requested the entirety of his file. On October 2, 2003, three additional pages of Dr. Pretorius' file were faxed to Wood & Lamping. This information, along with Dr. Pretorius' report (which had previously been provided) and the scan information in Wood & Lamping's possession was forwarded to Dr. Frey.

On October 10, 2003, William Ellis deposed Dr. Byron Hyde, another of Mr. Jeffries' consulting physicians. During this deposition, Defendants learned for the first time that additional SPECT scans that had been done in Canada existed. Dr. Hyde refused to release the color scans to anyone but the court reporter. On October 23, 2003, Wood & Lamping was finally able to obtain color scans from the court reporter in Ottawa, Canada. *See* Exhibit A at ¶

13. These scans were immediately sent for duplication. On October 24, 2003, the color scans from Dr. Hyde were completed and sent to Dr. Frey via federal express. *See* Exhibit A at 14. As of October 25, 2003, Dr. Frey was finally in receipt of the available SPECT and PET scan information of which Defendants are aware and it is anticipated that he will soon complete his report.[1]

Dr. Pretorius has offered the incredible opinion that he can tell from a brain SPECT scan whether Mr. Jeffries has a psychiatric condition. To respond to this opinion, Defendants requested all information contained within his files. This information was, once again, filtered by counsel for Plaintiff and it was not until the end of October that all of the information in Dr. Pretorius' files was received. Incredibly, after Dr. Pretorius' file was finally received, Defendants learned that there were additional brain scans that had never been provided to Defendants despite its discovery requests. Moreover, Defendants had to obtain this information through a witness, without the cooperation of Plaintiff or his counsel.

In its first set of discovery requests, Defendants asked Plaintiff in Interrogatory No. 7 to:

Identify every medical practitioner including, but not limited to, psychiatrists, psychologists, therapists, etc., with whom you have consulted, been treated by, undergone an IME with either by telephone, telecommunication, in person or in any other manner or been seen by or have been treated by for any reason from 1985 to the present, specifying the date or dates on which said medical practitioner was contacted or treatment rendered.

Plaintiff answered: Defendants have all information from 1993 to the present.

In Document Request No. 19, Defendants asked that Plaintiff "produce any medical records evidencing treatment of your alleged disability or any other condition or injury or illness, before and after your alleged disability started." In response Plaintiff wrote "see, response to

---

[1] Counsel for Defendants recently conferred with Dr. Frey and he anticipates that his report will be completed by the end of the week of November 10.

Document Request 1." Document request 1 said "See application for benefits and correspondence from Mr. Jeffries or his counsel since February 1999 already in Defendants' possession. Any additional non-privileged information will be produced."

The only brain scan information contained in Mr. Jeffries' claims file is a one-page copy of a brain scan marked UCI Brain Imaging Center and dated 7-7-00. Despite Defendants' request for all medical records, it was not until after the deposition of Dr. Hyde that Defendants were finally able to obtain the several other SPECT scans also performed. These are crucial to the full and complete evaluation to be performed by Dr. Frey.

Had Plaintiff simply complied with Defendants' discovery request, the delay which he complains of would have been avoided. Instead, Plaintiff, through his counsel, has consistently failed to respond to Defendants' discovery in a full and complete manner. It is true that even before this litigation began, Mr. Jeffries had submitted an overwhelming amount of medical information. Rather than fully and completely respond to Defendants' request for his medical records, he has attempted to stand behind that information he chose to provide during the claims process. As this case progresses however, it has become clear that Plaintiff's practice is to produce that information he deems supportive of his position and omit that which does not fit with his plan.

Even more amazing is Plaintiff's interference with Defendants' attempts to obtain Dr. Pretorius' files. Perhaps Defendants should have filed a motion with the Court when it first learned of Mr. Roberts' advice to Dr. Pretorius that the files Defendants subpoenaed were not actually what Defendants wanted. Instead, counsel for Defendants attempted to resolve this issue without court intervention. In response, Mr. Roberts has now filed a motion seeking to exclude the opinion of Dr. Frey due to the delay in obtaining his report. This delay is caused

solely by the actions of Plaintiff and Mr. Roberts and by their incomplete responses to Defendants' discovery.

### B.     Cancellation Of Dr. Pretorius' Deposition.

Plaintiff has further stalled this case in his unilateral cancellation of another deposition. On October 3, 2003, counsel for Defendants subpoenaed Dr. Pretorius for deposition on October 31, 2003. On October 27, 2003 Mr. Roberts wrote a letter to Mr. Ellis demanding that Dr. Frey's report be sent to him within two days. *See* Exhibit B. Mr. Ellis advised that his deadline could not be met because the additional scans from Dr. Hyde had only recently been received. In response, Mr. Roberts threatened to cancel Dr. Pretorius' deposition.

The deposition of Dr. Pretorius was scheduled pursuant to a valid subpoena. Mr. Roberts has no authority to condition the deposition of his expert on receipt of a report by Defendants' expert. When counsel for Defendants informed Mr. Roberts that Dr. Frey's report would not be forthcoming within the two day time period demanded by him, Mr. Roberts advised that he would tell Dr. Pretorius not to appear for the deposition. *See* Exhibit C, 10/29/03 email correspondence from Roberts to Ellis and responses thereto. At the time Mr. Roberts demanded the report of Dr. Frey, Defendants had only recently received the additional SPECT scans from Dr. Hyde. These scans had to be obtained from the court reporter following Dr. Hyde's deposition because he would not release them to anyone other than the court reporter.

Dr. Pretorius' deposition is now rescheduled for November 21, 2003. This is again within the time period allowed by the Court's Order extending the time for completion of treating physician and expert depositions until December 5th. Nevertheless, it further delays Defendants' attempts to complete its necessary discovery.

Plaintiff's unilateral cancellation of Dr. Pretorius' deposition and his defiance of the subpoena is also of concern because it continues a pattern of Plaintiff to control the information available to Defendants. There is no relationship between the report of Dr. Frey and the deposition of Dr. Pretorius. Thus, there is no basis to cancel Dr. Pretorius' deposition simply because the report of Dr. Frey has not yet been received.

### III.   CONCLUSION

Dr. Frey's report will be sent to Plaintiff as soon as counsel for Defendants receive it. The report has been delayed because Dr. Frey did not have all the information he needed to review. This is because: 1) Plaintiff did not provide the SPECT and PET scans in Dr. Hyde's possession in response to Defendants' discovery requests; and 2) Plaintiff's counsel told Dr. Pretorius not to produce his file in response to Wood & Lamping's subpoena. These delays are of Plaintiff's making and his motion to exclude the testimony of Dr. Frey must be denied.

Respectfully submitted,

s/Peter M. Burrell
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

- 8 -

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 12th day of November 2003. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                       s/Peter M. Burrell
                                       Peter M. Burrell, Esq.

190710.1