UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **DEFENDANTS' DAUBERT** |
| et al., | : | **MOTION AND MEMORANDUM** |
| | : | **IN SUPPORT TO EXCLUDE THE** |
| Defendants. | : | **REPORTS AND TESTIMONY OF** |
| | : | **MARY E. FULLER** |

Now comes Defendant Centre Life Insurance Company and moves to exclude the testimony of Mary Fuller. Ms. Fuller seeks to offer testimony on a topic for which expert testimony is not required pursuant to Rule 702 of the Federal Rules of Evidence. Alternatively, Defendants move to exclude her testimony pursuant to the mandate of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993).

                                                        Respectfully submitted,

                                                        s/Peter M. Burrell
                                                        William R. Ellis (0012279)
                                                        Peter M. Burrell (0044139)
                                                        Amy Gasser Callow (0063470)
                                                        Wood & Lamping LLP
                                                        600 Vine Street, Suite 2500
                                                        Cincinnati, OH  45202-2491
                                                        (Telephone) (513) 852-6000
                                                       (Facsimile) (513) 852-6087

                                                       Attorneys for Defendants
                                                       Massachusetts Casualty Insurance Company
                                                       and Disability Management Services, Inc.

**MEMORANDUM IN SUPPORT**

I.   **INTRODUCTION**

Plaintiff has submitted the report and testimony of Mary E. Fuller which offers a conclusory opinion that Defendants acted in bad faith in regard to the administration of Mr. Jeffries' claim for individual disability insurance benefits.  Defendants move that this report be excluded and that this witness be prohibited from testifying at the trial of this matter.  Expert testimony is not permitted on this issue under Rule 702 of the Federal Rules of Evidence. The topic of "bad faith" is not one for which expert testimony is required to assist the trier of fact or specialized knowledge is needed.  Moreover, Ms. Fuller's opinion does not satisfy the Federal Rules of Evidence or the standards applicable to expert testimony under the mandate of *Daubert v. Merrill Dow Pharmaceuticals*.  Defendants request a Daubert hearing on this issue.

II.  **ARGUMENT**

Ms. Fuller has submitted an unsupported opinion regarding Mr. Jeffries' bad faith claim. This opinion is neither relevant nor reliable under the standard set forth in *Daubert* and must be excluded.  This opinion offers a conclusion as to whether Defendants acted in bad faith in handling Mr. Jeffries' claim.  In effect, Ms. Fuller seeks to make the arguments of Plaintiff's counsel under the guise of an expert opinion.  The opinion should also be excluded because it is not reliable.  Ms. Fuller is a former manager for a disability insurance company.  In her review of Mr. Jeffries' claim, she selectively includes information in her timeline.  She is unable to distinguish between information related to DMS and that of another insurer.  She applies an arbitrary and incorrect "industry standard."  And she admits that Mr. Jeffries' claim was a complex one for which several red flags indicative of possible fraud were raised.  Despite her

admission in deposition that Defendants' individual actions were reasonable, she concludes without evidentiary support that DMS' actions overall were in bad faith.

      A.    **Expert Testimony Is Not Required On The Issue Of Individual Disability Insurance Bad Faith.**

Rule 702 of the Federal Rules of Evidence states that:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*See* Federal Rules of Evidence 702. The Federal Rules of Evidence contemplate the use of expert testimony for scientific, technical or other specialized knowledge. In this case it is anticipated that Plaintiff will argue that Ms. Fuller possesses specialized knowledge in the claim administration of individual disability insurance policies. Whether Ms. Fuller is qualified in this regard is immaterial. That is because the determination of whether an insurance company acted in bad faith involves questions of reasonableness. For that reason, it is <u>not</u> a topic for which specialized knowledge is required.

It is axiomatic that an insurer has a duty to act in good faith in the processing and payment of claims of its insured. A breach of that duty will give rise to a cause of action in tort against the insurer. *See Hoskins v. Aetna Insurance Company*, 6 Ohio St. 3d 272, 452 N.E.2d 1315 (1983); *Staffbuilders, Inc. v. Armstrong*, 37 Ohio St. 3d 298, 515 N.E.2d 783 (1988). But the test annunciated in *Hoskins* and *Staffbuilders* and restated in *Zoppo v. Homestead Insurance Company*, 71 Ohio St. 3d 552, 644 N.E.2d 397 (1994) requires that the insured prove that the insurer lacked "reasonable justification" for the denial of benefits. Under this "reasonable justification" standard, "an insurer fails to exercise good faith in the processing of a claim of its

insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore." *See Staffbuilders*, 525 N.E.2d at 788. In other words, the Plaintiff must show that the insurer had ***no reasonable justification whatsoever*** for denying the claim. *See Hoskins*, 3 Ohio St. 3d at 276, 452 N.E.2d at 1320 (emphasis added). The question of whether DMS had reasonable justification for its claims decisions is therefore one of reasonableness.

There must be a proper foundation for the opinion which an expert seeks to offer. *See Berry v. City of Detroit*, 25 F.3d 1342, 1352 (6th Cir. 1994). In *Berry*, the plaintiff had offered an expert witness to testify about police policies as it related to the discipline or lack thereof of a specific officer. The court noted:

> But here, there is no foundation at all for discipline testimony, even though it would fall under the general label of "policy policies and practices." This term, however, is so broad as to be devoid of meaning. It is like declaring an attorney an expert in the "law." A divorce lawyer is no more qualified to opine on patent law questions than anyone else, and it is a mistake for a trial judge to declare anyone to be generically an expert.

Ms. Fuller seeks a general declaration that she is an expert in individual disability insurance claims administration simply because she has had a career in the insurance industry. Like the hypothetical divorce lawyer seeking to offer an opinion on issues of patent law, however, the areas of insurance in which Ms. Fuller has experience have nothing to do with the issues currently before the Court. For that reason, she is no more qualified than anyone else to determine whether the actions DMS were reasonable.

Ms. Fuller admits that the question of whether or not DMS acted in bad faith, if such a question reaches a jury, is one that can be determined by the jury.

> Q: You raise a good issue. The jury can decide whether what was done is unreasonable or not, correct?

>   A:   It can decide whether it is bad faith, yes.
>
>   Q:   Well, by definition, bad faith is acting without a reasonable basis, that is something the jury can and does decide?
>
>   A:   Yes.

*See* Exhibit A, relevant pages deposition of Mary Fuller at pp. 42-43. Even Ms. Fuller admits that the question of whether DMS' actions were reasonable or unreasonable is one that can be determined by the jury. It is therefore not a topic for which expert testimony is needed. The Eighth Circuit Court of Appeals has concluded that with regard to a bad faith case, it is not error to exclude expert testimony as to the reasonableness of an insurer's conduct because of "the long standing principle that questions of 'reasonableness' are outside the scope of expert testimony." *See Hayes Brothers, Inc. v. Economy Fire and Casualty Company*, 634 F.2d 1119, 1125 (8th Cir. 1980). Thus, Ms. Fuller's testimony is not required.

Ms. Fuller is attempting to stand in the shoes of the jury and draw the conclusion that DMS acted in bad faith. As the Sixth Circuit stated in the *Berry* case:

> Although an expert's opinion may 'embrace [ ] an ultimate issue to be decided by the trier of fact [,]' Federal Rule of Evidence 704(a), the issue embraced must be a factual one. The expert can testify, if a proper foundation is laid, that the discipline in the Detroit Police Department was lax. He also could testify regarding what he believed to be the consequences of lax discipline. He may not testify, however, that the lax discipline policies of the Detroit Police Department indicated that the city was *deliberately indifferent* to the welfare of its citizens. . . . When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to state in opinions that suggest the answer to the ultimate issue or that give the jury all of the information from which it can draw inferences as to the ultimate issue. We would not allow a fingerprint expert in a criminal case to opine that a defendant was guilty (a legal conclusion), even though we would allow him to opine that the defendant's fingerprint was the only one on the murder weapon (a fact). The distinction, although subtle, is nonetheless important.

*See id.* at 1353 (emphasis in original). In this case, the opinion of Ms. Fuller seeks to offer, that DMS acted in bad faith, is a legal conclusion.

**B.     Ms. Fuller's Deposition Testimony Confirms That DMS Acted Reasonably.**

Ms. Fuller has submitted a report in which she concludes that the overall activities of DMS in the handling of Mr. Jeffries' claim constitute bad faith. Setting aside for a moment the fact that this opinion merely restates that arguments of legal counsel in the guise of an expert opinion, review of Ms. Fuller's opinion in her deposition testimony, confirms that DMS' actions were in fact reasonable.

Ms. Fuller primarily takes issue with the surveillance conducted by DMS during the course of Mr. Jeffries' claim. She argues that from the claim's inception DMS treated the claim as if it was one that could be considered fraudulent. Like Plaintiff's counsel, she argues that the fact that surveillance was done early in the claim was evidence of bad faith. She acknowledges in deposition, however, that several red flags were raised with regard to Mr. Jeffries' claim which lead to the reasonable consideration that it might be fraudulent. She acknowledged that Mr. Jeffries' decision to increase his insurance coverage from $8,000.00 a month for five years to $12,500.00 a month until age 65 would be suspicious. She stated "I think being a claims person, I would always be suspicious of somebody increasing coverage prior to disability." *See* Exhibit A, Fuller depo. at p. 109. She also acknowledged that Mr. Jeffries' decision to increase his coverage after the event which he claims caused his disability the Hepatitis B vaccination, but before he actually became disabled would also raise the specter of potential fraud. *See id.* at pp. 109-110. She was asked:

> Q:     But there was indicia or red flags of a potential fraudulent claim from the get go, correct?
>
> A:     Yes.

*See id.* at p. 117.

Moreover, the event that Ms. Fuller claims was bad faith, the use of surveillance rather than medical review, cannot be accurately attributed to DMS. Ms. Fuller admits on more than one occasion that in her review of the materials provided to her by Plaintiff's counsel, she cannot distinguish between the surveillance that was done by DMS and that which was done by Mr. Jeffries' other insurance carrier, Prudential. She states "my understanding is some of the surveillance was done by two different companies at the same time. I was not clear how much of it was done by Prudential and how much of it was done by DMS separately versus together." *See* Exhibit A, Fuller depo. at p. 33. Later in her deposition when questioned regarding whether some surveillance contained within the file was ordered by Prudential or DMS, she answered

> A: I couldn't tell by the file, as I stated.
>
> Q: That's what I thought. But nonetheless, it is an important element of bad faith of DMS that it happened?
>
> A: The element of bad faith that I felt was most important was the extent to which the surveillance took place.

*See id.* at p. 107. Although Ms. Fuller attempts to argue that the specter of fraud should not have been raised in this case, she admits that from the beginning of this claim there were red flags which would indicate possible fraud. She also argues that DMS conducted too much surveillance but then admits she cannot determine what surveillance DMS actually ordered. When examined under the evidentiary facts of the case, rather than Ms. Fuller's conclusory opinions, DMS' actions were reasonable.

Although Ms. Fuller attempts to argue to the contrary, she acknowledges that given the medical and other complexities of this case, the actions taken by DMS were reasonable ones. She admits, for example, that tax returns can be used to verify income discrepancies. *See* Exhibit A, Fuller depo. at p. 17. She also acknowledges that in the evaluation of a disability claim it is

acceptable to evaluate secondary gain issues. *Id.* at p. 18. She also admits that all of Mr. Jeffries' possible diseases were eventually ruled out by objective testing. *See id.* at p. 49. She goes on to argue, however, that it was bad faith to terminate the claim based on IME results when Mr. Jeffries' doctors were not given these results to review. Ms. Fuller makes this claim but then admits that she did not know that the IME results had been given to Mr. Jeffries' attorney. *See id.* at p. 74. Although Ms. Fuller argues that DMS' actions as a whole were bad faith, when questioned about the outcome of individual actions, she admits that as a claims person she would have had the same questions and taken the same actions.

Ms. Fuller's deposition testimony also confirms that termination of Mr. Jeffries' benefits was reasonable. Throughout his claim, Mr. Jeffries' doctors have been unable to determine the cause of Mr. Jeffries' symptoms. After he complied with the Court's Order to attend a medical examination, Dr. Hartings determined that Mr. Jeffries' problems stemmed from a psychological and not a physical source. Although Plaintiff disagrees with this conclusion, Ms. Fuller confirms that based on the information available to DMS, it was a reasonable one. Under these circumstances, this reasonable decision could not amount to bad faith. Somatoform disorder is a psychological problem with physical symptoms. Ms. Fuller admits that the pain and symptoms one would experience with somatoform disorder can be real. She was questioned:

> Q: Somatoform disorder, a patient with somatoform disorder has very real pain, do they not?
>
> A: They can, yes.
>
> Q: And they have very real symptoms?
>
> A: Yes, they can.
>
> Q: So the fact that symptoms are real doesn't define whether it is a physical problem or a psychological problem, does it?

> A: Well, you know, that may become a legal issue as to whether somebody's somatization that results in physiological symptoms is real or not. It's not something that . . . I know it is something we have looked at in claims often, you know, is this to the extent that this person is actually physically unable to function.

*See id.* at p. 84. Ms. Fuller therefore admits that a very reasonable question can exist as to whether or not Mr. Jeffries' symptoms were caused by a physical or psychological disorder. If a reasonable question exists then the determination that his symptoms were caused by a psychological problem cannot be in bad faith as a matter of law.

### III. CONCLUSION

The question of whether an insurance company acted in bad or good faith is one of reasonableness. The issue of whether actions were or were not reasonable is within the purview of a jury and not a topic for which expert testimony is required. For that reason, Ms. Fuller should not be permitted to testify at the trial of this matter. Even if Ms. Fuller's testimony is considered however, a review of that testimony reveals that the actions of DMS were reasonable and not in bad faith. Ms. Fuller must therefore be excluded as a witness. Defendants respectfully request a *Daubert* hearing on this issue.

Respectfully submitted,

s/Peter M. Burrell
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 12th day of December 2003. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                        s/Peter M. Burrell
                                        Peter M. Burrell, Esq.

193589.1