IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-02-351 |
| Plaintiff, | ) | JUDGE BECKWITH |
| v. | ) | |
| CENTRE LIFE INSURANCE CO., et. al., | ) | |
| Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTINUANCE OF TIME TO DEPOSE DR. KIRK FREY AND FILE A MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF DR. FREY**

This Court should sustain plaintiff's motion for extension of time to both depose Dr. Kirk Frey and file a motion *in limine* to preclude the purported expert testimony of Dr. Kirk Frey. Although it appears that defendant does not oppose the motion, it demands that Dr. Frey's deposition occur on December 22, 2003. This is unacceptable.

In its memorandum, defendant concedes that despite plaintiff's request for convenient dates/times to take Dr. Frey's deposition, which plaintiff made shortly after he received Dr. Frey's 3-month late expert report and 2 weeks in advance of the discovery cutoff, defendant did not respond to that request until 1 week after the discovery cutoff had passed altogether. After making this concession, defendant generously states that it "does not oppose . . . in principal" the motion to take Dr. Frey's deposition after the deposition cutoff date.

Plaintiff submits this memorandum to clarify the factual misrepresentations in defendant's memorandum only. Namely:

*<u>Claim By Defendant</u>: "Due to the interference and delay by plaintiff's counsel, [Dr. Pretorius' scans] was not obtained from Dr. Pretorius, and therefore, could not be sent to Dr. Frey until October 2, 2003 . . . the delay in Dr. Frey's receipt of information he needed to review Dr. Pretorius' report is attributable to the efforts and interference of plaintiff's counsel." (p. 2). And "On [the day Dr. Pretorius was to produce documents pursuant to a subpoena] September 12, 2003, however, Dr. Pretorius' office advised that Mr. Roberts had told Dr. Pretorius that defendant's counsel did not want what had been requested . . . It was not until October 2, 2003, that counsel for the defendant finally received the entirety of Dr. Pretorius' file."*

**With respect to these 2 claims, in August or early September, defendant sent a subpoena to plaintiff's counsel and Dr. Pretorius directly, seeking Dr. Pretorius' deposition <u>and</u> his production of documents on Friday, September 12, 2003. When plaintiff's counsel spoke to Dr. Pretorius on September 11, 2003, Dr. Pretorius asked what time he should be in defendant's counsel's office for the September 12 deposition. Plaintiff's counsel called defendant's counsel who advised that there would be no deposition, he just wanted Dr. Pretorius' records. Plaintiff's counsel then called Dr. Pretorius and advised him that the deposition was off but documents still needed to be produced. Plaintiff's counsel offered to keep his scheduled personal visit with Dr. Pretorius that day, even though the Pretorius deposition had been canceled, for the purpose of doing Dr. Pretorius the favor of retrieving the subpoenaed materials and delivering them to defendant's counsel.**

**On Monday, September 15, 2003, William Ellis called plaintiff's counsel and complained that Dr. Pretorius would not give him documents. Plaintiff's counsel shared with Mr. Ellis that the materials were in his possession and would be provided. Ellis screamed "That's not good enough, I need the chain of custody! I need the materials directly from Pretorius." Plaintiff's counsel openly offered whatever assistance he could give to assist Mr. Ellis retrieve documents from Dr. Pretorius directly. Mr. Ellis rejected that offer. The very next morning, September 16, 2003, in this Court's chambers, at a conference concerning other disputes, plaintiff's counsel provided defendant's counsel with a color copy of the materials secured from Dr. Pretorius pursuant to the subpoena. These were all of the documents Dr. Pretorius provided pursuant to the subpoena. The Court was my witness to this September 16 delivery. Nonetheless, defendant's counsel now claims that plaintiff caused the Dr.**

2

    **Pretorius materials to not be delivered to Dr. Frey until 2 weeks later on October 2, 2003. Defendant's placement of blame is improper.**

    *<u>Claim By Defendant</u>: Mr. Roberts failed to disclose the existence of the Canadian Spect Scans . . . plaintiff [did not] fully and complete[ly] respond[] to Defendant's discovery requests and [failed to] identify[y] these spect scans. Had plaintiff been forthcoming with his medical records, these delays could have been avoided."*

    **This claim is false. Request No. 19 of Defendant's First Set Of Document Production Requests asks for Mr. Jeffries to provide defendant with "any medical records evidencing treatment of your alleged disability . . . ." Mr. Jeffries' response was "See, application for benefits and correspondence from Mr. Jeffries or his counsel since February 1999 already in defendants' possession."**

    **Neither plaintiff nor his counsel ever possessed and, therefore, could not produce the "Canadian Spect Scans" but the defendant has had knowledge of these tests <u>since August 2001</u>. In fact, in the materials produced pursuant to Rule 34 to plaintiff <u>by defendant</u> in August 2002, there are several materials referencing the existence of these Canadian Spect Scans. (<u>See</u>, E.g., Exhibit 1, attached, documents produced by defendant in this suit and bates labeled by defendant as "CLAIM" 0507-0514, 0718, and 0732-0733).**

    **As the Court can see in Claim 00732 produced by defendant, it knew of the existence of a "Brain Scan" performed on "June 12, 2000, at the Merivale Medical Imaging Center: Ottawa." And defendant knew of "NeuroSPECTs" performed on June 9, 2000, and December 7, 2000 at the "Hotel Dieu Hospital Montreal."**

    **Defendant's false mud-slinging at plaintiff's counsel must cease.**

    *<u>Claim By Defendant</u>: On December 11, 2003, one day before plaintiff filed [his request for continuance] . . . defendant asked Mr. Roberts to advise if he had any conflicts during [the week of December 15]. He refused to do so and instead filed this Motion For Continuance. Mr. Roberts continues to create issues for contention unnecessarily."*

3

Plaintiff's counsel does not "create issues of contention unnecessarily." As proven above and as proven on several other occasions in this suit, defendant or its counsel has little regard for the rules of procedure and many times, honesty.

The reason that plaintiff filed a Motion For Continuance on December 12, 2003, even though defendant did on December 11, 2003, finally offer to make Dr. Frey available, was not to multiply these proceedings, but rather was the result of the Court's command that *Daubert* motions be filed on or before December 12, 2003, and the proscription of Local Rule 6.1(B), which obligated plaintiff to file a written motion for extension (which could not be stipulated to by defendant).

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL | /s Michael A. Roberts |
| | Michael A. Roberts, Esq. (0047129) |
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 511 Walnut Street, Suite 1900 |
| 511 Walnut Street | Cincinnati, Ohio 45202 |
| Cincinnati, Ohio 45202 | (513) 629-2799 |
| (513) 621-6464 | (513) 651-3836 (fax) |
| | email:mroberts@graydon.com |

## CERTIFICATE OF SERVICE

The foregoing was delivered, via electronic mail to William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 22nd day of December, 2003.

/s Michael A. Roberts