IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-02-351 |
| | : | |
| Plaintiff, | ) | JUDGE BECKWITH |
| | : | |
| v. | ) | |
| | : | |
| CENTRE LIFE INSURANCE CO., | ) | |
| | : | |
| Defendant. | ) | |

PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S MOTION
*IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF MARY FULLER,
PLAINTIFF'S DISABILITY INSURANCE CLAIMS PRACTICES AND BAD FAITH EXPERT

In the mid-1990s, the plaintiff, Eric L. Jeffries, purchased a long term disability insurance policy from Massachusetts Casualty Insurance Company (n/k/a Centre Life Insurance Company). In 1998, Mr. Jeffries' chronic illness prevented him from continuing in his occupation of merchant banker for Provident Bank. Mr. Jeffries brought this action in May 2002 because defendant refused to pay him benefits and had, since February 1999, acted in bad faith.[1]

Applying the applicable standards of Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), and *Kumho Tire Co. v. Carmichael* 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999), this Court should deny defendant's motion to exclude from the trial of this case the opinion testimony of Mary Fuller,

---

[1] In its Answer, defendant denied that Mr. Jeffries was disabled. (*Doc. 9*). The defendant has since amended its position. Defendant now concedes that Mr. Jeffries is disabled and is in fact <u>to this day</u> unable to perform his occupation. Defendant also concedes that Mr. Jeffries was entitled to long-term disability benefits under the Policy at issue from March 1999 to March 2001 (*See, Doc. 89*). But defendant now contends that, even though Mr. Jeffries continues to be disabled, no benefits are payable beyond March, 2001. Defendant claims that benefits are limited based on its argument that Mr. Jeffries' undisputed disability is caused by a psychological disorder, not a physical illness.

1

plaintiff's disability insurance claims practices expert and bad faith expert. The defendant raises three arguments relative to Ms. Fuller's testimony:

    (i)    Defendant improperly claims that Mary Fuller is not an expert in disability insurance claims practices;

    (ii)    Defendant improperly claims that Ms. Fuller's testimony is "not permitted" and "not required" under law; and

    (iii)    Defendant argues that Ms. Fuller's testimony actually "confirms that [defendant] acted reasonably."

None of defendant's arguments support its prayer to have Ms. Fuller's testimony excluded from the trial of this case. However, it is not disputed by plaintiff that Ms. Fuller <u>may</u> not be permitted to answer the following precise question if it is posed at trial: "Is the defendant liable for bad faith under Ohio law?" But any potential proscription on Ms. Fuller responding to this specific, single question does not result in the wholesale exclusion of her testimony.

Ms. Fuller is an appropriate expert with opinions that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Defendant's motion should be denied.

I.    <u>**Framework Of Legal Analysis.**</u>

Federal Rule of Evidence 702, is the primary source for determining the admissibility of expert testimony in federal court. It states: "if . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, expertise, training, or education, may testify thereto in the form of an opinion or otherwise . . . ." *FRE 702.*

In *Daubert*, the Supreme Court set forth a non-exclusive list of factors for trial courts to consider in assessing the reliability of expert testimony. And in *Kumho*, the Supreme Court

extended the *Daubert* analysis to non-scientific expert testimony.  In *Kumho* the Court explained that whether the factors set forth in *Daubert* are reasonable measures of reliability in a particular case "is a matter that the law grants the trial judge broad latitude to determine." *Id. at 153*.  The *Kumho* Court held that, "*Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case" and the trial judge has "<u>considerable leeway</u> in deciding . . . how to go about determining whether particular expert testimony is reliable." *Kumho*  526 U.S. at 141 and 152. (*emphasis added*).

In addition, the "ultimate issue" objection to opinion testimony has been abolished *Heflin v. Stewart County, Tennessee*, 958 F.2d 709, 715 (6th Cir. 1992).  Rule 704 states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

II.     <u>Ms. Fuller Is An Expert.</u>

Ms. Fuller reviewed thousands of documents before reaching her opinions.  Her Curriculum Vitae is attached as Exhibit 1 and her comprehensive Report of her findings and opinions is attached in 2 parts as Exhibits 2 and 3.

    A.     <u>Ms. Fuller Has The Appropriate "Specialized Knowledge" To Classify Her As An Expert</u>.

As identified in Ms. Fuller's Curriculum Vitae, Ms. Fuller has extraordinary knowledge, skill, expertise, experience and training in the area of disability insurance claim practices. (*Exhibit 1*). Ms. Fuller:

- Has 17 years of experience and is a disability insurance specialist in the areas of claim practices and procedures;

- From 1982 to 1984 Ms. Fuller worked as a Supervisor of individual disability claims for a large disability insurer, Unum;

- From 1984 to 1988 Ms. Fuller served Unum as an Assistant Vice President overseeing individual disability underwriting;

- From 1991 to 1995, Ms. Fuller served Unum as a Director of Individual Disability Benefits, managing Unum's disability claims in the western half of the United States;

- From 1995 to 1997, Ms. Fuller served Unum as the Assistant Vice President of Claims and managed Unum's Psychiatric and Complex Claims Units;

- From 1997 to 1999, Ms. Fuller served Unum as its Vice President of Individual Disability Benefits (with oversight of all pending claims at Unum);

- From 1999 to 2001, Ms. Fuller served Unum and later UnumProvident as its Vice President of Psychiatric and Cardiac Claim Units; and

- From 2001 to 2003, Ms. Fuller has served as a consultant on disability insurance claims handling issues. *Id.*

As identified in her CV, Ms. Fuller has a Bachelor of Arts and received a Masters degree in 1979. *Id.* In her twenty years in the disability insurance industry, Ms. Fuller has attended numerous industry seminars, authored several articles, spoken at industry seminars (including speaking at a seminar where a DMS' person selected speakers and many DMS representatives attended). *Id.*

Ms. Fuller has twice testified at a disability insurance trial as an expert, each time on behalf of the insurance company defendant. *Id.* Her deposition testimony has been taken on approximately 2 dozen occasions, mostly as an expert for a defendant insurance company. *Id.*

Ms. Fuller worked at Unum, or UnumProvident, at the time Mr. Jeffries' purchased an own-occupation disability policy from defendant and during the first 2 years that defendant

4

"administered" Mr. Jeffries' Claim. She is intimately familiar with the important features of disability insurance contracts. She received training from a disability insurance company and has educated herself on how disability insurance companies operate.

Ms. Fuller is qualified as an expert on the basis of her experience in dealing with insurers and insureds. In arriving at her opinion of whether defendant's handling of plaintiff's claim comported with the standards in the insurance industry, she relied on her education, her experience, and her understanding of the requirements of law. In Ms. Fuller's opinion, the standards of the industry impose an obligation on insurance companies to be fair, objective, and thorough in their evaluation and analysis of a claim; not to put their financial interests above those of their insureds; not to search for ways to deny a claim; not to misrepresent provisions of the insurance policy including coverage benefits; not to pay less on a policy than the insured is rightfully owed; and not to compel insured's to sue in order to receive benefits.

Despite Ms. Fuller's obvious qualifications, defendant argues that Ms. Fuller is not an appropriate expert. It claims that Ms. Fuller's participation in this case is akin to a divorce lawyer offering expert counsel on patent law issues. (*Motion, p. 4*). This claim is meritless.[2] Ms. Fuller's career has been focused in the individual disability insurance claims practices area, with particular focus of psychiatric and complex claims. She is the perfect expert for this case.

Based on her skill and experience, Ms. Fuller is, on the topic of disability insurance claims practices, the type of person who is "qualified as an expert by knowledge, skill,

---

[2] Moreover, when later arguing that Ms. Fuller's opinions actually support defendant, the defendant implicitly conceders that she is <u>not</u> "a divorce lawyer opining on patent law."

experience, training, or education" as contemplated by FRE 702.  Ms. Fuller's testimony cannot be excluded on the basis that she is not an appropriate expert.

  B.  <u>Ms. Fuller's Opinions.</u>

While Ms. Fuller has concluded that defendant administered Mr. Jeffries' Claim in "bad faith," she came to that conclusion on the basis of other independent opinions that defendant:

- Failed to comply with industry fair claims practice standards (*Exh. 2, p. 4*);

- Failed to investigate fully the relevant and applicable facts (*Id., pp. 4-8*);

- Failed to fairly consider all information obtained including that which tends to favor claim payment or continuation as well as that which tends to favor declination or termination (*Id., pp. 8-11*);

- Failed to promptly and timely pay benefits owed under the policy ("throughout the claim, benefits were threatened to be withheld or were withheld from Mr. Jeffries with no legitimate basis") (*Id. pp. 11-13*);

- Failed to establish and maintain procedures for the purpose of guaranteeing compliance with these obligations (*Exh. 1, pp. 13- 17*); and

- Failed to know and understand the applicable laws of controlling jurisdiction and to administer their insured's claims accordingly. (*Exh. 1, p. 17*).[3]

Clearly, these six *fact-based* independent opinions (in addition to Ms. Fuller's opinion that defendant engaged in bad faith), are relevant, and given Ms. Fuller's specialized expertise, reliable.  The jury may have no members with any experience in insurance.  Ms. Fuller's testimony will "assist the trier of fact to understand the evidence or to determine a fact in

---

   [3]  Despite the varied nature and substance of Ms. Fuller's opinions, the defendant disingenuously asserts that "Ms. Fuller primarily takes issue with the surveillance conducted by DMS during the course of Mr. Jeffries' claim" and that the use of surveillance was "the event that Ms. Fuller claims was bad faith." (*Motion, pp. 6, 7*).  While the inappropriate surveillance conducted by DMS alone and in conjunction with another insurer are material to Ms. Fuller's opinions, her 52-page report identifies many other factors leading to her conclusions.  (<u>See</u>, Exhibits 2 and 3).

issue," namely the appropriateness of defendant's conduct given its affirmative obligations owed Mr. Jeffries.

These opinions are also clearly admissible relying on the authority defendant cites: *Berry v. City of Detroit* 25 F 3d 1342 (6th Cir. 1994). The *Berry* Court held that "an expert's opinion may embrace an ultimate issue to be decided by the trier of fact." *Id. at 1353.* And the *fact-based* examples of permissible opinions cited by *Berry* are the very type of *fact-based* opinions Ms. Fuller asserts above. As permitted in *Berry*, Ms. Fuller's "opinions . . . suggest the answer to the ultimate issue or . . . give the jury all of the information from which it can draw inferences as to the ultimate issue." *Id.* For that reason, under defendant's authority, Ms. Fuller may testify.[4]

III.   <u>An Insurance Expert May Testify.</u>

As discussed above, it is not disputed by plaintiff that Ms. Fuller <u>may</u> not be permitted to answer the following precise question if it is posed at trial: "Is the defendant liable for bad faith under Ohio law?" If that question is posed in that fashion at trial, defendant will have the opportunity to object and the Court will rule appropriately. But any potential proscription on Ms. Fuller responding to this specific, single question does not result in the wholesale exclusion of her testimony: although the use of a motion in *limine* is authorized for federal courts, its allowance by the trial court is purely discretionary and generally is confined to very specific evidentiary issues of an extremely prejudicial nature. As pointed out in *Sperberg v. Goodyear*

---

[4]   The *Berry* Court ruled that plaintiff's expert's testimony was inadmissible because the witness "did not have the qualifications to testify as an expert on th[e] question [defined on appeal], and, if he did, no proper foundation was laid for his ultimate opinion." *Id. at 1348.* In *Berry,* plaintiff's purported expert based his knowledge on his experience of "basically, general patrol, investigative work, riding a black and white, responding to calls." *Id. at 1349.* Clearly, this purported expert is not similarly situated to Ms. Fuller here. Also here, there is proper foundation to Ms. Fuller's expertise. Had there been sufficient foundation laid in *Berry,* the Court may have allowed the testimony.

7

*Tire & Rubber Co.,* 519 F.2d 708, 712 (6th Cir. 1975), *cert. denied*, 423 U.S. 987, 46 L. Ed. 2d 303, 96 S. Ct. 395: "Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence when they arise." *Id.*

Defendant's argument that Ms. Fuller can't testify because her opinions assert legal conclusions is meritless. As identified above, Ms. Fuller's opinions reflect on industry practices. She does not state legal conclusions.

In ***United States of America v. Sheffey*** 57 F.3d 1419 (6th Cir. 1995), the Sixth Circuit affirmed the trial court's decision permitting questions of an expert, which the defendant argued required the expert to state a legal conclusion. The Court held "if an opinion question . . . does not involve terms with a separate, distinct and specialized meaning in the law different from that present in the vernacular, then the witness may answer it over the objection that it calls for a legal conclusion." And the ***Sheffey*** Court stated and held that the following question was not objectionable:

> "'Did [defendant], at the time of the accident, drive recklessly and in extreme disregard of human life?' Simply because this question embraced the terms of the jury instruction on malice aforethought does not dictate a ruling that it called for a legal conclusion . . . [i]ndeed, jury instructions are carefully drafted and crafted to rely upon terms commonly used and understood in the vernacular. They permit jurors to draw from their own everyday experience in making legal conclusions, such as the one in this case . . . therefore, we hold that the district court did not err by admitting the answers despite [defendant's] protests that they called for a legal conclusion."

The ***Sheffey*** Court expressly "drew . . . support for its holding from" ***Heflin v. Stewart County, Tennessee***, 958 F.2d 709 (6th Cir.), *cert. denied*, 121 L. Ed. 2d 535, 113 S. Ct. 598 (1992). In ***Heflin*** plaintiffs' expert testified that defendants actions were "deliberately indifferent to [the

decedent's] needs for emergency care . . . ." On appeal, defendant argued that plaintiff's expert's testimony contained an impermissible legal conclusion. The Sixth Circuit rejected that argument and held:

> "[Plaintiff's expert] testified concerning the proper procedures to be followed in the situation faced by the defendants. After setting forth in detail the manner in which the defendants failed to follow approved procedures, he stated that in his opinion this conduct demonstrated deliberate indifference to [the decedent's] needs . . . The testimony merely emphasized the witness's view of the seriousness of the defendant's failures. <u>Given the generality of the test, 'will assist the trier of fact,' we find no abuse of discretion in admitting this testimony</u>." 958 F.2d at 715. (*emphasis added*).

A similar analysis is presented here. There is a great deal of expert information that Ms. Fuller possesses which will assist the trier of fact. (*See, above*). And many questions she may be asked will not require that she state the legal conclusion that "under the law of Ohio, defendant is responsible to Mr. Jeffries for having engaged in legally impermissible bad faith."

Accordingly, under the guidance of *Sheffey*, *Heflin*, and *Sperberg* Ms. Fuller's testimony should not be excluded altogether.

Defendant here cites no rule, law, or authority which states or holds that a skilled insurance industry expert is not permitted to offer any testimony whatsoever in a case concerning a claim of bad faith insurance practices. There <u>is</u>, however, authority to support the reliability, relevance, and admissibility of opinions of insurance experts in bad faith cases, including support from a District Court within the Sixth Circuit.

In *Naugle v. Allstate Insurance Company* 2001 U.S. Dist. LEXIS 22684 (E.D. Ky. 2001), *aff'd*. 2003 U.S. App. LEXIS 15638 (6th Cir. Ky., July 30, 2003) (*Exhibit 4, attached*), Allstate sought to exclude the testimony of plaintiff's insurance bad faith expert. The objection raised by

9

Allstate's counsel was the same objection now raised by the defendant ("the jury is capable of discerning from the evidence at trial whether Allstate acted in bad faith towards [plaintiff] and that [the bad faith expert's] proposed testimony would usurp the role of the jury"). *Id.*

Despite this argument, the *Naugle* Court, when analyzing Allstate's *Daubert* challenge, concluded that "there can be no dispute that" plaintiff's expert who had 12 years experience in the insurance claims field "knows and understands the claims-handling process." The *Naugle* Court also concluded that plaintiff's bad faith expert's "<u>testimony might be relevant</u> in that it could be used to educate the jury generally about the claims-handling process . . . ." *Id.* (*emphasis added*).[5] The *Naugle* Court thereby rejected Allstate's argument that defendant mirrors here (that the bad faith expert's proposed testimony would "usurp the role of the jury").[6]

As the Sixth Circuit has explained, the relevancy requirement of *Daubert* and FRE 702 is met "if the trial judge determines, under 104(a), that the expert's opinion 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Cook v. American Steamship Company*, 53 F.3d 733, 737-38 (6th Cir. 1995). And courts of this circuit have determined that

---

[5] Ultimately, however, the *Naugle* Court excluded the expert witness' testimony because the Court judged that "in this particular case . . . the evidence strongly suggests that [plaintiff's expert] is biased against Allstate and is functioning in this particular case as a hired gun rather than an objective, unbiased insurance consultant. This conclusion is based on the following facts: (i) Subsequent to Allstate's decision to terminate her employment in March of 1999 . . . On March 3, 2000, [the expert] filed an action against Allstate . . . alleging claims of retaliation and wrongful discharge; <u>this action is currently pending.</u> However, prior to filing this action, [the expert] offered to settle any potential claim she might have against Allstate for $550,000, and if that offer had been accepted by Allstate, [the expert] agreed that she would not provide expert witness or consulting services to potential claimants against Allstate . . . ." (*emphasis added*).

[6] Defendant places great significance on Ms. Fuller's agreement (in the context of defendant's cross-examination at deposition), that the Jury will decide the bad faith issue. Of course the Jury will decide that issue!! Ms. Fuller would have no credibility whatsoever if she testified or believed that once she testified the Jury would be discharged and left with no decision to make.

insurance industry experts may indeed have opinions which are reliable and relevant to a jury's determination of a bad faith claim.[7]

Applying the analysis of the *Naugle* Court to this case, it is plain that Ms. Fuller too "knows and understands the claims-handling process" and can provide testimony "relevant in that it could be used to educate the jury generally about the claims-handling process . . . ."

Accordingly, the only relevant authority in the Sixth Circuit supports this Court's rejection of defendant's prayer to exclude Ms. Fuller's opinions and testimony altogether. Ms. Fuller's expert testimony consists of "specialized knowledge" that she has acquired during her career in the disability insurance claims administration field. For this reason, Ms. Fuller's testimony will assist the jury in determining whether defendant acted reasonably.

Defendant's second argument – that bad faith expert testimony is "not required" (as opposed to "not permitted") – misses the focus of FRE 702 and *Daubert*: also it would be disingenuous for plaintiff or defendant to argue that any expert's testimony is "required." The purpose of *Daubert* is to allow for the admission of opinion testimony which "will assist the

---

[7] Other courts, including the state courts of Ohio support the admissibility of expert testimony in insurance bad faith cases. *See, e.g.*, **Edmunds Management Company v. Century Surety Company**, 1997 Ohio App. LEXIS 2568 (8th Dist., Cuyahoga 1997) (*Exh. 5*) (plaintiff permitted to offer bad faith claims handling expert testimony at trial: the expert "was properly limited to whether defendant deviated from an objective standard of care for handling claims of this type. The average lay person is not experienced in the handling of complex commercial insurance claims. This testimony assisted the jury on the issue of whether defendant acted in bad faith in its handling of plaintiff's claim"); **Hangerter v. The Paul Revere Life Insurance Company** 236 F. Supp. 2d 1069 (N.D. Cal. 2002)("an expert in insurance bad faith may reasonably . . . [opine] on the . . . reasonableness of a company's actions"); **Kraeger v. Nationwide Mut. Ins. Company**, 1997 U.S. Dist. LEXIS 2726, 1997 WL 109582 (E.D.Pa. 1997); **Neal v. Farmers Ins. Exch.**, 21 Cal. 3d 910, 924, 148 Cal. Rptr. 389, 582 P.2d 980 (1978)("We can conceive of many ways in which a lay jury, in assessing the conduct and motives of an insurance company in denying coverage under its policy, could benefit from the opinion of one who by profession and experience, was peculiarly equipped to evaluate such matters in the context of similar disputes"); **Yukon Recovery LLC v. Certain Abandoned Propert**y 205 F.3d 1189 (9th Cir. 2000); **Kilmer v. Connecticut Indemnity Company** 189 F. Supp. 2d 237 (M.D. Pa. 2002); and **First Financial Ins. Co. v. Jetco Contr. Corp.** 202 F. Supp. 2d 13 (S.D.N.Y. 2001).

trier of fact to understand evidence or to determine a fact at issue." In this content, the appropriate analysis is to assess whether Ms. Fuller's opinion will "assist the trier of fact," not whether her opinion is *required* or not required.

As identified above, several courts have concluded that insurance expert testimony does offer assistance to the trier of fact in cases such as this. And in this case, Ms. Fuller's opinion will assist the jury as well. Defendant concludes as much in arguing that Ms. Fuller's real opinion is that defendant acted reasonably.

Similarly, defendant's argument that Ms. Fuller may not testify because the determination that the jury needs to make "involves a question of reasonableness," is contradicted by the above referenced authority which allowed for the admission of insurance expert testimony. Furthermore, defendant's brief is devoid of Sixth Circuit authority barring opinion testimony on matters that are within a reasonableness evaluation a jury. And there is a wealth of support for the appropriateness of expert testimony on reasonableness questions.[8]

Defendant's arguments that there is a *per se* bar on the admissibility of opinions of an insurance expert in cases such as this is wholly unsupported.

---

[8] See, e.g., **Phillips v. Hardware Wholesalers, Inc**. 762 F.2d 46 (6th Cir. 1985) (reasonableness of alternative design in products liability action: "it is the province of the jury . . . to weigh the advantages and disadvantages that the expert has identified"); **First Bank v. Hartford Underwriters Ins. Co**. 307 F.3d 501 (6th Cir. 2002) (reasonableness of attorney fees); **Perceptron, Inc. v. Sensor Adaptive Machs., Inc**. 221 F.3d 913 (6th Cir. 2000)(testimony of expert on reasonableness of need for non-compete agreement and its terms); **Bible v. Wal-Mart Stores** (6th Cir. 1992)(reasonableness of the charges); **Mineral Investors, Ltd., v. R.C. Lamb**, 1993 U.S. App. LEXIS 27318 (6th Cir. 1993) (testimony assisted the jury on the question of the reasonableness of plaintiffs' reliance on appraisal)

IV.   Defendant's Argument That Ms. Fuller Has Or Should
      Have Reached A Different Conclusion Is Inappropriate.

Throughout its memorandum, defendant argues that Ms. Fuller: "confirms that [defendant] acted reasonably." (*Motion, p.6*).[9] This argument is not a proper basis to exclude testimony under FRE 702 and *Daubert*. Rather, this is simply argument of counsel which is appropriate for testing Ms. Fuller's opinions and testimony through the trial procedures of cross examination, direct examination of defendant's own employees, and closing argument. The proper procedural basis for attacking Ms. Fuller's contrary, written opinion is not exclusion of her testimony under a *Daubert* analysis: "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596; *Jahn v. Equine Services, PSC*, 233 F.3d 383, 388 (6th Cir.2000). *Daubert* held that the "focus, of course, must be solely on principles and methodology, not on the conclusions they generate." *Daubert*, 509 U.S. at 595. Defendant's focus on Ms. Fuller's conclusion, and defendant's disagreement with her conclusion, does not represent a proper *Daubert* challenge. As detailed in Ms. Fuller's report, the reasoning or methodology underlying her opinions is valid and can properly be applied to the facts in issue.

Finally, if defendant's judgment of the essence of Ms. Fuller's opinion is correct (i.e. that defendant acted reasonably), there will be no prejudice to defendant in permitting Ms. Fuller to testify and they should welcome her testimony.

---

[9]   If as defendant suggests, this is the proper conclusion to draw from Ms. Fuller's knowledge and experience, then despite its earlier argument, defendant implicitly concedes Ms. Fuller's status as an expert and the relevance of her insight and testimony.

13

## Conclusion

For the above reasons, the Court should deny defendant's prayer and allow Ms. Fuller to offer her opinions to assist the jury.

|  |  |
|---|---|
|  | Respectfully submitted, |
| OF COUNSEL | /s Michael A. Roberts_____ |
|  | Michael A. Roberts (0047129) |
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 1900 Fifth Third Center |
| 511 Walnut Street | 511 Walnut Street |
| Cincinnati, Ohio 45202 | Cincinnati, Ohio 45202 |
| (513) 621-6464 | (513) 629-2799 |
|  | (513) 651-3836 fax |
|  | email: mroberts@graydon.com |

## CERTIFICATE OF SERVICE

The foregoing was delivered, via fax and regular U.S. Mail William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 22nd day of December, 2003.

/s Michael A. Roberts

365461.1