1 of 1 DOCUMENT

GEORGE NAUGLE, PLAINTIFF v. ALLSTATE INSURANCE COMPANY, DEFENDANT

CIVIL ACTION NO. 99-107

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY, COVINGTON DIVISION

2001 U.S. Dist. LEXIS 22684

July 16, 2001, Decided
July 16, 2001, Filed

**SUBSEQUENT HISTORY:** Affirmed by Naugle v. Allstate Ins. Co., 2003 U.S. App. LEXIS 15638 (6th Cir. Ky., July 30, 2003)

**DISPOSITION:** *1 Recommended that this Allstate's motion to exclude the expert testimony of Linda Brown GRANTED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff insured alleged that defendant insurance company failed to promptly settle or resolve his third-party claim for bodily injuries asserted under the policy, in violation of Kentucky's Unfair Claims Settlement Practices Act (UCSPA), as embodied in Ky. Rev. Stat. Ann. § 304.12-230. The insurance company sought to exclude expert testimony. The case was referred to a magistrate judge.

**OVERVIEW:** The expert witness proposed to testify that liability for the accident was reasonably clear and that in delaying to settle the case, the insurance company acted in bad faith. The insurance company contended that the expert witness did not qualify to give expert testimony and that her proposed testimony did not qualify as specialized knowledge that would assist the jury. The expert witness' work experience at the insurance company for a period of 12 years indicated her knowledge and understanding of the claims-handling process. However, although her testimony was relevant, her testimony needed to be excluded because the evidence strongly suggested that she was biased against the insurance company and was functioning as a hired gun rather than an objective, unbiased insurance consultant.

**OUTCOME:** The magistrate judge recommended that the insurance company's motion to exclude the expert testimony be granted.

**CORE TERMS:** expert testimony, handling, specialized knowledge, consultant, proposed testimony, scientific, adjuster, training, claims-handling, reliability, proffered, reliable, qualify, interpleader action, third-party, insured, settle, affirmative duty, hired gun, gatekeeping, envisioned, scientist, assessing, negotiate, flexible, carriers, skill, motion to exclude, decision to terminate, reasonable basis

**LexisNexis (TM) HEADNOTES - Core Concepts -**

  

Case 1:02-cv-00351-MRB-TSH   Document 123-6   Filed 12/22/2003   Page 2 of 12

PAGE 2
2001 U.S. Dist. LEXIS 22684, *1

**Evidence > Witnesses > Expert Testimony**
HN1 Fed. R. Evid. 702 merely requires the trial court to make a preliminary finding of the proffered expert testimony as both relevant and reliable while taking into account the inquiry envisioned by Fed. R. Evid. 702 is a flexible one.

**Evidence > Witnesses > Expert Testimony**
HN2 The first and universal requirement for the admissibility of expert opinion testimony is that the evidence must be reliable and relevant.

**Evidence > Witnesses > Expert Testimony**
HN3 The reliability requirement is met if the trial judge makes a preliminary finding under Fed. R. Evid. 104(a) that the scientific or technical theory which is the basis for the expert's opinion is indeed scientific, technical, or specialized knowledge, while the relevancy requirement is met if the trial judge determines, under Fed. R. Evid. 104(a), that the expert's opinion will assist the trier of fact to understand the evidence or to determine a fact in issue. Furthermore, the trial court's preliminary fact-finding under Fed. R. Evid. 104(a) includes the determination of whether the witness's knowledge, skill, experience, training, or education are such to qualify him or her to testify as an expert at all. As has been recognized, under Fed. R. Evid. 702, a determination of the reliability of expert testimony must include scrutiny of the proffered expert's qualifications. Thus, before a witness may testify as an expert, the court must first determine that the witness possesses sufficient knowledge, skill, experience, training, or education to qualify as an expert in the particular field within which the witness proposes to testify.

**Evidence > Witnesses > Expert Testimony**
HN4 The district court is charged with the gatekeeping function of assessing whether a proposed expert's testimony is the result of the intellectual rigor of a professional or whether the proposed expert is simply a hired gun. This gatekeeping function applies to all expert testimony.

**Evidence > Witnesses > Expert Testimony**
HN5 An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist.

**COUNSEL:** For GEORGE NAUGLE, plaintiff: M. Austin Mehr, Edward A. Baylous, II, Lexington, KY.

For GEORGE NAUGLE, plaintiff: William F. Merlin, Merlin Law Group, Tampa, FL.

For ALLSTATE INSURANCE COMPANY, defendant: Ernest H. Jones, II, Geralds, Jones, Sherrow, Schrader & Rice, PSC, Mindy G. Barfield, Dinsmore & Shohl LLP, Lexington, KY.

For ALLSTATE INSURANCE COMPANY, defendant: Jon L. Fleischaker, Dinsmore & Shohl, Louisville, KY.

For ALLSTATE INSURANCE COMPANY, defendant: Joseph F. Nistico, Nistico & Crouch P.C., Houston, TX.

EDWARD A. BAYLOUS, movant, Pro se, Owensboro, KY.

**JUDGES:** JAMES B. TODD, UNITED STATES MAGISTRATE JUDGE.

  

Case 1:02-cv-00351-MRB-TSH   Document 123-6   Filed 12/22/2003   Page 3 of 12

PAGE 3
2001 U.S. Dist. LEXIS 22684, *1

OPINIONBY: JAMES B. TODD

OPINION:

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

* * * *

I. INTRODUCTION

On May 3, 1999, plaintiff George Naugle ("Naugle") filed this action against defendant Allstate Insurance Company ("Allstate") in Kenton Circuit Court, alleging that in handling his third-party claim for bodily injuries asserted under Allstate's policy with its insured, Rebecca S. Everhart, Allstate acted in bad faith, in violation of *2 Kentucky's Unfair Claims Settlement Practices Act ("UCSPA"), as embodied in KRS 304.12-230, by failing to promptly settle or resolve said claim for nearly three years. Plaintiff seeks compensatory and punitive damages, prejudgment and post-judgment interest, costs and attorney's fees.

On May 28, 1999, Allstate removed this action from Kenton Circuit Court, pursuant to 28 U.S.C. § 1441, alleging that the federal district court had original jurisdiction of this matter under 28 U.S.C. § 1332.

On October 6, 1999, the district court referred this action to United States Magistrate Judge J. Gregory Wehrman, pursuant to 28 U.S.C. § 636(b)(1)(A) DE # 15, and on August 18, 2000, U.S. Magistrate Judge J. Gregory Wehrman recused himself from further proceedings herein and reassigned this matter to the undersigned Magistrate Judge to supervise discovery and all further pretrial proceedings DE # 82.

This matter is before the court on the motion of defendant Allstate to exclude the expert testimony of Linda Brown DE # 110. On May 29, 2001, after this motion had been fully briefed, the Magistrate Judge conducted *3 a Daubert n1 hearing to assess the qualifications of Linda Brown to offer expert testimony in this matter. Plaintiff was represented by M. Austin Mehr and Melanie Fields; defendant was represented by Mindy G. Barfield and Ernest H. Jones, II. This proceeding was transcribed by Cynthia Hutchinson, Official Court Reporter.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

II. FACTUAL BACKGROUND

On or about January 24, 1996, Allstate's insured, Rebecca S. Everhart, was operating an automobile on Interstate 75 in Kenton County, Kentucky, which rear-ended an automobile operated by Naugle. Everhart's policy with Allstate provided various coverages, including liability for bodily injury up to $ 100,000 per person and up to $ 300,000 per accident. As a consequence of Everhart's collision with Naugle's vehicle, Naugle sustained bodily injuries and filed a claim for benefits with Allstate under Everhart's policy with Allstate. Ultimately, *4 Allstate settled said claim for the policy limits, $ 100,000;

  

however, Naugle's claim was pending at Allstate for nearly three years prior to resolution.

Plaintiff has identified Linda Brown as one of his expert witnesses on his bad faith claim. Based on the testimony of Linda Brown presented at the *Daubert* hearing on May 29, 2001, Linda Brown proposes to testify at trial that by the summer or fall of 1996, liability for the accident and for at least $ 100,000 of damages was reasonably clear; that by that time in 1996, Allstate should have known that liability for the accident was reasonably clear and that the extent of Mr. Naugle's damages was at least $ 100,000, the policy limits; that in delaying the resolution of Naugle's claim until December of 1998, Allstate committed bad faith; and, that one of Allstate's primary defenses, viz., that it could not settle Naugle's claim until all third-party liens were resolved, is unavailing because Allstate should have filed an interpleader action and deposited the $ 100,000 into court in 1996, thereby ensuring that it could obtain a full release for its insured, Rebecca Everhart. (See also, Linda Brown Depo., 3/22/00, pp. 96-104, Linda *5 Brown Depo., 11/9/00, pp. 97-98, 100, 121-129).

Linda Brown was employed by Allstate in Allstate's Market Claims Office ("MCO ") in Lexington, Kentucky, for more than twelve years, from September of 1987, until Allstate terminated her employment in March of 1999. During her employment at Allstate, the positions held by Brown included claims adjuster, staff claims analyst, evaluation consultant, and casualty unit claims manager. Also, a few times during her employment at Allstate, Brown was selected to conduct training sessions on bad faith and the UCSPA with other adjusters in the Lexington MCO. (Linda Brown Depo., 8/14/00, pp. 83-84, 88, 94-95; Linda Brown Depo., 8/15/00, pp. 38, 43).

Subsequent to Allstate's decision to terminate her employment in March of 1999, Brown has become a self-employed insurance consultant and testified that she has been retained as an expert in bad faith cases by attorneys handling cases against Allstate, as well as other insurance companies. However, Brown has been employed and named as an expert in approximately 12-15 bad faith cases against Allstate. (Hearing Transcript, pp. 37-38). Additionally, on March 3, 2000, Brown filed a wrongful discharge action *6 against Allstate in Fayette Circuit Court.

### III. ALLSTATE'S MOTION TO EXCLUDE LINDA BROWN'S TESTIMONY

Pursuant to Rules 702 and 703 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167 (1999), Allstate moves to exclude the expert testimony of Linda Brown, contending, for a number of reasons, that she is not qualified to give expert testimony in this matter under the standards established by *Daubert* and *Kumho Tire* and that her proposed testimony does not qualify as specialized knowledge that will assist the jury, that the jury is capable of discerning from the evidence at trial whether Allstate acted in bad faith towards Naugle, and that Linda Brown's proposed testimony would usurp the role of the jury.

Plaintiff opposes Allstate's motion to exclude Linda Brown's proposed expert testimony, asserting that since Brown's testimony consists of "specialized knowledge" that she acquired during the twelve years she was employed by Allstate and is not scientific or technical, *7 the four-factor test set out in *Daubert* is not applicable to her proposed testimony. Plaintiff argues that the application of *Daubert* is unwarranted in cases where expert testimony is

  

based solely on experience or training and that in such cases, HN1 "Rule 702 merely requires the trial court to make a preliminary finding of the proffered expert testimony as both relevant and reliable while taking into account 'the inquiry' envisioned by Rule 702 is a flexible one." *USF&G v. Sulco, Inc.*, 171 F.R.D. 305, 308 (D. Kansas 1997).

For these reasons, plaintiff submits that since Linda Brown is an expert with specialized knowledge in claims handling, her testimony will assist the jury in determining whether there was a reasonable basis for failing to pay Naugle's claim. Plaintiff states that using the claims file, Linda Brown can testify that knowledge existed or that there was sufficient knowledge in the claims file in 1996 to pay the policy limits and that there was no reasonable basis for failing to pay the claim at that time. Plaintiff points out that Brown's testimony is based on the knowledge she acquired in handling claims at Allstate, a job she was trained to do *8 while employed by Allstate. Plaintiff also points out that Linda Brown conducted in-house seminars at Allstate to teach other adjusters about bad faith and the UCSPA.

Relying on *Manchester Insurance & Indemnity Company v. Grundy*, 531 S.W.2d 493 (Ky.App. 1975), *Motorists Mutual Ins. Co. v. Glass*, 996 S.W.2d 437 (1997), and *Farmland v. Johnson*, 36 S.W.3d 368 (2000), Plaintiff submits that Kentucky case law supports the use of experts in bad faith claims against insurance companies.

**Applicable Law**

The Sixth Circuit Court of Appeals, in examining the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993), has directed that HN2 "the first and universal requirement for the admissibility of expert opinion testimony is that the evidence must be reliable and relevant." *Cook v. American Steamship Company*, 53 F.3d 733, 737-38 (6th Cir. 1995). As the Sixth Circuit explained, HN3 "the reliability requirement is met if the trial judge makes a preliminary finding under Fed.R.Evid. 104(a) that the scientific or technical theory which is the *9 basis for the expert's opinion is indeed 'scientific, technical, or . . . specialized knowledge,'" while the relevancy requirement is met "if the trial judge determines, under 104(a), that the expert's opinion 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* at 738. Furthermore, the trial court's preliminary fact-finding under Rule 104(a) includes the determination of whether the witness's knowledge, skill, experience, training, or education "are such to qualify him or her to testify as an expert at all . . ." *Id.* As has been recognized, under Fed.R.Evid 702, a "determination of the reliability of expert testimony must include scrutiny of the proffered expert's qualifications . . ." *Rice v. Cincinnati, New Orleans & Pacific Railway Company*, 920 F. Supp. 732 (E.D. Ky. 1996). Thus, before a witness may testify as an expert, the Court must first determine that the witness possesses sufficient knowledge, skill, experience, training, or education to qualify as an expert in the particular field within which the witness proposes to testify.

As noted in *Daubert*, HN4 the district court is charged with the *10 "gatekeeping" function of assessing whether a proposed expert's testimony is the result of the intellectual rigor of a professional or whether the proposed expert is simply a hired gun. *Tyus v. Urban Search Management*, 102 F.3d 256 (7th Cir. 1996). This "gatekeeping" function applies to all expert testimony. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 250 (6th Cir. 2001).

**Analysis**

  

There can be no dispute that based on Linda Brown's work experience at Allstate for a period of twelve years, Brown knows and understands the claims-handling process. However, the Magistrate Judge is unpersuaded by plaintiff's argument that since Brown's testimony is based on "specialized knowledge" and is not technical or scientific in nature, it should not be tested under the standards set out in *Daubert* and *Kumho Tire*. Although the factors set out in *Daubert* for assessing expert testimony may not apply neatly to all types of expert testimony, the Magistrate Judge concludes that HN5 an opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist. *11 See Advisory Committee Notes, P 10, FRE 702 (2000 Amendments). "Rule 702 merely requires the trial court to make a preliminary finding of the proffered expert testimony as both relevant and reliable while taking into account 'the inquiry' envisioned by Rule 702 is a flexible one." *USF&G v. Sulco, Inc.*, 171 F.R.D. 305, 308 (D. Kansas 1997).

Although Brown's testimony might be relevant in that it could be used to educate the jury generally about the claims-handling process, the Magistrate Judge concludes that in this particular case, Brown's expert testimony should be excluded because the evidence strongly suggests that Brown is biased against Allstate and is functioning in this particular case as a hired gun rather than an objective, unbiased insurance consultant. This conclusion is based on the following facts:

1. Subsequent to Allstate's decision to terminate her employment in March of 1999, Brown has become a self-employed insurance consultant and testified that she has been retained as an expert in bad faith cases by attorneys handling cases against Allstate and other insurance companies. However, Brown has been employed and named as an expert in approximately *12 12-15 bad faith cases against Allstate. (Hearing Transcript, pp. 37-38).

2. On March 3, 2000, Brown filed an action against Allstate in Fayette Circuit-Court, alleging claims of retaliation and wrongful discharge; this action is currently pending. However, prior to filing this action, Brown offered to settle any potential claim she might have against Allstate for $ 550,000, and if that offer had been accepted by Allstate, Brown agreed that she would not provide expert witness or consulting services to potential claimants against Allstate in any capacity in any case or jurisdiction subsequent to the date of settlement. (Hearing Transcript, p. 42).

3. At her deposition on March 22, 2000, Brown testified that Allstate had acted in bad faith in handling the Naugle claim. However, at that time, March 22, 2000, Brown had not reviewed the entire claims file; the only documents she had reviewed by March 22, 2000, were Naugle's medical records. Id., at p. 69. Brown had not reviewed the computerized claims diaries (which document every contact with Naugle and the adjuster's actions) that are an essential element of the claims file. Id. Additionally, Brown had not reviewed the Colossus *13 evaluation and did not know the amount that it took to settle the Naugle claim and did not know when the claim had settled. Id. at 97. The Magistrate Judge concludes that the fact that Brown had already decided in March of 2000 that Allstate exhibited bad faith in handling the Naugle claim, prior to her review of the claims diaries to ascertain what the adjusters had done on the case or why they made certain decisions concerning the pace of the handling of the Naugle claim, indicates that Brown's decision that Allstate had acted in bad faith was preconceived, being made prior to a complete review of the claims file.

  

Case 1:02-cv-00351-MRB-TSH    Document 123-6    Filed 12/22/2003    Page 7 of 12

PAGE 7
2001 U.S. Dist. LEXIS 22684, *13

4. At her deposition on November 22, 2000, Brown testified that in her view, in the fall of 1996, Allstate had an affirmative duty to file an interpleader action and to pay the policy limits, $ 100,000, into court, and that Allstate also had an affirmative legal duty to negotiate with the other insurance carriers to try to get the action resolved. (Linda Brown Depo., 11/22/00, pp. 120-21, 128-30). This testimony runs afoul of *Motorists Mutual Ins. Co. v. Glass, supra*. Brown's proposed testimony that Allstate had an affirmative duty to file an interpleader *14 action and to negotiate with other carriers in resolving third-party liens attempts to impose a duty on Allstate which does not exist in Kentucky.

Consequently, for all of the foregoing reasons, the Magistrate Judge concludes that while portions of Brown's testimony might be relevant to educate the jury on the claims-handling process, her testimony should not be allowed because Brown is biased against Allstate. Since she is not acting as an objective insurance consultant, her testimony is unreliable.

Accordingly, **IT IS HEREBY RECOMMENDED** that Allstate's motion to exclude the expert testimony of Linda Brown DE # 110 be **GRANTED**.

The Clerk of the Court shall forward a copy of this Proposed Findings of Fact and Recommendation to the respective parties who shall, within ten (10) days of receipt thereof, serve and file timely written objections to the Magistrate Judge's Proposed Findings of Fact and Recommendation with the District Court or else waive the right to raise the objections in the Court of Appeals. 28 U.S.C. section 636(b)(1)(B); Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), affirmed, 474 U.S. 140, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985); *15 Wright v. Holbrook, 794 F.2d 1152, 1154-55 (6th Cir. 1986); Fed.R. Civ.P. 6(e).

This 16th day of July, 2001.

JAMES B. TODD,

UNITED STATES MAGISTRATE JUDGE



GEORGE NAUGLE, Plaintiff-Appellant, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

No. 01-6276

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

72 Fed. Appx. 307; 2003 U.S. App. LEXIS 15638

July 30, 2003, Filed

**NOTICE:** **1 NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Eastern District of Kentucky. 99-00107. Bertelsman. 9/11/01. Naugle v. Allstate Ins. Co., 2001 U.S. Dist. LEXIS 22684 (E.D. Ky., July 16, 2001)

**DISPOSITION:** Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff operator sought review of the decision of the United States District Court for the Eastern District of Kentucky, which granted summary judgment pursuant to Fed. R. Civ. P. 56(c) and dismissed his claim for damages against defendant insurer under the Kentucky Unfair Claims Settlement Practices Act (KUCSPA), Ky. Rev. Stat. Ann. § 304.12-230.

**OVERVIEW:** The operator alleged that the insurer committed violations of the KUCSPA by filing to promptly settle his bodily injury claim arising out of an automobile accident caused by the negligence of the insurer's insured. The district court dismissed the claim and the court affirmed, stating that the insurer did not act unreasonably, notwithstanding that the operator's claim was not settled for 35 months after the accident. The insurer was not obligated to initiate settlement discussions with the operator because its duty was to respond reasonably to a demand by the operator. Neither the operator nor his lawyer demanded payment for anything other than the medical bills prior to September 1998, when the operator's counsel wrote to the insurer advising that the operator would settle for the policy limit of $ 100,000. The delay prior to that demand was not attributable to the insurer. Further, it was significant that the insurer never attempted to settle the claim for an unreasonable amount or for any amount less than the full policy limit.

**OUTCOME:** The judgment was affirmed.

**CORE TERMS:** insurer, adjuster, claimant, promptly, insured, settle, summary judgment, policy limit, settlement, duty, sufficient evidence, insurance policies, investigate, eligible to receive, pain and suffering, punitive damages, filed suit, misrepresentation, surgery

  

LexisNexis (TM) HEADNOTES - Core Concepts -

**Insurance Law > Claims & Contracts > Good Faith & Fair Dealing**
HN1 See Ky. Rev. Stat. Ann. § 304.12-230.

**Civil Procedure > Summary Judgment > Summary Judgment StandardCivil Procedure > Appeals > Standards of Review > De Novo ReviewCivil Procedure > Summary Judgment > Standards of Review**
HN2 The United States Court of Appeals for the Sixth Circuit reviews a district court's grant of summary judgment de novo. Summary judgment is properly granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court views the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. A mere scintilla of evidence is insufficient to overcome a motion for summary judgment; there must be evidence on which the jury could reasonably find for the non-movant.

**Insurance Law > Claims & Contracts > Good Faith & Fair Dealing**
HN3 To recover under the Kentucky Unfair Claims Settlement Practices Act (KUCSPA), Ky. Rev. Stat. Ann. § 304.12-230, there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of a claimant to warrant submitting the right to award punitive damages to the jury. To prevail on a claim under KUCSPA, a claimant must prove that the conduct of the insurers was outrageous, because of an evil motive or reckless indifference to the claimant's rights mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception.

**Insurance Law > Claims & Contracts > Good Faith & Fair Dealing**
HN4 Although an insurer is under a duty to promptly investigate and pay claims where it has no reasonable grounds to resist in good faith, neither this duty nor any provision of the Kentucky Unfair Claims Settlement Practices Act (KUCSPA), Ky. Rev. Stat. Ann. § 304.12-230 requires the insurer to assume responsibility to investigate the amount of the claimant's loss for the claimant.

**COUNSEL:** For GEORGE NAUGLE, Plaintiff - Appellant: M. Austin Mehr, Austin Mehr Law Offices, Lexington, KY.

For GEORGE NAUGLE, Plaintiff - Appellant: William F. Merlin, Merlin Law Group, Tampa, FL.

For ALLSTATE INSURANCE COMPANY, Defendant - Appellee: Ernest H. Jones, II, Geralds, Jones, Sherrow, Schrader & Rice, Mindy G. Barfield, Dinsmore & Shohl, Lexington, KY.

For ALLSTATE INSURANCE COMPANY, Defendant - Appellee: Jon L. Fleischaker, Dinsmore & Shohl, Louisville, KY.

**JUDGES:** BEFORE: MERRITT and BATCHELDER, Circuit Judges, and DUPLANTIER, District Judge. *

* The Hon. Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

**OPINIONBY:** Adrian G. Duplantier

  

**OPINION:** *308  **2

DUPLANTIER, District Judge:

George Naugle appeals the district court's dismissal of his claim for damages under the Kentucky Unfair Claims Settlement Practices Act (KUCSPA), Ky. Rev. Stat. § 304.12-230. For the following reasons, we **AFFIRM** the district court's judgment.

Although Naugle contends that Allstate Insurance Company (Allstate) violated KUCSPA in a number of respects, the gravamen of his complaint is that Allstate failed to promptly settle his bodily injury claim arising out of an automobile accident caused by the negligence of Allstate's insured. We apply Kentucky law in this diversity case. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 821, 82 L. Ed. 1188 (1938). Indeed, plaintiff's claim is based solely upon a Kentucky statute as interpreted by the Kentucky Supreme Court.

RELEVANT FACTS

On January 24, 1996, an automobile driven by Rebecca Everhart struck, from the rear, a vehicle operated by George Naugle on Interstate 75 in Kenton County, Kentucky. At the time of the accident, Naugle was acting within the course and scope of his employment with International Paper Company. Following the accident Naugle experienced back problems.  **3  Approximately one month after the accident, he underwent back surgery to repair a herniated disc. On March 3, Naugle advised an adjuster with defendant Allstate, Ms. Everhart's automobile insurer, that he had sustained a back injury in the accident and that he had undergone back surgery. On April 16, Naugle mailed a letter to Kelly Volpenhein, the Allstate adjuster handling the claim at that time, requesting payment of the medical bills enclosed with the letter. During a telephone conversation with an Allstate adjuster, Naugle told the adjuster that "all he wanted to do was get the medical bills taken care of and move on." Naugle concedes that it was an Allstate adjuster who informed him that he had a claim for pain and suffering.

*309  On January 14, 1998, nearly two years after the accident, Naugle filed suit against Allstate, seeking damages for the injuries sustained in the accident. On September 17, 1998, his attorney transmitted to Allstate Naugle's first settlement proposal: Naugle would settle his claim for $ 100,000, the limit of Ms. Everhart's liability coverage. On December 9, 1998, approximately 35 months after the accident, Allstate offered to pay the policy limit of $ **4  100,000 in exchange for a release of all claims and an "indemnification and hold harmless agreement" in favor of its insured for all known and unknown subrogation claims. n1 About two months later, plaintiff accepted the offer and executed the release.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Allstate was aware that plaintiff had made a claim for worker's compensation benefits and that he had sought payment of his medical bills from his health insurer; there is no suggestion that Allstate's requirement of an indemnity agreement for any subrogation claim was inappropriate.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In May 1999, Naugle filed suit in a Kentucky state court against Allstate, seeking compensatory and punitive damages for violations of the following subsections of KUCSPA:

  

> HN1 It is an unfair settlement practice for any person to commit or perform any of the following acts or omissions:
>
> ...
>
> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
>
> (3) Failing to adopt and implement reasonable standards **5 for the prompt investigation of claims arising under insurance policies;
>
> (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> ...
>
> (6) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; and
>
> ...
>
> (14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromised settlement.

Ky. Rev. Stat. § 304.12-230. Following removal of the suit to federal court and extensive discovery, Allstate filed a motion for summary judgment. The district court granted the motion and entered judgment dismissing the suit. Naugle timely appealed.

STANDARD OF REVIEW

HN2 We review a district court's grant of summary judgment *de novo*. *Rannals v. Diamond Jo Casino*, 265 F.3d 442, 447 (6th Cir.2001), cert. denied, 534 U.S. 1132, 122 S. Ct. 1074, 151 L. Ed. 2d 976 (2002). Summary judgment is properly granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment **6 as a matter of law. Fed. R. Civ. Pro. 56(c). We view the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Id*. A mere scintilla of evidence is insufficient to overcome a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the non-movant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986).

DISCUSSION

The parties dispute the standard to be applied to a claim under KUCSPA against an insurer by someone other than the insured. Relying upon *Farmland Mutual *310 Insurance Company v. Johnson*, 36 S.W.3d 368, 376 (Ky. 2000), appellant urges that the proper inquiry is whether there is "sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." On the other hand, appellees contend that *Farmland,* which involved a claim by the insured for fire damage under his property insurance policy, is not applicable to this claim by a third **7 party, and that the more rigorous standard announced in *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993), applies. In *Wittmer* the Kentucky Supreme Court concluded that HN3 to recover under KUCSPA "there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of ... a claimant to warrant submitting the right to award punitive damages to the jury." *Id* at 890. Relying upon *Wittmer*, the Kentucky Supreme Court has held that to prevail on a claim under KUCSPA, a claimant must prove

  

that "the conduct of the insurers was outrageous, because of an evil motive or reckless indifference to the claimant's rights ... mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Motorists Mutual Insurance Company v. Glass,* 996 S.W.2d 437, 452, 44 12 Ky. L. Summary 28, 46 3 Ky. L. Summary 25 (Ky. 1997). Both *Wittmer* and *Motorists Mutual* involved claims by third parties.

We need not resolve the dispute as to which line of Kentucky Supreme Court cases applies; summary judgment was proper even under the *Farmland* "unreasonable " standard relied upon by appellant. Allstate did not act unreasonably, **8 notwithstanding that Naugle's claim was not settled for thirty-five months after the accident.

Allstate was not obligated to initiate settlement discussions with Naugle; its duty was to respond reasonably to a demand by plaintiff.

> HN4 Although an insurer is under a duty to promptly investigate and pay claims where it has no reasonable grounds to resist in good faith, neither this duty nor any provision of KUCSPA requires the insurer to assume responsibility to investigate the amount of the claimant's loss for the claimant.

*Wittmer v. Jones,* 864 S.W.2d at 891-892. Neither appellant nor his lawyer demanded payment for anything other than the medical bills prior to September 1998, when Naugle's counsel wrote to Allstate advising that Naugle would settle for the policy limit of $ 100,000. The delay prior to that demand is not attributable to Allstate. Within three months thereafter, Allstate agreed to pay its policy limit.

It is significant that Allstate never attempted to settle the claim for an unreasonable amount or, in fact, for any amount less than the full policy limit. Additionally, there is no evidence that Allstate delayed payment of the claim **9 in an attempt to gain some advantage over appellant or that Allstate made any misrepresentation concerning the applicable coverage.

Appellant contends that the "Customer Service Pledge" provided to him by Allstate was deceptive and contained misrepresentations which create a genuine issue of material fact as to whether Allstate's conduct was unreasonable. The "Customer Service Pledge" states in pertinent part that "we consider you our customer" and indicates that Allstate will "keep you informed throughout the claim process ... will conduct a quick, fair investigation of the facts in your case ... and will help you determine if you are *311 eligible to receive compensation for any injuries you may have suffered." Naugle asserts that Allstate did not follow through on these promises. We note that Allstate did, in fact, help Naugle determine that he was eligible to receive compensation for his injuries. When plaintiff indicated that "all he wanted to do was get the medical bills taken care of and move on," it was an Allstate adjuster who informed him of the possibility of making a claim for the pain and suffering resulting from his injuries. In any event, the provisions of the "Customer **10 Service Pledge" relied on by appellant did not create legal obligations by Allstate to plaintiff, and no action or inaction by Allstate misled Naugle to his detriment.

CONCLUSION

The district court did not err in entering judgment dismissing plaintiff's action with prejudice.

