LEXSEE 1997 Ohio App. LEXIS 2568

**EDMUNDS MANAGEMENT COMPANY, Plaintiff-Appellee and Cross-Appellant v. CENTURY SURETY COMPANY, Defendant-Appellant and Cross-Appellee**

**NO. 70441**

**COURT OF APPEALS OF OHIO, EIGHTH APPELLATE DISTRICT, CUYAHOGA COUNTY**

**1997 Ohio App. LEXIS 2568**

**June 12, 1997, DATE OF ANNOUNCEMENT OF DECISION**

**PRIOR HISTORY:**
*1

CHARACTER OF PROCEEDING: Civil appeal from Common Pleas Court. Case No. CV-277550.

**DISPOSITION:**
JUDGMENT: Affirmed.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant insurer sought review of a judgment entered in the Cuyahoga County Court of Common Pleas (Ohio) in favor of plaintiff insured in the insured's action alleging that the insurer breached its contract of insurance and acted in bad faith when it failed to pay under its insurance policy. The insured cross-appealed from the trial court's denial of pre-judgment interest on both its breach of contract and bad faith claims.

**OVERVIEW:** After an insurer denied an insured's claim for damage caused by vandalism to an apartment building under a commercial property insurance policy based on policy exclusions, the insured filed an action alleging breach of contract and tortious bad faith. The jury returned a verdict for the insured. The court ruled that the insurer's motion for directed verdict was properly denied, finding that the ordinance or law exclusion did not apply where the loss was not the direct or indirect result of the city issuing a notice of condemnation, that the order of civil authority exclusion did not apply where the jury determined that the city had no authority to pursue its actions, that notice of loss given within one and one half months was reasonable where the insured was not given an address or phone number by which to notify the insurer, and that the bad faith claim was supported by evidence that the insurer's conduct fell below the standard of care for processing insurance claims. The court further ruled that the jury was properly instructed and that the insured was not entitled to prejudgment interest on its bad faith claim because prejudgment interest was compensatory, not punitive.

**OUTCOME:** The court affirmed the judgment entered in favor of the insured in its action alleging that the insurer breached its contract of insurance and acted in bad faith when it failed to pay under its insurance policy, ruling that the insurer's motion for directed verdict was properly denied and the insured was not entitled to prejudgment interest on its bad faith claim.

**CORE TERMS:**





prejudgment interest, vandalism, notice, directed verdict, coverage, bad faith, insured, ordinance, mortgage, interrogatories, condemnation, hazard, first, filed, amount of loss, additionally, mortgagee, peril, expert testimony, handling, reversal, electricity, endorsement, insurance adjuster, full amount, demolished, calculated, submitting, processing, manifest

**LexisNexis(TM) HEADNOTES - Core Concepts**

**Civil Procedure > Trials > Judgment as Matter of Law**
HN1 A motion for a directed verdict is to be granted when, construing the evidence most strongly in favor of the nonmoving party, reasonable minds could come to only one conclusion adverse to that party.

**Insurance Law > Property Insurance > Exclusions Generally**
HN2 The insurer bears the burden of establishing that an exclusion precludes coverage under a commercial property insurance policy.

**Insurance Law > Property Insurance > Exclusions Generally**
HN3 An exception based on an order of civil authority does not preclude coverage if the order was unlawful or outside the authority of the official who issued it.

**Insurance Law > Property Insurance > Notice Obligations**
HN4 An insurance policy requirement of immediate notice means notice within a reasonable time under the circumstances of the case. This question is generally a question for the jury.

**Insurance Law > Bad Faith & Extracontractual Liability > Payment Delay**
HN5 An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor.

**Civil Procedure > Jury Trials > Jury Instructions**
HN6 Ohio R. Civ. P. 49(B) provides in part: The court shall submit written interrogatories to the jury, upon request of any party prior to the commencement of argument. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

**Civil Procedure > Jury Trials > Jury Instructions**
HN7 A trial court retains limited discretion to reject proposed interrogatories where they are ambiguous, confusing, redundant, or otherwise legally objectionable.

**Civil Procedure > Jury Trials > Jury Instructions**
HN8 Instructions to a jury should be a plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced. However, a charge must not only be correct but should also be adapted to the case and so explicit as not to be misunderstood or misconstrued by the jury. In general, any error in a charge to the jury in a civil case is not grounds for reversal unless the instruction is calculated to mislead the jury to the prejudice of the party seeking reversal. In considering whether particular portions of the trial court's instructions are improper, the instructions must be viewed in their entirety.

**Civil Procedure > Appeals > Standards of Review > Substantial Evidence Rule**
HN9 Judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.

**Contracts Law > Remedies > Compensatory Damages**
HN10 As a general rule, prejudgment interest starts to run from the time a loss is deemed payable under an insurance policy. An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Prejudgment interest is equitable and designed to be compensatory, not punitive.

**Civil Procedure > Appeals > Standards of Review > Abuse of Discretion**
HN11 A ruling concerning the admission of expert testimony is reviewed under an abuse of discretion standard.

**COUNSEL:**
APPEARANCES:

For Plaintiff-Appellee and Cross-Appellant: RICHARD STERNBERG, ESQ., 7th Floor, The Exchange, 12 East Exchange Street, Akron, Ohio 44308-1541. BRENT M. BUCKLEY, ESQ., ROSEMARY SWEENEY, ESQ., BUCKLEY, KING & BLUSO, 1400 Bank One Center, Cleveland, Ohio 44114-2652.

For Defendant-Appellant and Cross-Appelle: HAROLD H. READER, ESQ., MICHAEL J. RUSSO, ESQ., ULMER & BERNE, 1300 Bond Court Bldg., 1300 East 9th Street, Cleveland, Ohio 44114-1583.

**JUDGES:**
DIANE KARPINSKI, JUDGE. JAMES D. SWEENEY, P.J., and BLACKMON, J., CONCUR.

**OPINIONBY:**
DIANE KARPINSKI

**OPINION:**

JOURNAL ENTRY and OPINION

KARPINSKI, J.:

Defendant-appellant, Century Surety Company, appeals from the jury verdict in favor of plaintiff-appellee, Edmunds Management Company. Plaintiff owned a dilapidated apartment building and had vandalism insurance from defendant. After the City of Cleveland condemned it, looters vandalized the building. Defendant cited several exclusions as affirmative defenses and refused to pay under the contract. The jury determined that defendant breached its contract of insurance *2 and acted in bad faith when it failed to pay under the insurance contract. On appeal, defendant argues (1) that the trial court erred in denying defendant's motions for directed verdict, (2) the jury instructions were erroneous, (3) the verdict was against the manifest weight of the evidence, (4) the court did not apply the proper set-off amount, (5) the award of prejudgment interest was in error, and (6) it was an error for the court to allow expert testimony on the issue of bad faith. Additionally, plaintiff assigns a cross-assignment of error alleging that the court should have granted prejudgment interest on both the breach of contract and bad faith claims. For the reasons that follow, these assignments are overruled and the judgment of the trial court is affirmed.

Plaintiff owned a seventy-unit, seven-story apartment building located at 9400 Edmunds Avenue, Cleveland, Ohio. The building was originally rented to government-subsidized tenants. After 1990, the building was rented to the general public. Plaintiff purchased commercial property insurance from defendant. The policy was in effect from January 22, 1992 until March 6, 1992.

Plaintiff claims that in the early 1990's the *3 occupancy of the building began to drop. About this time, the building became in need of major repairs. Inspectors from the City of Cleveland noted these problems when they responded to numerous structural complaints regarding the building. In order to make improvements, plaintiff was able to obtain financing through a mortgage loan from Society in the amount of $ 240,000.

In January 1992, city housing inspectors found serious code violations: the rear porch was near collapse, there was no water, heat, or elevator service, and parts of the building had been damaged by water. On January 22, 1992, the city issued a notice of condemnation and order to evacuate. An agent of the city was interviewed by a television news station concerning the notice to evacuate. The next day, plaintiff appealed both notices. The tenants were given until January 29, 1992 to vacate the premises. On January 29, 1992, the city ordered the Cleveland Electric Illuminating Co. (CEI) to shut off electricity to the building. After this notice was given, substantial vandalism to nearly every room of the building occurred. A witness described the situation as "chaos." Plaintiff filed an appeal of the condemnation *4 order but later withdrew the appeal on February 10, 1992, because of extensive damage to the building.

On April 1, 1992, plaintiff made a claim to defendant, which claim defendant formally denied on October 23, 1992. On December 22, 1992, plaintiff filed a complaint against defendant, and alleged defendant breached their contract and acted in bad faith by denying plaintiff's claim. Edmunds also named Society as a defendant because, as the mortgage holder, it was a necessary party.

Defendant answered and raised several affirmative defenses: (1) increase of hazard, (2) neglect, (3) enforcement of an ordinance or law, (4) order of civil authority, (5) untimely notice, and (6) misrepresentation. In an answer and cross-claim filed against defendant on December 12, 1994, Society alleged breach of contract and bad faith because Society was entitled to be paid on the basis of the standard mortgage clause in the policy issued to plaintiff.

Prior to trial, plaintiff voluntarily dismissed the case. After the case was refiled, defendant moved for summary judgment against both plaintiff and Society. These motions were denied. Society then moved for summary judgment against defendant on Society's *5 breach of contract cross-claim. The court granted this motion and awarded Society $ 144,655.45 minus a $ 1,000 deductible.

At trial after the close of plaintiff's evidence, defendant moved for a directed verdict, which was denied. When the evidence had been presented, defendant renewed its motion for directed verdict, which motion was again denied by the trial court. The jury returned a verdict for the plaintiff on the claim of contractual damages in the amount of $ 247,000, bad faith damages of $ 1.00, punitive damages of $ 1.00, and attorney fees. After the verdict, the jury deliberated over various jury interrogatories and found that the actions of defendant did not constitute actual malice. After trial, plaintiff filed a motion for prejudgment interest, which the court granted awarding plaintiff $ 92,489.17. From the total award, the court then deducted the amount paid by plaintiff to Society, $ 125,500. The court also deducted the $ 1.00 for punitive





damages because the jury did not find actual malice. Thus the final amount awarded to plaintiff equalled $ 213,987.80.

Defendant timely appealed raising the following assignments of error.

I. THE TRIAL COURT ERRED IN DENYING *6 DEFENDANT-APPELLANT'S MOTION FOR DIRECTED VERDICT AS TO PLAINTIFF-APPELLEE'S CLAIMS FOR BREACH OF CONTRACT AND TORTIOUS BAD FAITH.

In this assignment, defendant argues that the trial court erred when it denied defendant's motions for directed verdict made both at the close of plaintiff's evidence and after all the evidence had been presented. HN1 A motion for a directed verdict is to be granted when, construing the evidence most strongly in favor of the nonmoving party, reasonable minds could come to only one conclusion adverse to that party. Civ.R. 50 (A) (4); *Crawford v. Halkovics* (1982), 1 Ohio St. 3d 184, 438 N.E.2d 890.

Defendant argues that because various exclusions found in the issued policy apply, damage to plaintiff's building was not covered. Defendant raised these exclusions in the form of affirmative defenses. As HN2 the insurer, defendant bears the burden of establishing that an exclusion precludes coverage under the policy. *Continental Ins. Co. v. Louis Marx & Co.* (1980), 64 Ohio St. 2d 399, 401, 415 N.E.2d 315.

A. ORDINANCE OR LAW EXCLUSION

The first affirmative defense is based on the ordinance or law exclusion, which states as follows:

5. ORDINANCE *7 OR LAW: This Company shall not be liable for loss, including debris removal expense, occasioned directly or indirectly by enforcement of any ordinance or law regulating the use, construction, repair or demolition of property, **unless such liability is otherwise specifically assumed by endorsement.** Emphasis added.

Defendant argues that the vandalism was a direct or indirect result of the city issuing its notice of condemnation. Plaintiff responds that, pursuant to the last sentence of the provision cited above, this exclusion does not apply because the liability was specifically assumed by endorsement.

We agree with plaintiff that the policy satisfies this express condition. Under the section labeled "PERILS INSURED AGAINST," the following paragraph with a section highlighted in bold letters is found:

This policy is extended to insure against direct loss by Vandalism or Malicious Mischief as hereinafter provided, only when premium for VANDALISM AND MALICIOUS MISCHIEF is shown on the first page of this policy or by endorsement.

On the front page of the policy Vandalism and Malicious Mischief is specifically listed as a peril additionally covered by the *8 policy. Because the policy specifically assumed coverage for vandalism, the operation of the "Ordinance or Law" exclusion is, therefore, avoided. Even if the ordinance or law exclusion applies, the force of that provision is rendered ambiguous by the specific endorsement for vandalism. Such ambiguity must be construed in favor of the insured, especially on a directed verdict.

Defendant's reliance on *Popa v. Wayne Mut. Ins. Co.* (1993), 88 Ohio App. 3d

405, 623 N.E.2d 1343, is misplaced. In *Popa,* the court held that the insured could not recover for vandalism, most of which occurred after the city entered a demolition order, because the building had no insurable value at the time it was ordered demolished. In the case at bar, the vandalism occurred after only a condemnation order. When the vandalism occurred, the condemnation order was on appeal and the building still had some insurable value because plaintiff had the opportunity to correct the code violations.

Accordingly, the trial court did not err in overruling defendant's motion for directed verdict based on the ordinance or law exclusion.

B. ORDER OF CIVIL AUTHORITY EXCLUSION

Defendant next points to the following *9 policy provisions listed under the title "PERILS NOT INCLUDED":

This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly by:

* * *

(h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy ***.

This provision appears on a one-page, single-spaced document at the beginning of the policy. Defendant refers to this section as the "Standard Fire Form."

HN3 An exception based on an order of civil authority does not preclude coverage if the order was unlawful or outside the authority of the official who issued it. 10A Couch on Insurance (1982) 577, Section 42:492, Unlawful acts; *Dunlap v. Illinois Founders Ins. Co.* (1993), 250 Ill. App. 3d 563, 621 N.E.2d 102, 190 Ill. Dec. 233.

Defendant argues that the loss was directly or indirectly a result of the City of Cleveland issuing the notice of condemnation and that the city had the authority to issue this notice. Plaintiff responds that the city's actions of going to the media with the condemnation *10 and of having CEI shut off electricity exceeded the scope of its lawful authority to condemn the building. Additionally, plaintiff argues that appealing the condemnation should have stayed any further action against the building.

We find that reasonable minds could differ regarding whether the damage occurred as a result of a lawful civil authority. The jury heard testimony from two City of Cleveland officials who testified that an appeal had been filed on January 23 and that this stayed all orders. (Tr. 539, 935.) The jury also heard testimony that CEI's actions of shutting off electricity to the building on or about January 27 or 28 was one of the reasons that vandals came into the building. (Tr. 175.) Construing the evidence most strongly in plaintiff's favor, a reasonable juror could conclude that the City of Cleveland had no authority to pursue these actions. Accordingly, the trial court properly denied defendant's motion for directed verdict based on the order of civil authority exclusion.

C. UNTIMELY NOTICE

Defendant argues that coverage is avoided because plaintiff did not give timely notice of the loss. The applicable provision states as follows:





Requirements *11 in case loss occurs. The insured shall give *immediate* written notice to this Company of any loss, protect the property from further damage, forthwith separate the damaged and undamaged personal property, put in the best possible order, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed. (Emphasis added.)

The vandalism occurred in early February, 1992, and plaintiff claims that the independent insurance adjuster notified defendant of the loss on March 27, 1992. The building was demolished on June 10, 1992.

The trial court properly denied defendant's motion for directed verdict based on untimely notice. HN4 An insurance policy requirement of immediate notice means notice within a reasonable time under the circumstances of the case. *Patrick v. Auto-Owners Insurance Co.* (1982), 5 Ohio App. 3d 118, 449 N.E.2d 790; *Helman v. Hartford Fire Ins. Co.* (1995), 105 Ohio App. 3d 617, 664 N.E.2d 991. This question is generally a question for the jury. *Patrick, supra*. Plaintiff argues that defendant, which operates through brokers, did not provide plaintiff with an address *12 or phone number by which to notify defendant. Under these circumstances, a delay of approximately one and a half months was reasonable to afford defendant sufficient opportunity to inspect and evaluate the damage, especially in light of the fact that the building was not demolished until June. Moreover, the evidence, when construed in favor of plaintiff, does not warrant a directed verdict based on defendant's argument that the delay prevented defendant from providing security for the building. Defendant does not provide support from the record to show how defendant's security could have prevented a loss which the Cleveland Police could not prevent.

D. INCREASE OF HAZARD

Defendant points to another provision of the Standard Fire Form which states as follows:

**Conditions suspending or restricting insurance. Unless otherwise provided in writing added hereto, this Company shall not be liable for loss occurring** (a) while the hazard is increased by any means within the control or knowledge of the insured ***.

Defendant claims that plaintiff's failure to keep the building up to code made the risk of vandalism not only likely, but certain. Again, after the evidence *13 is construed in favor of plaintiff, however, it cannot be said the failure to keep the building in repair directly resulted in the extensive vandalism that occurred. It was not until the building was condemned and the electricity shut off that residents began to leave. By attempting to secure the building and board the windows, plaintiff took reasonable steps to prevent the hazard of vandalism, but the criminal actions that ensued were beyond plaintiff's direct control, especially in a high crime area.

E. BAD FAITH

Plaintiff argues that defendant's refusal to estimate the value of the covered loss, along with its refusal to pay under the policy, constituted bad faith. HN5 "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St. 3d 552, 644 N.E.2d 397, paragraph one of

the syllabus. Defendant argued that it was entitled to a directed verdict on its claim of bad faith because it had a reasonable basis to deny plaintiff's claim.

We disagree. The main issue in a bad faith claim is whether *14 the insurance company had a reasonable justification for denying plaintiff's claim. On this issue, reasonable minds can differ. Moreover, the failure to pay the mortgagee under the policy is further evidence of bad faith given plaintiff's argument that the defenses raised against plaintiff could not be raised against Ameritrust, n.k.a. Society. Finally, defendant's argument ignores the testimony of Richard Andrews, a claims adjuster who testified that defendant's refusal to give the independent insurance adjuster, Mr. Morman, the authority to value the loss after a reservation of rights was issued by the company fell below the standard of care for processing insurance claims. (Tr. 448.) Thus the trial court did not err in submitting to the jury the question of whether defendant failed to exercise good faith in processing plaintiff's claim. *La Forge v. Nationwide Mut. Fire Ins. Co.* (1992), 82 Ohio App. 3d 692, 612 N.E.2d 1318.

Accordingly, the trial court did not err in denying defendant's motions for a directed verdict. The first assignment is overruled.

The second states as follows:

II. THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY.

Defendant posits two arguments *15 in this assignment. First, defendant argues that the trial court erred by not submitting to the jury the interrogatories defendant requested. Second, defendant argues the jury instructions themselves were incorrect. Neither argument warrants reversal.

HN6 Civ.R. 49(B) provides in part as follows:

The court shall submit written interrogatories to the jury, *** upon request of any party prior to the commencement of argument. *** The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law.

The Ohio Supreme Court has held that HN7 a trial court "retains limited discretion to reject proposed interrogatories where they are ambiguous, confusing, redundant, or otherwise legally objectionable." *Ziegler v. Wendel Poultry, Inc.* (1993), 67 Ohio St. 3d 10, 15, 615 N.E.2d 1022. In the case at bar, the substance of all the proposed jury interrogatories was included in the trial court's jury instruction. The court instructed *16 the jury on the affirmative defenses of increased hazard (Tr. 1224), neglect of insured (Tr. 1225), order of civil authority (Tr. 1227), misrepresentation (Tr. 1228), ordinance or law (Tr. 1229), and late notice (Tr. 1230). Because these issues were answered in the plaintiff's verdict, the trial court did not abuse its discretion by not submitting the proposed interrogatories.

Additionally, the jury instructions themselves were not improper.

HN8 Instructions to a jury should be a "plain, distinct and unambiguous statement of the law as applicable to the case made before the jury by the proof adduced." *Marshall v. Gibson* (1985), 19 Ohio St. 3d 10, 12, 19 Ohio B. Rep. 8, 10, 482 N.E.2d 583, 585. However, a charge must not only be correct but should also be "adapted to the case and so explicit as not to be misunderstood or

misconstrued by the jury." *Id.*, citing *Aetna Ins. Co. v.* Reed (1878), 33 Ohio St. 283, 295. In general, any error in a charge to the jury in a civil case is not grounds for reversal unless the instruction is calculated to mislead the jury to the prejudice of the party seeking reversal. *Laverick v. Children's Hosp. Med. Ctr., Inc.* (1988), 43 Ohio App. 3d 201, 202, *17 540 N.E.2d 305, 307. In considering whether the particular portions of the trial court's instructions were improper, the instructions must be viewed in their entirety. *Schade v. Carnegie Body Co.* (1982), 70 Ohio St. 2d 207, 210, 24 Ohio Op. 3d 316, 317, 436 N.E.2d 1001, 1003.

*Hess v. United Ins. Co. of Am.* (1991), 74 Ohio App. 3d 667, 675, 600 N.E.2d 285.

Defendant argues that the court erred by using the term "substantial compliance" with regard to jury instructions on whether plaintiff gave adequate notice, increased the hazard, and misrepresented the condition of the building and extent of the loss. All three of these issues involve factual questions for the jury. Although "substantial" is not the proper qualification for "compliance," the word appears only in very general contexts. The instructions themselves, moreover, neutralize any misleading effect the word might have left. In regard to the issue of an instruction on increased hazard, the judge merely summarized the position of each side. Finally, the court accurately instructed the jury on the applicable policy provision and the exclusions as affirmative defenses. Viewing the instructions as a whole, we cannot say *18 they were " calculated to mislead the jury to the prejudice of the party seeking reversal."

III. THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

HN9 "Judgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St. 2d 279, 376 N.E.2d 578. In the case at bar, competent credible evidence was presented to support the jury's conclusion that plaintiff was entitled to coverage under the policy and that defendant acted in bad faith by denying said coverage. The jury heard extensive evidence concerning the policy issued to plaintiff, the actions of the city, the vandalism that caused the damage, and the value of the damage. Accordingly, defendant's third assignment is overruled.

IV. THE TRIAL COURT ERRED BY FAILING TO REDUCE OR SET-OFF THE TOTAL AMOUNT OF THE JUDGMENT AWARDED IN FAVOR OR THE PLAINTIFF-APPELLEE BY THE AMOUNT PREVIOUSLY AWARDED TO THE MORTGAGEE AS A JUDGMENT UPON THE SAME INSURANCE PROCEEDS.

In this assignment, defendant argues that the trial court *19 erred when it subtracted the amount already paid to Society ($ 125,500) from the judgment, instead of subtracting the full amount left on the mortgage note ($ 144,655.45). Even though Edmunds owed $ 144,655.45 on the mortgage, Century agreed to pay, and Society agreed to accept, $ 125,500 in satisfaction of the mortgage. The applicable portion of the policy states as follows:

Whenever this Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon





receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of said mortgagee's (or trustee's) claim.

Plaintiff received judgment in the amount *20 of $ 247,000. As part of this judgment, Society was entitled to the amount due under the note, $ 144,655.45. Society, however, decided to settle for less ($ 125,500) in order to avoid the costs of trial. A strategic decision by Society should not compromise the amount eventually paid to plaintiff. Therefore, the trial court did not err by reducing the total judgment by only $ 125,500.

Both defendant's fifth assignment of error and plaintiff's sole cross-assignment of error concern prejudgment interest. Defendant's fifth assignment states as follows:

V. THE TRIAL COURT ERRED IN AWARDING PREJUDGMENT INTEREST.

Plaintiff's sole assignment states as follows:

I. BY AVOIDING THE APPEARANCE OF A "DOUBLE RECOVERY" OF PRE-JUDGMENT INTEREST, IGNORING THE JURY'S FINDING OF THE INSURER'S BAD FAITH IN FAILING TO ADJUST THE INSURED'S CLAIM AND BY OVERLOOKING THE INSURER'S EXHIBITED LACK OF GOOD FAITH IN ITS REJECTION OF A SETTLEMENT EFFORT BY THE INSURED PRIOR TO TRIAL, THE COURT ERRED TO THE PREJUDICE OF THE INSURED WHEN IT SUBSTITUTED, RATHER THAN SUPPLEMENTED, AN AWARD OF PRE-JUDGMENT INTEREST AUTHORIZED BY THE STATUTORY PROVISION OF O.R.C. 1343.03 (A) FOR THAT OF THE *21 PRE-JUDGMENT PROVISION OF O.R.C. 1343.03(C).

Plaintiff and defendant both take issue with the amount of prejudgment interest. Defendant first argues that the trial court erred by awarding prejudgment interest back to June 16, 1992, that is, 60 days from the submission of the proof of loss, which occurred on April 16, 1992. HN10 As a general rule, prejudgment interest starts to run from the time the loss is deemed payable under the policy. *Amatullis, Inc. v. Great Cent. Ins. Co.* (1971), 36 Ohio App. 2d 106, 302 N.E.2d 892; *Outdoor Outfitters Inc. v. Fireman's Fund Ins. Co.* (1994), 98 Ohio App. 3d 733, 738 fn.3, 649 N.E.2d 871. The policy in the case at bar provided that the loss shall be payable within sixty days after receiving a proof of loss.

Defendant argues that prejudgment interest should not extend back to June 16 because the amount of loss was unliquidated at that time. Moreover, in its brief Century claims it disputed both liability coverage and the amount of loss. In support Century cites its reservation of rights letter, which does not commit to any amount. While denying liability, the letter does not dispute or reject the amount of loss. It is simply silent on the amount. *22

When it received plaintiff's proof of loss, Century had three choices:

First, it could have accepted coverage for the loss and accepted the amount of losses presented. Second, it could have accepted coverage for the loss but challenged the amount of losses claimed. Its final choice would have been to deny coverage for the loss but accept or reject the amount of loss.

*Outdoor Outfitters, supra*, 737. We agree with the options outlined in *Outdoor Outfitters.* In all three instances, Century had to respond by accepting or rejecting the figures plaintiff submitted. Since Century failed to reject the figures, the 60-day provision in the policy controls the date prejudgment





interest begins to run. n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 *Outdoor Outfitters* acknowledged this principle, but, because the record was not clear, the court used the date coverage was denied to begin prejudgment interest.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Defendant next argues that the calculation of prejudgment interest is in error because the court, in addition to starting at the *23 wrong point in time, calculated interest on the entire amount of judgment ($ 247,000) and failed to subtract payment to Society of $ 125,500. This argument lacks merit. "An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims." *Royal Elec. Constr. Corp. v. Ohio State Univ.* (1995), 73 Ohio St. 3d 110, 116-117, 652 N.E.2d 687. Because prejudgment interest encourages defendant to pay the full amount due, it is logical in this case to use the full amount for which defendant was found liable to calculate the amount of prejudgment interest. Accordingly, defendant's fifth assignment is overruled.

Plaintiff's argument on prejudgment interest also fails. The court awarded plaintiff prejudgment interest based on defendant's failure to pay under the policy. Plaintiff, however, wanted prejudgment interest additionally on the bad faith claim. In effect, this additional award would have doubled the amount of interest and this would be punitive. By awarding prejudgment interest only on the contract claim, the trial court succeeded in making the aggrieved party whole. To award more prejudgment *24 interest would be inconsistent with the Supreme Court's recent holding that prejudgment interest is equitable and designed to be compensatory, not punitive. *Id.* at 117; *Galayda v. Lake Hospital Systems, Inc.* (1994), 71 Ohio St. 3d 421 428, 644 N.E.2d 298.

VI. THE TRIAL COURT ERRED BY OVERRULING DEFENDANT- APPELLANT'S OBJECTION AND ADMITTING EXPERT TESTIMONY ON THE ISSUE OF BAD FAITH CLAIMS HANDLING.

In this assignment, defendant claims the trial court erred in allowing Richard Andrews to testify as an expert on issues within the knowledge and experience of lay persons. HN11 A ruling concerning the admission of expert testimony is reviewed under an abuse of discretion standard. *Scott v. Yates* (1994), 71 Ohio St. 3d 219, 221, 643 N.E.2d 105.

The trial court did not abuse its discretion in admitting this expert testimony. Andrews is an experienced insurance adjuster with more than 20 years of experience. His opinion was properly limited to whether defendant deviated from an objective standard of care for handling claims of this type. The average lay person is not experienced in the handling of complex commercial insurance claims. This testimony assisted the jury on the *25 issue of whether defendant acted in bad faith in its handling of plaintiff's claim. Accordingly, defendant's sixth assignment is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES D. SWEENEY, P.J., and

BLACKMON. J., CONCUR.

DIANE KARPINSKI

JUDGE

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S. *26 Ct. Prac.R. II, Section 2(A)(1).


