IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) : | CASE NO. C-1-02-351 |
| Plaintiff, | ) : | JUDGE BECKWITH |
| v. | ) : | PLAINTIFF'S MOTION FOR |
| CENTRE LIFE INSURANCE CO., | ) : | SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM |
| Defendant. | ) | |

This Court should grant summary judgment to plaintiff on defendant's counterclaim.

The parties agree that the plaintiff, Eric Jeffries, is "Totally Disabled" as that term is defined in the insurance policy (the "Policy"). In its counterclaim, defendant attempts to limit its exposure to 24 months of benefits through the exercise of a benefit "Limitation" contained in an Amendment to the Policy. (*See, Counterclaim, Doc. 89*). However, that "Limitation" provision applies *only* to "Totally Disabled" policyholders (as a first matter) who are found to have a mental disorder "classified" in the DSM-IV, which causes their particular Total Disability. (*See, Exhibit 1*).

Summary judgment is proper here because it is undisputed that the critical *prerequisite* of the particular disorder that defendant has finally settled on arguing, DSM-IV, 300.82: Undifferentiated Somatoform Disorder ("USD-300.82"), is absent.

The Diagnostic and Statistical Manual of Mental Disorders IV (the "DSM-IV") establishes as a *prerequisite* that there be no medical explanation for an illness or symptoms before a psychologist can properly attribute the symptoms or illness to USD-300.82. (*See, Exhibit*

1

2). Therefore, if a medical doctor(s) diagnoses a patient with a medical illness, a psychologist (who is not a medical doctor) cannot then disregard the medical diagnosis (thereby disregarding the *prerequisite* to the disorder) and conclude that the patient has USD-300.82.

Here, the defendant simply cannot argue that Mr. Jeffries suffers from USD-300.82 because there is an undisputed medical explanation for Mr. Jeffries' illness, and the *prerequisite* to USD-300.82 is missing: *regardless* of the causative event, plaintiff's multiple expert/treating physicians have reported and/or testified that Mr. Jeffries suffers from a medical condition known as myalgic encephalomyelitis or chronic fatigue syndrome ("ME/CFS"), and defendant offers <u>no</u> medical evidence to the contrary.

For this simple reason, defendant's psychologist cannot properly render a diagnosis of USD-300.82, defendant cannot properly limit the benefits payable for Mr. Jeffries' undisputed Total Disability, and Mr. Jeffries is entitled to summary judgment on defendant's counterclaim. Attached is a memorandum and exhibits in support.

|  |  |
|---|---|
| OF COUNSEL | Respectfully submitted,<br><br>/s Michael A. Roberts<br>Michael A. Roberts (0047129) |
| GRAYDON HEAD & RITCHEY LLP<br>1900 Fifth Third Center<br>511 Walnut Street<br>Cincinnati, Ohio 45202<br>(513) 621-6464 | GRAYDON HEAD & RITCHEY LLP<br>1900 Fifth Third Center<br>511 Walnut Street<br>Cincinnati, Ohio 45202<br>(513) 629-2799<br>(513) 651-3836 fax<br>email: <u>mroberts@graydon.com</u> |

2

MEMORANDUM IN SUPPORT

The parties agree that the plaintiff, Eric Jeffries, is "Totally Disabled" as that term is defined by the insurance policy (the "Policy"): the defendant affirmatively asserts in its Counterclaim that Mr. Jeffries is entitled to 24 months of benefits <u>because he meets</u> the Policy's definition of "Totally Disabled." (*See, Counterclaim, Doc. 89*).

In its Counterclaim, however, defendant argues that Mr. Jeffries is entitled to no further benefits. Defendant bases its argument on its claim that Mr. Jeffries' continuing "Total Disability" is caused by a mental disorder, triggering a benefit "Limitation." (*See, Amendment, Exhibit 1, attached*). The Policy's benefit Limitation exists for "Totally Disabled" policyholders who suffer from a DSM "classified" disorder. The DSM disorder that defendant has finally settled on arguing for its strategy to limit its exposure to Mr. Jeffries is "Undifferentiated Somatoform Disorder – 300.82" ("USD-300.82"). (*See, Exh. 2*).

However, by definition, defendant cannot assert that Mr. Jeffries suffers from USD-300.82 because a medical diagnoses/explanation exists for Mr. Jeffries' symptoms: Mr. Jeffries' five (5) experts and treating physicians, Drs. McClellan, Poser, Hyde, Geier, and Waisbren, assert in their reports and testimony two distinct opinions:

(i) Mr. Jeffries suffers from a medical condition known as myalgic encephalomyelitis or chronic fatigue syndrome ("ME/CFS"); and

(ii) Mr. Jeffries' illness was, to a reasonable degree of medical certainty, triggered by an adverse reaction to the hepatitis B vaccine he received just prior to the onset of his illness. (*See, Exhibits 3, 4, 5, 6 [Ex. 18 to Doc. 131, filed manually], and 7, respectively*).

In a ***Daubert*** motion, the defendant challenges the testimony of 3 of plaintiff's 5 experts (Drs. Geier, Hyde and Waisbren, <u>but not</u> Drs. Poser or McClellan) on the 2nd point *only* (*i.e.,*

3

whether Mr. Jeffries' receipt of the hepatitis B vaccine *caused* his medical illness). But otherwise, the defendant offers <u>no</u> medical evidence to dispute the multiple opinions of Mr. Jeffries' medical doctors that he suffers from a medical condition known as ME/CFS, *regardless* of the causative event: defendant offers no medical evidence or testimony that Mr. Jeffries does <u>not</u> have ME/CFS.[1]

Rather, the defendant's psychologist, Dr. Michael Hartings (who is not a medical doctor), improperly disregards the opinions of Mr. Jeffries' physicians and disregards the critical prerequisite to a proper diagnosis of USD-300.82 - that there <u>be no</u> medical explanation for Mr. Jeffries' symptoms/illness.[2]

Because the undisputed evidence refutes the existence of the prerequisite to Dr. Hartings' opinion, he may not offer it to the jury, and summary judgment is proper.

II.     <u>Analysis.</u>

The "Limitation" provision defendant relies upon is contained in an Amendment to the Policy. It states:

> "**Amendment To Policy**. <u>Mental Disorder . . . Limitation</u>: If a Total Disability . . . is due to a Mental Disorder . . . the number of months for which any benefits for Total Disability shall be payable under the Policy during the lifetime of the Insured shall not exceed in the aggregate a total of 24 months. 'Mental Disorder'

---

[1] The only medical evidence defendant will offer at trial is the testimony of Dr. Newton Bullard - even though Dr. Bullard admits not being an expert. The essence of Dr. Bullard's testimony is that, after meeting with defendant's counsel for over one hour and before conducting his 20 minute examination of Mr. Jeffries, Dr. Bullard determined that there was no "objective medical evidence" of a medical illness. Regardless, Dr. Bullard has not testified that Mr. Jeffries does not have ME/CFS. Accordingly, that diagnosis is unrefuted, *regardless of what the causative event may be for that illness*.

[2] In the only written expert report supplied to plaintiff, Dr. Hartings asserts that Mr. Jeffries suffers from 2 distinctly different disorders. (*See*, Exhibit 8). However, Dr. Hartings now seems to have abandoned these diagnoses and defendant has rested its defense on a new diagnosis of USD-300.82.

4

. . . means a manifestation of any disorder classified in the then current issue of the Diagnostic and Statistical Manual of Mental Disorders (DSM) . . . ." (*Exh. 1*).

As indicated, to exercise this benefit "Limitation" (which by definition applies only to persons that the defendant has determined are "Totally Disabled") the defendant has the *burden* of establishing that Mr. Jeffries' "Total Disability" is caused by a disorder "*classified*" in the DSM. *Id*. And the DSM criteria which must exist before a psychologist can properly diagnose a patient with USD-300.82 include:

- the symptoms cannot be fully explained by a known general medical condition; or when there is a related general medical condition, the physical complaints or resulting social or occupational impairment is in excess of what would be expected from the history, physical examination, or laboratory findings. (*See*, *Exhibit 2*).

Accordingly, it is a *prerequisite* (i.e., not an element that Dr. Hartings can diagnose or, if diagnosed by a medical doctor, simply disregard) to a proper USD-3000.82 diagnosis that no medical doctor be able to provide a medical diagnose or explanation for the symptoms/illness Mr. Jeffries suffers. Here, the USD-300.82 diagnose cannot properly apply because multiple medical doctors have made a medical diagnosis of ME/CFS. And that diagnosis is undisputed by any record medical evidence.

There being no medical evidence on the issue for which defendant bears the burden of proof before Dr. Hartings can opine that Mr. Jeffries has USD-300.82 as it is "classified" in the DSM, Dr. Hartings cannot offer the opinion that Mr. Jeffries suffers from USD-300.82. And plaintiff is entitled to summary judgment on the counterclaim.

A.      Rule 56.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. **United States v. Diebold, Inc.**, 369 U.S. 654, 8 L. Ed. 2d 176, 82 S. Ct. 993 (1962). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (emphasis in original).

The United States Supreme Court has stated that the "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" **Celotex Corp. v. Catrett**, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id. at 323*; **Anderson**, 477 U.S. at 250.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." **Celotex Corp.**, 477 U.S. at 322. Where the non-moving party

6

will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

As detailed below, the defendant cannot "make a showing sufficient to establish the existence of an element essential to [defendant's] case and on which [defendant] will bear the burden of proof at trial" (i.e., the absence of a medical explanation for Mr. Jeffries' illness). Accordingly, summary judgment is proper.

B.   **The Medical Evidence Of ME/CFS.**

In June 1997, Mr. Jeffries received a hepatitis B vaccination, during a period of time when he otherwise had an acute illness. He developed a lump at the site of his shot, which was later surgically removed. Immediately after receiving the vaccination, Mr. Jeffries complained to his physician of failing health, including, *inter alia*, severe muscle pain, joint pain, cognitive difficulties, and fatigue. Mr. Jeffries' treating physician contacted the vaccine manufacturer who advised that Mr. Jeffries was suffering from an allergic reaction to the vaccine.[3]

Over the next several months, Mr. Jeffries' illness progressively worsened. He soon developed autoimmune disease, thyroid cancer, and as defendant's experts concede, based on their own testing of Mr. Jeffries, his cognitive functioning deteriorated substantially. And in 1998, Mr. Jeffries' illness prevented him from continuing in his occupation.

---

[3]   The National Vaccine Injury Compensation Act *See*, 42 U.S.C. § 300aa-10, provides compensation to those who suffer illness as the result of the receipt of the hepatitis B vaccine. And the information disclosure accompanying the hepatitis b vaccine acknowledges the medical, scientific, and tested reality that inoculation with the hepatitis B vaccine may result in adverse reactions, including reactions such as some of those suffered by Mr. Jeffries: pain, weakness, arthralgias, myalgias, etc.

7

As detailed at length in *Doc. 131* and its voluminous supporting attachments, the hepatitis B vaccine can trigger adverse reactions resulting in symptoms of the type that Mr. Jeffries has experienced. (*See, Doc. 131 and Exhibits*). Moreover, regardless of the causative event which triggered Mr. Jeffries' illness, plaintiff's multiple experts establish that Mr. Jeffries suffers from ME/CFS. There is no record medical evidence to dispute these opinions.

In light of this fact, defendant cannot assert that there is no medical explanation for Mr. Jeffries' illness and the USD-300.82 diagnosis (as it is *classified* in the DSM) cannot be made as a matter of law.

Importantly, defendant offers no testimony of a medical doctor asserting that Mr. Jeffries does not have ME/CFS. *Defendant's* experts and physicians do, however, provide support for the opinions of plaintiff's physicians:

- The IME performed by Mr. Jeffries' disability insurer shows a correlation between the vaccine and the illness. (*See, Report of Dr. Curran, Exhibit 9*);

- Defendant's trial "expert," Dr. Bullard, testified that he has personally treated patients that have suffered adverse reactions to vaccines, that "it is well recognized" that the hepatitis vaccine does trigger adverse reactions, and that Mr. Jeffries' symptoms are not inconsistent with symptoms you may expect to suffer in an adverse reaction to a vaccine;

- Defendant consulted a hepatitis B expert, Dr. Donald Craven, who advised defendant that "there is a relationship between the hepatitis b vaccine and rare auto-immune illnesses" (*Exhibit 10*); and

- Defendant's expert consultant, Dr. James Garb, concluded that the evidence is inadequate to reject a causal relation between hepatitis B and Mr. Jeffries' illness/symptoms, and "people who are HLA-B27 positive, as is Mr. Jeffries, may be more susceptible to this type of reaction. *Id.*

Just as the *McDonnell Douglas* test requires that a plaintiff show that he/she is a member of a protected class before he/she can assert a claim of discrimination, the DSM USD-300.82 test

8

requires that medical doctors be unable to explain a person's illness and symptoms medically <u>before</u> a psychologist can step in and place a mental disorder label on a set of symptoms.

In this case, the required *prerequisite* to Dr. Hartings' opinion simply does not exist.[4] Mr. Jeffries' experts and treating physicians have diagnosed him with a medical illness that defendant offers no medical evidence to rebut.[5] Mr. Jeffries is, therefore, entitled to summary judgment on defendant's counterclaim.

In his report, Dr. Hartings, even concedes this very shortcoming with his analysis. Specifically, Dr. Hartings states in the final paragraph of his report:

> "it is beyond the scope of this IME to determine whether Mr. Jeffries suffers from an occult auto-immune reaction, whether his condition is solely psychological, i.e., somatization disorder . . . or whether there is a combination of both." (*Exh. 8*).

Those answers are provided by Mr. Jeffries' experts and treating physicians: Mr. Jeffries has ME/CFS triggered by an auto-immune reaction to the vaccine. These opinions are unrebutted. And as such, there is no proper basis for a USD-300.82 diagnosis as that disorder is *classified* in the DSM.

C.  **Defendant's Earlier Attempts to Offer Alternative Diagnosis For Mr. Jeffries' Symptoms Are Meritless.**

Even though Dr. Hartings now says that Mr. Jeffries has USD-300.82, his only written report offers two distinctly different diagnoses: (i) Somatization Disorder ("SD"); and (ii)

---

[4] In the 1990's, Dr. Hartings' license to practice psychology was revoked and/or suspended for his exhibition of "low standards." Notwithstanding Dr. Hartings' earlier professional discipline, under oath Dr. Hartings falsely testified in his deposition in this matter that he has "actively" worked as a psychologist "without interruption" from 1979-2003.

[5] It is obviously outside the expertise of a psychologist (who is not a medical doctor) to disregard established medical diagnoses and affirmatively determine that a person's illness is caused by USD-300.82, a mental disorder.

9

Obsessive Compulsive Personality Disorder ("OCPD").  *Id.*  It is understood that Dr. Hartings abandoned these earlier diagnoses because they too cannot be properly established or "classified" within the DSM-IV.

Moreover, Dr. Mitchell Clionsky, defendant's in-house psychologist and a purported trial expert for the defendant conceded that the OCPD diagnosis rendered by Dr. Hartings and confirmed by Dr. Clionsky was incorrect and unfounded.  (*See, Exhibit 11, Clionsky Depo., pp. 80-83: "I don't believe that [Mr. Jeffries] has a diagnosis of obsessive compulsive disorder . . .Dr. Shear was correct in that portion of her analysis"*).[6]

Also, before a clinician can diagnose an individual with SD, he/she must find, *inter alia*: (1) a history of many complaints beginning before age 30; and (ii) a history of at least one sexual or reproductive symptom other than pain.  As Dr. Clionsky conceded in his deposition, there is no evidence in Mr. Jeffries' medical history supporting these 2 mandatory characteristics. (*Exh. 11 at 54-59*).

Accordingly, there is no foundation or basis or data for an SD or OCPD diagnosis either.

### Conclusion

There is no record medical evidence which the defendant can/will offer to meet its burden of establishing that Mr. Jeffries' symptoms cannot be explained by a medical condition. In fact, the unrebutted medical evidence in the record is that Mr. Jeffries suffers from ME/CFS, which explains his symptoms and condition.  As such the diagnosis of USD-300.82, as it is *classified* in the DSM, cannot be rendered as a matter of law.

---

[6] Dr. Hartings concedes that Mr. Jeffries does not have OCPD as it is classified in the DSM-IV. (*See, Exhibit 12, p. 124-125*). This is an all-important concession since the Policy's mental disorder exclusion applies only if the defendant proves that Mr. Jeffries has a disorder "classified" in the DSM.

For this reason, the Court should grant plaintiff summary judgment on the counterclaim and determine that benefits are payable under the Policy.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL | /s Michael A. Roberts |
| | Michael A. Roberts (0047129) |
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 1900 Fifth Third Center |
| 511 Walnut Street | 511 Walnut Street |
| Cincinnati, Ohio 45202 | Cincinnati, Ohio 45202 |
| (513) 621-6464 | (513) 629-2799 |
| | (513) 651-3836 fax |
| | email: mroberts@graydon.com |

### CERTIFICATE OF SERVICE

The foregoing was delivered, via regular U.S. Mail William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 22nd day of January, 2004.

/s Michael A. Roberts

**INDEX OF EXHIBITS**

1. Amendment To Policy
2. DSM-IV criteria for USD-300.82
3. Report of Dr. Michael McClellan
4. Report of Dr. Charles Poser
5. Report of Dr. Byron Hyde
6. Report of Dr. Mark Geier
7. Report of Dr. Burton Waisbren
8. Dr. Michael Hartings Report
9. Dr. Robert Curran Report
10. Dr. James Garb Report
11. Dr. Mitchell Clionsky Depo. Excerpt
12. Dr. Michael Hartings Depo. Excerpt