1

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

```
- - - - - - - - - - - - - - - - x
ERIC L. JEFFRIES,               :
                                :
                Plaintiff,      :
        v.                      :  Case No. C-1-02-351
                                :  Judge Beckwith
CENTRE LIFE INSURANCE           :
COMPANY, et al.,                :
                                :
                Defendants.     :
- - - - - - - - - - - - - - - - x
```

Silver Spring, Maryland
Thursday, July 10, 2003

Deposition of:

MARK GEIER, M.D.

called for examination by counsel for the Defendants, pursuant to notice and agreement of counsel as to time and place, at the Offices of Executive Court Reporters, 1320 Fenwick Lane, Suite 702, Silver Spring, Maryland, before Jerry McKenzie, a Notary Public in and for the State of Maryland, commencing at approximately 1:00 p.m., when were present on behalf of the respective parties:

EXECUTIVE COURT REPORTERS, INC.
(301) 565-0064

```
                                                           5
1      Q    Dr. Geier, when did you first become involved
2    in Mr. Jeffries' case?
3      A    I don't have a recollection of the exact
4    time, but I would say within the last -- about a year.
5      Q    Did you become involved through Mr. Jeffries
6    contacting you or one of his counsel?
7      A    Counsel.
8      Q    Do you remember the name of the counsel?
9      A    I think Mr. Shoemaker was the first one.

10          MR. ELLIS:  Let's go off the record for a
11   minute.
12          (Off the record discussion.)
13          MR. ELLIS:  Back on the record.
14          BY MR. ELLIS:
15     Q    Mr. Shoemaker contacted you in order to seek
16   your assistance in evaluating Mr. Jeffries with regard
17   to a claim made against the Vaccine Compensation Fund;
18   is that right?
19     A    Yes.

20     Q    Did you ever personally evaluate Mr.
21   Jeffries?
22     A    Just by the medical records, I have not
23   personally examined him.  I have spoken to him, but I
```

6

1      have not personally examined him.
2         Q    When you spoke with him, was it by phone?
3         A    Yes.
4         Q    What was the purpose of the phone
5      conversation?
6         A    We had a couple of conversations.  I think
7      one time he wanted to tell me that his son was
8      diagnosed with a kidney disorder, autoimmune kidney
9      disorder, and I think because of that, he faxed me a
10     record.  That apparently happened after I began
11     reviewing the case.  He said he thought it was
12     important that I have that and I think it's somewhere
13     in our records that we faxed you.
14              That's the reason I recall -- I recall
15     talking to him more than once, but that was the only
16     reason, I don't remember what the other time was.
17        Q    Did you discuss your evaluation or your
18     reports with him on any phone conversations?
19        A    No.
20        Q    I have an affidavit signed on June 1 -- I'm
21     sorry, at least notarized on the 8th of April, 2003.
22     Do you remember that?
23        A    I think that's one of the affidavits that was

8

1  Q    But not the other affidavits?

2  A    I don't think you asked for the affidavits,
3  you asked for the articles and we provided them.

4  Q    I asked for both.

5  A    No, I don't believe so, because I had a
6  discussion with him and he asked me whether he should
7  provide the other affidavits and I said did he ask for
8  them and he said no.  At least his understanding was
9  that you asked for the articles that went with

10  everything that we submitted and that's what we sent.

11       MR. SHOEMAKER:  I think his assumption was
12  you already had them.

13       MR. ELLIS:  I thought I made it clear that I
14  did not, because I only knew of one.

15       BY MR. ELLIS:

16  Q    All right.  Be that as it may, is this the
17  affidavit you're going to rely upon to testify in the
18  disability cases that are pending?

19  A    I don't rely upon an affidavit, I rely upon

20  the literature.

21  Q    Does this basically contain the opinions you
22  would expect to express in the disability cases?

23  A    I believe that this is the first affidavit,

```
                                                              9
 1    because it doesn't have a number.  Usually the later
 2    ones get numbered.  This also has the -- my review of
 3    his medical records.
 4              Typically what I do in an affidavit -- I mean
 5    sometimes there's only one affidavit, but in my first
 6    affidavit I'll review the medical records and review
 7    some literature.  I believe the other ones are
 8    summaries of literature and I believe you have the
 9    literature.

10              If you request, I'll supply the others.  It
11    wasn't an attempt not to give them to you, we just
12    didn't think -- we misunderstood that either you had it
13    or that you didn't want it, but we can supply the
14    others.
15         Q    Are there any opinions in the other
16    affidavits that you expect to express in the trial of
17    this matter that are not contained in that affidavit?
18         A    I think so.  I think there are article
19    summaries and things, but you have the articles on

20    which I rely.  Not having them in front of me, I'm not
21    certain, but I believe that the others had here's some
22    more articles and here's why I think they're important
23    information.  We gave you the articles.  Is that
```