```
                                          1
 1              UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF OHIO
 3                  WESTERN DIVISION
 4   - - - - - - - - - - - - - - -
     ERIC L. JEFFRIES,             :
 5                                 :
              Plaintiff,           :
 6        vs.                      : Case No. C-1-02-351
                                   :  (Volume I)
 7   CENTRE LIFE INSURANCE         :
     COMPANY, et al.,              :
 8                                 :
              Defendants.          :
 9                                 :
     - - - - - - - - - - - - - - -
10
11
12           Deposition of MICHAEL MCCLELLAN, MD, a
13   witness herein, called by the defendants for
14   cross-examination, pursuant to the Federal Rules of
15   Civil Procedure, taken before me, Connie Dupps, a
16   Registered Professional Reporter and Notary Public
17   in and for the State of Ohio, at the offices of Hyde
18   Park Internists, 2727 Madison Road, Cincinnati,
19   Ohio, on Tuesday, October 14, 2003, at 3:00 PM.
20
21
22                              Pages:   1 - 86
23
24
```

5

1   A.   Okay.

2   Q.   All right. Doctor, last night your office
3   was kind enough to give me a copy of your records in
4   the case of Eric Jeffries. Do you recall Mr.
5   Jeffries as a patient?

6   A.   I do.

7   Q.   Can you tell me from your records, which I
8   assume you have with you, when the first time you
9   saw him would have been?

10  A.   Actually I first saw Eric 5 years ago to
11  the day today, October 14, 1998.

12  Q.   What was the occasion of that visit, what
13  brought him to you?

14  A.   Mr. Jeffries had been under the primary
15  care of Dr. Donald Nunlist-Young, and at that time
16  was also under the care of several other specialists
17  being evaluated for an, as yet undefined, illness,
18  and he felt that he wanted another primary care
19  opinion from a generalist. He had seen a few
20  different specialists, but wanted someone other than
21  Dr. Nunlist-Young to examine him and give another
22  opinion on his illness.

23  Q.   Okay. When you first saw him I assume you
24  made a record of the history that he gave you?

                                         112

1   can establish a known physical ailment other than
2   one by exclusion; is that correct?
3            MR. ROBERTS:  Objection.
4       A.   I would say that's correct, that there is
5   no way to definitively make the diagnosis other than
6   through exclusion.
7       Q.   And to make a diagnosis by exclusion one
8   has to eliminate or rule out other potential
9   diagnoses or causes for the symptoms that are being
10  expressed by the patient?
11           MR. ROBERTS:  Objection.
12      Q.   Correct?
13      A.   Correct.
14      Q.   And if objective testing of a
15  neuropsychological nature strongly suggests a
16  diagnosis of somatoform disorder and obsessive
17  traits --
18           MR. ROBERTS:  Somatization disorder?
19      Q.   -- or obsession with the illness, that
20  means that's one potential that has not been ruled
21  out?
22           MR. ROBERTS:  Objection.
23      A.   Well, unfortunately, as we talked about
24  last time, neuropsychiatric testing is not, in and

                                    113

1  of itself, diagnostic either, and I would say that a
2  functional movement disorder, Dr. Dalvi says is
3  his --
4      Q.    Explanation?
5      A.    -- presumptive diagnosis is, in and of
6  itself, a diagnosis of exclusion for which there is
7  no verifiable testing or diagnostic tests, which
8  would be confirmative.
9      Q.    But as with your diagnosis it does explain
10 the symptoms and provide a potential treatment to
11 help the patient get over them, right?
12           MR. ROBERTS:  Objection.
13     A.    It is another, certainly, another
14 potential explanation for his symptoms.  And I think
15 what it comes down to for me, a lot of these folks
16 that saw Mr. Jeffries once will be able to give a
17 very helpful objective evaluation of someone for
18 whom they have no background, whom they have not had
19 longitudinal history with, and that's many times a
20 very good thing, to get a fresh look and to think of
21 new ideas and new possibilities, because your --
22 your way of seeing a patient is not clouded by
23 previous encounters with them.
24           On the other hand, I think that it betrays