UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF OHIO

- - - - - - - - - - - - - - -
ERIC L. JEFFRIES,                  :
                                   :
       Plaintiff,                  :
  vs.                              : Case No. C-1-02-351
                                   : (Judge S. S. Beckwith)
CENTRE LIFE INSURANCE              :
COMPANY, et al.,                   :
                                   :
       Defendants.                 :
- - - - - - - - - - - - - - -

Deposition of CORWIN DUNN, M.D., a witness herein, called by the defendants for examination, pursuant to the Federal Rules of Civil Procedure, taken before me, Tracy L. Allen, a Registered Professional Reporter and Notary Public in and for the State of Ohio, at 2223 Auburn Avenue, Cincinnati, Ohio, on Friday, September 12, 2003, at 2:15 PM.

Case 1:02-cv-00351-MRB-TSH   Document 150-20   Filed 02/09/2004   Page 2 of 2

Jeffries vs. Conseco Life Insurance Co., et al.  
September 19, 2003                                        CORWIN DUNN, M.D.

### Page 66

1  A. February 23rd, 2001.
2  Q. Okay.
3  A. Yes.
4  Q. And did you have any objective findings on
5  the physical exam?
6  A. Again, I saw the small, two- to
7  three-millimeter ulcer -- this time it was an
8  ulcer -- on the hard palate. And actually there
9  were four to five of them. And I saw the thyroid
10 scar to which he had alluded that he had this
11 thyroid surgery. Then again there are no lymph
12 nodes in his neck. And that was all.
13 Q. Was he able to move about all right, talk
14 to you okay?
15 A. Yes.
16 Q. Didn't have to fish for words, or lose his
17 place, or not able to communicate his concerns?
18    MR. ROBERTS: Objection.
19 Q. Or theories?
20    MR. ROBERTS: Objection.
21 A. No.
22    MR. ROBERTS: Basis.
23 A. But I wouldn't rule out the possibility
24 that his normal IQ is 170 and it dropped down to 120

### Page 67

1  leaving him still articulate.
2  Q. Something you can't rule out or rule in.
3  A. Correct.
4  Q. Okay. Doctor, at some point you were
5  asked to prepare an affidavit for Mr. Jeffries. Do
6  you recall that?
7  A. I do.
8  Q. First of all, who asked you to prepare
9  such an affidavit?
10 A. Well, there were two things going on. And
11 one was for Mr. Roberts. And another was a contact
12 from -- who was this? I think an independent
13 medical case specialist representing or
14 investigating for Massachusetts Casualty Insurance
15 Company.
16 Q. What were you asked from this person from
17 you think Massachusetts Casualty?
18 A. This was a woman named Lucinda Palmer who
19 wished to do an interview or phone interview. And
20 then she came up with a synopsis of this, which she
21 wanted me to sign.
22 Q. And were you able to --
23 A. I was basically not happy with her
24 synopsis. So I didn't sign it.

### Page 68

1  Q. What was the disagreement with the
2  synopsis?
3  A. Do you have it?
4  Q. I do not.
5     MR. ROBERTS: You have that.
6     MR. ELLIS: I don't have it with me.
7     MR. ROBERTS: Oh.
8     Massachusetts Casualty is his client.
9     THE WITNESS: Okay.
10 A. Well, it's fairly extensive.
11 Q. Well, let's go back to the beginning
12 point. She called you and asked to discuss the case
13 with you.
14 A. Yes.
15 Q. And did she discuss the case with you?
16 A. Yes.
17 Q. Did she have any suggestions,
18 recommendations, or ask you to take a certain
19 position with regard to the case?
20 A. No.
21 Q. Okay.
22 A. She was --
23 Q. She was asking rather than telling?
24 A. Yes.

### Page 69

1  Q. And she attempted to apparently send you a
2  series of notes related to that conversation with
3  which you had some disagreement.
4  A. Correct.
5  Q. Were there specific areas of disagreement?
6  A. As I recall, there were.
7  Q. Okay.
8  A. Let me just review that.
9  Q. Sure.
10 A. I can probably tell you. Right. There is
11 one -- if you recall the general tone of the letter,
12 I don't -- I don't contest that. I mean, I think
13 that's fine.
14    The final paragraph, though, was -- her
15 next to final paragraph was, Upon reviewing the
16 notes of our conversation, in order to create this
17 letter, I conclude the following. And this is
18 Lucinda Palmer speaking.
19    Mr. Jeffries comes to see you periodically
20 with complaints of fatigue. The only abnormal
21 clinical findings of which you're aware of are a
22 positive anti-microsomal antibody test which does
23 support the symptoms, and findings of a RNAL protein
24 termination test, which is not recognized by you or