# Disability Management Services, Inc.

*A Third Party Administrator for*
**Massachusetts Casualty Insurance Company**
7th Floor 155 Federal Street
Boston, MA 02110
Tel: (800) 462-9897

August 17, 2001

State of Ohio Department of Insurance
Attention: Patricia D. Smith, ALHC
Consumer Services Division
2100 Stella Court
Columbus, OH 43215-1067

Re: Complainant: Eric Jeffries
    File Number: CSD-1076682

Dear Ms. Smith:

We are in receipt of your recent inquiry regarding Mr. Eric Jeffries' claim, received in this office July 31, 2001.

Please note that Centre Life Insurance Company ("CLIC") formerly known as Massachusetts Casualty Insurance Company ("MCIC"), has chosen Disability Management Services, Inc. ("DMS") as its third party claims administrator. As requested, DMS' telephone number is (800) 462-9897 and its fax number is (617) 338-4419.

Mr. Jeffries' individual disability income policy provides benefits in the amount of $12,133 per month to age 65 in the event that he meets the definition of "total disability". He is considered "totally disabled" if he

> . . . is substantially unable to perform the material duties of his/her occupation; and is receiving care by a Physician which is appropriate for the condition causing the disability . . . .

The policy also provides benefits for a "residual disability". "Residual disability" means that due to Injury or Sickness,

> You are not able to perform one or more of the substantial and material daily duties of your Work; or you are able to perform such daily duties but: 1. it takes you more than the normal time required to perform such, or 2. You cannot perform such for as much time as you normally do; and You have a Loss of Net Income; and you are receiving medical care by a Physician which is appropriate for the condition causing your disability . . . .

Mr. Jeffries notified MCIC on February 4, 1999 that he had been totally disabled from his occupation as an investment banker since September 25, 1998. While Mr. Jeffries' physicians were at a loss to diagnose any particular condition, he did report symptoms,

*d/b/a New England Claims Administration Services, Inc. in FL, MD, ME*
*Licensed as New England Claims Administration Services, Inc. in CA*
*d/b/a Centre Claims Administration Services in NH*

CLAIM 01385

which included arthralgias, myalgias, abdominal pain, oral ulcers and cognitive difficulties. Mr. Jeffries claims that these symptoms resulted from a bad reaction to a Hepatitis B vaccine he received in June 1997. He claimed that as a result of this condition, he was unable to concentrate, which compromised his ability to perform some of his occupational duties, including his ability to make decisions and travel. In March 1999, his attending physician diagnosed this cluster of symptoms as "undifferentiated connective tissue disease."

While Mr. Jeffries contends that we "have yet to acknowledge [his] disability exists," we began making monthly payments after the applicable elimination period beginning April 4, 1999. Benefits are considered on a month-to-month basis in arrears, upon our receipt of sufficient proof of loss as required by the policy (a copy of which is attached.) We have continued to pay Mr. Jeffries' claim since that time upon receipt of sufficient monthly proof of loss. His claim is currently paid through July 2001.

During our ongoing investigation of Mr. Jeffries' claim, we have obtained and reviewed voluminous medical reports from Mr. Jeffries' attending physician and the many doctors with whom Mr. Jeffries consulted. While there are indeed many reports, reviews by our medical consultants have indicated that they do not clearly support a claim for total disability. The majority of the opinions lack objective medical evidence and are based mostly upon subjective, historical information given by Mr. Jeffries. Since the medical aspect of Mr. Jeffries' claim is still unclear, we have chosen to exercise our right under the policy to have Mr. Jeffries examined by physicians of the appropriate specialties, to help us better understand the extent of his current limitations and restrictions. Our requests for independent examinations are in no way meant to "harass" Mr. Jeffries, rather our right to these examinations is specifically recognized in the policy. According to the policy,

> . . . we, at our own expense, have the right to have you examined by an examiner of our choice as often as is reasonable while a claim is pending.

We are in the process of scheduling Mr. Jeffries for exams by a neuropsychologist and an infectious disease specialist. We reserve the right to have additional exams by additional specialists as necessary.

Contrary to Mr. Jeffries' intimation, we have not requested that we be provided with records concerning his bank and savings accounts, credit cards and loan information, nor have we requested "full access" to his personal finances. We have, however, asked that he sign our standard claim authorization to allow us to fully evaluate his claim. Mr. Jeffries has refused to do this.

Finally, we deny that we have acted unreasonably in our requests of Mr. Jeffries for additional information. Our requests have been for information necessary to fully understand Mr. Jeffries' condition and how it prevents him from performing the duties of his occupation.

3

Prior to receiving notice of your inquiry, I had scheduled an appointment to meet with Mr. Jeffries and his attorney, Michael Roberts for Monday, August 20, 2001 to attempt to address our differences and move this process along. Of course, upon your request, I would be happy to provide you with an update after our meeting.

I trust that this letter addresses the concerns outlined in Mr. Jeffries' letter to your office. Should you have and additional questions or if I maybe of further assistance, please do not hesitate to contact me at 1-800-462-9897, ext. 1879.

Sincerely,

*Jeffrey A. Champagne (CLB)*
Jeffrey A. Champagne
Assistant Vice President, Claims

CLAIM 01387

11/9/01
9:20 AM

Jeff called Pat Smith. Advised I went over parts of file last nite & noted ROR not on orig'l benes. 3/00 is when we first ROR benes ↑↓ to date subjective. Pat agreed that while Dr. Jeffer saw many wo's, most subjective + tests etc were normal. Esp CFS Fibro value, not clear. She felt thyroid cancer mentioned but not sure where noted.
She asked for copy of EOB to be faxed to her. OK.
Fax (614) 995-7123.

[signature]

CLAIM 01247