# Disability Management Services, Inc.

A Third Party Administrator for
**Massachusetts Casualty Insurance Company**
7th Floor 155 Federal Street
Boston, MA 02110
Tel: (800) 462-9897



March 21, 2002

Graydon, Head & Ritchey, LLP
Attn: Michael Roberts
P.O. Box 6464
Cincinnati, OH 45201-6464

Re: Eric Jeffries
    Claim #: 402696
    Policy #: 641734

Dear Mr. Roberts:

Thank you for speaking with Jeffrey Champagne on February 28, 2002, as well as your faxed letter dated the same day. We are writing with regard to Mr. Jeffries' claim for disability benefits under his Massachusetts Casualty Insurance Company ("MCIC") policy.

We were notified of Mr. Jeffries' claim for disability benefits on February 9, 1999. We received Mr. Jeffries' claimant statement, occupational duties form and disclosure authorization on March 8, 1999 (dated February 28, 1999) with a claimed diagnosis of "adverse reaction to a Hepatitis B vaccination; severe joint and muscle pain; abdominal problems, headache and eye problems." We received his attending physician's statement signed by Dr. Michael Luggen, on March 22, 1999, who indicated a diagnosis of "undifferentiated connective tissue disease." Dr. Luggen wrote Mr. Jeffries symptoms first occurred in July 1997 and then subsided until a reoccurrence in September 1998 causing him to be totally disabled from his occupation forward. At that time, Mr. Jeffries advised that his occupation was a "banker who managed and ran Provident Capital Corporation, a division of Provident Bank that specializes in cash flow oriented lending/investing in leveraged buyouts, growth financing, recapitalizations, etc. on a national and sometimes global basis."

Mr. Jeffries' policy with the Massachusetts Casualty Insurance Company is an Individual Disability Income (DI) policy with a monthly benefit in the event of total disability as defined by the policy of $12,133 a month. Mr. Jeffries policy has a 90-day elimination period, which must be satisfied before benefits begin to accrue, along with a maximum benefit period payable to age 65. His policy was written to provide benefits in the event of total disability and residual disability.

"Total Disability" is defined in Mr. Jeffries' policy as:

> The insured is substantially unable to perform the material duties of his/her occupation; and is receiving care by a Physician which is appropriate for the condition causing the disability.

d/b/a New England Claims Administration Services, Inc. in FL, MD, ME
Licensed as New England Claims Administration Services, Inc. in CA
d/b/a Centre Claims Administration Services in NH

Jeffries                                    2                         March 21, 2002

"Residual Disability" in Mr. Jeffries' policy reads as follows:

> Prior to the benefit commencement date, means that due to Injury or Sickness you are not able to perform one or more of the substantial and material duties of your Work; you have a loss of Net Income; and you are receiving medical care by a physician appropriate for your condition. After the benefit commencement date, you no longer need to have a loss of duties or time. Residual Disability then means, due to the same Injury or Sickness you have a loss of net income and are receiving medical care by a physician appropriate for your condition.

Upon our receipt of the appropriate initial proof of loss, on April 5, 1999, we provided total disability benefits for the period from December 25, 1998 to April 25, 1999 minus the appropriate waiting period, while we continued to evaluate Mr. Jeffries' claim.

We advised Mr. Jeffries in March 2000 that upon reviewing the numerous physicians' records, we were unable to objectively substantiate a disability caused by any medical condition. Rather, most of the information from his doctors described mostly subjective complaints. In any event, to be of service to Mr. Jeffries, we continued to provide total disability benefits as a gesture of good will and with reservation of the company's rights and defenses while we requested additional documentation, which included financial, occupational and medical information.

In June 2000, Mr. Jeffries' telephoned our office and altered the required authorization for us to conduct our investigation of his claim for benefits, rescinding portions of that authorization. His reasoning for this was based on his unfounded suspicion DMS and other insurance carriers (Prudential) were acting together to deny benefits. Please be advised this is wholly inaccurate and we have already addressed this issue in prior correspondences. While we attempted to work through each party's differences with respect to the authorization issue, we continued to provide total disability benefits to Mr. Jeffries with reservation of the company's rights and defenses.

We were advised on July 18, 2000, Mr. Jeffries had retained your firm as legal counsel with respect to his MCIC disability insurance policy. Our ability to continue to investigate Mr. Jeffries claim was curtailed with the withdrawal and rescission of Mr. Jeffries' authorization. An alternate authorization was prepared by you and Mr. Jeffries, which you believe satisfies Mr. Jeffries' obligation to cooperate with the insurer and authorizes the production of all relevant information relating to his claim for benefits. We disagreed and continue to disagree with your interpretation.

As our attempts to evaluate the claim continued, we were unable to determine if Mr. Jeffries qualified for disability benefits under his policy. The medical documentation, while it is voluminous, does not appear to support that Mr. Jeffries was unable to engage in his occupation. Our medical consultants state the majority of these opinions lack objective medical evidence and are based mostly upon subjective, historical information given by Mr. Jeffries. Moreover, the majority of the reports do not evidence treatment, but only one-time consultations. Since the medical aspect of Mr. Jeffries' claim was still unclear, we chose to exercise our right under the policy to have him examined by physicians of the appropriate specialties, to help us better understand the extent of his current limitations and restrictions.

An Independent Medical Examination (IME) was scheduled on August 31, 2001 with a neuro-psychologist. You stated Mr. Jeffries would not attend the similar examination based on the "practice

Jeffries                                          3                              March 21, 2002

effect" and requested that DMS review first the neuro-psychological testing Mr. Jeffries underwent in May 2001 with Sheila Bastein, Ph.D. Although not obligated to do so prior to going forward with our own independent exam, again, in an effort to work with you and Mr. Jeffries we granted your request to review the raw data and report from Dr. Bastein. Upon completion of our review by a licensed clinical psychologist, we wrote to your offices indicating numerous inconsistencies our psychological consultant uncovered with his interpretation of the test results and the conclusions Dr. Bastein reached. At this point, we scheduled Mr. Jeffries for another IME appointment with a neuro-psychologist and advised you additional examinations were being considered in the near future as necessary. The date of this IME was February 14, 2002.

As addressed in your February 6, 2002 letter, you indicated Mr. Jeffries would not be submitting to further medical testing, at this time. You believe there is sufficient proof of loss that has been supplied to us for us to determine if benefits are payable under Mr. Jeffries claim. We, however, disagree with your position.

We received additional reports from your office through our Ohio counsel on March 8, 2002. This information consisted of additional, similar neuropsychological testing and a neurological consult. Of note is the fact that Mr. Jeffries submitted to this additional neuro-psychological testing at the same time you were denying MCIC its own testing, based on your arguments that Dr. Bastien's report was sufficient on its own to support the claim and your concern over a "practice effect." These additional reports were immediately reviewed by a licensed clinical psychologist who has concluded that this testing is inadequate to establish a total or residual disability based upon numerous inconsistencies in the testing as well as an insufficient foundation upon which Dr. Sandman based his conclusions. As such, we again reiterate our request to have Mr. Jeffries examined by a practitioner of our choosing.

However, you have continued to maintain the position that Mr. Jeffries will not submit to this or any exam, despite the clear policy obligation. As such, Mr. Jeffries has failed to comply with a policy provision which is a condition precedent to receiving benefits. Additionally, Mr. Jeffries' rescission and refusal to sign the standard claim authorization has impeded our ongoing investigation of his claim. Effectively, this is another breach of his policy requirements when he is claiming disability benefits under the policy.

We have continued to issue benefit payments as a gesture of good will while we continued to work with you and Mr. Jeffries. However, since Mr. Jeffries has failed to comply with provisions as required under the policy and has continued to fail to cooperate with us in the investigation of his claim, we have been left with no option but to consider termination of further benefits absent compliance. Mr. Jeffries' policy will be returned to a premium-paying basis and notification of any premiums due will follow under separate cover.

We did discuss the possibility of resolving this matter amicably with a settlement. We remain available to discuss this further and welcome you to contact us should you wish to continue these discussions.

Our decision in this matter has been based on the information currently available. We would be pleased to review any additional information you care to submit which you feel would have an impact on our consideration of whether benefits are due.

CLAIM 00980

Jeffries                                    4                           March 21, 2002

If you should have any questions, please contact me at 800-462-9897 ext. 1855.

Sincerely,

John B. Graff
Disability Claim Consultant
Disability Management Services

JBG

CLAIM 00981