# Graydon Head & Ritchey LLP

*Attorneys at Law*

Michael A. Roberts
Direct Dial: (513) 629-2799
E-Mail: mroberts@graydon.com



February 6, 2002

<u>*Via Fax (617) 338-4419; Hard Copy To Follow*</u>
Mr. Jeff Champagne
Disability Management Services, Inc.
155 Federal Street, 7th Floor
Boston, Mass. 02110

    Re:    <u>Eric Jeffries</u>

Dear Mr. Champagne:

    I am writing to respond to your letter of January 10, 2002, and your request that Mr. Jeffries undergo still more medical tests. For the reasons discussed below, your request is not reasonable and is, therefore, unacceptable. Furthermore, the timing of your request is incredibly curious, if not suspicious.

    It has been conclusively documented that DMS and Prudential have colluded to improperly deny Mr. Jeffries' respective claims for benefits. The collusion is obvious from (I) the phone logs produced; (ii) the evidence that you jointly hired a single surveillance company to conduct secret surveillance of Mr. Jeffries in January 2000; and (iii) the timing of your respective letters of January 4, 2002, and January 10, 2002. Your collusion resulted from your respective desire to deny Mr. Jeffries' claims because of their size and his youth.

    "Plan A" of the strategy hatched by DMS and Prudential was to have Prudential take the lead in harassing Mr. Jeffries, withhold disability benefit payments from Mr. Jeffries, and improperly deny Mr. Jeffries' Claim. Plan A also called for DMS to slither to the sidelines and harass Mr. Jeffries but to also do the minimum necessary to avoid a lawsuit and the potential for punitive damages on a bad faith claim.

    No doubt, DMS and Prudential assumed that Plan A would succeed (or at least strategically determined that it was the advisable first option) in accomplishing the goal of improperly denying Mr. Jeffries' respective claims since Plan A required Mr. Jeffries to jump through the hoops of an expensive, exhaustive, and labored 3-step internal appeal process with Prudential. You each no doubt believed that, <u>if</u> Mr. Jeffries had the stomach to survive that lengthy and expensive internal appeal procedure with Prudential, <u>then</u> once in Court,

---

www.graydon.com

*Mailing Address*
P.O. Box 6464
Cincinnati, Ohio 45201-6464

*Cincinnati Office*
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202-3157
telephone (513) 621-6464
fax (513) 651-3836

*Kentucky Office*
8100 Burlington Pike
Suite 480
Florence, Kentucky 41042-1212
telephone (859) 282-8800
fax (859) 525-0214

CLAIM 01174

Mr. Jeff Champagne
February 6, 2002
Page 2

Prudential (as opposed to DMS) could successfully wield the sword of ERISA and argue that the claim denial should be reviewed only for abuse of discretion.

Under Plan A, Prudential's success in either beating Mr. Jeffries into submission during the lengthy appeal process, or, in having an improper denial affirmed under an "abuse of discretion" review, would have triggered a letter from you indicating that DMS also denied the claim. You would have also, no doubt, further required that Mr. Jeffries repay benefits received under your famous "reservation of rights." This explains your relative silence over the past several months and your omission of claim forms with recent payments.

On paper, if one is in the business of denying claims, your strategy was well thought out. Unfortunately for DMS and Prudential, in this case it is undeniable that Mr. Jeffries suffers from a chronic illness which makes him totally disabled from engaging in his former Occupation. And after Mr. Jeffries filed suit, Prudential's trial attorneys advised Prudential that they had no chance of successfully defending Mr. Jeffries' lawsuit given the massive and unwavering volume of medical evidence confirming that Mr. Jeffries is totally disabled. Accordingly, on January 4, 2002, just 2 days before depositions of Prudential's principals were to commence, Prudential conceded that Mr. Jeffries is and has been totally disabled for over 3 ½ years. Plan A failed. Time to resort to "Plan B."

Plan B, is DMS' and Prudential's more aggressive 2-pronged approach to harass Mr. Jeffries, to attempt to manufacture medical evidence from which you can each argue that he is no longer disabled, and to then again deny his claim. Plan B's first prong calls for Prudential to aggressively demand that Mr. Jeffries prove he is totally disabled for the month of February 2002 and for each month into the future. An outlandish demand given that Prudential just this month conceded that Mr. Jeffries has a chronic illness which has made him totally disabled for the past 3½ years. Mr. Jeffries did not accept Prudential's invitation and his suit against Prudential remains ongoing. Plan B's second prong calls for DMS to surface, harass Mr. Jeffries, and manufacture some medical evidence to contradict the overwhelming medical evidence that Prudential wisely chose not to contest in Court, even with the misguided belief that Prudential possessed the sword of discretion. Mr. Jeffries chooses not to accept DMS' invitation either.

Even though you will posture that there has been no collusion, your protest is immaterial. The only material question is whether a jury will conclude that it is more likely than not, given the evidence, that DMS and Prudential have been in collusion. Unfortunately for DMS (as opposed to Prudential), a jury's affirmative answer to this question triggers a substantial damage award. And in Mr. Jeffries' view, the fact that DMS slithered to the forefront with its January 10, 2002, demand for two (2) medical examinations just 2 days after I received Prudential's concession that Mr. Jeffries has been totally disabled for 3 ½ years and their outlandish demand for proof of disability for February 2002 establishes collusion.

Certainly it cannot be disputed that if 100 doctors opine that a person is disabled, it's inappropriate to request a 101st examination. In this case, the mountain of medical evidence and numerous opinions of physicians, including physicians employed by parties adverse to Mr.

Mr. Jeff Champagne
February 6, 2002
Page 3

Jeffries, evidence beyond any doubt that Mr. Jeffries is totally disabled and will be totally disabled for the foreseeable future within the meaning of the Massachusetts Casualty policy. A 101st examination is not required. Because some of Mr. Jeffries' evidence may be new to you, I will highlight the evidence below.

*Mr. Jeffries' Physicians.* DMS has in its possession some of the unanimous opinions of Mr. Jeffries' treating physicians that he is disabled. The doctors who concur in this opinion and whose information you have include Dr. Hyde, Dr. Bastien, Dr. McClellan, Dr. Dunn, and Dr. Luggen. In addition, in 2001 Mr. Jeffries was examined and tested by Dr. Sandman who concurs in Dr. Bastien's assessment that Mr. Jeffries is totally disabled. Dr. Charles Poser, who as you know is a professor at the Harvard Medical School and has personally examined Mr. Jeffries, recently provided a more detailed opinion that Mr. Jeffries is disabled.

*Physicians Employed by Mr. Jeffries' Adversaries.* As you know, Prudential had Mr. Jeffries' records reviewed by Dr. Curran. You have a copy of Dr. Curran's Report. Dr. Curran judged that Mr. Jeffries indeed was disabled. In addition, as you likely know, Mr. Jeffries filed a claim with the National Vaccination Injury Compensation Program in the Court of Federal Claims. The Respondent in that proceeding is the U.S. Office of Health and Human Services. The government's expert, a professor at the University of Pennsylvania, like Prudential's expert and all of Mr. Jeffries' treating physicians, opined that Mr. Jeffries is disabled.

*Prudential's Concession.* Even though Prudential does not have knowledge of the reports from the University of Pennsylvania professor, The Harvard Medical School professor, or Dr. Sandman's 2001 Report, Prudential just last month conceded that Mr. Jeffries is totally disabled and has been totally disabled due to his chronic illness for 3½ years.

Notwithstanding your documented collusion and obvious strategies, Mr. Jeffries has no obligation to subject himself to further medical testing to be entitled to ongoing benefits from DMS. Part 16, §6 of the Policy states that Massachusetts Casualty has "the right to have [Mr. Jeffries] examined by an examiner of [its] choice as often as is <u>reasonable</u> while a claim is pending." In light of the unwavering mountain of medical evidence establishing that Mr. Jeffries is totally disabled (including the medical evidence of Mr. Jeffries' adversaries) it is not <u>reasonable</u> to demand further medical testing of Mr. Jeffries at this time, or for the foreseeable future. *Black's law Dictionary, 5th Edition, p. 1138* defines "reasonable" to mean: "fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view. Having the faculty of reason; rational; governed by reason; under the influence of reason; agreeable to reason. Not immoderate or excessive, being synonymous with rational, honest, equitable, fair suitable, moderate, tolerable." Your request certainly does not comport with that definition.

Quite clearly there is "sufficient proof of loss" as Mr. Jeffries has given DMS "the information needed to determine if a benefit is payable." No further medical testing at this time is warranted. Accordingly, Mr. Jeffries has no duty to undergo further testing at this time - or at least DMS will not meet its burden of proof in establishing with a jury that Mr. Jeffries has a duty which he breached. It is <u>not</u> reasonable for Mr. Jeffries to continue to have

Mr. Jeff Champagne
February 6, 2002
Page 4

to jump through DMS' hoops to prove his illness. The medical information relating to Mr. Jeffries' chronic condition is already massive and unvarying: it is established that Mr. Jeffries is totally disabled and entitled to benefits from DMS for the foreseeable future without the need for further consideration or examination. Even Prudential conceded that (with the erroneous belief that it had discretion to deny the claim) it could not successfully convince a Court that Mr. Jeffries is not totally disabled. While the Policy permits DMS to examine Mr. Jeffries, there is no doubt a point where enough is enough. We have reached that point. Accordingly, Mr. Jeffries does not intend to submit to further examination by DMS for the present time.

The delay in my response to your January 10, 2002, letter resulted from the serious consideration Mr. Jeffries gave to simply filing suit. Because, unlike Mr. Jeffries' suit against Prudential, a suit against DMS will request that a jury award compensatory damages, punitive damages, and attorneys fees, Mr. Jeffries elected to temporarily restrain from filing suit in order to give DMS the opportunity to alter its strategy and concede that further medical testing at this time is unwarranted. Importantly, DMS has no discretion to interpret the policy or to determine if Mr. Jeffries is disabled. In addition, punitive damages are a very strong possibility given the likelihood that a jury will conclude based on the evidence that it is more likely than not that Prudential and DMS colluded to harass Mr. Jeffries and deny his claims.

                                              Sincerely,

                                              GRAYDON HEAD & RITCHEY LLP

                                              Michael A. Roberts

MAR/ndc
*Copy:* Mr. Eric Jeffries

CLAIM 01177