UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **DEFENDANT'S RESPONSE** |
| et al., | : | **REGARDING POSER** |
| | : | **SUPPLEMENTAL DECLARATION** |
| Defendants. | : | |

## I.  Introduction

Now comes Defendant Centre Life Insurance Company and files its response to the supplemental declaration of Charles M. Poser. Plaintiff had previously filed his memorandum in opposition to Centre Life's *Daubert* motion to exclude testimony regarding Hepatitis B causation. Dr. Poser's declaration was not attached. Instead, Plaintiff brought Dr. Poser to the January 29, 2004 *Daubert* hearing. Dr. Poser did not testify, however, in part because of time constraints associated with the testimony of Defendant's witness, Dr. Kirk Frey.[1] It was anticipated by Defendant that both Dr. Frey and Dr. Poser would file supplemental reports. On February 5, 2004, the Court issued a Minute Entry dated 1/30/04 and held that Dr. Frey would not be permitted to supplement his report. The Order was silent with regard to Dr. Poser's supplementation and on 2/5/04, the date it was anticipated both supplemental reports would be filed, Plaintiff filed an additional declaration of Dr. Poser. Defendant now submits its response to the same.

---

[1] Dr. Frey testified regarding Centre Life's *Daubert* motion to exclude PET/SPECT scan testimony.

## II. Analysis Of Dr. Poser's Declaration

The statements in Dr. Poser's declaration are not supported by the articles he attaches and his own deposition testimony. Careful review of both his statement and that information which he claims he offers in support is required.

1. In paragraph 4, Dr. Poser claims that his testimony regarding Mr. Jeffries' condition and what caused it was already accepted in the U.S. Court of Federal Claims.

   - What has or has not happened in the U.S. Court of Federal Claims with regard to Mr. Jeffries has been the subject of much debate. Plaintiff has not offered any evidence that his claim for compensation has been accepted. If Dr. Poser means to say he has testified in the U.S. Court of Federal Claims and has simply offered his opinion, this is certainly a different issue than stating that the Court has accepted his testimony as true and correct regarding Mr. Jeffries' condition and alleged causation.

2. In paragraph 6 of his declaration Dr. Poser states that "my published criteria have been utilized by other medical doctors."

   - This is contrary to the statement of his deposition. In deposition Dr. Poser was questioned whether the criteria he uses for making a CFS diagnosis were "accepted by the medical profession?" Dr. Poser answered **"I have no idea. Nor do I care."** See Exhibit 1, Poser deposition at p. 71.

   - One criteria to be considered by the Court in the evaluation of an expert's opinion challenged under *Daubert* is whether the theory or technique has been accepted by the "relevant scientific community," or "has been able to attract only minimal support within the community." See Gross v. Commissioner of Internal Revenue, 272 F.2d 333, 339 (6th Cir. 2001).

   - Dr. Poser now claims, contrary to his deposition that he does not know whether other doctors have accepted his theory, that other doctors have in fact utilized his criteria. He gives no example of who this might be or the circumstances. None of the attachments to his declaration support paragraph 6. In fact, Dr. Poser's theory has not been accepted in the relevant medical community; a fact he admitted in deposition.

3. In paragraph 7, Dr. Poser claims that Mr. Jeffries fits the diagnostic criteria for CFS based on printouts from the CDC and a NIH website. A review of Dr. Poser's testimony

illustrates that based on the information available to him, Mr. Jeffries could not possibly have met these criteria.

- The CDC criteria for chronic fatigue syndrome requires that the person "have severe chronic fatigue of six months or longer duration." *See* CDC printout attached to Poser declaration.

- Dr. Poser admitted in deposition that he did not determine what the duration of Mr. Jeffries' symptoms were. He testified **"as I mentioned before, Mr. Jeffries had mentioned that the symptoms were intermittent. <u>I never did discover what the shortest or longest period of time was, and I don't remember if he testified to that or not</u>. I just don't know. But he did mention the fact that they were intermittent."** *See* Poser deposition at p. 53 (emphasis added).

- According to the CDC criteria attached by Dr. Poser, in addition to fatigue a patient must concurrently have four or more of the following symptoms: substantial impairment in short term memory or concentration, sore throat, tender lymph nodes, muscle pain, multi-joint pain without swelling or redness, headaches of a new type, pattern or severity, unrefreshing sleep, and post-exertional malaise lasting more than 24 hours.

- Dr. Poser's records do not document these symptoms. The history taken during his initial examination of Jeffries is only 1-1/4 page long. He simply writes down Mr. Jeffries' complaints. He then claims that he relies upon other records sent to him. These records include:

    - 10/2/98 report to Nunlist-Young from U.C. Medical Associates

    - Two page report from Starr M. Ford to Nunlist-Young from Alliance Primary Care

    - 10/13/98 office notes of Luggen

    - 10/27/98 report to Nunlist-Young from Donald Jacobs of Opthmalic Center

    - Report from Joseph Michalski at University of South Alabama to Luggen

- None of the reports relied upon by Dr. Poser make any reference to memory or cognitive disturbance.

- Dr. Michalski's report says that the results of the neurologic exam reveal that Jeffries' cognitive function and cranial nerves were normal.

- 3 -

- Only two of the reports mention fatigue and of these, only the 10/2/98 letter to Dr. Nunlist-Young mentions complete fatigue while Michalski's letter mentions "some fatigue" during episodes.

- Dr. Ford's 10/9/98 letter notes that Jeffries generally sleeps well and Michalski's 1/26/99 letter says that he sleeps well and awakes feeling rested except during the most severe attacks. The records relied upon by Dr. Poser and even his own examination fail to meet the CDC criteria attached to the supplemental declaration.

4.   In his report, Poser attempted to rely upon the SPECT and PET scan results. In paragraph 9 of his declaration and in his deposition testimony Poser emphasizes that his diagnosis is <u>not</u> based on the PET and SPECT scans.

- In deposition Poser says that the use of SPECT or PET scans to diagnose CFS is "quite beyond my expertise." *See* Poser deposition at p. 23.

5.   In Paragraph 10, Dr. Poser offers the opinion that vaccines are capable of triggering the onset of CFS and cites an article from the CDC in support. Review of attachment 1 to his declaration is the CDC website referencing chronic fatigue syndrome. Nowhere in the article does it mention Hepatitis B vaccinations. Neither does the article state nor even imply that chronic fatigue syndrome can be caused by any vaccination, let alone the vaccination at issue in this case.

- The National Institute of Health article does not support this hypothesis either. The only reference to causation is the claim that "for many people CFS begins after a bout with a cold, bronchitis, hepatitis or an intestinal bug." Being sick with Hepatitis is not the same as receiving the Hepatitis B vaccination. There is no causal connection supported by Dr. Poser's reference to the NIH article.

- Instead, Dr. Poser claims that it is a well recognized axiom that anything the disease can cause can also be caused by the vaccination for that illness. Dr. Poser cites no support other than his claim that he has published on this issue as evidence. The opinion that CFS can be caused by the Hepatitis B vaccination must be supported by more than just the speculation of an "expert." "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *See General Electric v. Joiner*, 522 U.S. 136, 146 (1997). Here

>there is not even any data from which to start: there is only opinion.
>Dr. Poser's claim that he has published on this "axiom," without reference to the actual publications or evidence of any peer-reviewed literature does not meet Plaintiff's burden under *Daubert*.

### III. Dr. Poser's Opinion Is Not Reliable Under *Daubert*

Dr. Poser has attached three other articles, one of which was written by him and none of which support a causal connection between the Hepatitis B vaccination and chronic fatigue syndrome.

The article by Dr. Poser attached as Exhibit 3 to his declaration makes no mention of Hepatitis B vaccinations. The intent of the article is to discuss the differential diagnosis between chronic fatigue syndrome and multiple sclerosis. It does not support in any manner Plaintiff's theory of causation. As such, it is not admissible under *Daubert*.

Similarly, the article by P. H. Levine contains no reference to any alleged causation between the Hepatitis B vaccine and chronic fatigue syndrome. The article does definitively state that chronic fatigue syndrome is a diagnosis of exclusion. It reads "since the current CDC case definition . . . emphasizes that medical evaluation is required for the diagnosis of CFS, it is important for investigators not only to specify what case definition has been used for their studies, but also to describe the precise evaluation used in excluding other medical or psychiatric conditions associated with fatigue."

>Dr. Poser has not met this criteria. Dr. Poser in fact disagrees that CFS is a diagnosis of exclusion. *See* Poser deposition at pp. 54-55. The article apparently relied upon by Poser says exactly opposite. It is clear that Poser has not adequately excluded other diagnoses. He also appears to be operating under less than complete information.

When questioned regarding the possible diagnosis of somatoform disorder, Poser dismissed the possible diagnosis. He was questioned:

> Q: Similar but not quite as severe, potentially not as severe of a mental disease as somatization disorder; is that right?
>
> A: You have to find a reason for that. You have to find an event or . . . I would say an exaggeration of symptoms, and if I were nice I would say an extension of symptoms. In other words, the patient has numbness in his right hand but he complains of numbness in his entire right side. . . .
>
> Q: Putting that aside for the moment, somatization disorder can also be a mental disorder in which one converts some mental difficulties or some personality difficulties into physical symptoms, correct?
>
> A: Yes.
>
> Q: And that --
>
> A: However --
>
> Q: -- That is an identifiable disease by objective testing; is it not by neuropsychological testing?
>
> A: This is a much better way of doing it. The patient says they can't walk and you think it's a somatization. You hypnotize them and then you can show that under hypnosis you can do a normal examination. . . . However, you have to remember that when there is somatization, as a general rule, it's very dramatic. This ain't dramatic. Here's a guy who can't work. He's tired all the time. He can't remember anything. He can't add 2+2. There is nothing dramatic about that. The somatization is, I can't walk.

*See* Poser depo. at p. 59.

In other words, Dr. Poser argued that someone who said they cannot walk but really could would be demonstrating somatization. He argued that it would be possible to test this claim under hypnosis especially when this person actually could walk. In this case Mr. Jeffries does not even need to be hypnotized. He clearly can walk. Yet he reported in an article appearing in the 3/22/99 edition of *Insight* that he was unable to walk. The article discussed Mr. Jeffries and stated:

> One of them was Eric Jeffries, a former Fullbright scholar at Cambridge and a young father on his way to the top of the banking industry. He tells *Insight* that he was vaccinated prior to a tropical vacation but four days later began

> experiencing severe auto-immune dysfunctions ranging from fever, headaches and extreme pain to rashes and gastrointestinal troubles. He immediately thought of the vaccine, but a phone call to his doctor assured him the vaccine is not associated with adverse reactions. As his condition deteriorated, he was tested for everything from rheumatoid arthritis to fibromyalgia and AIDS. Finally, a doctor seconded his suspicion that, whatever the disorder, it had been triggered by the vaccine. <u>Today no longer able to work or even to walk,</u> Jeffries is still looking for answers.

See Exhibit 2.

Dr. Poser gives the example of somatization as someone who claims they cannot walk when they really can. He describes someone with somatoform disorder as someone who is prone to exaggeration of symptoms. Mr. Jeffries is exactly this. He reports during a magazine article interview that he is no longer able to walk when in fact he can. Under Dr. Poser's own example, this is somatization.

Finally, the Gherardi article does not draw any conclusion between the Hepatitis B vaccination and chronic fatigue syndrome. This article in no way supports or even relates to the hypothesis posed by Dr. Poser.

## IV.  Conclusion

Dr. Poser's February 5, 2004 declaration does not support Plaintiff's burden of proof under *Daubert*. There must be a reasonable scientific connection between the opinions of the expert and the data upon which he relies. The articles submitted by Dr. Poser do not support his hypothesis that a Hepatitis B vaccination can result in chronic fatigue syndrome. He points specifically to an article from the CDC that he claims recognizes that vaccines in general are capable of triggering the onset of chronic fatigue syndrome. Nowhere in the attachment is a connection made between vaccinations and chronic fatigue syndrome. Moreover, Dr. Poser's deposition demonstrates as a threshold matter that his diagnosis of chronic fatigue in general is not met. The medical records relied upon by Dr. Poser do not demonstrate his primary criteria

under his own CFS diagnosis.  Dr. Poser has made no attempt to determine the duration of Mr. Jeffries' alleged fatigue and the contemporaneous records he relied upon do not report any major memory cognitive problems.  Although some of the reports reference fatigue, the description of the fatigue does not appear to meet the CDC criteria of severe chronic fatigue lasting six months or longer.  Mr. Jeffries himself admitted that his symptoms are intermittent and Dr. Poser made no attempt to determine duration.  Dr. Poser also departs from the generally accepted standards of the medical community in his disbelief that CFS is a disease of exclusion.  He makes his claim despite his admission that all of the symptoms he looks for are subjective and that there would be no objective physiological findings to support it.  Dr. Poser's opinion is unreliable and must be excluded.

                Respectfully submitted,

                s/Amy Gasser Callow
                William R. Ellis (0012279)
                Peter M. Burrell (0044139)
                Amy Gasser Callow (0063470)
                Wood & Lamping LLP
                600 Vine Street, Suite 2500
                Cincinnati, OH  45202-2491
                (Telephone) (513) 852-6000
                (Facsimile) (513) 852-6087

                Attorneys for Defendants
                Massachusetts Casualty Insurance Company
                and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 24th day of February 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                  s/Amy Gasser Callow
                                                  Amy Gasser Callow, Esq.

198604.1