JOHN M. ESTES AND LISA ANN ESTES, Plaintiffs-Appellants v.KING'S DAUGHTERS MEDICAL CENTER, Defendant-Appellee.
No. 01-5627

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

59 Fed. Appx. 749; 2003 U.S. App. LEXIS 4198

March 6, 2003, Filed

NOTICE:

[**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

PRIOR HISTORY: ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY. 99-00081. Wilhoit, Jr. 05-10-01.

DISPOSITION: Affirmed.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiffs, a patient and his spouse, sued defendants, a medical center (MC) and a doctor, for medical malpractice. The MC moved for summary judgment and to strike an affidavit filed by plaintiffs. The United States District Court for the Eastern District of Kentucky granted both motions. Plaintiffs appealed.

OVERVIEW: Plaintiffs alleged the doctor committed malpractice by failing properly to diagnose and treat the patient's perforated ureter. They alleged the MC was negligent because, in violation of its policies, the MC's nurses failed to record the patient's vital signs on a chart the doctor checked when reviewing the patient's condition. Arguing that plaintiffs failed to present expert testimony permitting a finding of malpractice, the MC moved for summary judgment. Plaintiffs then filed an affidavit from a previously undisclosed nursing expert. The district court properly struck that affidavit. The court had discretion to exclude the affidavit under either Fed. R. Civ. P. 16 or Fed. R. Civ. P. 56(f) because disclosure of the expert witness was untimely despite repeated extensions of discovery deadlines, consideration of the affidavit would prejudice the MC, the filing of a Rule 56(f) motion did not guarantee receipt of a deadline extension, and plaintiffs' Rule 56(f) motion was, itself, untimely. In addition the expert's affidavit would not preclude summary judgment, since she was not qualified to offer an opinion that the nurses' omission proximately caused plaintiffs' losses.

OUTCOME: The court affirmed the judgment of the district court.

CORE TERMS: summary judgment, nursing, expert testimony, discovery, deadline, chart, temperature, disclosure, untimely, patient, deposition, scheduling, graphic, proximate cause, medical malpractice, abuse of discretion, doctor, standard of care, staff, vital, departure, summary judgment motion, plaintiffs filed, departed, disclose, surgery, expert witness, interpose, motion in limine, proximately

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Trials: Pretrial Conferences
[HN1] Fed. R. Civ. P. 16 grants district courts broad discretion to enforce their scheduling orders.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN2] Fed. R. Civ. P. 56(f) allows, but does not require, a district court to postpone consideration of a motion for summary judgment to allow a party to conduct additional discovery.

Civil Procedure: Discovery Methods: Expert Witness Discovery
[HN3] The United States Court of Appeals for the Sixth Circuit and other courts have held that district courts have broad discretion to exclude untimely disclosed expert-witness testimony. Accordingly, a district court's decision whether to consider an untimely affidavit is reviewed for abuse of discretion.

Civil Procedure: Sanctions: Discovery Misconduct
[HN4] The source of the district court's discretion to exclude untimely disclosed expert-witness testimony is Fed. R. Civ. P. 16, which grants district courts wide latitude to impose sanctions for failure to comply with their scheduling orders. The district court has discretion to impose whatever sanction it feels is appropriate, under the circumstances.

Civil Procedure: Appeals: Standards of Review: Abuse of Discretion
[HN5] An abuse of discretion is found only when the appellate court is left with a definite and firm conviction that the court below committed a clear error of judgment.

Civil Procedure: Sanctions: Discovery Misconduct
Civil Procedure: Discovery Methods: Expert Witness Discovery
Civil Procedure: Trials: Pretrial Conferences
[HN6] The alleged importance of the proposed expert testimony does not override the district court's power to enforce its scheduling orders, although the importance of the testimony is a factor the United States Court of Appeals for the Sixth Circuit considers.

Civil Procedure: Sanctions: Discovery Misconduct
Civil Procedure: Trials: Pretrial Conferences
[HN7] The importance of proposed testimony cannot singularly override the enforcement of local rules and scheduling orders.

Civil Procedure: Sanctions: Discovery Misconduct
[HN8] A federal court may sanction an unexcused failure to designate a witness by precluding testimony without first determining how badly the party needs the witness.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN9] The filing of a Fed. R. Civ. P. 56(f) motion does not guarantee the movant additional time to conduct a search for expert witnesses to support a theory of liability allegedly developed after the deadline for expert disclosures.

Civil Procedure: Summary Judgment: Supporting Papers & Affidavits
[HN10] Ordinarily, a Fed. R. Civ. P. 56(f) motion is appropriate when a defendant files a summary judgment motion before the close of discovery or, if expert evidence is involved in the motion, prior to the date for expert disclosures.

Civil Procedure: Pleading & Practice: Motion Practice Generally: Time Limitations
[HN11] A plaintiff's opposition to a motion for summary judgment is untimely under U.S. Dist. Ct., W.D. Ky., R. 7.1(c)(1) if it is filed after the 15-day period in which to respond to a motion for summary judgment has expired.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN12] The United States Court of Appeals for the Sixth Circuit has held that the following factors are relevant to determining whether a district court's denial of a Fed. R. Civ. P. 56(f) motion was an abuse of discretion: when the appellant learned of the issue that is the subject of the desired discovery; whether the desired discovery would have changed the ruling; how long the discovery period lasted; whether the appellant was dilatory in its discovery efforts, and whether the appellee was responsive to discovery requests.

Civil Procedure: Trials: Pretrial Conferences
Civil Procedure: Appeals: Standards of Review: Standards Generally

[HN13] Adherence to reasonable deadlines is critical to restoring integrity in court proceedings. The United States Court of Appeals for the Sixth Circuit will not lightly disturb a court's enforcement of those deadlines.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN14] A federal appeals court reviews de novo a district court's grant of summary judgment.

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN15] Summary judgment is proper if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN16] In reviewing a district court's grant of summary judgment, a federal appeals court draws all justifiable inferences in the light most favorable to the nonmoving party.

Evidence: Witnesses: Expert Testimony
Torts: Malpractice Liability: Healthcare Providers
Torts: Negligence: Proof of Negligence: Res Ipsa Loquitur
[HN17] Under Kentucky law, there is a general rule that negligence and proximate cause in medical malpractice cases must be established by expert testimony. The rule is subject to a few limited exceptions, such as cases in which the negligence is so apparent that a layman with general knowledge would have no difficulty recognizing it. Similarly, the doctrine of res ipsa loquitur can apply if the particular injury is the kind that a jury could reasonably find would not occur in the absence of negligence, such as a case where a surgical instrument is left inside a patient's body following surgery.

Torts: Negligence: Duty: Misfeasance & Nonfeasance
Torts: Negligence: Proof of Negligence
[HN18] The United States Court of Appeals for the Sixth Circuit has stated that a standard operating procedure is relevant in determining whether or not a defendant was negligent, but it does not necessarily create or define the precise scope of duty running from the defendant to the plaintiff.

Torts: Malpractice Liability: Healthcare Providers
[HN19] A defendant's failure to follow a hospital's procedures alone does not constitute negligence per se.

COUNSEL: For JOHN M. ESTES, LISA ANN ESTES, Plaintiffs - Appellants: William V. DePaulo, Ross & DePaulo, Hurricane, WV.

For KING'S DAUGHTERS' MEDICAL CENTER, Defendant - Appellee: Carl D. Edwards, Jr., Van Antwerp, Monge, Jones & Edwards, Ashland, KY.

JUDGES: Before: BOGGS, SILER, and GIBBONS, Circuit Judges.

OPINIONBY: JULIA SMITH GIBBONS

OPINION:
[*749] Before: BOGGS, SILER, and GIBBONS, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Plaintiffs-appellants John and Lisa Estes sued defendants King's Daughters Medical Center ("KDMC") and Dr. Stephen Edge for medical malpractice. KDMC moved for summary judgment claiming that plaintiffs had failed to present expert testimony permitting a finding of medical malpractice. Nine months after[**2] expert reports were due pursuant to the district court's scheduling order, and one month after the Esteses' response to the summary judgment motion was due, the Esteses submitted an expert affidavit that they claim creates a genuine issue of material fact as to whether KDMC is liable for medical malpractice. The district court granted KDMC's motion to strike this affidavit[*750] as untimely and granted its motion for summary judgment. n1

- - - - - - - - - - - - - - Footnotes- - - - - - - - - - - - - - - - -



n1 Edge did not seek summary judgment in the district court and remains a party in the action currently pending in the Eastern District of Kentucky. The district court action has been stayed pending resolution of this appeal.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

The Esteses appeal, arguing that the district court abused its discretion in striking the affidavit and that, with or without the disputed affidavit, there exists a genuine issue of material fact for trial. For the reasons set forth below, we affirm the judgment of the district court on both issues.

I. Facts

The parties do not dispute the district court's[\*\*3] statement of the relevant facts. As the district court stated, on May 27, 1998, plaintiff John Estes ("Estes") experienced lower left flank pain at work and was taken to the KDMC emergency room by his employer. There, Edge, a urologist, examined Estes and ordered his admission to the hospital. Estes was diagnosed as having a kidney stone. After twenty-four hours, he had not passed the stone. Therefore, on May 28, 1998, Edge performed surgery to remove the kidney stone and insert a ureteral stent. Estes remained at KDMC for the following three days, until May 31. On May 30 or 31, the ureteral stent accidentally became dislodged, necessitating Edge's removal of it.

On May 31, Estes's condition had not significantly improved, and his wife, Lisa Estes, insisted that he be transferred to St. Mary's Hospital in Huntington, West Virginia, where he was treated by another urologist, Dr. William Bloch. Bloch discovered that Estes's left ureter had been perforated and diagnosed Estes as experiencing sepsis and acute renal failure. At St. Mary's, another stent was inserted. Estes remained there until June 15 and was then readmitted from June 25 to July 2 for the placement of a drainage tube into [\*\*4]his left kidney. Thereafter, Estes returned to St. Mary's on a weekly basis for follow-up examinations. The kidney drain was later removed, but Estes continued to see Bloch twice annually. At his deposition, Estes testified that he continues to experience back and flank pain that interferes with his work.

The thrust of the Esteses' medical malpractice claim is that the defendants were negligent in failing to diagnose and treat Estes's ureteral perforation. As to KDMC, the plaintiffs' theory of liability is that KDMC nursing staff negligently failed to follow procedures for recording patients' vital signs, making his condition less likely to be diagnosed and proximately causing his injuries.

KDMC policy requires nursing personnel to record each patient's vital signs, including temperature, once every shift, and to transfer the temperature to the graphic chart. This policy was not followed in Estes's treatment. On May 30, one day before Estes's transfer to St. Mary's, his temperature spiked three times -- 102 [degrees] at 12:45 a.m., 101.4 [degrees] at 2:00 a.m., and 101.8 [degrees] at 8:50 p.m. These temperatures were recorded on Estes's bedside chart, but were not transferred[\*\*5] to the graphic chart retained at the nurses' station. Edge did not consult the bedside chart. In his deposition, Edge stated that he relies instead on the graphic chart in order to monitor patients' vital signs. Estes's graphic chart did not indicate that his temperature had risen above 101 [degrees] on May 30. Edge also testified that, if he had seen that Estes's temperature was 102 [degrees], he would have made further inquiries into Estes's physical condition.

II. Procedural History

The Esteses brought suit on May 21, 1999, alleging medical malpractice against [\*751] KDMC and Edge. They alleged that both KDMC and Edge were negligent for failing to diagnose and treat Estes properly. n2



- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 Plaintiffs also claimed that KDMC was negligent in hiring, supervising, and retaining Edge. However, they failed to respond to KDMC's motion for summary judgment as to this claim, and the district court granted summary judgment to KDMC. The negligent hiring, supervision, and retention claim is not raised in this appeal.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[**6]

On August 31, 1999, the district court entered a scheduling order requiring plaintiffs to disclose their expert witnesses by February 28, 2000. Upon plaintiffs' request, the district court extended the deadline twice, first until March 31, 2000, and finally until June 22, 2000. On June 22, 2000, plaintiffs filed the reports of their medical expert, Dr. Floyd Fried; their first nursing expert, Jan Ramey; and their economist, Daniel Selby.

During the proceedings, the district court issued two orders to show cause to plaintiffs regarding their expert disclosures. The first order, entered May 10, 2000, noted that plaintiffs had failed to comply with the scheduling order requiring them to disclose their experts by March 31, 2000, and had also failed to respond to defendants' joint motion to extend defendants' expert disclosure deadline, which the scheduling order set for April 30, 2000, thirty days after plaintiffs' disclosure. In response to the first order to show cause, plaintiffs requested and received the extension of time until June 22, 2000.

The second show-cause order was entered October 19, 2000, and was prompted by defendants' motion in limine to exclude Jan Ramey's testimony, [**7] filed July 10, 2000. The court stated in the order that defendants sought exclusion of Ramey's testimony because her opinions were "couched only in the terms of possibility rather than probability." The court also observed that Ramey's report indicated that she needed additional documentation to support her theories of negligence and that plaintiffs had made no effort to obtain that documentation. Finally, the court's order pointed out that plaintiffs' response to the motion in limine asked the court to defer evaluation of Ramey's expected testimony until discovery closed and that, although discovery had closed on August 15, 2000, plaintiffs had provided no additional response to the motion. While the record does not indicate that a response to the second show-cause order was filed, the district court on November 20, 2000, denied the motion as premature, giving defendants the right to renew it after the close of discovery. Although discovery had previously closed on August 15, 2000, on November 8, 2000, the district court had entered an amended scheduling order with a new discovery deadline of December 15, 2000, and a new dispositive motion deadline of February 15, 2001. No new[**8] expert disclosure deadlines were set.

KDMC filed a motion for summary judgment on February 5, 2001, arguing that summary judgment was proper because of plaintiffs' failure to produce expert testimony regarding KDMC's medical malpractice. Plaintiffs filed a response on February 22, 2001, which incorporated a Rule 56(f) motion to stay consideration of the motion for summary judgment pending plaintiffs' filing of an affidavit from a nursing expert. Along with their response, plaintiffs filed an affidavit of their counsel that stated why they had not procured additional testimony from a nursing expert at an earlier date. Counsel's reason was that "'neither I nor plaintiffs had any knowledge, prior to Dr. Stephen Edge's November 20, 2000 deposition, n3 that the [*752] doctor would seek to interpose the negligence of KDMC as a bar to recovery from him in this case." At his deposition, Edge had stated that he relies on graphic charts to determine patients' vital signs and that Estes's temperature was not included on his graphic chart for May 30, 1998.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n3 The deposition was actually taken November 30, 2000, according to the docket sheet.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[**9]

On March 5, 2001, defendants filed a reply to plaintiffs' opposition to summary judgment. On March 21, 2001, plaintiffs filed the affidavit of Vicki Turner, a nursing expert who had not previously been disclosed. In her affidavit, Turner stated that (1) KDMC personnel responsible for documenting Estes's vital signs departed from the standard of care for nursing professionals by failing to plot his temperatures on a graphic chart; and (2) this failure was a proximate cause of Estes's urosepsis and acute kidney failure on May 31, 1998. On March 22, 2001, defendants moved to strike the Turner affidavit as untimely. The district court issued an order on May 10, 2001, in which it granted KDMC's motion for summary judgment, KDMC's motion to strike the Turner affidavit, and KDMC's motion in limine to exclude the testimony of Jan Ramey, the first nursing expert. In its order, the district court stated that it had "issued or approved no fewer than five Scheduling Orders so as to establish deadlines for pretrial activity," the most recent of which "directed plaintiffs to disclose their expert witnesses by June 22, 2000." Plaintiffs filed a timely notice of appeal on May 14, 2001. At issue[**10] are (1) the district court's refusal to consider the Turner affidavit; and (2) the district court's grant of summary judgment in favor of KDMC. n4

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 At oral argument, counsel for appellants also discussed the district court's decision not to consider Ramey's testimony, apparently arguing that it was an abuse of discretion. The exclusion of Ramey's affidavit, however, was not properly raised as an issue for review. In any event, the district court did not abuse its discretion in excluding Ramey's testimony as speculative.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

III. Analysis

A. Turner Affidavit

It is undisputed that plaintiffs did not disclose Turner as an expert witness at any time prior to the filing of her affidavit on March 21, 2001. This date was nine months after the deadline for plaintiffs' expert disclosures, over three months after the last deadline for completing discovery, six weeks after the filing of the summary judgment motion, and almost two years after the filing of the lawsuit. It is also undisputed that plaintiffs filed[**11] the Turner affidavit after their response to KDMC's motion for summary judgment was due. The district court had discretion to exclude the affidavit under either Rule 16 or Rule 56(f) of the Federal Rules of Civil Procedure. Rule 16 [HN1] grants district courts broad discretion to enforce their scheduling orders. Rule 56(f) [HN2] allows, but does not require, a district court to postpone consideration of a motion for summary judgment to allow a party to conduct additional discovery. We hold that the court's decision to exclude the Turner affidavit was not an abuse of discretion.

In striking the affidavit, the district court stated:

If it was plaintiffs' intention to rely upon [Ms. Turner's] "report" as expert testimony of KDMC's liability, this should have been done in a timely manner, as dictated by the most recent Scheduling Order. Plaintiffs have had ample opportunity to develop their case against KDMC and have failed to do so within the time frame, established and repeatedly extended by the Court.

[*753] The district court's observation was correct. Turner plainly was not timely disclosed as an expert witness.

[HN3] The Sixth Circuit and other courts have held that district courts have [**12] broad discretion to exclude untimely disclosed expert-witness testimony. Pride v. BIC Corp., 218 F.3d 566, 578-79 (6th Cir. 2000) (upholding the exclusion of untimely expert-witness reports and affidavits); Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1446 (6th Cir. 1993) (noting that the district court "has the discretion to refuse the filing of untimely affidavits"); Sexton v. Gulf Oil Corp., 809 F.2d 167, 170 (1st Cir. 1987) (affirming preclusion of testimony due to untimely designation of expert witness). Accordingly, a district court's decision whether to consider an untimely affidavit is reviewed for abuse of discretion. Hooks v. Hooks, 771 F.2d 935, 946 (6th Cir. 1985).

[HN4] The source of the district court's discretion in this matter is Rule 16 of the Federal Rules of Civil Procedure, which grants district courts wide latitude to impose sanctions for failure to comply with their scheduling orders. Clarksville-Montgomery County School System v. United States Gypsum Co., 925 F.2d 993, 998 (6th Cir. 1991). The district court has discretion to impose whatever sanction it feels is appropriate, [**13] under the circumstances. Advisory Committee notes to Fed. R. Civ. P. 16(f) (1983); see also United States v. Rayco, Inc., 616 F.2d 462, 464 (10th Cir. 1980) (broad powers of enforcement inure to a pretrial order limiting issues to be tried and evidence to be introduced).

[HN5] An abuse of discretion is found only when the appellate court is left with "a definite and firm conviction that the court below committed a clear error of judgment." Bill Call Ford, Inc. v. Ford Motor Company, 48 F.3d 201, 209 (6th Cir. 1995). In a case such as this, in which the district court granted repeated extensions at plaintiffs' request, allowed discovery to proceed for more than eighteen months, and explicitly reminded plaintiffs, by issuing two show-cause orders, of the necessity of expert testimony, it was not a "clear error of judgment" for the district court to exclude the Turner affidavit as untimely.

The Esteses argue that the affidavit should have been considered because its consideration would not have prejudiced KDMC, because the affidavit was very important to their case, and because they filed a Rule 56(f) motion. However, none of these arguments demonstrates[**14] that the district court abused its discretion.

First, plaintiffs' argument that KDMC would not be prejudiced by consideration of the Turner affidavit is unpersuasive. KDMC was proceeding with discovery and preparing its defense in the case on the assumption that the Esteses were not alleging nursing negligence. This assumption was reasonable, in light of plaintiffs' failure to provide competent nursing expert testimony before the close of discovery.

Second, [HN6] the alleged importance of the proposed expert testimony does not override the district court's power to enforce its scheduling orders, although the importance of the testimony is a factor we consider. Turner's contribution is her opinion that the KDMC nursing staff departed from the applicable standard of care by failing to plot Estes's temperature readings on the graphic chart maintained at the nurses' station, and that this deviation was the proximate cause of plaintiff's injuries. While certainly Turner's opinion of a departure from the standard of care is useful to plaintiffs, it is doubtful that Turner, as a nursing expert, is qualified to give a medical opinion as to the proximate cause of Estes's injuries. See, e. [**15] g., Snelson v. Kamm, 745 N.E.2d 128, 142, 253 Ill. Dec. 354 (Ill. App. Ct. 2001) (noting [*754] that nursing expert lacked medical expertise to provide expert testimony regarding proximate cause); Arlington Mem'l Hosp. Found., Inc. v. Baird, 991 S.W.2d 918, 921 (Tex. App. 1999) (holding that nursing expert was qualified to give opinions regarding nursing negligence but was not qualified to give an opinion regarding medical causation, absent showing of special expertise). Thus, the Turner affidavit likely provides no basis for denial of KDMC's summary judgment motion.

Even if the Turner affidavit was sufficient to avoid summary judgment, it was not reversible error for the district court to strike the Turner affidavit. [HN7] The "importance of ... proposed testimony cannot singularly override the enforcement of local rules and scheduling orders." Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir. 1990) (decision to exclude expert witness testimony based on plaintiff's failure to timely designate experts was not abuse of discretion); Hull v. Eaton Corp., 263 U.S. App. D.C. 311, 825 F.2d 448, 452 (D.C. Cir. 1987) [HN8] (court may sanction unexcused failure[**16] to designate witness by precluding testimony "without first determining how badly the party needs the witness").

Third, [HN9] the filing of a Rule 56(f) motion does not guarantee plaintiffs additional time to conduct a search for expert witnesses to support a theory of liability allegedly developed after the deadline for expert disclosures. [HN10] Ordinarily, a Rule 56(f) motion is appropriate when a defendant files a summary judgment motion before the close of discovery or, if expert evidence is involved in the motion, prior to the date for expert disclosures. Here, however, the Rule 56(f) motion came after the expert disclosure and overall discovery deadlines. The Esteses had sought earlier extensions, but failed to object to or request an extension of the court's June 22, 2000, deadline for plaintiffs' expert disclosures. Moreover, this Rule 56(f) motion, filed with the Esteses' [HN11] opposition to KDMC's motion for summary judgment, was itself untimely under Local Rule 7.1(c)(1) of the United States District Court for the Western District of Kentucky, being filed after the fifteen-day period in which to respond to a motion for summary judgment had expired.

[HN12] The Sixth Circuit has held that the following[**17] factors are relevant to determining whether a district court's denial of a Rule 56(f) motion was an abuse of discretion: when the appellant learned of the issue that is the subject of the desired discovery; whether the desired discovery would have changed the ruling; how long the discovery period lasted; whether the appellant was dilatory in its discovery efforts, and whether the appellee was responsive to discovery requests. Plott v. General Motors Corp., Packard Elec. Div., 71 F.3d 1190, 1196-97 (6th Cir. 1995) (citing cases). Consideration of these factors in this case fails to indicate that the district court abused its discretion. The Esteses' Rule 56(f) motion came months after the deposition of Edge, which plaintiffs state alerted them to their need for additional expert testimony. In the affidavit accompanying the Rule 56(f) motion, plaintiffs failed to provide a satisfactory reason for their delay. They argue that they had no knowledge that Edge "would seek to interpose the negligence of KDMC as a bar to recovery from him in this case" and that "the defendant doctor did not interpose the hospital's negligence as a defense in any pleading prior to his deposition.[**18] " Yet, it was plaintiffs' decision to postpone the deposition of defendant Edge until near the end of discovery. Further, plaintiffs' disclosure of Ramey as an expert is a clear indication that plaintiffs were aware of the need for a nursing expert at a much earlier time. Ramey even stated in her report that, while she was unable to give an opinion of nursing negligence, plaintiffs should [*755] obtain KDMC policies to determine whether the hospital complied with its own rules. Plaintiffs did not request such policies during discovery. Finally, plaintiffs were aware of the facts giving rise to the Turner opinion, i.e., the failure to note temperature on the graphic chart, at the point they obtained Estes's medical records, likely prior to or near the time of inception of the case.

The district court did not explicitly refer to plaintiffs' Rule 56(f) motion in its May 10, 2001, order. Its failure to do so cannot support a claim of abuse of discretion in excluding the Turner affidavit. Here, the district court demonstrated willingness to extend deadlines several times at plaintiffs' request, and its opinion includes several reasons for declining to consider the late-filed affidavit. As[**19] stated by the Fifth Circuit, [HN13] "adherence to reasonable deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines and find no reason for doing so here." Geiserman, 893 F.2d at 792.

B. Grant of Summary Judgment

[HN14] We review de novo a district court's grant of summary judgment. Miller v. Am. Heavy Lift Shipping, 231 F.3d 242, 246 (6th Cir. 2000). [HN15] Summary judgment is proper "if the pleadings depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). [HN16] In reviewing the district court's grant of summary judgment, we draw all justifiable inferences in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

The district court granted summary judgment to KDMC because plaintiffs "failed to secure expert testimony against [KDMC] on the issues of both liability[**20] and causation." Because we also find that plaintiffs have failed to present expert testimony that KDMC was negligent and that its alleged negligence proximately caused Estes's injuries, we affirm the grant of summary judgment in favor of KDMC.

[HN17] Under Kentucky law, which applies in this case, there is a general rule that negligence and proximate cause in medical malpractice cases must be established by expert testimony. Morris v. Hoffman, 551 S.W.2d 8, 9 (Ky. App. 1977); Johnson v. Vaughn, 370 S.W.2d 591, 597 (Ky. 1963). The rule is subject to a few limited exceptions, such as cases in which the "negligence ... [is] so apparent that a layman with general knowledge would have no difficulty

recognizing it." Morris, 551 S.W.2d at 9. Similarly, the doctrine of res ipsa loquitur can apply if the particular injury is the kind that a jury could reasonably find would not occur in the absence of negligence, such as a case where a surgical instrument is left inside a patient's body following surgery. See, e.g., City of Somerset v. Hart, 549 S.W.2d 814 (Ky. 1977).

In this case, no exception to the general rule applies. [**21] Thus, plaintiffs bear the burden of providing competent expert testimony regarding the negligence of the KDMC nursing staff. None of plaintiffs' experts meets this burden. First, the testimony of nursing expert Jan Ramey should not be considered. The district court excluded Ramey's testimony because it "offered nothing more than a theory as to the possibility of KDMC's negligence," and plaintiffs did not appeal this decision. In any event, the Ramey testimony was not an expert opinion of either negligence or proximate cause. Second, the testimony of plaintiffs' expert Fried did not establish KDMC's negligence. Fried acknowledged that KDMC staff may have [*756] departed from hospital policies, but stated that "they were not negligent." Third, as discussed, the testimony of nursing expert Vicki Turner was properly excluded as untimely. Finally, Edge's testimony also fails to establish KDMC's negligence. Edge, a urologist, is not an expert on the standard of care applicable to nurses. In any event, his testimony fails to establish KDMC's negligence or proximate cause. Edge testified that Estes's temperature was not graphed on the chart, but that it was available to him on the bedside progress[**22] notes. As the district court observed, "Dr. Edge's conduct may be a departure from the standard of care and evidence of his own negligence, not that of KDMC." Therefore, plaintiffs have failed to provide expert testimony demonstrating KDMC's negligence or that any negligence of KDMC proximately caused injury to Estes.

The Esteses argue that expert testimony is not necessary in this case, because evidence that a hospital violated its policies shows that it departed from the standard of care. For this proposition, plaintiffs cite City of Somerset v. Hart, 549 S.W.2d 814 (Ky. 1977). In Somerset, a scalpel blade was left in a patient's abdomen following surgery, allowing the application of the res ipsa loquitur doctrine. Id. at 817. The Somerset court also noted that hospital policy required operating room staff to make a post-operation count of surgical instruments and to report any deficiency, and that no such report was made in that case. Id. at 816. Plaintiffs argue that "City of Somerset may be said to stand for the proposition that it was the departure from policy which informs the judgment that negligence was present, [**23] not the mere fact that the case involved a surgical instrument." However, it was the application of res ipsa loquitur in Somerset that rendered expert testimony unnecessary, not merely the departure from hospital policy.

The Esteses cite several other cases in support of their argument that expert testimony is unnecessary, including: Southeastern Kentucky Baptist Hospital, Inc. v. Bruce, 539 S.W.2d 286 (Ky. 1976) (per curiam), in which a doctor operated on the wrong patient; Keir v. United States, 853 F.2d 398 (6th Cir. 1988), in which a doctor failed to refer a patient to an ophthalmologist; and Downs v. United States, 522 F.2d 990 (6th Cir. 1975), in which an FBI agent shot the tires of a hijacked airplane, resulting in the hijacker's murder of the plane's pilot and others. Plaintiffs argue that in these three cases, the defendants' negligence was evidenced by their failure to follow policies. Therefore, they argue, demonstrating that KDMC employees failed to follow a hospital procedure is sufficient evidence of negligence, making expert testimony unnecessary.

However, this argument is unavailing. Southeastern Kentucky [**24] Baptist Hospital, in which the doctor performed surgery on the wrong patient, involved no expert testimony because negligence was uncontested; the defendants all acknowledged that they had a duty to check the identity of the patient by examining her identification bracelet, and that they failed to do so. 539 S.W.2d at 288. Keir also fails to support the Esteses' argument, in that the Keir plaintiffs did provide testimony from four expert witnesses. Additionally, Keir cannot be said to stand for the proposition that violation of hospital procedures is negligence per se. Instead, [HN18] the Sixth Circuit in Keir stated that "the standard operating procedure is relevant in determining whether or not [the defendant] was negligent, but ... it does not necessarily create or define the precise scope of duty running from [the defendant to the plaintiff]." Keir, 853 F.2d at 413-14. The court in Downs reached a similar conclusion, noting that the FBI internal hostage guidelines [*757] were relevant to determine the scope of the duty owed to hostages, but did not in themselves create such a duty. Downs, 522 F.2d at 1002 (agreeing[**25] with district court that failure to comply with FBI policy is not a basis for a finding of negligence per se).

In light of persuasive authority that [HN19] a defendant's failure to follow a hospital's procedures alone does not constitute negligence per se and plaintiffs' failure to provide competent expert testimony on the issues of negligence and proximate cause, the district court's grant of summary judgment in favor of KDMC was correct.

V. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of KDMC.