IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) : | CASE NO. C-1-02-351 |
| Plaintiff, | ) : | JUDGE BECKWITH |
| | | Magistrate Judge Hogan |
| v. | ) : | |
| CENTRE LIFE INSURANCE CO., | ) : | |
| Defendant. | ) | |

**PLAINTIFF'S EMERGENCY MOTION TO COMPEL THE PRODUCTION OF
OUTSTANDING DOCUMENTS AND INFORMATION**

**EMERGENCY HEARING REQUESTED**

The plaintiff, Eric L. Jeffries, pursuant to Fed. R. Civ. P. 33, 34, and 37, again seeks an order compelling defendant to produce relevant and discoverable information which defendant refuses to produce. Some of these requests for information have been outstanding since June 2002. As stated herein, an emergency hearing is required due to the approaching summary jury trial (set for April 7) and trial (set for April 19) scheduled in the case. A memorandum in support is attached.

Respectfully submitted,

OF COUNSEL

/s Michael A. Roberts
Michael A. Roberts, Esq. (0047129)

GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
(513) 621-6464

GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202
(513) 629-2799
(513) 651-3836 (fax)
email:mroberts@graydon.com
*Attorneys For Plaintiff*

**MEMORANDUM IN SUPPORT**

On March 8, 2004, plaintiff sent a letter to defendant's counsel outlining several discovery matters that require completion as soon as possible so that plaintiff may properly prepare for trial. (*See*, *Exhibit* 1). On March 11, 2004, defendant partially complied with the requests, but several material, discoverable and necessary requested items remain outstanding. (*See*, *Exhibit* 2). Plaintiff has exhausted extrajudicial means to resolve these final discovery disputes. (*See*, *Exhibit* 3).

I.  *Defendants' Financial Information*

Plaintiff requested defendants' financial information in June 2002, but it has not been provided. (*See*, *Exh. 1*). Specifically, plaintiff remains in need of defendant's:

- Annual and/or consolidated financial statements and the same material for DMS, defendant's agent, for the period 1999 to the present;

- All financial reports exchanged between DMS and Centre for the period 1999 to the present; and

- All budgets and financial reports relating to DMS' Centre Life block of business from 1999 to the present. *Id.*

In late February 2004, prior to the Court's decision denying defendant's motion for summary judgment on Mr. Jeffries' bad faith claim, plaintiff requested that defendant assemble the requested financial information and have it ready for production. Defendant did not respond.

By its response of March 11, 2004, the defendant remains unwilling to voluntarily produce this information: "we object to [your requests for financial information] and continue to stand by those objections." (*Exh. 2*). But this requested information is relevant, admissible,

2

discoverable and material to plaintiff's bad faith claim and request for punitive damages. Earlier in this litigation, Judge Hogan allowed the defendants to refrain from producing the requested financial information until after the Court decided the "inevitable motions for summary judgment."

It is elementary that defendant's financial condition is discoverable because the jury may consider defendant's financial condition when assessing the amount of the potential punitive damage verdict on plaintiff's bad faith claim. (*See, e.g.*, **United States v. Matusoff Rental Co.** 204 F.R.D. 396 (J. Rice, S.D. Ohio 2001). In **Matusoff** the Court reasoned:

> "As an initial matter, since the Plaintiff seeks to recover punitive damages on behalf of the aggrieved persons, evidence of the financial condition of the Defendants is highly relevant in this litigation. See, e.g., **City of Newport v. Fact Concerts, Inc.**, 453 U.S. 247, 270, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981) (noting that, under federal law, evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded ); **United States v. Big D Enterprises, Inc.**, 184 F.3d 924, 932 (8th Cir. 1999) (same). The overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages. See e.g., **Christy v. Ashkin**, 972 F. Supp. 253 (D.Vt. 1997); **Caruso v. The Coleman Co.,** 157 F.R.D. 344 (E.D.Pa. 1994); **CEH, Inc. v. FV "Seafarer**", 153 F.R.D. 491 (D.R.I. 1994), affirmed, 70 F.3d 694 (1st Cir. 1995); **Wauchop v. Domino's Pizza, Inc.,** 138 F.R.D. 539 (N.D.Ind. 1991); **Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc**., 130 F.R.D. 149 (D.Kan. 1990). <u>This Court finds those decisions to be persuasive and will follow them.</u> Therefore, the Plaintiff is entitled to discover evidence concerning the financial condition of the defendants, without making a prima facie showing that it is entitled to recover punitive damages on behalf of the aggrieved persons." (*emphasis added*).

This is still good law.

In defendant's March 11, 2004, letter defendant continues to refuse the production of this information and in support cites "**State Farm v. Campbell**, 123 U.S. 1513 (2003)." Because

3

this is an improper citation, it is presumed that defendant intended to cite *State Farm Mutual Automobile Insurance Company v. Campbell* 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). But that case not only doesn't stand for the proposition defendant suggests, it says <u>nothing</u> about the discoverability of a defendant's financial condition when faced with a potential punitive damage verdict. It is disengenious and contrary to defendant's counsel's duties as an officer of the Court to cite a Supreme Court case which says nothing about the subject at issue.

This requested information is discoverable and should be produced.

II.   <u>Back-Up Tapes</u>

The Court has been engaged in substantial proceedings concerning the parties' ongoing disputes about defendant's back-up tapes. Initially, the defendant contended that it searched the tapes and found nothing. That later was proven not true.

In October 2003, the Court ordered that that defendant undertake efforts to produce information, if any, stored on back-up tapes forthwith. (*See, Transcript of October 22, 2003, Telephone Conference with J Beckwith, p. 45*).

On December 12, 2003, defendant's counsel advised that by Christmas the defendants' may be in a position to host plaintiff's computer expert to observe the search for information contained on defendants' back-up tapes. Defendant never confirmed its readiness to review this information. Since Christmas, all of plaintiff's counsel's time (and all of plaintiff's resources) have been consumed by depositions, opposing defendant's motions for summary judgment, and opposing defendant' s *Daubert* motions. Unfortunately, as a result, plaintiff cannot afford to pay anyone to travel to Boston/Springfield to oversee the production of

4

information stored on the back-up tapes. Accordingly, although plaintiff has great misgivings with the procedure, plaintiff requested that defendant proceed to search the tapes and produce all information without a representative of plaintiff present. This circumstance does not alleviate defendant's production obligations – it cannot take advantage of its own conduct which has made this cause extraordinarily expensive.

Nonetheless, defendant's counsel oddly refuses to perform any search – despite the Court's order. This makes no sense. In June 2002, when this request was first made, defendant had an obligation to search the back-up tapes without plaintiff's expert present. That is what defendant is again being requested to do, but it won't because plaintiff doesn't have an extra $25,000 to engage an expert to oversee the production! Defendant should be requested to perform the search and produce all information relating to Mr. Jeffries at once.

III.    *Bad Faith Suits*

Defendant purportedly agreed on March 11, 2004, to produce the nine (9) case captions in which it and DMS have been sued for bad faith in the 6th Circuit (as identified in *Doc. 93*). But as of one week later, the information has still not been produced.

IV.    *Unproduced Surveillance Materials*

The parties agree that defendant is required to produce, but disagree on whether defendant has produced, the following bates labeled documents:

| | | |
|---|---|---|
| Claim 00266-00270; | Claim 01080; | Claim 01131-01132; |
| Claim 01897-01898; | Claim 01925-01927; | Claim 02132-02134; |
| Claim 02188-02190; | Claim 02196-02206; | Claim 02278; |
| Claim 02281-02282; | Claim 02371-02372; | Claim 02752; |
| Claim 02763-02768; | Claim 02819; | Claim 02822-02823; |
| Claim 02835; and | Claim 02902-02906. | |

5

The obvious and easy solution to this dispute is for defendant to again produce these Bates labeled documents, but defendant inexplicably refuses. (Interestingly, defendant had no hesitation in "reproducing other documents Bates labeled "DMS 0001 to DMS 00015"). Plaintiff asks that the Court order defendant produce (or as defendant would contend, reproduce) this information.

V.    *Copy of Administrative Service Agreement Between Centre and DMS*

A major focus in the presentation of the evidence at trial on the bad faith claim will be the relationship between the defendant and its agent, DMS. That relationship is governed by an Administrative Services Agreement. To date, plaintiff's counsel has only been permitted to see the document in the offices of defendant's counsel. Now that we are on the eve of trial, it is essential that the jury be able to examine the Agreement and that it finally be produced. Defendant refuses nonetheless to produce the Agreement.

VI.    *Follow-Up To Performance Evaluations Produced Late*

On November 18, 2003, as the result of a Court order compelling the production of such information, the defendant belatedly produced certain personnel files. In those documents there is reference made to "DMS' business performance goals set for the MCIC (aka Centre Life) block of business." (*See*, Exhibit 4, Bates label DMS 047-053). There is also reference made to information showing that these "goals" had been exceeded. *Id.* These comments and information go directly to the heart of plaintiff's bad faith claim:

- What are DMS' goals other than fairly evaluating a claim?
- How can that goal be exceeded?

6

Plaintiff has every right to this information to prove its bad faith claim. Defendant refuses to produce such information. (*Exh.* 2). Defendant cannot take advantage of its long, improper delay to continue to withhold these materials. Accordingly an Order compelling production is appropriate.

Also, as produced the personnel files were redacted without any discussion, notice, or explanation. Plaintiff has requested the opportunity to review the unredacted documents, but defendant refuses.

VII.   *Verified Responses*

This appears to no longer be a dispute because defendant has promised to produce a Verification page to defendant's responses to its Supplemental and Second Supplemental Discovery Responses "at [its] earliest opportunity." But in the intervening week, it has not.

VIII.   *Subpoenaed Materials*

In this case, defendant has issued many, many subpoenas to third parties. Plaintiff requested copies of all information recovered. Defendant has produced the documents recovered from just 2 of its subpoenas and apparently refuses to produce the balance.

Conclusion

Defendant's discovery conduct in this case has been extraordinary. It is a wonder that it has been sanctioned just $834. At times defendant has done things that are unthinkable. With this recent round of disputes the defendant, *inter alia*:

- (i)   is misleading about a Supreme Court decision concerning punitive damages;

- (ii)   refuses to produce information (back-up tapes) because Mr. Jeffries can't afford the prophylactic measure of overseeing the production;

7

(iii) refuses to (in its judgment) re-produce a couple dozen pages of surveillance material (that plaintiff contends has never been produced); and

(iv) refuses to make available for review unredacted copies of documents it produced in a redacted form without any advance or contemporaneous notice, agreement, or explanation.

The plaintiff needs all of the above discoverable information to fairly prosecute his claim and asks that the Court order its production forthwith.

                              Respectfully submitted,

| OF COUNSEL | /s Michael A. Roberts |
|---|---|
| | Michael A. Roberts, Esq. (0047129) |
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 511 Walnut Street, Suite 1900 |
| 511 Walnut Street | Cincinnati, Ohio 45202 |
| Cincinnati, Ohio 45202 | (513) 629-2799 |
| (513) 621-6464 | (513) 651-3836 (fax) |
| | email:mroberts@graydon.com |

**CERTIFICATE OF SERVICE**

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 17th day of March, 2004.

                              /s Michael A. Roberts