UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERIC L. JEFFRIES, : | |
| : | Case No. C-1-02-351 |
| Plaintiff, : | |
| : | (Judge Beckwith) |
| vs. : | (Magistrate Judge Hogan) |
| : | |
| CENTRE LIFE INSURANCE COMPANY, : | **DEFENDANT'S MOTION TO** |
| et al., : | **BIFURCATE** |
| : | |
| Defendants. : | |

    Now comes Defendant Centre Life Insurance Company and pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, respectfully requests that the Court bifurcate the trial and postpone adjudication of Plaintiff's bad faith claim and any entitlement to and amount of punitive damages until after adjudication of Plaintiff's breach of contract claim. Bifurcation is required in order to avoid prejudice to Defendant at the trial of this matter. Separation of the issues would also be conducive to judicial economy. If Plaintiff is not successful on his contract claim, there may be no need to go forward with the bad faith claim. Moreover, in light of the Trial Court's recent ruling that the burden of proof on the contract claim may have shifted to Centre Life, bifurcation is procedurally correct. Plaintiff should not be permitted to address his

bad faith claims unless and until it is determined that Centre Life had a contractual obligation and that it breached this obligation.  A Memorandum in Support of this Motion is attached.

Respectfully submitted,

s/Peter M. Burrell
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

## MEMORANDUM IN SUPPORT

**A.     Bifurcation Is Required To Avoid Extreme Prejudice To Centre Life.**

Following the Court's ruling on Centre Life's Motion for Summary Judgment, the only issues which remain in dispute with regard to Plaintiff's Complaint are his claim that Centre Life breached its insurance contract with him and his claim that such actions were done in bad faith. Plaintiff seeks an award of punitive damages if he is successful on the bad faith claim.  It is appropriate to sever consideration of Plaintiff's bad faith claim from the contractual claim.  In its March 3, 2004 oral ruling, the Court in effect held that Centre Life has the burden of proof with regard to Plaintiff's contract claim.  Plaintiff has argued that Centre Life has the burden to establish that he is disabled by a mental disorder and that he is not disabled by a physical cause.

Stated another way, it appears that the Court has ordered Centre Life to prove that Mr. Jeffries does not have a physical disability.[1]

Under Ohio law, an insured is required to establish a right to benefits under an insurance policy. Where there is an exclusion limiting coverage, the burden shifts to the insurer to prove that the exclusion applies. In this case, the Court has shifted the burden to Centre Life to prove that Mr. Jeffries does not have a physical disability when Mr. Jeffries has in fact never established any right to benefits under the policy. In light of this ruling, bifurcation of the breach of contract and bad faith claims is essential.

As a threshold matter, Centre Life has established that Mr. Jeffries has a mental disorder which would entitle him to benefits as provided by his policy. In accord with the policy provisions, Centre Life has paid Mr. Jeffries 24 months of benefits. Mr. Jeffries has argued that he does not have a mental disorder but instead suffers a physical malady which entitles him to continued benefits. The Court appears to have ruled that the burden to prove this physical disability does not rest with Mr. Jeffries, as required by the law in Ohio, but instead requires Centre Life to prove that Mr. Jeffries does not have a physical disability.

If the burden is on Centre Life to prove that Mr. Jeffries does not have a physical disability then the Court has in effect relieved the Plaintiff of his obligation of going forward on the contract claim. It appears that the contract claim burden has been shifted to Centre Life. If this is the case, the bad faith portion of the trial must be bifurcated from the presentation of any evidence on the contract. Plaintiff should not be permitted to put the cart before the horse and argue the bad faith claim before it even determines whether a contract issue exists.

---

[1] Centre Life has filed a Motion requesting clarification and reconsideration of this ruling.

Bifurcation of bad faith claims is appropriate where the insurance action involves disputes as to whether there was in fact coverage for a particular claim. *See Couch on Insurance* § 246:5; *Aetna Casualty Insurance Surety Company v. Nationwide Mutual Insurance Company*, 734 F. Supp. 204 (W.D. Pa. 1989) (motor vehicle insurer was entitled to bifurcation of trial on issues of insurer's liability to administrators of decedent's estate and insurer's alleged bad faith denial of coverage to driver of insured vehicle, due to substantial risk of prejudice to insurer from joining coverage and bad faith issues). Plaintiff's claim of bad faith stems from his allegation that he was entitled to payment of benefits for a physical disability. It would be extremely prejudicial to Centre Life to allow Plaintiff to go forward with his bad faith case before it even had an opportunity to present the contractual case. This is especially true where, as here, the Court has made the unusual ruling that Centre Life has the obligation to prove a negative, i.e., that Plaintiff does not have a physical disability, rather than leaving the burden with the insured to prove he does have a physical disability.

Plaintiff cannot be allowed to present his evidence of bad faith before it is even determined whether a contract claim should or should not have been paid. If Plaintiff is permitted to go forward with his bad faith claim before a contractual determination is made, this improperly assumes that Plaintiff was in fact entitled to contractual benefits. This improper assumption would be extremely prejudicial to Centre Life when it is already in a position where it must first prove that Plaintiff does not have a physical disability.

The presentation of evidence on the bad faith claim involves Plaintiff's claim for punitive damages. Punitive damages serve to punish. It is inconsistent with the entire nature of our legal system to allow evidence bearing only on punishment to be introduced before it has been determined whether the defendant should be punished at all. For example, evidence bearing

solely on punishment would never be admitted during the guilt determining phase of a criminal prosecution. The Federal Rules require that a separate sentencing hearing be held following an adjudication of guilt in a criminal trial. This is because "[m]uch of the information that is relevant to the sentencing decision may have no relevance to the question of guilt, or may even be extremely prejudicial to a fair determination of that question." *Greg v. Georgia*, 428 U.S. 153, 190 (1976) (opinion of Stewart, Powell and Stephens, JJ). It is no more justifiable to allow inflammatory evidence relevant only to the amount of punitive damages to affect a civil jury's determination of the other issues in the case.

### B. Bifurcation Is Correct As A Matter Of Procedural Due Process.

Also of prejudicial concern is the fact that, in this case, Plaintiff has requested information regarding Centre Life's finances. As a threshold matter, Centre Life stands by its objection to produce the financial information requested by Plaintiff. Although it has become standard procedure in cases seeking punitive damages for plaintiffs to attempt to introduce evidence of the defendant's financial condition, the Supreme Court's decisions in *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1983); *Honda Motor Company v. Oberg*, 512 U.S. 415 (1994); *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 523 U.S. 424 (2001), and now *State Farm Mutual Automobile Insurance Company v. Campbell*, 123 S. Ct. 1413 (2003) strongly suggests that it is time for courts to put a stop to this practice.[2] The courts' statements and analyses in those cases compels the conclusion that evidence of corporate financial condition is of minimal (if any) relevance to setting an appropriate punitive damages award and yet is extraordinarily

---

[2] Centre Life will file a separate Motion in Limine regarding the admissibility of the financial information requested by Plaintiff.

prejudicial.  Accordingly, such evidence should be excluded under Federal Rules of Evidence 402 and 403.

In *State Farm*, following the path set in previous rulings, the Supreme Court once more declined to add financial condition to the guideposts identified by the Supreme Court for evaluating the permissible size of a punitive damages award.  To the contrary, the court held that the lower court's reliance on "State Farm's enormous wealth" constituted "a departure from well-established constraints on punitive damages."  123 S. Ct. at 1525.  Accordingly, it squarely held that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award."  *Id.*  The three guideposts for evaluating the permissible size of a punitive damages award are:  (1) the degree of reprehensibility of the defendant's contact; (2) the ratio of punitive damages to the harm (or potential harm) to the plaintiff; and (3) the relationship between the punitive damages award and the legislatively established fine for comparable misconduct.  *See BMW of North America, Inc.*, 517 U.S. at 574-75.

The fact that the Supreme Court again rejected the inclusion of a financial condition as a guidepost is not surprising because the use of financial condition to justify a punitive damage award is affirmatively inconsistent with the three guideposts the Court has embraced.  With regard to the first guidepost, varying punishment with the defendant's wealth conflicts with the well established, constitutionally based principle that punishment should fit the offense.  *See BMW*, 559 U.S. at 575.  Put simply, the fact that a defendant has a high net worth does not make its conduct more egregious.  As to the second guidepost, the Supreme Court has expressly observed that the defendant's financial condition "bear[s] no relation to the awards reasonableness or proportionality to the harm."  *State Farm*, 123 S. Ct. at 1525.  Finally, consideration of net worth is even more inconsistent with the comparative fines guidepost

because neither the fines considered in *State Farm* and *BMW* nor most other criminal or administrative fines vary with the wealth of the defendant.

Setting aside the argument that information as to Centre Life's financial condition is not permissible, even if financial information is considered, it cannot be considered until a determination is made that punitive damages are warranted. Introduction of any financial information at the liability stage of the case would be extremely prejudicial. Bifurcation serves not only to advance the interests of the parties in having a fair and unbiased trial but also it can be argued that it is constitutionally correct. The Supreme Court has indicated that three factors should be considered in determining whether a requested procedure is required by due process: (1) the private interest affected by the requested procedure; (2) the risk of an erroneous deprivation of that interest presented by refusal to adopt the requested procedure; and (3) the interest of the opposing party, with due regard for any interest that the government may have in avoiding the burden associated with providing the requested procedure. *Connecticut v. Doehr*, 501 U.S. 1, 11 (1991); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Each of these factors weigh strongly in favor of the conclusion that bifurcation is required by due process.

There is no doubt that money is a cognizable interest under the due process clause and that Centre Life has a compelling interest in not being made to pay a judgment that has been infected by inflammatory evidence or distorted by manipulative misapplication of the constitutional limitation on punishment. *See State Farm Mutual Auto Insurance Company v. Campbell*, 123 S. Ct. 1513, 1520 (2003).

Second, there is no question that evidence of a defendant's wealth is highly prejudicial and that its admission should therefore be strictly controlled.

> It has been widely held . . . that the financial standing of the defendant is inadmissible as evidence in determining the amount of compensatory damages to

>be awarded. The rationale behind this general rule is sound. The design of compensatory damages is to make plaintiff whole, and [evidence of the defendant's financial condition] injects into the damage determination a foreign, diverting and distracting issue which may effectuate a prejudicial result.

*Geddys v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citations omitted); *see also e.g., Whiteley v. OKC Corp.*, 719 F.2d 1051, 1055 (10th Cir. 1983); *Blankenship v. Rowntree*, 219 F.2d 597, 598 (10th Cir. 1955); *Marvin Johnson PC v. Shoen*, 888 F. Supp. 1009, 1013 (D. Ariz. 1995). Where, as here, Mr. Jeffries has requested information regarding Centre Life's financial holdings, there is no question that introduction of such evidence during the contract phase of the case would be highly prejudicial. If it is determined that a contract claim was payable, the damages are limited to those required to compensate Mr. Jeffries. Any evidence regarding Centre Life's financial condition would be prejudicial where such financial condition does not address compensation in any way.

Third, bifurcation would unambiguously advance the interest of the parties, the Court, and the public in procedural fairness by reducing the risk of jury error in determining liability and the amount of compensatory damages. Moreover, bifurcation would neither impose additional costs on Plaintiff nor delay the proceedings in any material way because the proceedings on the amount of punitive damages would promptly follow a determination of liability on the insurance contract.

In short, the *Matthews/Doehr* analysis compels the conclusion that bifurcation is necessary to ensure Centre Life's right to procedural due process. In light of the U.S. Supreme Court's recent ruling in *State Farm* and its expression of concern about the inadequacy of procedural safeguards in punitive damages litigation, a bifurcated punitive damages trial is a constitutional imperative.

### C. Bifurcation Is Needed To Conserve Judicial Resources.

Finally, bifurcation will conserve judicial resources. Many of the issues underlying Plaintiff's bad faith claim may be resolved at the contract stage. Courts have recognized that where issues of coverage can be decided which may eliminate the issue of bad faith, bifurcation is appropriate. *Equitable Life Assurance Society v. Berry*, 212 Cal. App. 3d 832, 260 Cal. Rptr. 819 (6th Dist. 1989) (bifurcation so as to try issues of insurance coverage before that of an insurer's alleged bad faith was proper; interpretation of written instruments, necessary to deciding issues of coverage, was essentially a judicial function. The trial and the issue of coverage was expected to take two days and judgment in favor of the insurer would end the lawsuit while a bad faith action would consume several weeks). *See also Braddy v. National Mutual Liability Insurance Company*, 122 N.C. App. 402, 407 S.E.2d 820 (1996) (bifurcation is appropriate where it would reduce delay and expense and ultimately obviated the need for trial on the bad faith claim). Several Courts have also concluded that bifurcation is appropriate on the issues of insurance coverage and bad faith claims in order to minimize the cost of litigation to the parties and ensure prudent use of a district court's resources. *Miles v. State Farm Mutual Auto Insurance Company*, 27 F. Supp. 2d 1246 (D. Nev. 1998); *Cook v. United Service Auto Association*, 169 F.R.D. 359 (D. Nev. 1996) (bifurcation was appropriate on the issue of insured's breach of contract and bad faith claims against automobile insurer for refusal to pay underinsured motorist benefits; need for second trial would be obviated if insured does not prevail on breach of contract claim and bifurcation would, in any event, simplify issues for trial).

Bifurcation is appropriate in this case. It would be extremely prejudicial to Centre Life to allow Plaintiff to present his evidence of alleged bad faith before a determination regarding the contract claim is made. Moreover, it would simplify the issues at trial and conserve judicial

resources.  It is likely that if Centre Life is successful with regard to the contract claim, the bad faith issues will at the very least be simplified if not eliminated all together.  Centre Life therefore respectfully requests that the trial of this matter be bifurcated and that any evidence on Plaintiff's bad faith claim and alleged damages resulting therefrom be presented after evidence of the contract claim is determined.

                                                Respectfully submitted,

                                                s/Peter M. Burrell
                                                William R. Ellis (0012279)
                                                Peter M. Burrell (0044139)
                                                Amy Gasser Callow (0063470)
                                                Wood & Lamping LLP
                                                600 Vine Street, Suite 2500
                                                Cincinnati, OH  45202-2491
                                                (Telephone) (513) 852-6000
                                                (Facsimile) (513) 852-6087

                                                Attorneys for Defendants
                                                Massachusetts Casualty Insurance Company
                                                and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 18th day of March 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                s/Peter M. Burrell  
                                                Peter M. Burrell, Esq.

201361.1