UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **DEFENDANT'S MEMORANDUM** |
| et al., | : | **IN OPPOSITION TO PLAINTIFF'S** |
| | : | **EMERGENCY MOTION TO** |
| Defendants. | : | **COMPEL PRODUCTION** |

**I.     Introduction**

Plaintiff's Motion to Compel Production is not well taken and should be denied. As will be demonstrated herein, the only issue of consequence is Plaintiff's request for Defendant's financial information. Defendant has previously objected to production of this financial information. Defendant's objections continue and will be addressed in a separate Motion in Limine. The remaining seven issues have been addressed in correspondence to Plaintiff's counsel to which Plaintiff's counsel chose not to respond. Instead, he has once again sought the Court's premature intervention and has filed his Motion to Compel. Defendant submits that with the exception of the financial information, the issues raised by Plaintiff could have been resolved by counsel.

**II.    Argument**

**A.    Plaintiff's Representative Should Be Present At The Backup Tape Review to Avoid Any Post-Search Controversies.**

Perhaps most astonishing about Plaintiff's counsel's March 8, 2004 correspondence was his request that Centre Life proceed to search the backup tapes it restored pursuant to Court Order without the participation of a representative of Plaintiff. This is contrary to every request

he has ever made regarding the backup tapes and is fraught with the possibility for complication. As the Court will recall, Defendant objected to restoration of computer backup tapes as both irrelevant and overburdensome. Although Magistrate Hogan initially agreed with Centre Life's position (Doc. 69), that Order was appealed and pursuant to Court Order (Doc. 100), Centre Life proceeded at great expense to restore the backup tapes requested by Plaintiff. The Court's Order required that Defendant undertake the restoration at its own expense and then advise Plaintiff when its representative could oversee the search of the documentation. On November 17, 2003, Mr. Ellis advised Mr. Roberts that restoration of several tapes had been accomplished and the process was being continued. *See* Exhibit A, 11/17/03 correspondence to Roberts from Ellis. Mr. Ellis then invited Mr. Roberts to:

> Please advise me at what stage you want to have your "expert" go to the site and perform his first search. I would recommend that the most efficient time would be when we have as much information recovered as the system will hold, but feel free to let me know if you have any different thoughts.

Counsel for Plaintiff never responded to this invitation. Counsel for Plaintiff is correct that in December, Centre Life again advised that the search could be completed by Christmas and that his computer expert could observe. Once again, the onus was on counsel for Plaintiff to advise a date he was available. Once again, Plaintiff's counsel failed to respond.[1] It was not until his March 8, 2004 letter, nearly four months later, that Plaintiff said anything about the tapes.

Following the Court's ruling on the Motions for Summary Judgment and various *Daubert* Motions, counsel for Plaintiff sent a letter asking Centre Life to proceed to search the backup tapes without his representative present. At no time has Centre Life refused to allow the search

---

[1] Centre Life notes that until November 17, 2003, when it first advised Plaintiff that some tapes were ready to be searched, Plaintiff had consistently argued the urgency with which the restoration needed to be completed.

of the tapes to take place. However, Defendant had great concerns regarding Plaintiff's request that it proceed without him. In responding to Mr. Roberts, Mr. Ellis said:

> Despite your insistence that your expert be present when the backup tapes are searched for the terms "Jeffries" and "0641734," I now understand that you would like my client to proceed to search the tapes and produce any information resulting from that search "without a representative of Plaintiff present." Proceeding in this matter also causes us great concern. During the course of this litigation, we have been accused of lying, discovery abuse, deceiving the Court, and acting in bad faith. If the search is performed without a representative of Plaintiff in attendance, this simply provides you with another opportunity to again make accusations based on your unfounded assumption, malign us and call the search into question. We will not, once again, put ourselves in that position.

*See* 3/11/04 correspondence to Roberts from Ellis attached to Plaintiff's Motion. Defendant's concerns are well founded. Even in his Motion to Compel, Plaintiff again makes spurious and accusatory comments about Centre Life and its counsel. It is inconceivable that Centre Life could conduct any search of the backup tapes without Plaintiff calling the results into question. If the results are in fact unhelpful to Plaintiff, it is impossible to believe Plaintiff will accept this result without further argument and continued consumption of the resources of which he is concerned. Centre Life believes that the most expedient way to resolve this issue is to comply with Plaintiff's earlier request that he be present at the search. The backup tapes are restored and Centre Life has several times extended an invitation to counsel for Plaintiff to review the search. Despite his earlier urgency, he has not responded.

      **B.**    **Bad Faith Cases.**

Plaintiff's next request is for case captions of the nine bad faith cases identified in the Affidavit of Andrew Cohen. Defendant's counsel has in part been occupied with responding to Plaintiff's Emergency Motion. Defendant will nonetheless provide this information to Plaintiff next week.

    **C.**    **Surveillance Materials.**

Plaintiff's next request is for surveillance materials. Counsel for Defendant has already responded that it believes these materials were previously produced. It will re-verify this answer in light of Plaintiff's continued claim that it has not been produced. If this is an oversight and Defendant has not produced these materials, it will do so. If these materials have already been produced, it will re-produce them at Plaintiff's cost.

    **D.**    **Administrative Services Agreement.**

Plaintiff has asked for a copy of the Administrative Service Agreement between Centre and DMS. Counsel for Plaintiff, in accord with the Court's Order, has already reviewed this Agreement but was not permitted to duplicate it. Counsel for Defendant has offered to formulate a stipulation of facts regarding the Agreement. Counsel for Plaintiff has not responded to this suggestion but instead has filed his Motion to Compel.

    **E.**    **Performance Evaluations.**

With regard to the performance evaluations, Defendant objected to Document Request No. 2 and Document Request No. 4. There is no duty to supplement, as presumed by Plaintiff, where these objections continue to stand. With regard to the redacted documents, DMS Documents 16-99 were redacted because they refer to other blocks of business and to individuals who were not involved in the Jeffries claim. This is outside the scope of the Court's Order.

    **F.**    **Verification Page.**

With regard to Plaintiff's request for a verification page, we have represented to counsel for Plaintiff that we will send him a verification page. Like his request for the bad faith case captions, counsel's time has been occupied with other matters created by Plaintiff. Nonetheless, the requested verification page will be made available by next week.

### G.    Centre Life's Financial Information Should Not Be Compelled.

Unlike the issues addressed above, Plaintiff's request for Centre Life's financial information is one that legitimately requires Court intervention. Plaintiff has argued that a jury may consider a defendant's financial condition when assessing any potential punitive damages verdict on Plaintiff's bad faith claim. As a threshold matter, where financial information is required to be produced, bifurcation is essential.[2] The case cited by Plaintiff, *U.S. v. Matusoff Rental Company*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) recognized that there must be separate trials conducted on the issues of liability and damages. In other words, although the court in *Matusoff* allowed the discovery of financial information prior to trial, it overruled the plaintiff's motion for a single trial and held that bifurcation was necessary. The Court held:

> Resolving liability and damages in separate trials, in the manner as ordered by the court, will avoid the possibility of prejudice that could result from the introduction of evidence (such as the financial condition of the defendants) which, although relevant on the issue of punitive damages, is irrelevant on liability.

*See Matusoff Rental*, 204 F.R.D. at 401.

There is no question that if evidence of Centre Life's financial condition is discoverable by Plaintiff, bifurcation is required. It is well settled that evidence of a defendant's wealth should not "be brought out *at trial* unless and until the jury has brought in a special verdict that plaintiff is entitled to punitive damages. *See Rupe v. Fourman*, 532 F. Supp. 344, 351 (S.D. Ohio 1981); *Brinks, Inc. v. City of New York*, 717 F.2d 700, 707 (2d Cir. 1983). Thus, there can be no issue that bifurcation is appropriate.

Plaintiff's Motion to Compel presupposes that he is entitled to discovery of Centre Life's financial information. Centre Life respectfully requests that in spite of the split in the federal circuit decisions some which allow pre-damages financial discovery and some which do not, the

---

[2] Centre Life has filed a separate Motion to Bifurcate Plaintiff's bad faith claim.

U.S. Supreme Court's rulings strongly suggest that the practice of allowing discovery of financial information for use in the punitive damages phase of a trial, regardless of when the financials are produced, should be stopped.

Although it has become standard procedure in cases seeking punitive damages for plaintiffs to introduce evidence of the defendant's financial condition, the United States Supreme Court's decisions in *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1983); *Honda Motor Company v. Oberg*, 512 U.S. 415 (1994); *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996); *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), and now *State Farm Mutual Automobile Insurance Company v. Campbell*, 123 S. Ct. 1413 (2003), strongly suggests that it is time for courts to put a stop to this practice.[3] The Supreme Court's statements and analyses in those cases compels the conclusion that evidence of corporate financial condition is of minimal (if any) relevance to setting an appropriate punitive damages award and yet is extraordinarily prejudicial. Accordingly, such evidence should be excluded under Federal Rules of Evidence 402 and 403.

> 1. **Evidence Of An Institutional Defendant's Financial Condition Is Of Minimal, If Any, Relevance And Is Not Relevant To Permissible Punishment.**

In *BMW,* the U.S. Supreme Court identified three guideposts for evaluating the permissible size of a punitive damages award (1) the degree of reprehensibility of the defendant's conduct; (2) the ratio of punitive damages to the harm (or potential harm) to the plaintiff; and (3) the relationship between the punitive award and the legislatively established fine for comparable misconduct. 517 U.S. at 574-75. Significantly, the Supreme Court did not

---

[3] Many of the lower court cases deal with the issue of when financial information is discoverable: before trial so that it is immediately available for induction during bifurcated trial in the damages phase, (*Matusoff*) or after a determination of liability is made for induction at a delayed damages trial (*Rupe*).

include corporate financial condition as a factor even though the respondent had argued that the $2 million punishment in that case could be sustained on the basis of BMW's substantial financial condition. To the contrary, the Court observed that "the fact that BMW is a large corporation rather than an impecunious individual does not diminish its entitlement to fair notice of the demands that the several states impose on the conduct of its business." 517 U.S. at 585.

In *Cooper Industries*, the Supreme Court again embraced the three *BMW* guideposts and again elected not to include corporate financial condition as a relevant guidepost even though the courts below had relied upon financial condition to uphold the $4.5 million punitive damage award at issue. *See Leatherman Tool Group, Inc. v. Cooper Industries, Inc.*, Nos. 98-35148, 98-35145, 1999 WL 1216844 at *1 (9th Cir., December 17, 1999) ("The district court specifically found that the punitive damage award was proportional and fair, given the nature of the conduct, the evidence of intentional passing off, and the size of an award necessary to create deterrence to an entity of Cooper's size and assets. Those findings were supported by the evidence, such that the award did not violate Cooper's due process rights"). *See Cooper Industries*, 532 U.S. at 435, 440, 441-43. In other words, although it was argued that evidence of corporate financial condition would justify the large punitive damages award, the Supreme Court again limited the guideposts to the three factors set out in *BMW*.

In *State Farm v. Campbell*, the court once again declined to add financial condition to the guideposts. To the contrary, the court held in *State Farm* that the lower court's reliance on "State Farm's enormous wealth" constituted "a departure from well established constraints on punitive damages." 123 S. Ct. at 1525. Accordingly, it squarely held that "the wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *Id.*

### 2. Mr. Jeffries Is Not Entitled To Discovery Of Centre Life's financial Information.

That the U.S. Supreme Court has repeatedly and as recently as 2003, rejected requests to include financial condition as a guidepost is not surprising because the use of financial condition to justify a large punitive damage award is affirmatively inconsistent with the three guideposts it has embraced.  In this case, Mr. Jeffries' efforts to obtain the financial information regarding Centre Life would only be used in an improper attempt to increase the punitive damages award and improperly tie it to the wealth of Centre Life.  With regard to the guideposts recognized by the U.S. Supreme Court, varying punishment with the defendant's wealth conflicts with the well-established, constitutionally-based principle that punishment should fit the offense.  Put simply, the fact that a defendant has a high net worth does not make its conduct more egregious. As to the second guidepost, the Supreme Court has expressly observed that defendant's financial condition "bears no relation to the awards reasonableness or proportionality to the harm." *State Farm*, 123 S. Ct. at 1525.  Finally, consideration of net worth is even more inconsistent with the comparative fines guidepost because neither the fines considered in *State Farm* and *BMW* nor most other criminal or administrative fines vary with the wealth of the defendant.[4]

Despite Plaintiff's attempted implication to the contrary, the Court has not ruled that the financial documents of Centre Life are discoverable.  In granting Defendant's Motion for Protective Order, the Court ruled that Plaintiff could not question Defendant's employees about its financial condition.  (Doc. 38.)  There is no Order to produce any financial document. Accordingly, Centre Life stands by its previous objections.  Moreover, the discovery of financial information, although done in many lower courts has been criticized and rejected by the U.S.

---

[4] *See Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996) ("The usual practice with respect to fines is not too proportion the fine to the defendant's wealth.")

Supreme Court. Defendant respectfully requests this Court follow the mandate of the U.S. Supreme Court, most recently in *State Farm*, and deny Plaintiff's request for financial records.

## III.     Conclusion

For the foregoing reasons, Centre Life respectfully requests that Plaintiff's Emergency Motion to Compel be denied.

          Respectfully submitted,

          s/Peter M. Burrell
          William R. Ellis (0012279)
          Peter M. Burrell (0044139)
          Amy Gasser Callow (0063470)
          Wood & Lamping LLP
          600 Vine Street, Suite 2500
          Cincinnati, OH  45202-2491
          (Telephone) (513) 852-6000
          (Facsimile) (513) 852-6087

          Attorneys for Defendants
          Massachusetts Casualty Insurance Company
          and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 19th day of March 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Peter M Burrell<br>
Peter M. Burrell, Esq.

202422.1