UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **DEFENDANT'S MEMORANDUM** |
| et al., | : | **IN OPPOSITION TO PLAINTIFF'S** |
| | : | **EMERGENCY MOTION TO** |
| Defendants. | : | **EXCLUDE TRIAL TESTIMONY** |

**I.    Introduction**

Plaintiff's Emergency Motion to Exclude Trial Testimony is not well-taken and must be denied. Centre Life has scheduled the videotaped trial depositions of Dr. Reed and Dr. Garb. These witnesses are not offered as experts but will be asked to give their factual rendition of events that have taken place during the course of Plaintiff's claim.

As Plaintiff's Motion makes clear, the Scheduling Orders issued in this case have been vacated several times. While it is correct that initially there was a November 29, 2002 deadline for the exchange of witness lists and summaries, neither party complied with this Order. On January 10, 2003 this Calendar Order was amended pursuant to an unopposed motion by Defendant to extend discovery. (Doc. 29.) There has not been a subsequent Order setting a date for the exchange of witness lists and summaries. Thus, there is no procedural violation which would prohibit the use of Dr. Reed's and Dr. Garb's testimony.

More importantly, the use of Dr. Reed's and Dr. Garb's testimony cannot be deemed unfair surprise to Plaintiff. Plaintiff himself has relied, although his interpretation is incorrect, on the report of Dr. Garb. Dr. Garb was identified to him in Defendant's discovery responses

and Plaintiff could have deposed him at any time. With regard to Dr. Reed, he is one of Plaintiff's own treating physicians. It would have been Defendant, not Plaintiff, who would have deposed Dr. Reed. In fact, Plaintiff had no reason to depose Dr. Reed. Because he was Plaintiff's treating physician, he could have simply talked to him. The fact that Defendant chose not to take a discovery deposition does not preclude the use of Dr. Reed as a fact witness at trial. There is no basis to exclude these witnesses.

II.    Argument

    A.    **The First Date For Identification Of Lay Witnesses Was Vacated And Never Reset.**

The June 25, 2002 Calendar Order required that witness lists and summaries be exchanged by November 29, 2002. (Doc. 15.) Neither Plaintiff nor Defendant complied with this Order. Plaintiff is correct that discovery in this case was extended several times. This was in part because until March of 2003, after Plaintiff was ordered to complete his physical examinations with a physician of Centre Life's designation, it was impossible for Centre Life to make a final claims decision. The Court will recall that Centre Life continued to pay Mr. Jeffries' claim until February 2002 when he refused to attend a physical examination as required under his policy. At that point, his benefits were suspended but no final claims decision had been made. It was only after Mr. Jeffries finally completed the physical examinations under Order by the Court -- a year later -- that Centre Life was in a position to evaluate Mr. Jeffries' claim. On May 15, 2003, Centre Life issued a determination that Mr. Jeffries was totally disabled due to a mental disorder and had been entitled to 24 months of benefits under the terms of his policy.

It was not until a claims decision had been made that discovery could effectively proceed. For this reason, Defendants sought and received several extensions of the discovery cutoff.

Eventually, in its October 6, 2003 Order, the Court extended the date for taking expert and treating physician depositions until December 5, 2003. (Doc. 94.) The parties complied with this deadline. In that Order, the Court did not set a new date for the exchange of lay witness lists.[1] As early as last week, a representative of Defendant contacted the Court to inquire whether a new Pretrial Scheduling Order would be issued.

The fact that neither Plaintiff nor Defendant complied with the initial deadline of November 29, 2003 for exchange of witness lists and summaries illustrates the parties' apparent understanding that such date had been changed. The fact that a new date was never set does not support Plaintiff's Motion.

Moreover, Plaintiff's claim that he has identified his witnesses in order to be of service to Defendant is disingenuous. First, Plaintiff's April 7, 2003 letter in no way summarizes the anticipated testimony of his witnesses. It cannot be genuinely argued that this was Plaintiff's attempt to comply with the November 29, 2002 exchange of a witness list and summary. Second, Plaintiff's counsel's tactics in this case have been anything but cooperative. In that correspondence, counsel for Plaintiff identified 10 physicians and three bad faith experts. In his August 15, 2003 letter, counsel for Plaintiff added four additional expert witnesses. In an attempt to streamline the issues for trial, defense counsel asked Plaintiff's counsel to identify which of his 17 expert witnesses he would actually call at the trial of this matter. With the exception of Dr. Bastian, counsel for Plaintiff would not cooperate with this request and suggested counsel for Defendant simply take the depositions of all of Plaintiff's identified

---

[1] The October 6, 203 Order (Doc. 94) amended an earlier June 19, 2003 Order, in which the Court had required that Plaintiff identify his experts by August 15, 2003 and Defendant identify its experts by August 30, 2003. (Doc. 63.) This Order was also silent with regard to lay witnesses. After amendment of the June 19, 2003 Calendar Order, there has not been a new date set for the exchange of lay witness lists and summaries.

experts. *See* Exhibit A, 10/17/03 letter from Plaintiff's counsel. Defendant does not dispute that this response is in fact within the prerogative of Plaintiff's counsel.

Defendant does take exception to Plaintiff's claim in his Emergency Motion that he generously identified his witnesses for the benefit of Defendant during discovery. Under this same logic -- that any possible witnesses identified should have been deposed -- Plaintiff had ample notice of Dr. Garb's involvement in the claims process. Plaintiff asked Defendant to identify all persons with whom Defendant spoke or correspondence in regard to his claim. Dr. Garb is identified. *See* Exhibit B, Defendant's Supplemental Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents at Interrogatory No. 2. Plaintiff clearly had notice of Dr. Garb and his involvement in this case. The fact that Plaintiff himself has attempted to rely on the report of Dr. Garb belies his claim of surprise and lack of notice.

   **B. Dr. Reed And Dr. Garb Are Lay Witnesses.**

In any event, with regard to the two witnesses currently at issue, Dr. Reed and Dr. Garb, these are lay witnesses. There was no obligation of Centre Life to identify these witnesses on its expert witness list. Plaintiff's claim that Defendant is attempting to somehow backdoor an expert opinion is incorrect.

Dr. Reed and Dr. Garb are lay witnesses. They are not being asked to offer an expert opinion in this case. Dr. Reed is one of Mr. Jeffries' treating physicians. He will be asked to testify regarding the dates of his treatment, his examination of Mr. Jeffries and his findings with regard to his examinations. These are all factual issues. Dr. Reed is not being asked to offer an opinion regarding any of the expert opinions at issue in this case. Dr. Reed's testimony is necessary to establish the sequela of events leading up to Mr. Jeffries' claim of total disability.

The issue of whether a treating physician is an expert or lay witness has previously been raised in this case. Plaintiff now argues that treating physicians are expert witnesses. When it suited his purposes, Plaintiff has characterized treating physicians as lay witnesses. For instance, on August 25, 2003, Defendant filed an emergency Motion to take the depositions of Plaintiff and Plaintiff's *treating physicians* out of time. Plaintiff opposed this Emergency Motion, arguing that Defendant had no right to take the depositions of lay witnesses after August 31, 2003. (Docs. 76 and 78.)[2] In his opposition brief, Plaintiff clearly and unequivocally asserted that Plaintiff's treating physicians were *lay witnesses*. He now argues that the treating physician and claims consulting physician identified by Defendant are *expert witnesses* and should have been identified as such. Plaintiff's counsel cannot have it both ways.

Dr. Garb is also a fact witness. He was asked to evaluate a portion of the claims process with regard to the medical review. Plaintiff has incorrectly and incompletely cited the review of Dr. Garb during the course of his arguments. Dr. Garb is not being offered as an expert witness but instead a witness who will detail factually his participation in the claim review process.

    **C.**    **Plaintiff Had Notice Of Both Dr. Reed And Dr. Garb And Is Not Prejudiced By Their Trial Participation.**

The principle behind the exchange of witness lists in advance is to avoid unfair surprise at a trial. Plaintiff's unreported case attached in support of his Motion is unpersuasive. Most notable is the fact that the *Estes* case addresses an unidentified <u>expert</u> witness. Dr. Reed and Dr. Garb are lay witnesses. There can be no genuine claim of unfair surprise. First, there is no current Order requiring the exchange of lay witness lists and summaries. Second, Plaintiff is well-aware of the existence of these witnesses. Although he claims he would have deposed these witnesses, the fact that he chose not to do so should not preclude their testimony at trial.

---

[2] Defendant erroneously captioned this memo as Plaintiff's Emergency Motion.

Dr. Reed is one of Plaintiff's own treating physicians. At issue is Plaintiff's alleged medical condition. Plaintiff cannot in good faith claim that he was unaware of the potential testimony of Dr. Reed nor that he is unfamiliar with what Dr. Reed might say. Plaintiff's claim that he lacked the opportunity to depose Dr. Reed is ludicrous. Dr. Reed is one of his own treating physicians. Plaintiff does not need to depose him to discover his opinion - he can simply talk to Dr. Reed. Defendant has no obligation to advise Plaintiff of the existence of his own doctor. It is Defendant that could have deposed Dr. Reed. The fact that Centre Life chose not to depose Dr. Reed in no way prejudices Plaintiff nor precludes his testimony at trial.

With Dr. Garb, Plaintiff's claim of unfair surprise is even more suspect. Plaintiff has cited to the report written by Dr. Garb during the course of this litigation, in particular in his response to Centre Life's Daubert Motion to exclude Hepatitis B vaccination causation evidence. (Doc. 131.) Although Plaintiff has cited this report incompletely, out of context and incorrectly, there is no question that he was aware of it. As set forth above, Dr. Garb has been previously identified to Plaintiff. *See* Exhibit B. The fact that Plaintiff chose not to depose Dr. Garb should in no way preclude him from testifying at trial. As Plaintiff's own letter makes clear, neither party has yet been required to identify what witnesses it will call at trial.

### III.    Conclusion

Defendant submits that Plaintiff's counsel's gamesmanship has reached an intolerable level. In his previous Motion opposing Centre Life's Motion to take his treating physicians out of time he argued that the physicians were lay witnesses who had to be deposed during the course of general discovery. Now he argues that a treating physician is an expert whose testimony should be excluded because he was not identified as such. He also claims that he has complied with a non-existent lay witness identification deadline when in fact he has never

provided a witness summary and his list of anticipated lay witnesses was sent several months after the 11/29/02 date set in the subsequently amended Calendar Order.  In fact, there was no new deadline set and as such no procedural requirements have been violated.  As a practical matter, there is no risk of unfair surprise.  Dr. Reed is one of Mr. Jeffries numerous treating physicians and he himself has cited and attempted to rely upon the report of Dr. Garb.  For all of the foregoing reasons, Plaintiff's Motion is not well taken and must be denied.

        Respectfully submitted,

        s/Peter M Burrell
        William R. Ellis (0012279)
        Peter M. Burrell (0044139)
        Amy Gasser Callow (0063470)
        Wood & Lamping LLP
        600 Vine Street, Suite 2500
        Cincinnati, OH  45202-2491
        (Telephone) (513) 852-6000
        (Facsimile) (513) 852-6087

        Attorneys for Defendants
        Massachusetts Casualty Insurance Company
        and Disability Management Services, Inc.

- 8 -

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 19th day of March 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                          s/Peter M. Burrell
                                          Peter M. Burrell, Esq.

202254.1