IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) : | CASE NO. C-1-02-351 |
| Plaintiff, | ) : | JUDGE BECKWITH |
| | | Magistrate Judge Hogan |
| v. | ) : | |
| CENTRE LIFE INSURANCE CO., | ) : | |
| Defendant. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION TO COMPEL THE PRODUCTION OF OUTSTANDING DOCUMENTS AND INFORMATION**

This Court should sustain plaintiff's latest necessary motion to compel.

Defendant now says it will produce: (i) Verification pages to its discovery responses; (ii) the captions from bad faith suits filed against it and DMS in the states encompassing the 6th circuit, and (iii) the previously unproduced surveillance materials. That information is not voluminous yet still remains outstanding. This latest promise by defendant leaves 5 disputes outstanding. Plaintiff's motion to compel should be sustained on all of these issues

1.    *Defendants' Financial Information*

Defendant offers 2 arguments in an effort to avoid its obligation to produce financial information: (i) the trial will be bifurcated; and (ii) the Supreme Court has ruled that financial information is no longer discoverable. Neither of these arguments have merit.

    A.    **The Bifurcation Argument**

The Court has already weighed in on defendant's oral request to bifurcate the trial and has rejected the suggestion. Last week, after receiving the Court's impressions, the defendant

1

proceeded nonetheless to file a Motion To Bifurcate. That motion will be resolved at a later date but does not forestall defendant's present obligation to produce its financial information.

Also, contrary to the statements made in defendant's motion, bifurcation is not "essential" when its financial information becomes part of the evidence at trial.

Finally, the information is necessary in advance of the Summary Jury Trial if it is to be of any utility.

> B.    **The Supreme Court Decisions.**

The defendant recognizes that it is "standard procedure" for a plaintiff to introduce evidence of its adversary's financial condition in cases seeking punitive damages. But despite the absence of any Supreme Court holding, the defendant argues that <u>its</u> reading of certain U.S. Supreme Court decisions "strongly suggest that the practice of allowing discovery of financial information . . . should be stopped." Defendant is wrong.

Interestingly, four of the five Supreme Court cases that the defendant relies upon were decided <u>**before**</u> Judge Rice decided *United States v. Matusoff Rental Co.* 204 F.R.D. 396 (J. Rice, S.D. Ohio 2001) in which Judge Rice relied upon the Supreme Court's decision in the *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981) for the proposition that evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded.

Apparently, the defendant's Counsel and Judge Rice disagree about the Supreme Court's position on the issue.

As analyzed in the principal motion, the defendant misreads and misinterprets the Supreme Court's decision in *State Farm Mutual Automobile Insurance Company v. Campbell*

538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). That case not only doesn't stand for the proposition defendant suggests, it says *nothing* about the discoverability of a defendant's financial condition when faced with a potential punitive damage verdict. It is disengenious and contrary to defendant's counsel's duties as an officer of the Court to cite a Supreme Court case which says nothing about the subject at issue.

Moreover, the financial information is not simply relevant to the punitive damages issue. The defendant pays DMS an extraordinary sum to "administer" disability claims. In fact, the sum so far exceeds the reasonable compensation appropriate for the service provided that the jury will conclude that defendant pays DMS a premium to deny claims. For this additional reason the financial information is discoverable, relevant, and admissible.

This requested information should finally be produced.

2.      *Back-Up Tapes*

Too many disputes to count have concerned defendant's unperformed obligation to produce information stored electronically on its back-up tapes -  an obligation which has been outstanding since June 2002.

Defendant's latest argument is its most juvenile: defendant won't produce the information despite the Court's many orders to do so because plaintiff doesn't have the financial resources to look over defendant's shoulder as they search and produce the materials. This is ludicrous.  The information should be produced forthwith as it has been ordered numerous times - including once with the Court's admonition that defendant or its counsel apparently "intentionally misunderstands" its ordered obligations. (*Docs. 94, 96, 100*).

3.  *Copy of Administrative Service Agreement Between Centre and DMS*

A major focus in the presentation of the evidence at trial on the bad faith claim will be the relationship between the defendant and its agent, DMS. That relationship is governed by an Administrative Services Agreement. To date, plaintiff's counsel has only been permitted to see the document in the offices of defendant's counsel. Now that we are on the eve of trial, it is essential that the jury be able to examine the Agreement and that it finally be produced. Defendant refuses nonetheless to produce the Agreement.

4.  *Follow-Up To Performance Evaluations Produced Late*

As indicated in the principal motion, as the result of a Court order compelling the production of information, the defendant belatedly produced certain personnel files. In those documents there is reference made to "DMS' business performance goals set for the MCIC (aka Centre Life) block of business." (*See*, Exhibit 4, Bates label DMS 047-053). There is also reference made to information showing that these "goals" had been exceeded. *Id*. These comments and information go directly to the heart of plaintiff's bad faith claim and should be produced. Defendant offers no argument to the contrary other than – we object.

5.  *Subpoenaed Materials*

Defendant offers no argument on this issue, as if it hopes the Court or plaintiff will forget it exists. These too should be produced.

### Conclusion

Defendant's discovery conduct in this case has been extraordinary. It is a wonder that it has been sanctioned just $834. At times defendant has done things that are unthinkable. The

4

plaintiff needs all of the above discoverable information to fairly prosecute his claim and asks that the Court order its production forthwith.

                          Respectfully submitted,

| OF COUNSEL | /s Michael A. Roberts |
|---|---|
|  | Michael A. Roberts, Esq. (0047129) |
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 511 Walnut Street, Suite 1900 |
| 511 Walnut Street | Cincinnati, Ohio 45202 |
| Cincinnati, Ohio 45202 | (513) 629-2799 |
| (513) 621-6464 | (513) 651-3836 (fax) |
|  | email:mroberts@graydon.com |

### CERTIFICATE OF SERVICE

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 22nd day of March, 2004.

                          /s Michael A. Roberts