IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) : | CASE NO. C-1-02-351 |
| Plaintiff, | ) : | JUDGE BECKWITH |
| | | Magistrate Judge Hogan |
| v. | ) : | |
| CENTRE LIFE INSURANCE CO., | ) : | |
| Defendant. | ) | |

PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR RECONSIDERATION

This Court should deny Defendant's latest request to "reconsider," *inter alia*, its March 3, 2004, decision that the defendant has the burden of proof at trial to establish its claim that Mr. Jeffries has a mental disorder.[1]

A.  The Policy Is Unequivocal – The Amendment
    Contains A "Mental Disorder . . . Limitation" on Benefits.

Defendant does not dispute that as a disability insurer who drafted the Policy, it has the burden of proof when it desires to exercise a benefits exclusion or limitation. (*Doc. 173, p. 3, lines 5-8*). Here, the defendant has the burden to prove its assertion that Mr. Jeffries has a mental disorder. This is the case because the relevant Policy provision drafted by the defendant is expressly titled: "Limitation." That is, the provision is titled "Mental Disorder and/or Substance Use Disorder Limitation." (*See, Exh. 1, Amendment to Policy*) (*Emphasis added*).

---

[1] At each stage of this suit, defendant has requested reconsideration of contrary decisions. (*Docs. 33, 35, 87, 96, 101, and 182*). Defendant's counsel has also accused the Court of bias and has many times threatened appeal. (*Doc. 144*). On March 21, 2004, in a conference with the Magistrate on another Motion To Compel, defendant even continued to contest the Court's September 2002 ruling (and several subsequent rulings) that the defendant needed to produce information requested in June 2002, including information stored on back-up tapes. (*Doc. 182*).

1

In addition, in a "<u>Note</u>:" added directly below this substantive provision, the defendant unequivocally writes: "we will not apply the above <u>limitation</u> during periods of confinement in a medical facility . . . ." *Id.* (*emphasis added*).

Considering that the defendant <u>twice</u> titled, defined, and categorized the relevant provision as a benefits "Limitation," it is meritless, even frivolous, for the defendant to now argue that the provision is *not* a benefits "Limitation" for which it has the burden of proof.

The Court's March 3, 2004, ruling is correct and consistent with the unambiguous language of the Policy.

> B.  Defendant's New Attempt To Redefine The Policy's
> "Mental Disorder . . . Limitation" Provision Is Meritless.

The Summary Judgment stage of this case was extensive. The parties prepared and filed six (6) written memoranda and filed numerous exhibits and deposition transcripts. And the Court graciously granted the parties the extraordinary opportunity to present unlimited oral argument. At no time during the written or oral presentation of the summary judgment issues did the defendant's counsel contend that the relevant Policy Amendment wasn't a benefits "Limitation," as it's title and accompanying "Note" unequivocally suggest.

Following that extended process, the Court correctly concluded that the defendant has the burden to prove the existence of facts which would trigger the "Mental Disorder . . . Limitation" contained in the Policy's Amendment. The Court did not make an error in its analysis.[2]

---

[2]    In its March 3, 2004, ruling the Court found: "The disability policy in this case provides, 'We will pay monthly benefits for Total Disability which begins while this policy is in force.' The policy at Part 1 in its Definitions reads: "The term 'Total Disability' means that due to injury or sickness, the Insured: No. 1, is substantially unable to perform the material duties of his or her occupation; and is

2

Importantly, the Court found, consistent with the plain, unequivocal language of the "Mental Disorder . . . Limitation" makes it a "restriction or <u>limitation</u> on the general coverage provisions of the Policy." (*Doc. 169, p. 28*).

Nowhere in its prior memoranda or oral argument did defendant's counsel contend (as he now does in his Motion For Reconsideration) that the Policy Amendment sets forth a "maximum benefits provision" as opposed to a benefits Limitation, as clearly stated in the Policy. Nor would such an argument/description by defendant's counsel made a difference.

---

receiving care by a physician which is appropriate for the condition causing the disability.' The Definitions go on to define 'Injury' as 'accidental bodily injury occurring while this policy is in force.' 'Sickness' is defined as 'illness, disease, or physical condition which first manifested itself while this Policy is in effect. A Sickness will be considered: (a) symptoms exist that would cause an ordinarily prudent person to seek diagnosis; (b) a Physician makes a diagnosis; or (c) medical advice or treatment is recommended or received from a Physician.' An Amendment to the Policy provides that: 'If a Total Disability or other covered loss is due to a Mental Disorder and/or Substance Abuse Disorder a number of months for which any benefits for Total Disability shall be payable under the Policy during the lifetime of the insured shall not exceed in the aggregate total of 24 months.' It further goes on to say: 'Mental disorder' or 'Substance Abuse Disorder' means a manifestation of any disorder classified in the then-current issue of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association.'

In its Amended Answer to the Verified Complaint, Plaintiff states: 'Centre Life admits that as of May 15, 2003, after independent medical examinations were received and reviewed, Centre Life has determined that Mr. Jeffries is totally disabled in his occupation due to a mental disorder as defined in his policy.' Thus, at a minimum, because Defendant concedes 'total disability,' Defendant admits that Plaintiff is substantially unable to perform the material duties of his position, and is receiving appropriate care by a physician. Going further, the Court believes that at a minimum, Defendant's admission concedes that Plaintiff has a sickness -- that is to say, an illness which caused him to seek a diagnosis. As noted under the policy, 'A Sickness which results in Total Disability requires payment of benefits.'

Regarding the burden of proof, the general rule is that an insured has the burden to prove that the loss is covered by the general coverage provisions of the contract and the burden is on the insurer to prove any exclusions or limitations on coverage. And I would direct counsel's attention to **Continental Insurance Company v. Marx & Company**, 415 NE2d 315, 401 (1980). Also, **Bonanza of Cleveland, Inc. v. Fairfax Underwriters Service, Inc.**, 450 NE 2d 689, 692, (1981). Also, *Windt Insurance Claims and Disputes* at Section 9:1, Fourth Edition, 2003.

In this case, the Court finds that the Mental Disorder Amendment is a restriction or limitation on the general coverage provisions of the Policy. And, therefore, the burden is on the Defendant to prove that Plaintiff is disabled by a Mental Disorder in order to limit the coverage to 24 months. Moreover, the Court finds that Defendant's admission that Plaintiff is totally disabled satisfies the Plaintiff's burden of establishing coverage under the general terms of the Policy." (*Doc. 169, pp. 25-28*).

3

Moreover, under plaintiff's New argument, at defendant's whim all provisions of an insurance policy defined to be either "Exclusions" and "Limitations," like the "Mental Disorder . . . Limitation" here, could be argued to be statements of "maximum benefit periods."

Defendant's attempted new use of different nomenclature, however, would not change Ohio law: the burden of proof is defendant's because it desires to affirmatively exercise a benefit limitation or policy exclusion. *Continental Ins. Co. v. Louis Marx & Co. Inc*. (1980), 64 Ohio St. 2d 399, 415 N.E.2d 315. As in other civil actions, the burden of proof here falls upon the party asserting the affirmative of an issue. Defendant affirmatively asserts that it may exercise the "Mental Disorder . . . Limitation" provision which it drafted and added to the Policy as an Amendment. That being the case, defendant has the burden of establishing that Mr. Jeffries' **undisputed** Total Disability is caused by a mental disorder, not a medical illness.

Most importantly, contrary to defendant's multiple hyperbolic assertions, the Court has not "rewritten the policy to impose a new obligation on the insurer." The analysis is simple:

> If the defendant meets its burden of proof and establishes that Mr. Jeffries' undisputed, 4+ year continuing disability is caused by a mental disorder, then the Policy's "Mental Disorder . . . Limitation" will operate to *exclude* benefits beyond the first 24 months -- even though it is undisputed by the parties that Mr. Jeffries disability continued for at least another 2+ years.

> But if the defendant doesn't meet its burden, the benefits for Mr. Jeffries' 4+ year undisputed disability will not be excluded or limited to 24 months.

The burden of proof is clearly on the defendant because it desires to affirmatively exercise a benefit limitation/policy exclusion.

4

C.  Any Ambiguity Created Must Be Construed In Favor Of Mr. Jeffries.

Assuming, *arguendo*, that despite the Policy's two (2) unequivocal references to "Limitation," the Court considered defendant's new argument to create some ambiguity about whether the "Mental Disorder . . . Limitation" of the Policy is in fact a limitation, then the ambiguity over this point must be construed in favor of Mr. Jeffries and defendant still has the burden of proof.

The defendant is a sophisticated corporate entity which drafts and sells countless disability insurance policies.  It knows the legal significance of certain insurance industry terms of art, such as policy "exclusions" and policy "limitations."  When it drafted the Amendment and appended it to the Policy it unambiguously defined this new Mental Disorder provision to be a "Limitation."  (*Exh. 1*).  And it additionally advised the policyholder that it would not exercise this "Limitation" during periods when the policyholder would be confined to a mental or health facility.  (*Exh. 1*).  Finally, defendant also knew that some disabling mental disorders can last much longer than 24 months: accordingly, it was affirmatively attempting to limit and exclude benefits beyond 24 months.

In Ohio, language of an insurance contract which is reasonably susceptible of more than one meaning must be construed strictly against the insurer and liberally in favor of the insured.[3]  To defeat coverage, the insurer must establish not merely that the policy is capable of the construction it favors, but rather that such an interpretation is the <u>only one</u> that can fairly be

---

[3]  *King v. Nationwide Ins. Co*. 35 Ohio St.3d 208, 211, 519 N.E.2d 1380, 1383 (1988); *Gomolka v. State Auto. Mut. Ins. Co*. 70 Ohio St. 2d 166, 436 N.E.2d 1347 (1982); *Yeager v. Pacific Mutual Life Ins. Co.* 139 N.E.2d 48, 166 Ohio St. 71 (Ohio 1956).

5

placed on the language in question.[4]  And it will not suffice for an insurer to demonstrate that its interpretation is more reasonable than the policyholder's. *Id.*

Here the defendant did not make 2 errors when referring to the Mental Disorder Amendment as a "Limitation."  And Defendant's counsel did not err in his earlier written and oral presentations when he failed to argue that the provision was not a "Limitation," as the Policy unequivocally states, but is some "maximum benefit period."  The provision is, as unambiguously defined and categorized in the Policy, and sold to Mr. Jeffries, a Limitation. And it "excludes" from coverage beyond 24 months any payment for continuing disabling conditions which are established to be the result of a mental disorder.

To the extent the defendant now desires to create a new interpretation of the Policy, the ambiguity it pushes must be resolved in favor of Mr. Jeffries.

D. **Defendant's Judicial Admission Of A Disability Through At Least March 2003 Following The IME.**

Defendant's additional new argument that it has *only* admitted that Mr. Jeffries is "Totally Disabled" because he has a mental disorder is not genuine.

Cognitive testing performed on Mr. Jeffries in 2000, 2001, 2002, and 2003 by each party's experts repeatedly revealed that plaintiff, a former member of Mensa, suffers from *inter alia* a disabling cognitive decline.[5]  Everyone agrees on this point: Dr. Hartings, defendant's expert,

---

[4] ***Andersen v. Highland House Co***. 93 Ohio St.3d 547, 757 N.E.2d 329 (2001)(*although **Andersen** was a commercial general liability case, it has been applied in the context of life insurance coverage and its principles apply here*).

[5] Psychologists who examined Mr. Jeffries in 2000 and 2001, Drs. Sheila Bastien and Curt Sandman, respectively, found that Mr. Jeffries suffers from a marked and disabling cognitive decline. These results were repeated and confirmed in testing performed in 2002 and 2003 by defendant's purported expert psychologist, Dr. Michael Hartings.

6

testified that his 2002 and 2003 testing shows agreement with Dr. Bastien's year 2000 testing and Dr. Sandman's year 2001 testing, all of which revealed that Mr. Jeffries' mental processing speed, attention, concentration measures, and memory make him unable to perform his occupation.[6] (*See*, *Exh. 2, Hartings Testimony, pp. 68*-69). These findings by defendant's expert bring to a close the issue of whether Mr. Jeffries was capable of performing his Occupation from September 1998 through at least March 2003. He couldn't and still can't.

As Dr. Hartings further testified, this disabling condition was not restricted to the 24 month period of February 1999 to February 2001 after which Mr. Jeffries was O.K. to return to work! Mr. Jeffries' disability continued through at least March 2003 according to Dr. Hartings and would continue until it improved. *Id.* Accordingly, defendant's admission of total disability can not genuinely be argued to have been restricted to the 24 month timeframe of February 1999 to February 2001.

For that reason, contrary to defendant's argument, it doesn't "have an obligation to prove that Mr. Jeffries does not have a physical disability." Rather, for the period Feb. 1999 to March 2003: the existence of a disabling condition has been conceded. Notwithstanding defendant's concession, defendant has through its counterclaim the capacity to recoup benefits it paid beyond February 2001 (24 months) if it establishes that Mr. Jeffries' undisputed disability was caused by a mental disorder. If it doesn't meet its burden on this point, then no "Limitation" to the undisputed disability applies, defendant cannot exclude benefits beyond

---

[6]  The parties do not even dispute the event which triggered the disability. As oddly as it sounds, Dr. Hartings testified that it is his judgment that Mr. Jeffries disability and purported mental disorder were triggered by the injection of the hepatitis B vaccine: Q. [By Plaintiff's Counsel] "When did Mr. Jeffries get his undifferentiated somatoform disorder? A. [By Dr. Hartings] I believe it occurred as a traumatic response to the effects of his immunizations." (*See*, *Exh. 3, Excerpt from Doc. 167, Transcript of February 19, 2004, Daubert proceedings, p. 51, lines 15-18*).

7

February 2001, and defendant would be required to pay Mr. Jeffries all benefits up to at least March 2003.

Going forward from March 2003, absent a concession from the defendant that Mr. Jeffries still has his undisputed disabling condition, Mr. Jeffries would have to establish that the conceded disability has not gone away.

If it is determined by the jury that the cause of Mr. Jeffries' undisputed and disabling cognitive deficit is not a mental disorder, Mr. Jeffries is entitled to benefits because he suffers from a condition which defendant *admits* disables him, but for which no benefit Limitation or exclusion is applicable.[7]

E.     **The Order Of Proof Shall Remain Plaintiff First.**

In May 2002, the plaintiff filed his Verified Complaint asserting *inter alia* bad faith. It is now conceded that Mr. Jeffries is unable to perform the material and substantial duties of his Occupation. And Mr. Jeffries is not receiving benefits.

Two major components of Mr. Jeffries' bad faith claim are his contentions that: (i) from February 1999 to March 2003 the defendant ignored the overwhelming medical evidence of disability and chose instead to attempt to prove that Mr. Jeffries was a fraud; and (ii) since March 2003 the defendant improperly adopted the opinion of a disreputable psychologist[8] who

---

[7]     Through its attempt to employ the "Mental Disorder . . . Limitation" of the Amendment to the Policy, the defendant has also conceded that Mr. Jeffries satisfies the Policy's definition of "Totally Disabled" because the "Mental Disorder . . . Limitation" incorporates in its definition the defined term "Total Disability," and, therefore, applies only to persons who satisfy the criteria of "Total Disability."

[8]     To provide them with a diagnosis that would exclude/limit benefits, the defendant retained Dr. Michael Hartings who: (i) has served as a professional testifier for defendant's counsel for 18 years; (ii) lost his license to practice psychology for "low standards" in the mid-1990s; and (iii) denied losing his license in deposition.

8

improperly disregards established expert medical diagnosis, which he can't do under the DSM in rendering a diagnosis of undifferentiated somatoform disorder.

Accordingly, Mr. Jeffries' presentation of medical evidence and the testimony of his medical experts and mental health experts are not exclusive to his defense of defendant's counterclaim. This evidence and expert testimony are integral evidentiary components of Mr. Jeffries' bad faith claim.

In addition, absent a concession from defendant that Mr. Jeffries has not fully recovered from his undisputed disability since the time of Dr. Hartings' March 2003 findings, plaintiff intends to offer evidence in support of his breach of contract claim that his condition which caused him to indisputably be disabled from February 1999 to March 2003 has not improved and he is, therefore, entitled to benefits on his breach of contract claim through at least the date of trial.

For those reasons, Mr. Jeffries case is not a "rebuttal" case. He remains the plaintiff and must proceed first at trial. Defendant will proceed second as defendant-counterclaimants, as well as parties defending a claim on the basis of an affirmative defense, commonly do.

## Conclusion

For all of the above reasons, the defendant's most recent motion for reconsideration should be denied.

Respectfully submitted,

OF COUNSEL

/s Michael A. Roberts
Michael A. Roberts, Esq. (0047129)

GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street

GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202

9

Cincinnati, Ohio 45202 (513) 629-2799
(513) 621-6464 (513) 651-3836 (fax)
email:mroberts@graydon.com

**CERTIFICATE OF SERVICE**

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 26th day of March, 2004.

/s Michael A. Roberts