## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-02-351 |
| | : | |
| Plaintiff, | ) | JUDGE BECKWITH |
| | : | Magistrate Judge Hogan |
| v. | ) | |
| | : | |
| CENTRE LIFE INSURANCE CO., | ) | |
| | : | |
| Defendant. | ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION
### TO DEFENDANT'S MOTION TO BIFURCATE TRIAL

This Court should deny defendant's request that the long-delayed trial of this case now, after the completion of the Summary Jury Trial on April 7 and 8, 2004, be bifurcated into a 2nd and 3rd additional trial.

Most importantly, bifurcation would require the costly duplication of the same medical and mental health expert testimony at both the bad faith trial and a separate trial on defendant's counterclaim. This testimony is no doubt required for the trial on defendant's counterclaim. It is also required at the trial of Mr. Jeffries' bad faith claim because two critical components of his claim are:

(i) from February 1999 to March 2003 the defendant ignored the overwhelming medical evidence of disability and chose instead to attempt to prove that Mr. Jeffries was a fraud; and

(ii) since March 2003 the defendant improperly adopted the opinion of a disreputable psychologist[1] who improperly disregards established expert

---

[1] To provide them with a diagnosis that would exclude/limit benefits, the defendant retained Dr. Michael Hartings who: (i) has served as a professional testifier for defendant's counsel for 18 years; (ii) lost his license to practice psychology for "low standards" in the mid-1990s; and (iii) denied losing his license in deposition.

medical diagnosis, which he can't do under the DSM in rendering a diagnosis of undifferentiated somatoform disorder.

Accordingly, Mr. Jeffries' presentation of medical evidence and the testimony of his medical and mental health experts is not exclusive to his defense of defendant's counterclaim but is a critical evidentiary component to his prosecution of the bad faith claim.

Second, there is simply no evidence to support the principal argument underlying defendant's request - that the jury's knowledge of defendant's financial condition (offered for 2 independent reasons on the bad faith claim) will prejudice the jury against defendant in evaluating defendant's counterclaim.

For those reasons, this Court should not bifurcate the claims/issues for trial. Defendant must present its claims and affirmative defenses as defendant-counterclaimants, as well as parties defending a claim on the basis of an affirmative defense, commonly do.

Weighed against the duplication of testimony, cost, and potential for prejudice to Mr. Jeffries, defendant has not satisfied its burden of establishing a need for bifurcation.

I.    **Fed. R. Civ. P. 42(b).**

The defendant brings its motion under Fed. R. Civ. P. 42(b). That permissive Rule states:

> "(b) Separate Trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third- party claim . . . ." *Fed. R. Civ. P., 42(b).*

A Court's decision to bifurcate a trial is dependent on the particular facts and circumstances of each case. ***Saxion v. Titan-C-Manufacturing, Inc.,*** 86 F. 3d 553 (6th Cir. 1996). A trial Court has considerable discretion to order separate trials to further convenience, avoid delay and prejudice, serve the ends of justice, reduce the expenses of the parties, and save the

time of the court. *Organic Chemicals, Inc. v. Carroll Products, Inc.*, 86 F.R.D. 468 (W.D. Mi. 1980). <u>See also</u>, *Helmac Products Corp. v. Roth (Plastics) Corp.*, 814 F.Supp. 581 (E.D. Mi. 1993) (trial court is granted considerable discretion to determine whether separate trials are necessary to advance fairness in particular case).

A court, in using its discretion to order separate trials, must consider, along with the problem of possible prejudice to the parties, the inconvenience to parties and the extra time involved in trying separate actions. *Crockett v. Boysen*, 26 F.R.D. 148 (D.C. Minn. 1960). A trial Court must also consider potential confusion to the jury and relative convenience and economy which would result. *In re Benedectin Litigation*, 857 F.2d 290 (6th Cir. 1988), *certiorari denied* 109 S.Ct. 788, 488 U.S. 1006, 102 L.Ed.2d 779; *In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir. 1982), *certiorari denied* 103 S.Ct. 2090, 461 U.S. 929, 77 L.Ed.2d 300, on remand 583 F.Supp. 1163.

In *State Of Ohio v. Louis Trauth Dairy, Inc*. 163 F.R.D. 500 (S.D. Ohio 1995) Judge Spiegel stated: "There are three grounds upon which the Court may order separate trials: (1) for the convenience of the parties, (2) to avoid prejudice, or (3) to promote expeditious and efficient adjudication of a case . . . 'The principal purpose of the rule is to enable the trial judge to dispose of a case in a way that both advances judicial efficiency and is fair to the parties.' *In re Bendectin Litigation*, 857 F.2d 290, 307 (6th Cir. 1988) . . . There are no precise guidelines to determine the propriety of ordering separate trials. Generally, however, courts have adopted a case-by-case method depending on the facts in the individual case . . . the Sixth Circuit stated that 'cases should be consolidated if the risks of prejudice and confusion are outweighed by other factors including 'the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources.'"

II.    **The Facts And Circumstances Of This Case Dictate A Single Trial.**

Bifurcation is inappropriate here because "furtherance of convenience," "expedition," and "economy" are not served through bifurcation. In addition, there is no risk of prejudice to the defendant. Meanwhile, great risk of prejudice is posed to Mr. Jeffries.

Separate trials should be avoided because of the: (i) inconvenience to the witnesses; (ii) the necessary duplicate presentation of evidence at two trials; (iii) the potential for prejudice to Mr. Jeffries if one or more of his busy and expensive out-of-town experts cannot attend one or more of the trials; and (iv) the expense brought about by two trials.

A.    *Convenience, Expedition, and Economy.*

One strategy of the defendant has been to make the pre-trial litigation of this case as expensive as possible for Mr. Jeffries. And it has succeeded: there cannot be a single plaintiff action in this Court which has consumed the resources that this case has to date. Now, instead of a single short trial on the claim and counterclaim, defendant sees it as advantageous to it if, in addition to the Summary Jury Trial, the case were split into a 2nd and 3rd trial, with the presentation of Mr. Jeffries' bad faith claim delayed further. The expense and potential prejudice associated with defendant's request, however, would be overwhelming.

1.    *Expense.*

When this matter first came before the Court on a Motion For Temporary Restraining Order in April 2002, the Court saw the disparity in the parties' financial positions and the resulting potential abuse that may result to plaintiff if the matter lingered. At the conclusion of that initial hearing, the Court asked defendant's counsel more than once: "How quickly can you

be prepared for trial?"  Since that time defendant has done everything imaginable to escalate

the costs of this proceeding.  For example:

- Following the Motion For Temporary Restraining Order, defendant's counsel refused to consider conducting discovery depositions for at least 4 months. And defendant's counsel refused to permit any depositions to go forward (despite multiple requests and notices) for 10 months: the first deposition was taken in February 2003;

- Once depositions began, defendant saw it as advantageous to take as many depositions as possible and over 30 depositions have now been taken in the case;

- In large part due to inappropriate conduct of defendant or its counsel, this matter has set what may be a record for the number of filings in a single, individual plaintiff action – now approaching 180 filings;

- Even though defendant's medical consultants (Drs. Garb and Craven) advised defendant in July 2000 that the medical science supported the potential that Mr. Jeffries could suffer from an adverse reaction to a vaccine, defendant required the conduct of an exorbitantly expensive *Daubert* hearing from December 2003 – March 3, 2004;

- Multiple motions to compel have been required due to defendant's complete refusal to provide discovery requested by plaintiff and then Ordered by the Court;

- The defendant has four times sought continuances of the trial to avoid any trial on the bad faith claim; and

- Defendant has even conducted depositions after the deposition deadline without notice to plaintiff and on a day when defendant knew plaintiff to be unavailable.  While defendant's counsel signed multiple Declarations asserting under oath that Notice was given, when presented with incontrovertible evidence to the contrary he finally conceded that he had not given notice.

Given the multiple requests for extension already sought by defendant as well as its

overall conduct in the case, it is not at all surprising that defendant now seeks a further delay of

the adjudication of Mr. Jeffries' bad faith claim.  It is defendant's hope that the additional

attorneys fees borne by now 3 trials will give defendant better leverage at the negotiation table and potentially allow defendant to avoid a bad faith verdict.

> **2.      *The Witnesses: Duplication of Testimony and Availability.***

The medical evidence that the plaintiff will offer to defend against defendant's counterclaim is the **same** evidence it will offer in support of its bad faith claim. Because there will necessarily be an excessive duplication of the evidence, bifurcation is improper.

To defend the Counterclaim, Mr. Jeffries will call his medical and psychological experts: Drs. McClellan (Cincinnati), Hyde (Canada), Wasibren (Wisconsin), Poser (Massachusetts), Pretorius (Cincinnati), Geier (Maryland), Shear (Cincinnati), and Hawkins (Cincinnati). These experts will establish that defendant's claim that Mr. Jeffries has a mental disorder is meritless, and simply another instance of bad faith. Because each of these experts are well-regarded, busy, and expensive professionals, it has been an extraordinarily cumbersome undertaking to arrange for their availability for the April 19th trial while minimizing the intrusion on their otherwise busy schedules. A late change in the trial schedule will require the complete rearrangement of their trial plans, the duplication of their testimony, and the potential that Mr. Jeffries may not be able to secure their testimony at one or both of the new trials.

Likewise, to prosecute the bad faith claim, plaintiff will present the testimony of each of these experts (Drs. McClellan, Hyde, Geier, Poser, Pretorius, Shear, Hawkins and Poser) as well as the testimony of plaintiff's insurance expert, Mary Fuller (the only expert who need not attend both trials). The need for this medical evidence in the prosecution of the bad faith claim is obvious: the major component of plaintiff's bad faith claim and the essential evidence in support of the claim is the fact that defendant completely disregarded the overwhelming

medical evidence submitted by plaintiff from February 1999 to March 2003 in support of his claim for benefits. Another major component is defendant's bad faith adoption of the mental disorder diagnosis rendered by Dr. Hartings.

Plaintiff intends to show through his medical and mental health experts that the defendant improperly ignored this overwhelming medical evidence and made no effort to have Mr. Jeffries examined by a medical doctor during the same period. Rather than fairly examining the medical evidence consistent with its affirmative duty of good faith, defendant pursued a scorched earth surveillance effort from at least May 1999 - March 2002 in the hope that it could turn up something to argue that Mr. Jeffries was a fraud. Only when that effort proved unsuccessful (after three years of pursuit) did defendant seek a psychological examination of Mr. Jeffries – rather than having Mr. Jeffries examined by a medical doctor or the Boston Hepatitis B expert they consulted in 2000.[2] During the period, defendant even disregarded the opinions of its medical consultants, Drs. Garb and Craven.

Plaintiff also intends to show through the evidence of his medical and psychological experts that the assertion that Mr. Jeffries has a mental disorder is itself bad faith.

If plaintiff's bad faith claim and defendant's counterclaim are separated into 2 trials, plaintiff would be required to pay his many expert witnesses an extraordinary sum to attend both trials for the purpose of offering the same evidence at each trial – <u>if</u> he succeeds in securing

---

[2]     To provide them with a diagnosis that would exclude/limit benefits, the defendant retained Dr. Michael Hartings who: (i) has served as a professional testifier for defendant's counsel for 18 years; (ii) lost his license to practice psychology for "low standards" in the mid-1990s; and (iii) denied losing his license in deposition.

their attendance at both, which is not guaranteed. This circumstance is a significant factor strongly weighing against bifurcation.

In *State Of Ohio v. Louis Trauth* Judge Spiegel rejected a request for bifurcation principally because as he reasoned: (i) separate trials will lead to several duplicative efforts by the Court and the parties; (ii) among other things, "the Court will have to impanel two juries, and much of the experts' testimony will be repetitive;" (iii) "separate trials will require the state to present much of its evidence twice, including expert testimony;" (iv) plaintiff would "face increased costs and delays necessitated by a second trial;" and (v) a second trial would "effectively give the [defendant] a second chance to discredit the [plaintiff's] expert testimony."

### 3.    *Prejudice To Mr. Jeffries*

In addition to the cost, duplication of evidence, and potential inability to secure all experts for both trials, there is the potential for additional substantial prejudice to Mr. Jeffries.

As indicated above, it is imperative to a jury's evaluation of defendant's expert's (Dr. Hartings) opinion that they know and understand everything that came before it. It is plaintiff's expectation that the jury will conclude that defendant's contention that Mr. Jeffries has a mental disorder is just one step in the five-year process of avoiding payment of a meritorious insurance claim. To properly evaluate the credibility, reliability, and weight of Dr. Hartings' opinion the jury must know everything that proceeded his opinion. That will require the presentation of all of the bad faith evidence at both trials.

It would be an injustice to Mr. Jeffries and prejudicial to his case and his rights under the insurance Policy if the trials were bifurcated and the 1st jury only received Dr. Hartings' opinion without hearing the evidence of defendant's actions and steps to avoid the claim for the 4 years

that preceded Dr. Hartings' opinion.  Defendant's claim that Mr. Jeffries suffers from a mental disorder is just one step in a 5 year pattern of bad faith.  The weight and credibility of defendant's newest position must be evaluated in light of everything that came before it.

4. *This Is Not A Typical Bifurcation Case.*

This is not a case where bifurcation is warranted due to complex legal theories or complex factual proof.  This is also not a case where there is a risk that the jury may misunderstand the evidence presented on the claim on counterclaim.  Here the claims and evidence are interrelated, and separate trials would require duplicative presentation of the same evidence.  For that reason, bifurcation is not warranted.

Moreover, as the Court has already determined, bad faith may be found in the 4 year period pre-dating Dr. Hartings' opinion and since the date of his opinion.  Accordingly, assuming defendant prevailed on its counterclaim in a first bifurcated trial, a second and equally lengthy and duplicative trial would still commence requiring the testimony of many if not all of the medical/psychological experts who testified at the first trial.

5. *Defendant's Assertion That Bifurcation is Appropriate in Insurance Cases Whenever a Bad Faith Claim is Asserted in Addition to a Contract Claim is Unsupported.*

Defendant goes to great lengths to argue that bifurcation is appropriate because plaintiff is pursuing a bad faith claim.  This is unsupported by any authority.  In fact, the great majority of disability insurance cases brought by plaintiffs include a claim of bad faith.  If there was a mandatory or common procedural requirement that the bad faith claim be bifurcated, defendant would certainly be able to string cite a number of cases within the Sixth Circuit

where this principal is expressed.  It hasn't offered that authority because that principal doesn't exist.

Also contrary to defendant's argument, within the world of disability insurance cases, this case is less appropriate for bifurcation than most.  Here, unlike many cases, the parties do not dispute the fact that Mr. Jeffries is disabled: defendant's IME of March 2003 showed excessive cognitive decline in Mr. Jeffries which makes him unable to perform the material and substantial duties of his occupation.  The only issue for trial is whether defendant can meet its burden of establishing that the undisputed disabling cognitive decline is the byproduct of a mental disorder.  Accordingly, the parties do not dispute that for 4½ years (September 1998 – March 2003) plaintiff has been disabled.[3]

Therefore, regardless of the fact that defendant has the burden of proof on its counterclaim, the issues to be tried on plaintiff's claim and defendant's counterclaim are more streamlined than a run-of-the-mill disability insurance case where disability is contested.  In this case, Mr. Jeffries has established a right to benefits.  The argument on defendant's counterclaim is simply whether an exclusion or limitation on those benefits is appropriate.

**B.**     ***Any Risk Of Prejudice To Defendant Is Minimal And
       <u>Outweighed By the Prejudice That May Result To Mr. Jeffries</u>.***

As indicated in Judge Spiegel's analysis in ***State Of Ohio v. Louis Trauth Dairy,*** the party moving for consolidation under Rule 42(b) has the burden to show prejudice and any

---

[3]        Throughout its brief the defendant incorrectly asserts that the Court has improperly placed on defendant the obligation to prove a negative – that Mr. Jeffries does not have a physical disability.  The parties have agreed and stipulated that Mr. Jeffries is, due to at least a decreased cognitive state, unable to perform the material and substantial duties of his occupation and meets the Policy's definition of Totally Disabled.  The defendant now wants to exclude/limit Mr. Jeffries' disability benefits to 24 months on its affirmative claim that this undisputed disability is caused by a mental disorder.

prejudice to the defendant must be balanced against potential prejudice to the plaintiff. Judge Spiegel also made a point to note that any prejudice can be overcome through careful jury instructions. The same is true here.

Defendant spends great effort stating that it will suffer prejudice but offers no cogent explanation of how it will suffer prejudice. In essence it simply asserts that if the jury learns of defendant's financial condition, the jury will rule against defendant on the counterclaim.

Contrary to defendant's argument, the bad faith claim won't proceed before the issue of whether Mr. Jeffries' suffers from a medical illness or mental disorder: evidence on those issues will be offered <u>simultaneously</u> and a single trial would proceed without prejudice to defendant. A single trial will proceed as follows:

- In his case-in-chief, Mr. Jeffries would present:

    o through his medical and mental health experts, the medical evidence showing disability which Mr. Jeffries provided to defendant during the period February 1999 to March 2003, and which defendant in bad faith ignored. This evidence will be offered in support of the bad faith claim as well as the defense of the counterclaim;

    o with each medical witness and element of evidence, the defendant will conduct cross-examination to develop what it considers favorable testimony on its counterclaim and bad faith claim; and

    o during the course of the case in chief, Mr. Jeffries will present his additional bad faith evidence, which includes the ignored medical evidence and the testimony of his insurance expert. Defendant will again attack this evidence on cross examination.
    Importantly, according to defendant, Mr. Jeffries' insurance expert <u>supports</u> defendant's position. (<u>See</u>, *Defendant's Daubert Motion On Fuller, Doc. 115*). Therefore, there is no prejudice to defendant if the jury were to hear her testimony.

- After Mr. Jeffries rests, defendant will have the opportunity to move for directed verdict on the bad faith claim. If the Court believes Mr. Jeffries'

11

evidence to be insufficient to go to a jury on that claim, defendant would proceed with its case in chief and focus exclusively on establishing its burden of proving that Mr. Jeffries' undisputed disability results from a mental disorder.

- And finally, even if the bad faith claim were to survive a motion for directed verdict at the close of plaintiff's case and a motion at the conclusion of all the evidence, and even through evidence of defendant's financial condition will be offered at trial the jury may not even know that Mr. Jeffries is seeking punitive damages until closing argument.[4]

There is nothing extraordinary or prejudicial presented within this framework. It is not unlike any other case where Party A asserts a claim and Party B asserts a counterclaim or affirmative defense and a single trial is conducted. And contrary to defendant's argument there is no "constitutional imperative" that Mr. Jeffries' bad faith claim be bifurcated from defendant's counterclaim: it is a matter of discretion for the trial Court in light of the facts and circumstances and importantly, the need for duplication of the same evidence at 2 trials.

2.    *There is No Support For the Argument that Knowledge of Defendant's Financial Condition Will Impact the Jury's Partiality When Examining the Evidence on the Counterclaim.*

Evidence of defendant's financial condition and defendant's relationship to DMS, an entity which it partially owns through an affiliated company, is essential not just on the issue of punitive damages[5] but also on the bad faith issue.

---

[4]     Defendant's attempted analogy to criminal punishment procedures is immaterial.

[5]     Defendant string cites 5 U.S. Supreme Court decisions spanning 1983 – 2003 for defendant's proposition that "it is time for courts to put a stop" to the "standard procedure in cases seeking punitive damages" for plaintiff to offer evidence of a defendant's financial condition. Despite defendant's conviction on what it believes the law should be, evidence of a defendant's net worth is relevant and admissible. Interestingly, four of the five Supreme Court cases that the defendant relies upon were decided **before** Judge Rice decided *United States v. Matusoff Rental Co.* 204 F.R.D. 396 (J. Rice, S.D. Ohio 2001) in which Judge Rice relied upon the Supreme Court's decision in the *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270, 69 L. Ed. 2d 616, 101 S. Ct. 2748 (1981) for the

It is essential that the jury understand that the defendant pays its administrator, DMS, an exorbitant sum of money to "administer" claims. And an easy inference to draw is that this extraordinary sum is paid by defendant to DMS to deny claims and ultimately save defendant money.

Other Courts faced with the "financial condition" argument that the defendant now asserts here have held that bifurcation is not required. _See_, *Hangarter v. Paul Revere Life Ins. Co.*, 236 F.Supp.2d 1069 (N.D.Cal. 2002). In *Hangerter* a disability insurer requested bifurcation but the Court rejected the request because the insurer failed to show that evidence of its financial condition would prejudice the jury. And in *TVT Records v. Island Def Jam Music Group*, 257 F. Supp. 2d 737 (S.D. N.Y. 2003) the District Court reached a similar conclusion. In *TVT* evidence regarding net worth, for purpose of determining punitive damages award against producers, was properly admissible prior to jury's special verdict confirming that it intended to award punitive damages, since potential for undue influence of such information on jury was insignificant.

In addition, the jury will inherently know that the defendant is a large wealthy corporation. The financial information offered in evidence will simply quantify the amount, but in itself it creates no "prejudice."

---

proposition that evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded. Apparently, the defendant's Counsel and Judge Rice disagree about the Supreme Court's position on the issue. In addition, the defendant misinterprets the Supreme Court's decision in *State Farm v. Campbell* 538 U.S. 408, 123 S. Ct. 1513, 155 L. Ed.2d 585 (2003). That case not only doesn't stand for the proposition defendant suggests, it says *nothing* about the admissibility of evidence of a defendant's financial condition when faced with a potential punitive damage verdict.

As indicated above any risk of prejudice to defendant is overborne by: (i) the potential for prejudice to Mr. Jeffries; (ii) the necessary duplication of the evidence; (iii) the risk of inconsistent adjudications of common factual and legal issues; (iv) the financial and time burden on the parties and witnesses; (v) available judicial resources posed by multiple lawsuits; (vi) the length of time required to conclude multiple lawsuits as against a single one; and (vii) the relative expense to all concerned of the single-trial, multiple-trial alternatives.

<u>Conclusion</u>

Defendant's motion to bifurcate the trial should be denied due to: (i) the additional cost to Mr. Jeffries; (ii) the potential prejudice to Mr. Jeffries if his witnesses are now unable to accommodate new dates and come to Cincinnati twice; (iii) the duplicative presentation of evidence of numerous out-of-town and in-town experts; and (iv) because there has been no showing of any true prejudice to defendant.

Respectfully submitted,

OF COUNSEL

GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
(513) 621-6464

/s Michael A. Roberts
Michael A. Roberts, Esq.  (0047129)
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202
(513) 629-2799
(513) 651-3836 (fax)
email:mroberts@graydon.com

<u>CERTIFICATE OF SERVICE</u>

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 26th day of March, 2004.

/s Michael A. Roberts