UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **MEMORANDUM IN OPPOSITION** |
| et al., | : | **TO PLAINTIFF'S MOTION FOR A** |
| | : | **DEFAULT JUDGMENT** |
| Defendants. | : | |

      What is incredible about Plaintiff's Motion for Default Judgment is that even though defense counsel informed Plaintiff's counsel the back-up tapes were available for information retrieval in late 2003, he waited until March 8, 2004 to respond. And then, even though the Court had ordered his expert to oversee the information retrieval process, he demanded that it take place without his expert. Defendant expressed justifiable concerns that proceeding with the retrieval in the absence of Plaintiff's expert would lead Plaintiff to again level accusations of some form of dishonesty if the search produces nothing of substance. Despite these facts, he now accuses Defendant of delay in producing back-up tape information. There has been no delay. Although Judge Hogan acknowledged Defendant's concerns, he ordered Defendant to proceed with the retrieval operation without Plaintiff's expert. *See* Judge Hogan's March 23, 2004 Order (issued near close of business on that date). Within 24 hours of the receipt of the Order, Defendant began the retrieval process. It took several days. But as noted in defense counsel's March 30, 2004 letter to Plaintiff's counsel, the retrieval process was completed on March 29, 2004 and documents from that process will be in defense counsel's hands by March 31, 2004. *See* 3/30/04 letter attached as Exhibit 1.

With regard to the financial information, what Plaintiff fails to mention is that Defendant objected to production of this information shortly after the commencement of this lawsuit. Plaintiff did not challenge Defendant's objection to these requests. Indeed, Plaintiff's request for financial information did not become an issue until earlier this month. Despite this fact, Plaintiff intimates that this financial information has been outstanding for two years. Plaintiff's hyperbole aside, Judge Hogan ordered Defendant to produce the financial information less than a week ago. In light of the United States Supreme Court's decision in *State Farm v. Campbell, 123 S.Ct. 1413 (2003)* the defendant's financial condition is not appropriate for a jury's consideration in arriving at a determination of punitive damages. In *State Farm*, following the path set in previous rulings, the Supreme Court once more declined to add financial condition to the guideposts identified by the Supreme Court for evaluating the permissible size of a punitive damages award. To the contrary, the court held that the lower court's reliance on "State Farm's enormous wealth" constituted "a departure from well-established constraints on punitive damages." 123 S. Ct. at 1525. Accordingly, it squarely held that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *Id.* Nonetheless, although Judge Hogan defers to the district judge on whether financial information may be used at the trial of this matter, he ordered the financial information disclosed for use at the summary jury trial, but under a protective order preventing its publication or communication. As noted in defense counsel's March 30, 2004 letter, this information will be made available to Plaintiff upon execution and filing of a Protective Order which was enclosed with that letter. *See* Ex. 1. Rather than inquire regarding the status of the Protective Order, or offering one of his own, Plaintiff filed this Motion.

As the Court may recall, the Administrative Services Agreement was subject to a previous Court Order limiting its disclosure to Plaintiff's counsel in the offices of defense counsel because it contains confidential and proprietary information. *Doc. 16.* Judge Hogan's 3/23/04 Order modified the previous Court Order and held that:

> "The document can be introduced as part of the evidence based on the ***summary jury trial***, but that any trial decisions on the admissibility of evidence should properly be decided by the trial judge. In either event, the document should be protected from any distribution or communication to others not participants in this trial."

As noted in defense counsel's March 30, 2004 letter, the Administrative Services Agreement will be produced pursuant to the terms of the enclosed Protective Order.

With regard to performance evaluations, this is what Judge Hogan's 3/23/04 Order provided:

> "There were certain redactions made from the performance evaluations of certain of Defendant's employees. These redactions relate, according to Plaintiff, to performance goals of DMS for Centre Life's business and how these goals were exceeded. Defendant argues that the redactions refer to "other blocks of business and other individuals not involved in the Plaintiff's claim." If Plaintiff is correct, the information is extremely relevant; if Defendant is correct, the information was properly redacted. The only way to get at the truth is to order the disclosure of the redacted material and make it subject to a protective order and that is the path this Court takes."

In compliance with Judge Hogan's Order, Defendant will produce performance evaluations in an unredacted form as soon as Plaintiff signs the Protective Order and it is entered of record.

As noted in the March 30, 2004 letter to Plaintiff's counsel, most of the subpoenas in this matter were issued to Mr. Jeffries' treating physicians and/or expert witnesses retained by Mr. Jeffries. For that reason, any documents obtained by subpoena from these individuals were available to Plaintiff's counsel as records of his client's treating physicians or as files of his experts. Moreover, these subpoenas generated documents that were produced at the depositions

of these individuals.  In any event, copies of materials received in response to subpoenas issued to Provident Bank and Mr. Edwards/America Insurnet were enclosed with this letter.

With regard to the report of medical consultant Dr. Hall, this document (Claim 2281-2282) was mistakenly identified on a privilege log.  Nonetheless, this document was among documents previously produced to Plaintiff on September 19, 2003. *See* Doc. 176.   In any event, the document was clearly identified on the privilege log as the Opinion of Medical Consultant, Dr. Hall.  There has never been any attempt by Centre Life to conceal the existence of this report.  Moreover, Dr. Hall's participation in the claims review process was not hidden from Plaintiff and another reports written by Dr. Hall was produced. See Claim 2988-2989, attached hereto as Ex. 2.  Plaintiff asserts that this document provides solid proof that Defendant "ignored Mr. Jeffries' medical information" because based on this evaluation "there was no basis not to pay Mr. Jeffries' claim. . . ."  The Court need only read the document to see that this is yet another doctor who cannot identify any disabling condition.  Indeed, what it actually shows is that Defendant diligently reviewed Mr. Jeffries' medical information as they were evaluating his claim.  And while they were reviewing his claim they were paying his benefits.  Moreover, Plaintiff's counsel fails to quote Dr. Hall's conclusion which was that Mr. Jeffries' clinical history, does not indicate that he "is totally disabled by it (the symptoms are not constant but rather appear to be intermittent).  Recommend re-evaluating as more medical information becomes available."  And that is just what Defendants did.  They continued to evaluate his claim and sought additional information.

Finally, lest Plaintiff forget that those who live in glass houses should not throw stones, he responded to Defendant's Interrogatory No. 7 which asked him to identify **all** medical practitioners with whom Mr. Jeffries has consulted or received treatment by saying, "Defendants

have **all** information from 1993 to the present." Although the claims file did contain voluminous medical records from the countless doctors Mr. Jeffries saw, what was missing was a report from a doctor visit to Dr. Deborah Fritz, a rheumatologist, who he was referred to on April 24, 1998. Although Plaintiff asserted in his Interrogatory response that Defendant had **all** of Mr. Jeffries' medical information, Dr. Fritz's report was *nowhere* to be found in the claims file. *See* copy attached as Ex. 3.

      And what it says is significant. In her report, Dr. Fritz says that Mr. Jeffries "admits to a fair amount of stress in his life. He does not exercise routinely and has somewhat of a habitual alcohol use pattern." Because she could "find no evidence of an inflammatory anthropathy, myopathy or other connective tissue disease," she "gave him several suggestions regarding exercise, improving sleep quality and the discontinuation of alcohol, etc." In a nutshell, Dr. Fritz found no evidence of any connective tissue disease in Mr. Jeffries. She simply suggested that he needed to modify his lifestyle by getting more exercise, getting more sleep and discontinuing his alcohol use which Mr. Jeffries told her included "at least a beer and/or a cocktail each evening."

      If defense counsel had not diligently pursued some cryptic references to Dr. Fritz in the claims file and subpoenaed her records, her normal findings would never have seen the light of day. But what is most disturbing about Plaintiff's failure to produce Dr. Fritz's records in the face of a plainly worded request is that in the materials subpoenaed from Dr. Fritz is a medical release forwarded to her by Plaintiff's counsel on October 24, 2000. *See* Exhibit 4. It can only be assumed that Plaintiff's counsel had Dr. Fritz's file in his possession but chose not to produce it because it contained damaging information.

      Throughout the course of this litigation, Plaintiff's counsel has worked tirelessly to divert the Court's attention from the facts of this case. That is because he hopes that facts like those

found in Dr. Fritz's report can be hidden behind a barrage of discovery disputes. Although Plaintiff may want to avoid a trial, it is time for a jury to hear the facts and render a decision. Plaintiff's request for a default judgment must be denied.

          Respectfully submitted,

          s/Peter M Burrell
          William R. Ellis (0012279)
          Peter M. Burrell (0044139)
          Amy Gasser Callow (0063470)
          Wood & Lamping LLP
          600 Vine Street, Suite 2500
          Cincinnati, OH  45202-2491
          (Telephone) (513) 852-6000
          (Facsimile) (513) 852-6087

          Attorneys for Defendants
          Massachusetts Casualty Insurance Company
          and Disability Management Services, Inc.

- 7 -

**CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 30th day of March 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                s/Peter M. Burrell
                Peter M. Burrell, Esq.

203376.1