UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **DEFENDANT'S REPLY** |
| et al., | : | **MEMORANDUM IN SUPPORT OF** |
| | : | **ITS MOTION TO BIFURCATE** |
| Defendants. | : | **TRIAL** |

**I.     Introduction**

A district court may bifurcate a trial "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy."  Rule 42(b), Fed. R. Civ. P.  "Only one of these criteria need be met to justify bifurcation."  *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. Ohio 1996).  In this case, all three criteria have been established by Centre Life.

In opposing Centre Life's Motion, Plaintiff cites several cases for the proposition that bifurcation is within the discretion of the trial court.  He is correct.  Half of the cases he cites were in fact bifurcated.  (*Saxion*; *In re Benedectin Litigation*, 857 F.2d 290 (6th Cir. 1988); *In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir. 1982)).  Of the cases he cites which were not bifurcated, one, *State of Ohio v. Louis Trauth Dairy, Inc.*, 163 F.R.D. 500 (S.D. Ohio 1995) was actually a misjoinder issue and another, *Organic Chemicals, Inc. v. Carroll Products, Inc.*, 86 F.R.D. 468 (W.D. Mich. 1980) held that where a case was a bench trial, the issues of prejudice would not apply.  As is established in Centre Life's Motion, bifurcation is appropriate in this case.

II.     Argument

    A.     **Bifurcation Will Serve To Streamline This Case And Minimize Expense.**

Plaintiff's primary opposition to Defendant's Motion to Bifurcate is the alleged additional expense. He complains about the costs incurred to date and argues that bifurcation will only serve to increase these costs. In fact, the opposite is true, bifurcation will serve to conserve judicial resources. Moreover, if Plaintiff considers the facts of this case in a logical order, it is clear that bifurcation will serve both parties.

Plaintiff appears to argue that because Defendant has caused him to incur costs in this case, bifurcation is not warranted. First, one issue is not related to the other. Second, the expenses in this case are not solely attributable to Centre Life. It is important to remember that this case began because Plaintiff refused to attend a physical examination as required under his policy. Despite the fact that Mr. Jeffries had traveled this country and the globe in his quest for a diagnosis, all at his own expense, and despite the fact that he had professed a willingness to visit any doctor who would help him find a diagnosis, when Centre Life exercised its right to have him examined under his policy, he refused. Rather than simply attend an examination, and then take up any issue thereafter if necessary, as nearly any insured would, Plaintiff initiated this lawsuit and sought a temporary restraining order. Even when the Court ordered him to attend a medical evaluation, he refused to complete the evaluation with Dr. Hartings until he was again ordered by the Court. Mr. Jeffries also threw up roadblocks before submitting to Dr. Bullard's examination. He objected to a doctor in Massachusetts because he was too geographically too close to Centre Life. It was Plaintiff's actions that began the expense of this case.

Plaintiff also implies that the additional expense of a summary jury trial is somehow the responsibility of Centre Life. As Plaintiff is well aware, the summary jury trial was ordered by

the Court at the request of neither party. The fact that the parties are preparing for and participating in a summary jury trial is not a cost that can properly be attributed to Defendant or for that matter Plaintiff. Finally, Defendant cannot look past Plaintiff's claim that it has sought to take depositions in order to drive up costs.[1] Plaintiff has in fact initiated many of these depositions. Moreover, when Centre Life asked Plaintiff to specifically identify which of his 17 expert witnesses he would be calling at trial, in order to minimize the number of depositions to be taken, Plaintiff refused. Plaintiff advised that Centre Life simply go ahead and depose all of his witnesses and he would decide later which he would use.

It is Plaintiff's strategy to blame Centre Life for every adverse action in this case. His plan appears to be to create so many frivolous disputes that the real issue of disability is overlooked. The Court should not allow this.

### B. Bifurcation Will Not Require The Duplication Of Witnesses.

Bifurcation of the trial will not cause any additional expense. The Court has ruled that Centre Life must prove Mr. Jeffries' disability was caused by a mental disorder.[2] As the case stands now, the burden is on Centre Life to go forward with evidence regarding a mental disability. As Plaintiff has laid out his response, he plans to present the testimony of his medical doctors which he believes will show there is not a mental disability. Plaintiff argues that these same doctors will be used to make his bad faith case and that bifurcation will require the duplicate presentation of these witnesses. Plaintiff's argument regarding bad faith is that the medical evidence was so overwhelming that for Defendant not to accept it at face value was bad

---

[1] Although counsel for Defendant tends to disregard Plaintiff's many spurious accusations, some merit brief response.
[2] Centre Life has moved to reconsider this ruling.

faith. Plaintiff makes this argument despite the fact that the great majority of his own treating physicians were at a loss to explain his symptoms.

Even if this argument is allowed, it is not one that can be made by medical doctors. This evidence need not be separately presented on the bad faith claim. If the trial is bifurcated and a jury determines that there was a contractual obligation which was breached, Plaintiff can certainly make the argument that the medical evidence already presented was overwhelming. This argument would not be made through Plaintiff's medical witnesses but instead through his bad faith "expert" Mary Fuller. First, if a contractual determination is made by the jury in Plaintiff's favor, the medical evidence will have already been heard by the jury. There would be no reason to bring in the medical experts again. Second, the medical witnesses proposed by Plaintiff are not in a position to offer testimony regarding whether the consideration of the medical evidence, or lack thereof, was or was not bad faith. This is simply Plaintiff's counsel's argument. It appears that this argument may be made through Mary Fuller but would not be made through his medical witnesses.

Plaintiff's claim that he would have to bring his medical witnesses in again for a bifurcated trial is not well-taken. As he has argued in his brief, the evidence he intends to present to rebut Centre Life's case, and the counterclaim, are his medical witnesses. These witnesses cannot offer testimony regarding insurance claims handling. Moreover, if the contract phase of the trial is determined in Plaintiff's favor, the jury will already have heard the medical evidence. Even if these medical witnesses could testify regarding Plaintiff's claim of bad faith, which they cannot, Centre Life has never suggested that a separate jury is required. The only witness that would be required by Plaintiff in the bad faith portion would be Ms. Fuller. If the

contractual decision goes against Plaintiff, however, the testimony of Ms. Fuller would not be required and substantial costs would be saved.

      **C.     Bifurcation Will Not Delay The Trial Of This Matter.**

Plaintiff's claim of delay and therefore prejudice, is also misplaced. There has been no motion by Centre Life to delay the bifurcated portion of the trial. Where, as here, Defendant has already been required to present financial information to Plaintiff, there is no reason why the bad faith portion of the trial could not go forward to the same jury after determination of the contractual claim. Although Centre Life intends to argue that the financial information is inadmissible, Plaintiff will have already had an opportunity to review it prior to trial. If the Trial Court deems it admissible, there is no reason to delay the bad faith portion because the financial review will already have been completed. If the bad faith trial is needed, it can begin immediately. This is the procedure contemplated in the numerous cases relied upon by Plaintiff in support of his argument that financial information must be turned over to him. In all of those cases, the court determined that bifurcation was appropriate. *See U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001); *Rupe v. Fourman*, 532 F. Supp. 351 (S.D. Ohio 1981); *Brinks, Inc. v. City of New York*, 717 F.2d 700, 707 (2d Cir. 1983). It is appropriate here as well.

If this matter is not bifurcated, there will be extreme prejudice to Centre Life. Plaintiff argues that all evidence of bad faith need be presented to <u>both</u> juries. First, there is no motion for separate juries and second, Plaintiff's admission that he intends to try the bad faith before the contract demonstrates the risk of prejudice to Centre Life. Throughout the course of this litigation Plaintiff and his counsel have attempted to divert the Court's and Counsel's attention from the issue of liability. He seeks to brush past the issue of whether he has established a

Case 1:02-cv-00351-MRB-TSH    Document 193    Filed 04/01/2004    Page 6 of 8

physical disability and instead argue his bad faith case. In effect, he wants to prove bad faith without first addressing the issue of disability.

Plaintiff seeks to put the cart before the horse by arguing the bad faith case before a determination of contractual liability is even made. Here we have the unusual situation where the Court has ordered the insurance company to establish that Mr. Jeffries has a mental disability but not a physical disability. Plaintiff intends to rebut the mental disorder portion of the case with his medical evidence. If he is permitted to argue not only the existence of the medical evidence but also his bad faith claim, this will presuppose the existence of a physical disability. This is precisely the issue which is to be considered by the jury. Plaintiff cannot be allowed the luxury that there is a presumption of a physical disability.

**III.    Conclusion**

Bifurcation will provide for a clearer, more procedurally consistent trial. The question presented is does Mr. Jeffries have a mental disorder which has caused a disability: yes or no. If the answer to this question is yes then Plaintiff has the burden to present his rebuttal evidence to show the disability was really a physical one. Again, the question to be answered is does Plaintiff actually have a physical as opposed to a mental disorder: yes or no. If the answer to the second question is yes, that Plaintiff has a physical disability but not a mental disorder, then the question of bad faith can be addressed. Plaintiff's medical witnesses cannot offer testimony regarding whether the amount of medical evidence should have resulted in a bad faith determination. This is an argument to be made by Plaintiff's counsel, and an argument which he seeks to make through his bad faith "expert" Ms. Fuller. Plaintiff's medical witnesses will not add anything to this testimony and his claim that he would need to recall them is spurious at best. Moreover, because the financial information has already been submitted to Plaintiff pursuant to a

Protective Order, there will be no delay in the bifurcated portion as argued by Plaintiff. As the great majority of Sixth Circuit cases have determined, where issues of liability and bad faith are both presented, bifurcation is appropriate. This is especially true where, as here, proprietary and confidential financial information has been produced. Where evidence of wealth has been allowed, courts in the Southern District have agreed that the issues of liability and damages should be bifurcated. *U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001); *Rupe v. Fourman*, 532 F. Supp. 344, 351 (S.D. Ohio 1981). The same result is warranted here and Centre Life's Motion for Bifurcation should be granted.

    Respectfully submitted,

s/William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

- 8 -

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 1st day of April 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                           s/William R. Ellis
                                           William R. Ellis, Esq.

203400.1