IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-02-351 |
| | : | |
| Plaintiff, | ) | JUDGE BECKWITH |
| | : | Magistrate Judge Hogan |
| v. | ) | |
| | : | |
| CENTRE LIFE INSURANCE CO., | ) | |
| | : | |
| Defendant. | ) | |

### PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY

On March 16, 2004, defendant for the first time identified an interest in calling Dr. Garb as a witness at trial. Shortly thereafter, defendant for the first time identified an interest in calling Dr. Reed as a witness. On March 26, 2004, defendant added an additional two (2) newly identified witnesses to its list: Drs. Luggen and Dunn. And on April 1, 2004, defendant added an additional four (4) new physician witnesses: Drs. Calabrese, Crafton, Fritz, and Nunlist-Young.

Defendant should be precluded from calling any of these witnesses at trial (who apparently will testify in addition to defendant's 4 experts and 8 non-physician witnesses) because:

(i) Defendant did not identify these witnesses as supporting witnesses in response to direct Rule 33 Interrogatories;

(ii) To the extent these physicians' medical records appear in the Claims file, their admissibility and authenticity is stipulated. When it decided to deny Mr. Jeffries' Claim, the defendant relied on those documents and not any additional testimony or commentary of these witnesses. For that reason, any commentary these witnesses may add to their records is irrelevant since defendant did not rely on such commentary when it made its decision to deny the Claim;

1

(iii) None of these witnesses have been identified as concluding that Mr. Jeffries does have a mental disorder or does not have a mental disorder, which is the only medical issue remaining in the case.  For that reason their testimony is irrelevant; and

(iv) These witnesses can offer no opinions or any information beyond the material in their records.  Plaintiff would be prejudiced if defendant could parade 8 physicians before the jury, in addition to its 4 experts, with the hope that the jury will consider these 8 alleged fact witnesses as experts.  The admissibility and authenticity of the records is not disputed and defendant cannot now rely on any additional commentary of these physicians to support a decision it made without such input.

For these reasons, the Court should preclude defendant from offering the testimony of these witnesses at trial.  The records they created are admissible and defendant's four properly and timely named experts can use those records as they see fit to render their opinions.  Accordingly, the work and involvement of these witnesses will be known to the jury – the experts can use such information and defendant will not be prejudiced.  The plaintiff, however, will be substantially prejudiced since it had no notice of defendant's intended use of these witnesses and no reason, therefore, to conduct discovery, which is now closed.  Moreover, these witnesses offer no opinion on the only medical issue in the case.  It would be extremely prejudicial to allow defendant to parade these non-expert, undisclosed, and irrelevant witnesses before the jury.  A memorandum in support is attached.

Respectfully submitted,

| | |
|---|---|
| OF COUNSEL | /s Michael A. Roberts_____ |
| | Michael A. Roberts, Esq.  (0047129) |
| GRAYDON HEAD & RITCHEY LLP | GRAYDON HEAD & RITCHEY LLP |
| 1900 Fifth Third Center | 511 Walnut Street, Suite 1900 |
| 511 Walnut Street | Cincinnati, Ohio 45202 |
| Cincinnati, Ohio 45202 | (513) 629-2799 |
| (513) 621-6464 | (513) 651-3836 (fax) |

2

**MEMORANDUM IN SUPPORT**

In June 2002, the plaintiff requested that the defendant identify and/or produce:

- "Every individual or entity with whom the defendants or their agents or attorneys have spoken to or corresponded with in any form or fashion with regard to Eric Jeffries and/or his claim" and "the substance of each contact, and produce all documents including notes of conversations, relating" thereto (*Interros. 2 and 3*);

- "Each document or item of information upon which you assert that Mr. Jeffries is not disabled or not entitled to benefits under the Policy" and "identify all persons who supplied defendants with [such] information (*Interros. 4 and 5*); and

- "all physicians or other health care professionals with whom defendants have spoken, corresponded, or from whom the defendants have received information concerning Mr. Jeffries" and all sources of information utilized by defendant in its review, analysis, and determination of Mr. Jeffries' Claim (*Interros. 6 and 7*).

The Court determined that defendant's Original responses to these requests "See Claims File" (*Exh. 1*) were inadequate and ordered defendant to supplement the responses, which it did on January 10, 2003. (*Exh. 2*). Its response to Interrogatories 2 and 3, defendant identified *inter alia* "James Garb, Michael Luggen, and Corwin Dunn" and referred to the documents it produced in the Claims File relating to these individuals, <u>nothing</u> else. *Id.* In answering Interrogatory 4 ("identify the documents or information upon which you assert that Mr. Jeffries is not disabled or not entitled to benefits"), however, the defendant did not identify any documents relating to Drs. Garb, Luggen, or Dunn. *Id.* Defendant also did not identify the names or documents relating to any of its other new witnesses: Drs. Calabrese, Crafton, Fritz, Nunlist-Young, and Reed. *Id.* Defendant also did not identify these new witnesses in response to Interrogatory 6.

3

Finally, defendant's June 13, 2003, Second Supplemental Discovery Responses ordered by the Court **also** did not identify Drs. Calabrese, Crafton, Dunn, Fritz, Garb Luggen, McClellan, Nunlist-Young, and Reed in any form or fashion on the question requesting that defendant identify: "information upon which [it] assert[s] that Mr. Jeffries is not disabled or not entitled to benefits under the Policy." If that issue is the purpose for these new witnesses' testimony then their testimony must be excluded. Defendant never updated its Third Supplemental discovery response.

Because the ability to take depositions is limited, plaintiff did not seek the depositions of any of these doctors because their names were not identified in the 3 separate answers to these straightforward discovery requests. The discovery deadline closed on August 30, 2003. And prior to August 30, 2003, there were no "reasonably timely supplements" to these discovery responses. And there were no "reasonably timely supplements" between August 30, 2003, and March 16, 2004.

Nonetheless, since March 16, 2004, and in addition to the 4 expert witnesses it did timely identify in August 2003 (Drs. Bullard, Clionsky, Frey, and Hartings), the defendant has identified an intention to call an additional twelve (12) physician witnesses at trial - and twenty-three (23) witnesses in total in its case in chief.

Four (4) of defendant's 23 witnesses (Drs. Hawkins, Hyde, McClellan, and Waisbren) will testify during the conduct of plaintiff's case. And during the course of their testimony it is anticipated that they will make use of the records of these newly identified 8 physician witnesses. Because those records are stipulated to be admissible, defendant would not be prejudiced because the authors of the records do not testify. The additional eight (8) (Drs.

4

Calabrese, Crafton, Dunn, Fritz, Garb, Luggen, Nunlist-Young, and Reed) newly named physician witnesses, however, should not be permitted to testify for the following reasons:

1. **Defendant's Have Not Complied With Their Affirmative Discovery Obligations With Regard To These Witnesses.** On June 25, 2002, the Court **Ordered** defendant to disclose to plaintiff the identity of defendant's fact witnesses and provide a summary of their testimony. (*Doc. 15*). The Court **Ordered** that this be done on or before November 29, 2002. This Court imposed deadline came and went and defendant failed to perform its obligation or seek an extension. In light of the Court's unequivocal procedure outlined nearly 2 years ago, the defendant cannot first disclose the identities of its trial witnesses 1 and 2 weeks before the conduct of a Summary Jury Trial and less than 3 weeks before the conduct of the Jury Trial.

As identified above these witnesses were not deposed[1] by plaintiff because they were not identified as witnesses that defendant would argue support defendant's position. There was no identification of such in defendant's July 2002, January 2003, or June 2003, discovery responses. Nor has there been a "reasonably timely supplement" to these interrogatory questions.

Before March 16, 2004, there was simply no such disclosure, and Drs. Calabrese and Crafton were not identified as witnesses until April 1, 2004.

What defendant is really attempting to accomplish (without revealing it to the Court) with its onslaught of numerous new physician witnesses is to obtain new expert opinions. And

---

[1] Drs. Luggen, Dunn, and Nunlist-Young were deposed by defendant not plaintiff. Neither prior to nor since the conduct of those depositions (until this past week) did defendant update its discovery responses to identify these individuals who support its theory that Mr. Jeffries is not entitled to benefits. Accordingly, Mr. Jeffries proceeded to plan and prepare his case without any focus on their testimony or notice to cross-examine these witnesses in discovery.

5

the reason that defendant is now adding these "fact" witness physicians at this late stage is because it knows from its experience 2 months ago that it <u>cannot</u> add any expert witnesses at this late stage.  (*See, 134, 138, and Order- 140*).  Defendant's counsel was so infuriated by the Court's ruling 2 months ago that he accused the Court of bias in open Court and asked Judge Beckwith to recuse herself. (*Doc. 144*).  Defendant is now conspicuously attempting to circumvent the Court's earlier order and add a physician to offer an expert opinion by cloaking the physician in the garb of a "Fact" witness.  This cannot be tolerated.

    2.    **As their testimony may regard defendant's counterclaim**:  These newly designated witnesses cannot offer any opinion testimony at the trial on defendant's counterclaim because they were not designated as expert witnesses on whose opinions the defendant would rely at trial to establish its counterclaim.

Moreover, there has not been any disclosure to plaintiff on whether any of these newly designated witnesses even have any opinion or what their anticipated testimony could be.  If defendant intends to call these new witnesses simply to establish that they saw Mr. Jeffries and they created some notes or test results, plaintiff will stipulate to the notes as authentic and admissible.  From there defendant's other experts can opine, assuming their expert reports are seasonably supplemented.

There is no proper purpose for the testimony of these additional witnesses since they: (i) cannot offer an opinion; and (ii) can only testify to what is in their report, since they have not shared any additional information with defendant (that plaintiff has been given notice of).  Their testimony is not relevant to the Counterclaim and likely prejudicial should defendant be

allowed to parade multiple undisclosed physicians before the jury who presumably will simply say what their medical record says.

3. **As their testimony may regard plaintiff's bad faith claim**: Defendant denied Mr. Jeffries' Claim without any direct communication with the physicians. The defendant cannot now justify its bad faith claim denial by offering evidence outside of the Claims File, and which it did not have when it denied the Claim. Such testimony would be irrelevant and likely prejudicial. Below is a witness-by-witness explanation for their exclusion:

A. **Dr. Garb.**

At defendant's request, in June/July 2000 Dr. Garb reviewed the medical records of 21 physicians who saw Mr. Jeffries. He sent defendant a Report in July 2000 and did not have any further contact with defendant concerning Mr. Jeffries until March 2004, after the summary judgment decisions rendered in this case. (*Exh. 4, p. 12*).

On March 16, 2004, the defendant for the very first time gave plaintiff notice of its intention to call Dr. James Garb as a witness in the case. On the same day, the defendant gave plaintiff 7 days notice of the taking of Dr. Garb's trial testimony. The plaintiff objected but the magistrate permitted the deposition to proceed.

During the course of a brief discovery deposition which immediately preceded Dr. Garb's trial deposition, it was learned that Dr. Garb sent his report to defendant on July 7, 2000, and had no further communication with defendant about Mr. Jeffries until March 2004. *Id.*

> Q:   *Prior to March 1, 2004, going in reverse chronological order what was your last communication with anyone regarding Mr. Jeffries?*
> A:   *The last would have been when I submitted this report in July 2000.*
> Q:   *Was there any follow-up, other than paying your invoice, with you about Mr. Jeffries' report?*

7

> A:    *Not that I recall. (Id., p. 12, lines 13-21).*

Dr. Garb's point of contact at defendant, Nurse Palmer, confirmed that defendant engaged in no explanatory discussion with Dr. Garb about his report any time after its receipt. (*Exh. 5, p. 36*):

> Q:    *What did [Dr. Garb] tell you?*
> A:    *He told me what is documented in the report?*
> Q:    *Is there anything he told you that is not documented in the report? (*

Accordingly, every piece of knowledge that Dr. Garb imparted on defendant is contained within the four corners of his report. And there is no proper relevant purpose gained by having him expand on the report for the jury.

As expected, at the trial deposition of Dr. Garb, defendant's counsel attempted to generate many new opinions from Dr. Garb on matters outside the four corners of his report. This is improper for several reasons: (i) defendant never disclosed Dr. Garb as a witness; (ii) defendant did not suggest in its discovery responses that Dr. Garb supported the contention that Mr. Jeffries is not disabled or not entitled to benefits; (iii) the only relevant information concerning either the bad faith claim or defendant's counterclaim is the information contained within the Garb Report because that is, according to both Dr. Garb and defendant, the only information he gave defendant concerning Mr. Jeffries.

It is irrelevant to the bad faith and counterclaim issues at trial what Dr. Garb may have thought about Mr. Jeffries that is not contained within his report. And given the late disclosure of the witness and his inability to offer any opinions since he is not an expert, the defendant should be restricted to using Dr. Garb's stipulated report at trial only. Any additional commentary from him was not shared with defendant until March 2004 and not known to

8

plaintiff until the day of his trial testimony. Any information defendant attempts to offer which is in addition to or contradictory of the report is inadmissible.

B.     **Dr. Reed.**

Dr. Reed has not been identified as a witness on whom or on who's records defendant will make its case or defense until one week ago. Dr. Reed's entire file on Mr. Jeffries is attached as Exhibit 6. As the Court can see he does not render any opinion or conclusion on the material issue for trial. Defendant's experts can use the report nonetheless as they wish in rendering their opinion and testimony, but it would be extraordinarily prejudicial to plaintiff to allow this late-identified, irrelevant physician to testify at trial on any matter outside the 4 corners of his report. There has been no disclosure of his use, no opportunity for discovery, the jury may conclude he is an expert which he cannot be in this case, and there has been no suggestion by defendant at any time of what information Dr. Reed possesses outside of the 4 corners of his report. Plaintiff stipulates to the authenticity and admissibility of Dr. Reed's Report and defendant will not be prejudiced by its experts' use of the report.

Any medical question asked of Dr. Reed which goes beyond the four corners of his written report and notes contained in the Claims file is an overt effort to knowingly elicit improper expert testimony (for which there has never been any disclosure despite the Court's clear directives regarding expert identification and expert reports).

C.     **Drs. Dunn, Fritz, Luggen, Nunlist-Young, and Reed.**

On March 26, 2004, the defendant for the first time identified Drs. Dunn and Luggen, as witnesses (*Ex. 7*) and on April 1, 2004, defendant added to that list Drs. Calabrese, Crafton, Fritz, and Nunlist-Young. (*Exh. 8*). For all of the reasons identified above, these late-identified

9

witnesses should not be permitted to testify. Their records are conceded to be admissible and defendant's expert can make use of them during the conduct of their examination. But to permit an unidentified physician (who can by no means offer any expert opinion – because there has been no expert disclosure) to testify on 5 day notice before a summary jury trial and 2 weeks notice before trial is extraordinarily prejudicial. There has been no opportunity for discovery.

Defendant's motivation for its improper effort to identify 8 new physician witnesses is plain. It disagrees with the Court's exclusion of experts and now is attempting through the backdoor to get before the jury physicians who the jury will likely conclude are experts. No opinions can be rendered by these physicians since there has been no expert disclosure. Everything they can possibly say is contained in admissible, stipulated materials documentary records that defendant's experts can utilize. If defendant sees value in using those records it can: its 4 properly identified experts can use them in the course of their testimony if applicable.

At this 11th hour plaintiff is further being prejudiced because summary jury trial and trial preparation are paramount. The procedure established by the Court is intended to avoid these last minute discovery issues.

Respectfully submitted,

OF COUNSEL /s Michael A. Roberts_____
Michael A. Roberts, Esq. (0047129)
GRAYDON HEAD & RITCHEY LLP GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center 511 Walnut Street, Suite 1900
511 Walnut Street Cincinnati, Ohio 45202
Cincinnati, Ohio 45202 (513) 629-2799
(513) 621-6464 (513) 651-3836 (fax)
email:mroberts@graydon.com

10

## CERTIFICATE OF SERVICE

  The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 2nd day of April, 2004.

                    /s Michael A. Roberts