Cindi Palmer 2/20/2003
Eric Jeffries v. Centre Life Insurance Company

Page 1

1         Volume:   I
2         Pages:    1 - 76
3         Exhibits: None Marked
4     UNITED STATES DISTRICT COURT
5      SOUTHERN DISTRICT OF OHIO
6    WESTERN DIVISION, AT CINCINNATI
7   ------------------------------------x
8   ERIC JEFFRIES,
9          Plaintiff,              Case No. C-1-02351
10     v.
11  CENTRE LIFE INSURANCE COMPANY,
12  et al,
13         Defendants.
14  ------------------------------------x
15
16      TELEPHONIC DEPOSITION of CINDI PALMER, a witness
17  called for examination by the Plaintiff, taken
18  pursuant to the Applicable Rules of the State of
19  Ohio, before Laurie N. Langer, Registered
20  Professional Reporter and Notary Public in and for
21  the Commonwealth of Massachusetts, at the Colonnade
22  Hotel, Huntington Avenue, Boston, Massachusetts, on
23  Thursday, February 20, 2003, commencing at 1:00 p.m.
24

Cindi Palmer 2/20/2003
Eric Jeffries v. Centre Life Insurance Company

Page 34

1  Q. What is a good idea?
2  A. To go ahead and contact physicians who have been
3     involved in the direct evaluation and diagnosis or
4     attempted diagnosis of Mr. Jeffries.
5  Q. What else did he tell you?
6  A. I don't believe there was much else. It was a very
7     brief conversation. And I don't have any notes of
8     it.
9  Q. Have you spoken to him subsequent to that call?
10 A. I don't think I have spoken to him subsequent to that
11    call.
12 Q. Have you written to him at all in reference to
13    Mr. Jeffries subsequent to that call?
14 A. No, I have not.
15 Q. Can you turn to 36 for me, ma'am
16 A. Yes. I've turned to 36.
17 Q. Thank you. Is the first page of 36, does it contain
18    Lance Famel's signature?
19 A. I don't know
20 Q. Do you see where it says "Bill Gelardi"?
21 A. Yes, I do.
22 Q. Do you know whose signature that is beneath there?
23 A. I don't know. I wouldn't say for sure whose
24    signature it is.

Page 35

1  Q. Can you turn to the next page please
2  A. Yes.
3  Q. This appears to be an invoice from Dr. Garb with,
4     sent to the attention of you in July of 2000. Do you
5     see that?
6  A. Yes, I do.
7  Q. Are you the person at DMS that engaged Dr. Garb to
8     perform a review of Mr. Jeffries' medical records?
9  A. I'm the one who made contact with Dr. Garb and helped
10    create information to help put together the
11    information for his review, yes.
12 Q. It suggests that he reviewed the records for five
13    hours, performed a literature review for four hours,
14    and had a phone call with a physician by the name of
15    Donald Craven; do you know who that is?
16 A. I believe he is a physician in Boston, Massachusetts
17    who had either done research or has expertise in the
18    situations of individuals who have had responses of
19    some kind to the hepatitis B vaccine. And I know
20    this only from again reviewing Dr. Garb's report.
21 Q. Have you ever spoken to Donald Craven?
22 A. I don't think I have. No.
23 Q. Have you ever corresponded with him in writing?
24 A. No.

Page 36

1  Q. The next item on the invoice is one and a half hour
2     case conference; did you have a one and a half hour
3     conference, verbal communication with Dr. Garb?
4  A. Yes.
5  Q. Was that before or after he prepared his report?
6  A. After.
7  Q. What did he tell you in that 90-minute conference?
8  A. He discussed his report and his findings.
9  Q. What did he tell you?
10 A. He told me what is documented in the report.
11 Q. Is there anything he told you that's not documented
12    in the report?
13 A. No.
14 Q. Did he suggest to you that he did not believe that
15    Mr. Jeffries was disabled?
16 A. Would you like me to review the report?
17 Q. Can you tell me based on your memory whether he
18    suggested to you that he did not believe that
19    Mr. Jeffries is disabled?
20 A. From memory I don't think we necessarily asked for
21    only, any kind of an opinion of disability. We asked
22    for a lot of other information from Dr. Garb.
23 Q. So you didn't ask him to give an opinion about
24    whether Mr. Jeffries was disabled based upon his

Page 37

1     review of the medical records?
2     MR. ELLIS: Objection.
3  A. We did ask Dr. Garb if he felt based on the review of
4     the medical records if Mr. Jeffries was impaired from
5     working and whether he could return to his occupation
6     and what time frame.
7  Q. Without reference to the report, do you have a memory
8     of what he told you during your one and a half hour
9     case conference on that issue?
10 A. My memory of the case conference was that he
11    discussed what he reviewed and what his opinions were
12    as documented in the report. I really do not
13    remember there was anything additional discussed.
14 Q. You can't recall for me anything additional that he
15    suggested to you outside of the report?
16 A. No.
17 Q. I asked you a negative question and you gave me a
18    negative response.
19 A. Maybe you better ask it again, sir.
20 Q. You can't recall Dr. Garb providing you with any
21    additional insight which is not included in the
22    report; is that correct?
23 A. I cannot recall Dr. Garb giving me any additional
24    insight other than what he documented in his report.

10 (Pages 34 to 37)