

**Massachusetts Casualty Insurance Company**

*Incorporated 1926*
*A subsidiary of Sun Life of Canada (U.S.)*

711 Atlantic Avenue, P.O. Box 9099
Boston, MA 02205-9099
(617) 728-8000

*A STOCK COMPANY*

**INSURED:** ꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓꞓ
**POLICY NUMBER:** ꞓꞓꞓꞓꞓꞓꞓꞓꞓ

DUPLICATE

As you read this Policy, remember that the words "you" and "your" mean you, the Insured named in the Policy Schedule on Page 2. The words "we", "our" and "us" mean Massachusetts Casualty Insurance Company.

We will pay benefits due to Total Disability and other covered loss resulting from Injury or Sickness subject to the definitions, exclusions and other provisions of this Policy. Loss must begin while the Policy is in force.

This Policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of the statements and representations in the application for this Policy. A copy of the application is attached and made a part of the Policy.

## NON-CANCELLABLE AND GUARANTEED RENEWABLE TO PREMIUM DUE DATE ON OR NEXT FOLLOWING YOUR 65th BIRTHDAY

You shall have the right to continue this Policy in force by the payment of the Total Policy Premium when due subject to the extension of 31 days provided by the grace period in PART 15, until the premium due date on or next following your 65th birthday. During this time if said premiums are paid when due or during the 31 day extension provided by the grace period and the Policy remains in force, we shall not have the right: (1) To cancel this Policy; (2) To change a Policy provision; (3) To add a restrictive rider; or (4) To make an increase in premium.

## CONDITIONAL RIGHT TO RENEW AFTER YOUR 65th BIRTHDAY; PREMIUMS ARE NOT GUARANTEED

Starting with the first premium due date on or after your 65th birthday, this Policy may be renewed on each due date, if it is then in force, subject to timely payments of premiums at the premium rate then in effect on and after age 65, for as long as you continue to be gainfully working full time; there is no age limit. Full time under this provision means at least thirty (30) hours per week.

Any premium paid after your 65th birthday for a period not covered by this Policy will be returned to you. No change will be made in the premium for this Policy unless it applies to all persons of the same age, class and rate group who have policies of this same form. The termination of the Policy shall not affect any continuous loss which started while this Policy was in force.

## NOTICE OF 10-DAY RIGHT TO EXAMINE THIS POLICY

We want you to fully understand and be entirely satisfied with this Policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt.

We will refund any premiums you have paid after we receive your notice of cancellation and the Policy. It will be considered never to have been issued.

**DISABILITY INCOME POLICY**

FORM 215 0000   ISSUE 02/01

REVISED POLICY SCHEDULE

INSURED - ERIC L. JEFFRIES
POLICY NUMBER - 0641734
CONTRACT STATE - OHIO

1. SICKNESS AND ACCIDENT - BENEFIT AND BENEFIT PERIOD COMMENCING ON THE
   31ST DAY OF TOTAL DISABILITY.

IF TOTAL DISABILITY COMMENCES:

MONTHLY BENEFIT AND MAXIMUM BENEFIT PERIOD

PRIOR TO 62ND BIRTHDAY .........$11,030.00 TO AGE 65, BUT
                                         NOT LESS THAN 42 MONTHS

ON OR AFTER 62ND BIRTHDAY
BUT PRIOR TO 63RD BIRTHDAY ....$11,030.00 FOR 42 MONTHS

ON OR AFTER 63RD BIRTHDAY
BUT PRIOR TO 64TH BIRTHDAY ....$11,030.00 FOR 36 MONTHS

ON OR AFTER 64TH BIRTHDAY
BUT PRIOR TO 70TH BIRTHDAY ....$11,030.00 FOR 30 MONTHS

ON OR AFTER 70TH BIRTHDAY .....$11,030.00 FOR 15 MONTHS

2. DOUBLE DISMEMBERMENT OR LOSS OF SIGHT OCCURRING PRIOR TO 65TH
   BIRTHDAY - BENEFIT AND BENEFIT PERIOD COMMENCING ON FIRST DAY OF LOSS.
   CAPITAL SUM                     MONTHLY BENEFIT AND MAXIMUM BENEFIT PERIOD
   $155,430.00                     $11,030.00 TO AGE 65, BUT
                                         NOT LESS THAN 60 MONTHS

3. BENEFIT FOR NON-DISABLING INJURIES - TO $ 1,500.00 MAXIMUM, EACH CLAIM
                        ANNUAL PREMIUM FOR COVERAGE SHOWN ABOVE.... $2,906.04

4. ADDITIONAL COVERAGES -
   RIDER R400 - RIDER PROVIDING OPTION TO INCREASE MONTHLY
                BENEFIT WITHOUT EVIDENCE OF PHYSICAL
                INSURABILITY ..................................... $  247.72
                $ 3,370.00 MAXIMUM INCREASE REMAINING
                     AS OF APR.  1, 1991.
   RIDER R475 - RIDER PROVIDING RESIDUAL DISABILITY BENEFITS . $  503.91

REVISED POLICY SCHEDULE CONTINUED

INSURED — J ERIC L. JEFFRIES
POLICY NUMBER — 0641754

IMPORTANT — THIS REVISED POLICY SCHEDULE REFLECTS CHANGE(S) REQUESTED
BY INSURED. IT REPLACES THE ORIGINAL SCHEDULE AND ANY REVISED
SCHEDULE(S) PRECEDING THIS ONE. THE REQUESTED CHANGE BECOMES
EFFECTIVE AS OF APR. 1, 1996.

POLICY DATE: APR. 1, 1996.          TOTAL ANNUAL PREMIUM .... $ 3,257.67

TOTAL POLICY PREMIUM: $ 3,257.67 FOR A TERM OF 12 MONTHS.

# TABLE OF CONTENTS

| SUBJECT: | PAGE: |
|---|---|
| • Renewal Conditions | 1 |
| • Definitions | 3 |
| • Monthly Benefits for Total Disability | 3 |
| • Presumptive Total Disability | 3 |
| • Double Dismemberment or Loss of Sight Prior to Age 65 | 4 |
| • Increased Benefits if Premiums Paid Annually | 4 |
| • Benefit for Non-disabling Injuries | 4 |
| • Transplant and Cosmetic Surgery Benefit | 5 |
| • Rehabilitation Benefit | 5 |
| • Recurrent Disabilities | 5 |
| • Concurrent Disabilities | 6 |
| • Waiver of Premiums | 6 |
| • Military Suspension | 6 |
| • Exclusions or Limitations | 7 |
| • Policy Changes | 7 |
| • Premiums and Renewals: | |
|     Policy Term | 8 |
|     Grace Period | 8 |
|     Reinstatement | 8 |
|     Refund of Premium at Death | 8 |
| • Claims: | |
|     Notice of Claim | 8 |
|     Claim Forms | 8 |
|     Proof of Loss | 9 |
|     Time of Payment of Claims | 9 |
|     Payment of Claims | 9 |
|     Physical Examinations | 9 |
|     Misstatement of Age | 9 |
|     Legal Actions | 9 |
|     Payment for Part of Month | 9 |
| • General Provisions: | |
|     Entire Contract | 9 |
|     Time Limit on Certain Defenses | 9 |
|     Conformity with State Laws | 10 |
|     Duty to Cooperate | 10 |
|     Contract State | 10 |

**PART 1**

## DEFINITIONS

**INSURED**    The "Insured" is named in the Schedule.

**PHYSICIAN**    "Physician" means any person who is licensed by law, and is acting within the scope of the license, to treat the Injury or Sickness resulting in a covered loss under this Policy. This person cannot be: (a) the Insured; or (b) a member of the Insured's family. "Family" means spouse, parent, son, daughter, brother or sister.

**INJURY**    "Injury" means accidental bodily injury occurring while this Policy is in force.

**SICKNESS**    "Sickness" means illness, disease or physical condition which first manifested itself while this Policy is in force. A Sickness will be considered to have manifested itself when any of the following occurs: (a) symptoms exist that would cause an ordinarily prudent person to seek diagnosis, care or treatment; (b) a Physician makes a diagnosis; or (c) medical advice or treatment is recommended by or received from a Physician.

**TOTAL DISABILITY**    "Total Disability" and "totally disabled" means that due to Injury or Sickness, the Insured:

    1.    is substantially unable to perform the material duties of his/her occupation; and
    2.    is receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to the Insured.

**INSURED'S OCCUPATION**    The Insured's "occupation" means the occupation (or occupations, if more than one) in which the Insured is regularly engaged at the start of the Period of Disability. In the event: (a) the Insured shall retire prior to a Period of Disability; and (b) the Insured is also not engaged in any other occupation, the Insured's occupation shall mean the normal activities of a retired person of like age, sex and good health.

**PERIOD OF DISABILITY**    "Period of Disability" means a period of Total Disability starting while this Policy is in force.

**ELIMINATION PERIOD**    "Elimination Period" means the number of days of Total Disability that must elapse in a Period of Disability before benefits become payable. The number of days is shown in Item 1 on the Schedule. Days of Total Disability need not be consecutive; they can be accumulated during a Period of Disability to satisfy an Elimination Period provided there is no break in such days longer than 12 months. Benefits are not payable, nor do they accrue, during an Elimination Period.

## PART 2

## MONTHLY BENEFITS FOR TOTAL DISABILITY

We will pay monthly benefits for a Total Disability which begins while this Policy is in force. The monthly amount is shown in Item 1 of the Schedule on page 2. Benefits: (a) start on the day of Total Disability following the Elimination Period; and (b) will continue while you are totally disabled during the Period of Disability but not beyond the Maximum Benefit Period shown in Item 1 of the Schedule.

## PART 3

## PRESUMPTIVE TOTAL DISABILITY

If, while this Policy is in force and prior to your 65th birthday and as a result of Injury or Sickness, you sustain any of the following losses for at least 90 successive days:
(1)  the loss of the entire use of both hands; or
(2)  the loss of the entire use of both feet; or

   (3)  the loss of the entire use of one hand and one foot; or

   (4)  the total loss of power of speech; speech means audible communication of words; or

   (5)  the total loss of hearing in both ears; hearing means the capacity to perceive and understand audible sound with or without artificial assistance.

you will be presumed totally disabled under PART 2 of this Policy. Proof of such a loss satisfactory to us must be furnished. While such a loss continues, benefits will be payable as provided for under PART 2; EXCEPT that: (a) continued medical care by a Physician is not required; (b) your ability to engage in any work or occupation will not matter; and (c) benefits shall begin as of the first day of such loss.

While benefits are payable under this PART 3, you shall not be entitled to receive benefits under any other provision of this Policy. Benefits will not be payable for more than one loss at a time under this PART 3.

## PART 4

## DOUBLE DISMEMBERMENT OR LOSS OF SIGHT PRIOR TO AGE 65

(A) <u>MONTHLY BENEFITS</u>

If, while this Policy is in force and prior to your 65th birthday and as a result of Injury or Sickness, you sustain any of the following losses we will pay during your lifetime monthly benefits in the amounts and for the maximum benefit period shown in Item 2 of the Schedule:

   (1)  the loss of both hands or feet by physical severance at or above the wrists or ankle joints; or

   (2)  the loss of one hand and one foot by physical severance at or above the wrist or ankle joint; or

   (3)  the total and permanent loss of sight of both eyes for at least 90 successive days. The term "permanent loss of sight" does not include a loss of sight recovered or recoverable: (1) by artificial means; or (2) by application of generally accepted medical procedures.

You do not have to be under the care of a Physician. Also, benefits will be paid whether or not you engage in any work or occupation. While benefits are payable by this PART 4(A) you shall not be entitled to receive monthly benefits under any other provision of this Policy. When such benefits cease upon the expiration of the scheduled maximum benefit period no additional monthly benefits are payable under PART 2. Benefits will not be payable for more than one loss at a time under this PART 4(A).

(B) <u>CAPITAL SUM</u>

If monthly benefits are payable for a loss as described in PART 4(A), we will pay the Capital Sum shown in Item 2 of the Schedule. This Sum will be paid in addition to the monthly benefits paid for such loss. In no event shall the Capital Sum be payable more than once by this Policy.

## PART 5

## INCREASED BENEFITS IF PREMIUMS PAID ANNUALLY

All dollar amounts shown in Item 1 of the Schedule under "Monthly Benefit" shall be increased by 10% if all premiums payable on this Policy since its effective date have been paid on an annual basis.

## PART 6

## BENEFIT FOR NON-DISABLING INJURIES

If:  (1)  you sustain an Injury that does not result in a Total Disability or loss for which benefits are payable under another provision of this Policy or any attached benefit riders; and

    (2)  at the time of such Injury and during any period before you fully recover from such Injury: (a) you are not already totally disabled due to a Sickness or any other Injury; or (b) you are not receiving any benefits under another provision of this Policy or any attached benefit riders; and

    (3)  such Injury requires while this Policy is in force:

        (a)  the attendance by a Physician; or

        (b)  outpatient care in a hospital or care in any other medical facility; or

        (c)  x-rays;

we will pay the cost you incurred for such up to the amount shown in Item 3 of the Schedule.

Limitation: If, (1) you have one or more disability income policies issued to you by us prior to, or coincident with, the effective date of this Policy; (2) such policy(ies) contain a benefit provision similar to this PART 6; and (3) under such similar provision(s) you are entitled to payment or reimbursement for the same incurred costs that would be indemnifiable under this PART 6, then no payment for such costs will be made under this PART 6. Payment will be made under this Policy: (a) only to the extent, if any, that the total amount of all such same costs exceeds the total amount payable or reimbursable for such costs under such policy(ies); and (b) only up to the amount as provided for under this PART 6.

## PART 7

## TRANSPLANT AND COSMETIC SURGERY BENEFIT

If: (1)  while this Policy is in force you undergo surgery: (a) to transplant a part of your body to the body of any other person; or (b) to improve your appearance or to correct a disfigurement; and

(2)  as a result of such surgery you suffer a total disability; and

(3)  such disability commences while this Policy is in force;

we will treat such as a total disability due to a Sickness, subject to all the terms of this Policy.

## PART 8

## REHABILITATION BENEFIT

We will pay for the cost of services incurred in connection with a program of vocational rehabilitation if:

(1)  we enter into an agreement with you on both the program and the services; and

(2)  the cost of services is not covered by another plan or program.

Participation in such a program will not of itself be considered a recovery from Total Disability.

## PART 9

## RECURRENT DISABILITIES

## CONTINUATION OF BENEFIT PERIOD FOR SAME CAUSE OR CAUSES

Two or more total disabilities from the same cause or related causes shall be treated as one continuous claim for benefits if:

(1)  monthly benefits had been paid to you by the Policy for your first disability; and

(2)  after the end of your first disability you were wholly able to do any gainful work for less than 12 successive months; and

(3)  the subsequent disability begins while this Policy is still in force.

In such a case any benefits payable under PART 2 will start on the first day of your subsequent disability and will continue for the balance, if any, of the maximum benefit period of your first disability; subject to all the other terms of the Policy.

## NEW BENEFIT PERIOD FOR SAME CAUSE OR CAUSES

Two or more total disabilities from the same cause or related causes shall be treated as new or separate claims for benefits if:

(1)  monthly benefits had been paid to you by this Policy for your first disability; and

(2)  after the end of your first disability you were wholly able to do any gainful work for at least 12 successive months; and

(3)  the subsequent disability begins while this Policy is still in force.

In such a case any benefits will be payable as for a new claim subject to a new maximum benefit period and elimination period and to all the other terms of the Policy.

## PART 10

## CONCURRENT DISABILITIES

Monthly benefits are not payable for two or more disabilities at the same time. A Period of Disability which results from more than one Injury, Sickness or medical condition shall be treated: (1) as a single period; and (2) on the basis of only one monthly benefit being payable.

Also, once a Period of Disability starts it will be treated for purposes of this Policy: (1) as a single continuous period regardless of the number of initial, additional or subsequent sicknesses, injuries or medical conditions which cause it to continue; and (2) such continuous period ends when you are no longer totally disabled from any and all such causes, as the case may be.

No benefits are payable for any disability due to Sickness or Injury which occurs during a period for which premiums are being waived under PART 11 of this Policy on account of a prior Sickness or Injury.

## PART 11

## WAIVER OF PREMIUMS

## TOTAL DISABILITY FOR 90 OR MORE SUCCESSIVE DAYS

If total disability begins while this Policy is in force and it lasts 90 or more successive days, while you are so disabled we will waive the amount of the premium, which applies to:
(1)  the first such 90 days;
(2)  the time after the first such 90 days, if any, until monthly benefits are payable;
(3)  the time for which monthly benefits are payable; and
(4)  the time beyond which monthly benefits are payable if during such time you are unable to engage in any gainful work or occupation because of such disability.

Waiver will apply after the premium due date on or next following your 65th birthday only when monthly benefits are payable.

The payment of a waived-premium amount prior to or during the time for which it is waived will be refunded as follows: (1) the refund covering the first 90 days will be made following the end of such 90 days; and (2) the refund for the balance of any paid premium will be made following the next regular premium due date or following the day you return to work, if earlier.

The Policy shall not lapse for non-payment of premiums which fall due during the period of waiver.

## RESUMPTION OF PREMIUM PAYMENTS FOLLOWING TOTAL DISABILITY

When the Period of Disability for which premiums have been waived ends, we will send you written notice of the premium due from such end to the next due date. You will then have 31 days to pay this premium. The payment of regular premiums will resume on such next due date.

## PART 12

## MILITARY SUSPENSION

In the event:
(1)  you enter full-time active duty in any armed forces; and
(2)  such duty will last more than 90 successive days;
your Policy will automatically be suspended from the date you start such duty and during the period of such duty. During the time your Policy is suspended: (1) it will not be in force; and (2) no premium need be paid by you.

Upon receipt of proof of such active duty we will refund the portion of any paid premium which applies to a period of such active duty.

At the end of your active duty if such occurs before your 65th birthday you may reinstate your Policy without proof of insurability if: (1) you submit a written request to us; and (2) such request plus the required premium payment is received by us within 90 days after the date your active duty ends. The premium rate will be the same as before. Your Policy will not cover any loss which results from an Injury which occurs, or a Sickness which starts during the time the Policy is suspended. All other Policy rights remain the same as before.

## PART 13

## EXCLUSIONS OR LIMITATIONS

This Policy does not cover any loss excluded: (a) by name or description in any elimination rider attached to this Policy; or (b) under the Provision which follows:

Pre-existing Condition Limitation: No benefits are payable for a loss which: (a) starts within 2 years after the effective date of coverage of this Policy; and (b) results from a pre-existing condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this Policy. Pre-existing condition means: (a) a condition for which medical advice or treatment was received from or recommended by a physician within 5 years prior to the effective date of coverage of this Policy; or (b) the existence of symptoms within said 5 years which would have led an ordinarily prudent person to seek medical advice or treatment for the condition.

Also, no benefit shall be payable under this Policy for a loss or disability:
(1) caused by war, whether declared or undeclared;
(2) caused by an act of war;
(3) which results from normal pregnancy or childbirth; EXCEPT that we will pay benefits for a Total Disability which results from normal pregnancy or childbirth commencing on the later of: (a) the 91st successive day of disability; or (b) the day of Total Disability following the Elimination Period; subject to all of the other terms of this Policy.

## PART 14

## POLICY CHANGES

We will consider requests for changes in coverage which are allowable by us under this Policy while it is in force.

Any such changes:
(1) must be requested in writing on a signed application form prescribed by us for such change;
(2) will be subject to our underwriting rules, guidelines and practices in effect at the time of such request;
(3) must be approved by us;
(4) will be effective on a date determined by us to be compatible with the date premiums are then payable under the Policy; and
(5) will be subject to the payment of any additional premium due for such change.

If your requested change requires an additional premium, the additional premium charged will be based on:
(1) our then current rate; and
(2) your then attained age and then current classification of risk.

The change in coverage will apply to a covered loss or disability under the Policy:
(1) which results from a cause which occurs after the effective date of the change; and
(2) the cause of which is not the same as that of a Period of Disability which started prior to the effective date of the change unless separated by a period of at least 6 months during which you are not totally disabled.

Any applied for increase in coverage will be subject anew to the two-year periods stated in General Provision 2(A) of this Policy measured from the effective date of the increase.

We will issue you a revised Policy Schedule.

It will reflect:

    (1) the change;

    (2) its effective date; and

    (3) any resulting change in premium.

Also furnished for inclusion with your Policy will be: (a) a copy of the application for the change; and (b) any other document required to evidence the change. Upon receipt of the foregoing you shall have a ten-day period to inspect such to see if the change has been made as you requested.

## PART 15

## PREMIUMS AND RENEWALS

**1. POLICY TERM**    The first term of this Policy starts on the Policy Date shown in the Schedule. It is for the term of months also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the date the preceding term ends, subject to the grace period.

**2. GRACE PERIOD**    This Policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the Policy will stay in force.

**3. REINSTATE-MENT**    If a renewal premium is not paid before the grace period ends, the Policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this Policy.

If we or our agent requires an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the Policy will be reinstated as of the approval date. Lacking such approval, the Policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated Policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, the rights of all parties will remain the same, subject to any provisions noted on or attached to the reinstated Policy. The statements in the application for the reinstated Policy will also be subject anew to the two-year periods stated in General Provision 2(A) of this Policy measured from the date of reinstatement.

**4. REFUND OF PREMIUM AT DEATH**    Upon notice of your death, we will refund to your estate the portion of any premium which applies to a period beyond the date of your death.

## PART 16

## CLAIMS

**1. NOTICE OF CLAIM**    Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our Home Office, Boston, Massachusetts, or to our agent. Notice should include your name and the Policy number.

**2. CLAIM FORMS**    When we receive notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss. You must give us this proof within the time set forth in the Proof of Loss section.

**3. PROOF OF LOSS**

If the Policy provides for periodic payments, the claim forms and other information requested by us, all of which is called "written proof of loss", must be furnished within 90 days after the end of each period for which we are liable. For any other loss, written proof of loss must be given within 90 days after such loss. If that is not reasonably possible, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so. You must give us the information which we need to determine if a benefit is payable and how much the benefit should be.

**4. TIME OF PAYMENT OF CLAIMS**

After we receive sufficient written proof of loss to enable us to determine that the claim is payable: (1) we will pay all benefits then due that are not payable periodically; and/or (2) we will pay monthly all benefits then due that are payable periodically. The balance of any unpaid benefits will be paid promptly at the end of the claim.

**5. PAYMENT OF CLAIMS**

All benefits will be paid to you. Benefits due as of time of your death will be paid to your estate.

**6. PHYSICAL EXAMINATIONS**

We, at our own expense, have the right to have you examined by an examiner of our choice as often as is reasonable while a claim is pending.

**7. MISSTATEMENT OF AGE**

If your age has been misstated, all amounts payable under this Policy shall be such as the premium paid would have purchased at the correct age; but if according to the correct age the coverage under this Policy would not have become effective, or would have ceased prior to the acceptance of such premium(s), then our liability shall be limited to the refund of all premiums paid for the period not covered by this Policy.

**8. LEGAL ACTIONS**

You may not start a legal action to recover on this Policy within 60 days after you give us required proof of loss. You may not start such action after three years from the time proof of loss is required.

**9. PAYMENT FOR PART OF MONTH**

If any payment under this Policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

## PART 17

### GENERAL PROVISIONS

**1. ENTIRE CONTRACT**

This Policy with the application and any attached papers is the entire contract between you and us. Statements by agents or brokers are not part of our contract. No change in this Policy will be effective until approved by one of our executive officers. This approval must be noted on or attached to this Policy. No one else can change this Policy or waive any of its provisions or conditions.

**2. TIME LIMIT ON CERTAIN DEFENSES**

(A) After two years from the effective date of this Policy, only fraudulent misstatements in the application for this Policy may be used to void it or to deny any claim for loss incurred or disability that starts after the two year period.

(B) No claim for loss incurred or disability that starts after two years from the effective date of this Policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the effective date of this Policy.

When under clause (A), above, we contest the validity of the coverage of this Policy, or any portion thereof, based on information given in the application for such coverage, we shall do so by a letter to you. This contest is effective on the date we mail the letter including the refund of any applicable premium to you.

**3.  CONFORMITY WITH STATE LAWS**  Any provision of this Policy which, on its effective date, is in conflict with the laws of the state in which you then reside is changed to conform to the minimum requirements of those laws.

**4.  DUTY TO COOPERATE**  You have the duty to cooperate with us concerning all matters relating to this Policy and any claims thereunder. This cooperation includes, but is not limited to: (a) submitting all required forms and other documentation according to the Policy provisions; (b) mitigating all covered expenses; and (c) securing appropriate medical treatment for the condition(s) upon which your claim for benefits under the Policy is based; including such corrective/remedial surgery or generally accepted medical procedures which to an ordinarily prudent person would appear medically reasonable for such condition(s).

**5.  CONTRACT STATE**  The Contract State is shown in the Schedule. This Policy is issued for delivery in the Contract State. All provisions and claims under the Policy shall be construed according to the laws or rules of the Contract State regardless of where you reside or are domiciled when any claim or dispute under the Policy begins.

SIGNED at the Home Office of the Company as of the Policy Date.

_James R. Lyons_

Secretary

_D. & D. H._

President

Countersigned at _____

_____
Policywriter or Licensed Resident Agent

## RIDER PROVIDING OPTION TO INCREASE MONTHLY AMOUNT OF POLICY BENEFITS WITHOUT EVIDENCE OF PHYSICAL INSURABILITY

Massachusetts Casualty Insurance Company
Boston, Massachusetts

THIS RIDER is a part of and is subject to all the provisions and conditions of the Policy to which it is attached. The premium for it is shown on the Schedule. Its effective date is the same as the Policy Date unless another date is shown on the Schedule, in which case such other date is the effective date of this Rider.

### PART I
### INCREASE OPTIONS

A. You have the right to increase the monthly amount of basic Policy benefit shown in Item 1 of the Schedule of the Policy. No evidence of your health is required. The increase is subject to the CONDITIONS which follow:

1. You may apply for an increase on any Anniversary Date of the Policy (herein called "Option Date") up to and including the Anniversary Date on or which next follows your 58th birthday. If at any time the Policy is part of a premium list-billing, the Option Date will coincide with the Anniversary Date of the group list-billing to which you belong.

2. Your written application and the full first premium for any elected increase must be received at our Home Office within 30 days before or after the Option Date.

3. The effective date of the increase when approved by us will be the Option Date subject to payment of the required premium. If premiums under the Policy are being waived on the Option Date, the premium for the increase will also be waived. When payment of Policy premiums resumes after the end of such a waiver, the premium for the increase must then be paid.

4. The amount of any increase applied for shall be subject to our issue and participation rules: (1) for new applicants in effect on the Option Date; or (2) the rules in effect when this Rider was issued if such are more favorable.

5. The increase elected at any one time may not be less than $100.

6. The total of all increases, or only one increase as the case may be, may not exceed the initial maximum increase shown on the Schedule of the Policy; EXCEPT, that after age 46 the amount of the increase elected on any succeeding Option Date, if any such amounts are then available, shall not exceed one-third (1/3) of the initial maximum increase.

7. The premium charged for the increase shall be based on our current rate. The rate will be based on: (1) your age on the Option Date; and (2) the same classification of risk as under the Policy. You may submit at your own expense evidence satisfactory to us that your classification of risk has improved. In which event, the rate will be based on such improvement.

We will issue you a revised Schedule for the Policy to reflect the increase applied for together with a copy of your application for such.

B. Statements in your application for such increase shall be subject to the provisions of General Provision 2(A) of the Policy the two-year period of which shall be measured from the effective date of the increase.

The increase will apply to a total disability under the Policy which begins after the effective date of the increase, even though caused by a pre-existing medical condition EXCEPT THAT:

1. If on a given Option Date you are receiving or entitled to receive Policy benefits for a then existing disability under the Policy, you must return to gainful employment for a period of at least 6 successive months after the end of such disability before any disability beginning thereafter and resulting from the same medical conditions or causes will be covered by the elected increase; and

2.  If any disability which begins after the effective date of the increase results from the same medical conditions or causes as a prior period of disability for which indemnity had been paid to you under the Policy and which period ended before such effective date, you must have returned to gainful employment for a period of at least 6 successive months after the end of such prior period before such later disability will be covered by the elected increase.

PART II

TERMINATION

This Rider and the premium for it shall automatically end upon the earliest of the dates and events which follow:

1.  The termination of your Policy; or
2.  At the end of the grace period for the payment of any premium not paid on the Policy or this Rider; or
3.  Upon receipt by us at the Home Office of your written request for removal of this Rider. In which event, a pro rata refund, if any, of the paid premium will be made; or
4.  30 days after the Anniversary Date of the Policy on or which next follows your 58th birthday; or
5.  When the total of all increases, or only one increase as the case may be, equals the initial maximum increase shown on the Schedule of the Policy.

SIGNED at the Home Office of the Company.


*James R. Lyons*

**Secretary**


**President**

# RESIDUAL DISABILITY RIDER

### Massachusetts Casualty Insurance Company
### Boston, Massachusetts

THIS RIDER is a part of and is subject to all the provisions and conditions of the Policy to which it is attached except as to any modifications herein. The premium for it is shown on the Schedule. Its effective date is the same as the Policy Date unless another date is shown on the Schedule. It ends on the premium due date on or next following your 65th birthday.

### PART I
### DEFINITIONS

**A. RESIDUAL DISABILITY**

  (1) The term "residual disability", prior to the Benefit Commencement Date, means that due to Injury or Sickness:

    (a) you are not able to perform one or more of the substantial and material daily duties of your Work; or you are not able to perform such usual daily duties for as much time as it would normally take you to perform such; and

    (b) you have a Loss of Net Income; and

    (c) you are receiving medical care by a Physician which is appropriate for the condition causing your disability. We will waive this requirement if it can be shown that continued care would be of no benefit to you.

  (2) This term, on and after the Benefit Commencement Date, means you are no longer required to have a loss of duties or time. Residual Disability then means that due to the same Injury or Sickness:

    (a) you have a Loss of Net Income; and

    (b) you are receiving medical care by a Physician which is appropriate for the condition causing your Loss of Net Income. We will waive this requirement if it can be shown that continued care would be of no benefit to you.

  (3) Work means your regular occupation, trade or profession as such exists at the start of any period of residual disability.

  (4) Injury means an accidental bodily injury which occurs while this Rider is in force.

  (5) Sickness means a sickness or disease which is not excluded under the pre-existing condition limitation of your Policy.

  (6) A period of residual disability must commence while this Rider is in force.

  (7) Benefit Commencement Date means the day on which the payment of monthly benefits start under this Rider. Benefits start after a number of successive days of residual disability. This is the same number of days required before monthly benefits are payable for total disability as shown in Item 1 of your Policy Schedule. If your residual disability is a continuation of a period of total disability for which benefits are payable, benefits start on the first day of your residual disability. Successive days of total and residual disability due to the same cause(s) may be combined to satisfy the required number of days. Days of total and/or residual disability which are: (1) due to same cause(s); and (2) not separated by a period of more than 12 months are considered successive days.

**B. NET INCOME**

This term means the sum of all wages, salary, commissions, bonuses, fees and other income or remuneration you earn as a direct result of your personal services in the performance of your regular occupation, trade or profession.

If:  (1) you perform the duties or activities of your regular occupation, trade or profession in or within the form, context or scope of a business entity; i.e., a proprietorship, corporation, partnership or association; and

  (2) you own any portion of such business entity; i.e., you are the sole or part owner of a proprietorship, a stockholder or a partner, as the case may be;

then the term means:

  (1) your share of the gross revenue or income earned by all such business entities;

  (2) less your share of the usual and customary business expenses of those entities which: (a) are incurred on a regular basis; and (b) are deductible for Federal Income Tax purposes. Such expenses do not include salaries, benefits and other forms of remuneration which are payable to you or to any person related by blood or marriage to you unless such person was a regular, full-time employee of such business prior to the start of your period of disability;

  (3) plus your salary, if any, and any contributions to a pension or profit sharing plan made on your behalf by all such business entities.

In all events, the term does not include:

(1) any form of unearned income such as dividends, rents, or interest;
(2) income from any form of deferred compensation, retirement or pension plan;
(3) income in the form of royalties; or
(4) disability and loss-of-time benefits from disability income insurance policies.

Net Income for the purpose of computing benefits under this Rider may be credited: (a) to the period in which it is actually earned; i.e., at the time the service or performance giving rise to such is performed; accrual method; or (b) to the period in which it is actually received; cash method. We will use either the cash or accrual accounting method. The same method will be used to determine your Prior Income and your Net Income during a period of disability.

## C. PRIOR INCOME

This term means the greater of:

(1) The average of your monthly Net Income for the 12 months just prior to: (a) the month in which your residual and/or total disability starts; or (b) the month in which a continuous period of total and residual disability starts, if such is the case; or

(2) The highest average monthly Net Income for any 2 consecutive calendar years of the last 5 calendar years just prior to the start of your disability. This computation will be based on the amount of your Net Income as reported on your filed Federal Income Tax returns for those 5 years. Copies of all such returns must be furnished us by you at the start of any claim under this Rider. If not so furnished, this provision will not apply.

## D. INDEXING OF PRIOR INCOME

If the period of your Residual Disability plus that of a just prior total disability, if any, lasts a year (12 successive months) your Prior Income, as that term is used in this Rider, will be indexed or adjusted.

Definition of terms used in this adjustment:

1. **Index** means the Consumer Price Index for All Urban Consumers, U.S. City Average, All Items. It is published by the United States Department of Labor. If such an Index is not so published or if its method of calculation is changed, we will use a comparable index which has been approved by the proper insurance official in the state where you lived at the time this Rider was issued.
2. **Claim Review Date** means each yearly anniversary date of the day on which your disability first commences.
3. **Index Month** means the calendar month 3 months prior to the month in which the Claim Review Date occurs.
4. **Basic Index Month** means the calendar month 3 months prior to the month in which your disability first commences.
5. **Initial Prior Income** means your Prior Income as such was determined at the start of a claim under this Rider.

On each Claim Review Date we will compute the Prior Income amount that will be used in calculating any monthly benefit that will be paid under this Rider for the next successive 12 months of disability. This amount, subject to the Minimum Adjustment shown herein, will be:

(a) your Initial Prior Income;
(b) multiplied by the Index for the applicable Index Month; and
(c) divided by the Index for the Basic Index Month;

but will not be less than the then current adjusted amount.

Minimum Adjustment: In all events, we will use a minimum adjustment determined as follows:

(a) First, your Initial Prior Income will be multiplied by 5%;
(b) Next, the amount so obtained will be multiplied by the then number of prior, full years of continuous disability;
(c) Lastly, the resulting amount will be added to your Initial Prior Income to obtain the minimum adjustment.

Each new or separate claim for monthly benefits under this Rider must qualify again for indexing. Any adjustments made for a prior disability will not be included. But, if the monthly benefits for a subsequent claim or disability are payable as a continuation of the benefit period of the prior disability, any prior adjusted level of Prior Income will be used in computing any monthly benefits payable during the first year of the subsequent disability.

## E. LOSS OF NET INCOME

This term means the amount of your Net Income for a given month is at least 20% less than the amount of your Prior Income.

F.  RESIDUAL DISABILITY MONTHLY BENEFIT

This term means a percentage of the amount payable for total disability determined as follows:

(1)  first, the amount of your Net Income for a given month shall be subtracted from the amount of your Prior Income;
(2)  next, the amount so obtained shall be divided by the amount of your Prior Income to obtain a percent;
(3)  lastly, the amount of monthly benefit that is payable for total disability as shown in Item 1 on your Policy Schedule shall be multiplied by this percent to obtain the amount of Residual Disability Monthly Benefit.

However, if the amount of your Net Income for a given month is at least 75% less than the amount of your Prior Income, the amount of the benefit for such month shall equal 100% of said scheduled Item 1 amount.

## PART II

### RESIDUAL DISABILITY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

(1)  benefits start as of the Benefit Commencement Date;
(2)  will be payable for each month that you are residually disabled;
(3)  will be payable for the maximum benefit period for a total disability as shown in Item 1 on your Policy Schedule; but not, however, beyond the premium due date on or next following your 65th birthday; and subject to the overall limit that the combined period, if any, for which benefits are payable for total and residual disability due to the same cause or causes shall not exceed the maximum benefit period shown in said Item 1; and
(4)  the first six monthly payments will be the greater of: (a) 50% of the monthly benefit payable for total disability; or (b) the monthly benefit determined for each month under this Rider.

Residual disability benefits will not be paid for any days for which total disability benefits are paid.

Under no circumstances will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness will not matter. We will pay benefits for the disability that pays you the greater benefit.

As part of your required proof of loss for benefits under this Rider, you must furnish us proof of your Net Income in order for us to determine such benefits. Such proof may include: (1) income tax returns; (2) statements from your accountant; (3) fee billings; or (4) such other proof as we may require. At our own expense we have the right to have a financial audit performed. We may do so as often as is reasonably required during a claim.

## PART III

### RECURRENT DISABILITIES

A.  CONTINUATION OF BENEFIT PERIOD FOR THE SAME CAUSE OR CAUSES

Two or more residual disabilities from the same cause or causes shall be treated as one continuous claim for benefits if:

(1)  monthly benefits had been paid to you by this Rider for your first disability; and
(2)  after the end of your first disability you were wholly able to do any gainful work for less than 6 successive months; and
(3)  the subsequent disability begins while this Rider is still in force.

In such a case any benefits payable under PART II will start on the first day of your subsequent disability and will continue for the balance, if any, of the benefit period of your first disability; subject to all the other terms of this Rider.

B.  NEW BENEFIT PERIOD FOR SAME CAUSE OR CAUSES

Two or more residual disabilities from the same cause or causes shall be treated as new or separate claims for benefits if:

(1)  monthly benefits had been paid to you by this Rider for your first disability; and
(2)  after the end of your first disability you were wholly able to do any gainful work for at least 6 successive months; and
(3)  the subsequent disability begins while this Rider is still in force.

In such a case any benefits payable will be as provided for in PART II; subject to all the terms of this Rider.

C. SUBSEQUENT TOTAL DISABILITY UNDER THE POLICY

If you suffer a total disability:

(1)  within 6 months after the end of a period of residual disability for which benefits had been paid to you by this Rider; and

(2)  it results from the same cause or causes as that which caused the prior residual disability under this Rider;

two changes in the payment of Policy benefits will occur. Any benefits due under PART 2 of the Policy:

(1)  will start on the first day of your subsequent total disability; and

(2)  will be payable for the balance, if any, of the maximum benefit period shown in Item I on the Policy Schedule; subject to all the other terms of the Policy.

PART IV

WAIVER OF PREMIUMS

A.  If the period of your residual disability plus that of a just prior total disability, if any, lasts 90 or more successive days, we will waive while you are so disabled the total policy premium, or portion thereof, which applies to: (1) the first such 90 days; (2) the time after the first such 90 days, if any, until monthly benefits are payable under this Rider; and (3) the time for which monthly benefits are payable under this Rider.

B.  The payment of such waived-premium amount prior to, or during the time for which it is waived will be refunded.

C.  Your Policy and this Rider shall not lapse for non-payment of premiums which fall due during the period of waiver.

D.  When the period of disability for which premiums have been waived ends, we will send you written notice of the premium due from such end to the next due date. You will then have 31 days to pay this premium. The payment of regular premiums will resume on such next due date.

SIGNED at the Home Office of the Company.


*James R. Lyons*

**Secretary**


*D. L. DH*

**President**

**MASSACHUSETTS CASUALTY INSURANCE COMPANY**
711 Atlantic Avenue, P.O. Box 9099, Boston, MA 02205-3099
Telephone: (617) 728-8000

---

## AMENDMENT TO POLICY

This Amendment changes at time of issue the Policy to which it is attached by adding the following provision:

<u>Mental Disorder and/or Substance Use Disorder Limitation</u>: If a Total Disability or other covered loss is due to a Mental Disorder and/or Substance Use Disorder, the number of months for which any benefits for Total Disability shall be payable under the Policy during the lifetime of the Insured shall not exceed in the aggregate a total of 24 months.

"Mental Disorder and/or Substance Use Disorder" means a manifestation of any disorder classified in the then current issue of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association (APA). Such disorders include, but are not limited to, personality, psychotic, emotional, or behavioral disorders, or disorders relatable to substance abuse or dependency. If such manual is discontinued, we will use the replacement chosen by APA.

SIGNED at the Home Office of the Company as of the Policy Date.

Secretary

President

NOTE: We will not apply the above limitation during periods of confinement in a medical facility licensed to provide treatment for a Mental Disorder and/or Substance Use Disorder.

R510

COPY OF

APPLICATION to Massachusetts Casualty Insurance Company, of Boston, Massachusetts, to increase the monthly amount of Policy Benefits based on the following representation of facts:

*(circular stamp: FORM ATTACHED TO BE A PART OF THIS POLICY)*

**6.** OCCUPATION INFORMATION

    (a) Present Occupation or Profession: _Executive_

    (b) Full and exact duties: _administration_

    (c) Name of Employer: _Provident Bank_

    (d) Business Address: Street _1055 St. Paul Pl_

       (Print): City _Cincinati_ State _OH_ Zip Code _45202_

       Telephone Number (____) _____ Extension # _____

    (e) Nature of business or profession: _Banking_

    (f) How long employed: (1) in your present occupation:_____ ; (2) by your present employer? _____

    (g) Are you actively at work full time In your occupation? ("Full time" means at least 30 hours per week.) Yes ☒ No ☐

**7.** Fill in amounts as reportable for Federal income tax purposes:

| | Actual Year to Date 19 _98_ | Actual Last Year Year 19 _97_ | Actual 2 Yrs. Ago Year 19____ |
|---|---|---|---|
| (a) Salary . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _150,000_ | $ _120,000_ | $_____ |
| (b) Bonuses and Commissions . . . . . . . . . . . . . . . . . . . . . | $ _200,000_ | $ _150,000_ | $_____ |
| (c) Pension and Profit Sharing Contributions . . . . . . . . . . | $_____ | $_____ | $_____ |
| (d) Business Profit Reported as Personal Income . . . . . . . | $_____ | $_____ | $_____ |
| (e) Net Earnings From Other Occupations . . . . . . . . . . . . | $_____ | $_____ | $_____ |
| (f) Net Earned Personal Income (a+b+c+d+e) . . . . . . . . . | $_____ | $_____ | $_____ |
| (g) Total Investment Income (Interest, Dividends, Rentals, etc.) . | $_____ | $_____ | $_____ |
| (h) If "e" answered - give name and your duties in other occupation(s) _____ | | | |

    _____

    (i) Does your Current Net Worth exceed $4,000,000? Yes ☐ No ☐ If "Yes", state value $ _____

**8.** (a) Type of Business Entity: Sole Proprietor ☐ Partnership ☐ Corporation — C ☐ S ☐

    (b) Will requested coverage be paid for by employer? Yes ☐ No ☐ If "Yes", how much? _____ %

**Questions are continued on the reverse side**

APP FORM MIO (Rev. 8/92)

9. Describe all disability coverage in force and any pending applications with all companies. Indicate if it is: (1) Individual, (2) Association, (3) Group, (4) Wage Continuation, (5) Overhead Expense, (6) Social Insurance Supplement, or (7) Other. If none, write "none" in this space: _____

| Company or Source | Type (1,2,3 etc.) | Monthly Amount | Elim. Period | Benefit Period | Will coverage be Cancelled? | Effective Date of Cancellation | Percentage of premiums paid by employer: |
|---|---|---|---|---|---|---|---|
| Group | | $250 | 90 | A65 | Yes ☐; No ☒ | | 100 % |
| MCIC | 1 | $840 | 90 | A65 | Yes ☐; No ☒ | | .00 % |
| | | | | | Yes ☐; No ☐ | | % |

The Insured: (1) agrees that the increase in Monthly Benefits applied for shall not be binding unless approved by the Company at its Home Office; (2) agrees that such increase does not become effective until any premium required for such is paid; (3) states that the answers to the questions contained herein are correct to the best of his or her knowledge and belief; (4) realizes that any false statement or misrepresentation in this application may result in loss of any increase in benefits issued pursuant to this application; and (5) agrees and understands that no Agent/Broker is authorized to accept risks or pass upon insurability, make, alter, or modify the terms of this Application or any Rider which the increase of benefits is based upon, or waive any of Massachusetts Casualty Insurance Company's Rights or Requirements.

I HEREBY AUTHORIZE any benefit plan administrator, business associate, consumer reporting agency, employer, financial institutions, Governmental Agencies, insurance and reinsurance companies, insurance support organizations, the Medical Information Bureau, Inc., the Social Security Administration, Internal Revenue Service and the Veterans Administration, to furnish or release (verbally or in writing) or otherwise make available (for inspection and copying) to the Massachusetts Casualty Insurance Company, or its authorized representatives (including Equifax Services, Inc. or other consumer reporting agencies), all non-medical information in its possession about me.

Non-medical information includes, but is not limited to: employment earnings and history, financial and insurance benefits or coverage,

I UNDERSTAND that any information acquired pusuant to this Authorization will be used by the Massachusetts Casualty Insurance Company to determine my eligibilty for insurance benefits under claims submitted to it, to verify representations made by me in my application for insurance or for any other lawful purpose and may be disclosed or released by the Massachusetts Casualty Insurance Company to: (1) reinsuring companies, (2) the Medical Information Bureau, Inc., (3) other persons or insurance support organizations (including Equifax Services, Inc.) performing business or legal services in connection with my claim or application for insurance, or (4) as may be otherwise lawfully required.

I FURTHER UNDERSTAND that by executing this Authorization I waive the right for such information to be privileged.

I AGREE that this Authorization shall be valid for two and one-half (2 1/2) years from the date shown below and that a photostatic copy of this Authorization shall be as effective and valid as the original.

☞ Signature of Insured: _____

Signed at (City and State) ___Cinti, OH___, on (Date): ___3/26___ 19 __98__

I certify that I have truly and accurately recorded on this Application all the information supplied by the Insured.

☞ Signature of Licensed Agent/Broker: _____

General Agency Code No. __MC803__

Writing Agent No. __516707__                    Interest in Case __100__ %

Writing Agent No. _____                    Interest in Case _____ %

Writing Agent No. _____                    Interest in Case _____ %

APPLICATION TO

# MASSACHUSETTS CASUALTY INSURANCE COMPANY
711 Atlantic Avenue, P.O. Box 9099, Boston, Massachusetts 02205-9099

THE UNDERSIGNED HEREBY APPLY FOR THE BELOW CHANGES TO POLICY NO. _____

(CHECK ☑ applicable change box and complete any applicable questions.)   Name of Insured _____
_(Please print full name)_

**1. CHANGES**

NOTE: For changes a through f, DO NOT COMPLETE Questions 2 through 7.

☐ (a) – Decrease the basic monthly (Indemnity/Benefit) under the Policy from $ _____

☐ (b) – Increase the Policy elimination period from _____ days to _____ days.

☐ (c) – Decrease the maximum benefit (Period/Amount) under the Policy from _____ to _____.

☐ (d) – Delete Optional Benefit Rider (R _____ ) entitled _____

☐ (e) – Change the Total Policy Premium to $ _____ ; payable ☐ annually   ☐ semi-annually   ☐ quarterly
☐ ABC; effective with the Premium Due Date of _____

(For ABC, attach a completed ABC form and voided check to this Application.)

☐ (f) – Make the following change not stipulated above (Use only for other minor changes not requiring additional H.O. underwriting): _____
_____
_____

NOTE: For changes g through k, ALSO COMPLETE Questions 2 through 7.

☐ (g) – Remove premium rating

☑ (h) – Increase the basic monthly (Indemnity/Benefit) under the policy from $ 7295 to $ 8840

☐ (i) – Decrease the Policy elimination period from _____ days to _____ days.

☐ (j) – Increase the maximum benefit (Period/Amount) under the Policy from _____ to _____

☑ (k) – Add Optional Benefit Rider (R 403 ) entitled 12,705

**2.** (a) Insured's Occupation: _____ (b) Employer's Name: _____

(c) Exact duties of Insured's occupation and percent of time spent at each: _____

(d) Is Insured currently working full time (At least 30 hours per week)? Yes ☐   No ☐   If "No", Explain: _____

(e) Length of current employment? _____

(f) Nature of Employer's business: _____ (g) If owner, % owned: _____

(h) Length of Ownership: _____ Number of full time employees: _____

(i) If Insured works at his/her residence, how many hours per week are spent at home performing the duties of his/her occupation? _____

(j) Type of Business Entity:   Sole Proprietor ☐   Partnership ☐   Corporation–C ☐   S ☐

(k) Will requested coverage be paid for by employer?   Yes ☐   No ☐   If "yes", how much? _____ %

(l) Is premium reported by you as income?   Yes ☐   No ☐   (Expanded participation limits for employer paid cases are not available to: sole proprietors, principals in a partnership or stockholder employees of an "S" corporation if the stockholder - employee owns more than 2% of the company's stock)

**3.** Fill in amounts as reportable for Federal income tax purposes.

| | Actual Year to Date 19 97 | Actual Last Year 19 _____ | Actual 2 Yrs. Ago Year 19 _____ |
|---|---|---|---|
| (a) Salary | $ 150,000 | $ | $ |
| (b) Bonuses and Commissions | $ 120,000 | $ | $ |
| (c) Pension and Profit Sharing Contributions | $ | $ | $ |
| (d) Business Profit Reported as Personal Income | $ | $ | $ |
| (e) Net Earnings form Other Occupations | $ | $ | $ |
| (f) Net Earned Personal Income (a + b + c + d + e) | $ 270,000 | $ | $ |
| (g) Total Investment Income (interest, dividends, rentals, etc.) | $ | $ | $ |
| (h) If "e" answered - give name and your duties in other occupation(s) | | | |

APP FORM 200 (Rev. 8/92)

**4.** HEALTH CHANGES

Since the date of issue of the Policy (the "Policy Date") has the Insured:

(a) been ill or injured?    YES ☐  NO ☒

(b) had any departure from good health without medical treatment?    YES ☐  NO ☒

(c) been a patient in any hospital or institution?    YES ☐  NO ☒

(d) had surgery?    YES ☐  NO ☒

(e) had surgery advised and not performed?    YES ☐  NO ☒

(f) consulted a physician, surgeon or medical practitioner?    YES ☒  NO ☐

(g) Give details of "Yes" answers.

| Ques. # ( ) | Period of Treatment | Dates In Hospital | Type of Surgery | Duration of Disability | Conditions Current Status | Hospital Name and Address | Name, Address. of all Physicians |
|---|---|---|---|---|---|---|---|
| | Annual Physician - Newman | | | | | | Neimlist - Young |
| | | | | | | | Obstetr |
| | | | | | | | Cin Chi 41208 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

(h) (1) Does the Insured have a personal physician?    YES ☒  NO ☐    (2) If "Yes," give full name and address:
Neimlist - Young - Obstetr Cin Cin 41208

(3) Date of and reason for last visit _____

(i) (1) Has the Insured's weight changed within the past year?    YES ☐  NO ☒

(2) If "Yes," give pounds gained: _____ — OR — pounds lost: _____ : Cause? _____

(j) (1) Does the Insured take any type of prescribed medication?    YES ☐    ☐  (2) If "Yes," please describe conditions(s) and medication(s) taken: _____ No

(k) Has the Insured smoked or used tobacco in any form within the last 12 months?    YES ☐  NO ☒

**5.** (a) Describe all disability coverage in force and any pending applications with all companies. Indicate if it is: (1) Individual, (2) Association, (3) Group, (4) Wage Continuation, (5) Overhead Expense, (6) Social Insurance Supplement, or (7) Other. If none, write "none" in this space: _____ .

| Company or Source | Type (1,2,3 etc.) | Monthly Amount | Elim. Period | Benefit Period | Will coverage be Cancelled? | Effective Date of Cancellation? | Percentage of premium paid by employer: |
|---|---|---|---|---|---|---|---|
| Group | 3 | 6600 | 90 | 65 | Yes ☐; No ☒ | | 100 % |
| MCIC | 1 | 7295 | 90 | 65 | ☐; No ☒ | | % |
| | | | | | Yes ☐; No ☐ | | % |
| | | | | | Yes ☐; No ☐ | | % |

(b) (1) If increase in coverage applied for is intended to replace any existing insurance listed in Question 5(a), list all such coverage by policy number: _____

(2) Do you agree that if the coverage applied for is issued, you will terminate the above insurance on or before the effective date indicated?    YES ☐  NO ☐

(c) Has the Insured's employer made available to him/her on an *optional basis* any type of coverage which provides benefits for total disability due to accident or sickness?    YES ☐  NO ☐    If "Yes," give details: _____

6. OTHER CHANGES
Since the date of issue of the Policy (the "Policy Date"):

(a) Has the Insured presented a claim for, received, or been refused accident or sickness benefits?    YES ☐    NO ☒

If "Yes," give insurers, nature of actions, reasons and dates: _____

_____

(b) Has the Insured had accident, sickness or life insurance:
    (1) which was premium rated?                                  YES ☐    NO ☒
    (2) the application for which was declined?                      YES ☐    NO ☒
    (3) the application for which was postponed?                  YES ☐    NO ☒
    (4) which was cancelled or rescinded?                        YES ☐    NO ☒
    (5) which was accepted by the Insured with a restrictive or elimination rider?    YES ☐    NO ☒
    (6) the renewal or reinstatement of which was refused?           YES ☐    NO ☒

If "Yes," to any of above, give name of Insurer(s), nature of action, reason and date:

_____

_____

7. OFFICE OVERHEAD EXPENSE INFORMATION. (Complete if applicable)

(a) State the amount of the Insured's share of current monthly expenses incurred for the following: (Do not include any salary or payments to Insured or to any other member of Insured's profession.)

$ _____ Business Insurance Premiums (Fire, Business Interruption, Malpractice)

$ _____ Electricity

$ _____ Employees' Salaries

$ _____ Heat

$ _____ Laundry

$ _____ Mortgage (Business Property)

$ _____ Real Estate Tax (Business Property)

$ _____ Rent (Business Property)

$ _____ Telephone

$ _____ Water

$ _____ _____

$ _____ _____

$ _____ _____

Please indicate any other *specific* fixed normal, customary expenses. DO *NOT* use the words "miscellaneous expense."

$ _____ Total of expenses listed above.

(b) Will Insured discontinue any other plan of overhead expense insurance if increase in coverage now applied for is issued?    YES ☐    NO ☐

If "Yes," give Insurer(s), benefit amount(s), policy number(s) and expiration date(s): _____

_____

_____

_____

---

### MASSACHUSETTS CASUALTY INSURANCE COMPANY
#### Boston, Massachusetts
#### <u>NOTICE TO INSURED</u>
(To be furnished the Insured at the time the application is taken)

**INVESTIGATIVE CONSUMER REPORT:** This is to inform you that as part of our procedure for processing your insurance application, an investigative consumer report may be prepared whereby information is obtained through personal interviews with your neighbors, friends or others with whom you are acquainted. This inquiry includes information as to your character, general reputation, personal characteristics and mode of living. You have the right to make a written request within a reasonable period of time to receive additional, detailed information about the nature and scope of this investigation. Any inquiry should be addressed to the Company's "Policyholders Service Department."

### (CONTINUED ON REVERSE SIDE)

(CONTINUED)

MEDICAL INFORMATION BUREAU: Information regarding your insurability will be treated as confidential except that we, or our reinsurers, may, however, make a brief report thereon to MIB, Inc., a nonprofit membership organization of life insurance companies which operates an information exchange in behalf of its members. Upon request by another member insurance company to which you have applied for life or health insurance coverage or to which a claim is submitted, MIB, Inc. will supply such company with the information it may have in its files.

Upon receipt of a request from you, MIB, Inc. will arrange disclosure of any information it may have in your file. (Medical information will be disclosed only to your attending physician.) If you question the accuracy of information it its file, you may contact MIB, Inc. and seek a correction in accordance with the procedures set forth in the Federal Fair Credit Reporting Act. The address of MIB's information office is Post Office Box 105, Essex Station, Boston, Massachusetts 02112, telephone number (617) 426-3660.

We, or our reinsurers, may also release file information to other life insurance companies to whom you may apply for life or health insurance, or to whom a claim for benefits may be submitted.

---

The Undersigned: (1) agree that no changes made to the Policy pursuant to this Application shall be binding unless approved by the Company at its Home Office; (2) agree that such changes do not become effective until any premium required for such is paid; (3) state that the answers to the questions contained herein are correct to the best of their knowledge and belief; (4) realize that any false statement or misrepresentation in this Application may result in the loss of any such changes issued pursuant to this Application; and (5) agree and understand that no Agent/Broker is authorized to accept risks or pass upon insurability, make, alter, or modify the terms of this Application or any Rider upon which the increase of Indemnity is based , or waive any of Massachusetts Casualty Insurance Company's Rights or Requirements.

The Undersigned and Agent/Broker certify that the Undersigned have read, or had read to them, the completed application.

Signed at (City and State) _____, on (Date): 3/13/97 , 19 _____

Agent/Broker

Code No. _____ Interest in Code _____ %  ☞ Signature of Insured: _____

Code No. _____ Interest in Code _____ %  ☞ Signature of Policy Owner: _____
                                                                                            (IF APPLICABLE)

Agency Code No. _____  ☞ Signature of Agent/Broker: _____

---

I HEREBY AUTHORIZE any clinic, health care or other medical facility, health care provider, hospital, medical practitioner, pharmacy, physician, therapist, benefit plan administrator, business associate, consumer reporting agency, employer, financial institutions, Governmental Agencies, insurance and reinsurance companies, insurance support organizations, the Medical Information Bureau, Inc., the Social Security Administration, Internal Revenue Service and the Veterans Administration, to furnish or release (verbally or in writing) or otherwise make available (for inspection and copying) to the Massachusetts Casualty Insurance Company, or its authorized representatives (including Equifax Services, Inc. or other consumer reporting agencies), all medical and non-medical information in its possession about me. Medical information includes, but is not limited to: records, reports, notes or schedules which contain a diagnosis, history, prognosis or treatment for any conditions or symptoms (including alcohol, drug or other substance abuse and mental or nervous conditions or symptoms). Non-medical information includes, but is not limited to: disabilities, employment earnings and history, financial, insurance benefits, claims or coverage, occupational duties and traffic accident reports.

I UNDERSTAND that any information acquired pursuant to this Authorization will be used by the Massachusetts Casualty Insurance Company to determine my eligibility for insurance benefits under claims submitted to it, to verify representations made by me in my application for insurance or for any other lawful purpose and may be disclosed or released by the Massachusetts Casualty Insurance Company to: (1) reinsuring companies, (2) the Medical Information Bureau, Inc., (3) other persons or insurance support organizations (including Equifax Services, Inc.) performing business or legal services in connection with my claim or application for insurance, or (4) as may be otherwise lawfully required.

I FURTHER UNDERSTAND that by executing this Authorization I waive the right for such information to be privileged.

I AGREE that this Authorization shall be valid for two and one-half (2 1/2) years from the date shown below and that a photostatic copy of this Authorization shall be as effective and valid as the original.

Dated: 3/13/97 , 19 _____ .   ☞ Signature of Insured: _____

No 16000 U

Part I of Application for Insurance to

# MASSACHUSETTS CASUALTY INSURANCE COMPANY

711 Atlantic Avenue, P.O. Box 9099, Boston, Massachusetts 02205-9099

(PLEASE PRINT IN INK.)      PERSONAL INFORMATION

1. (a) Full Name: __ERIC__ __L__ (First) (Middle) __Jerelits__ (Last)   (b) Prof. Title: _____
   (c) Social Security #: __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__ (d) Sex: M ☒ F ☐ (e) Hgt: __6__ ft. __4__ in. (f) Weight __220__ lbs.
   (g) Birthdate: __5/15/61__ (h) Age: __35__ (i) Place of Birth (State): __MO.__
   (j) Residence Address: __712 Gainsshire__ (Number) (Street)
   __CIN__ (City) __45226__ (State) (Zip) __(573) 871 3545__ (Phone)

   Prior Address:
   (If less than 2 yrs.) _____ (Number) _____ (Street)
   _____ (City) (State) (Zip)

   (k) Business Address: __One East Fourth St.__ (Number) (Street)
   __Cincinnati, OH 45202__ (City) (State) (Zip) __(513) 579 2236__ (Phone)
   (l) Send Premium notices: Residence ☐   Business ☐

2. (a) Occupation: __VP__   (b) Employer's Name: __The Provident Bank__
   (c) Exact duties and percent of time spent at each: __100% Management__
   
   (d) Are you currently working full time? Yes ☒ No ☐ (e) Length of current employment: _____
   (f) Nature of Employer's business: __Banking__   (g) If owner, % owned: _____
   (h) Length of Ownership: _____ Number of full time employees: _____
   (i) Type of Business Entity: Sole Proprietor ☐ Partnership ☐ Corporation — C ☒ S ☐
   (j) Will requested coverage be paid for by employer? Yes ☒ No ☐ If "Yes", how much? __100__ %
   (k) Is premium reported to you as income? Yes ☐ No ☐

3. Fill in amounts as reportable for Federal income tax purposes:

| | Estimated Current Year 19 __97__ | Actual Last Year 19 ___ | Actual 2 Yrs. Ago Year 19 ___ |
|---|---|---|---|
| (a) Salary ............................. TOTAL | $ __220,000__ | $ _____ | $ _____ |
| (b) Pension and Profit Sharing Contributions | $ _____ | $ _____ | $ _____ |
| (c) Business Profit Reported as Personal Income | $ _____ | $ _____ | $ _____ |
| (d) Earnings from Other Occupations | $ _____ | $ _____ | $ _____ |
| (e) Total Earned Personal Income (a + b + c + d) | $ _____ | $ _____ | $ _____ |
| (f) Total Investment Income (interest, dividends, rentals, etc.) | $ _____ | $ _____ | $ _____ |
| (g) If "d" answered—give name and your duties in other occupation(s) _____ | | | |

(h) Does your Current Net Worth exceed $4,000,000? Yes ☐ No ☒ If "Yes", state value: $ _____

4. Have you smoked cigarettes in the last 12 months? Yes ☐ No ☒
5. Have you within the past 2 years engaged in racing, scuba diving, hang gliding or any similar sport or avocation? Yes ☐ No ☒

   If "Yes", give details: _____

6. Describe all disability coverage in force and any pending applications with all companies. Indicate if it is: (1) Individual, (2) Association, (3) Group, (4) Wage Continuation, (5) Overhead Expense, (6) Social Insurance Supplement, (7) Other. If none, write "none" in this space: _____

| Company or Source | Type (1, 2, 3 etc.) | Monthly Amount | Elim. Period | Benefit Period | Will coverage be Cancelled: | Effective Date of Cancellation |
|---|---|---|---|---|---|---|
| | | | | | Yes ☐ No ☐ | |
| | | | | | Yes ☐ No ☐ | |
| | | | | | Yes ☐ No ☐ | |

WARNING REQUIRED BY OHIO LAW. Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

**MEDICAL INFORMATION**

|  |  | Yes | No |
|---|---|---|---|
| 7. Have you ever been treated for or had any known indication or symptom of: (Circle all conditions that apply and give details below) |  |  |  |
| (a) Chest pain, high blood pressure, mental or emotional disorder, arthritis, diabetes, cancer, tumor, or fainting spells? |  | ☐ | ☒ |
| (b) Disease or disorder of the heart or circulatory system, lungs, kidneys, bladder, genital or reproductive organs, brain or nervous system, skin, eyes, ears or speech? |  | ☐ | ☒ |
| (c) Disease or disorder of the stomach or intestines, liver, thyroid, bones, muscles, joints, back or neck? |  | ☐ | ☒ |
| (d) Are you currently pregnant?  Yes ☐  No ☒  Any complications of this or a prior pregnancy? Due date? _____ |  | ☐ | ☒ |
| (e) In the past ten years, have you: |  |  |  |
| (1) had or been told you have Acquired Immune Deficiency Syndrome (AIDS), AIDS related complex (ARC) or AIDS related conditions? |  | ☐ | ☒ |
| (2) tested positive for antibodies to the AIDS (Human T-Cell Lymphotrophic; Type III; HTLV III) Virus? |  | ☐ | ☒ |
| 8. (a) In the past 5 years, have you had any medical advice, operation, physical exam, treatment, illness, symptom or injury not listed above? |  | ☐ | ☐ |
| (b) Are you currently receiving any medical advice or treatment? |  | ☐ | ☐ |
| 9. Have you ever used stimulants, hallucinogens, narcotics or any controlled substance other than those prescribed by a physician, or been counseled or treated for excess use of alcohol or drugs? |  | ☐ | ☐ |
| 10. In the past 5 years have you: |  |  |  |
| (a) had any insurance application rejected or modified? |  | ☐ | ☒ |
| (b) received or been refused any disability or medical benefits? |  | ☐ | ☒ |

11. Give details to all "Yes" answers to 7 thru 10. Include exact diagnoses, dates, duration, physicians and address.

Donald Nunlist - Young M.D.

Annual Physical  2 years Ago

12. Name of Personal Physician:  Donald Nunlist - Young MD

Address: _____

Date and reason for last visit:  Groin Injury

13. (a) Complete this section only if applying for Overhead Expense coverage. Only indicate your % of expenses.

| | | | | |
|---|---|---|---|---|
| Rent | $_____ | Mortgage Interest | $_____ | Insurance Premium |
| Utilities | $_____ | Property Tax | $_____ | Liability $_____ |
| Telephone | $_____ | Depreciation | $_____ | Malpractice $_____ |
| Employee Salaries | $_____ | Loan Interest | $_____ | Pension $_____ |
| Accounting/Legal fees | $_____ | Equipment Rental | $_____ | Medical |
| *_____ | $_____ | *_____ | $_____ | *_____ $_____ |

Total of expenses listed above: $_____

*Indicate in the spaces provided above any other specific fixed normal and customary expenses.

(b) List Company(s) & Policy No.(s) of all overhead policies to be retained: _____

_____

_____

---

To the best of my knowledge and belief, all of the foregoing statements and all of those in Part II (Medical Exam), if any, of the Application are true, complete, and correctly stated. They are offered to Massachusetts Casualty Insurance Company as the basis for any insurance issued on this Application. I understand that any false statements may result in the loss of coverage under the policy. I have received a disclosure notice concerning: (1) the Medical Information Bureau; and (2) an investigative consumer report which may be made for use with this Application. I also acknowledge receipt of any required outline of the coverage for which I have applied.

Except as stated in FORM 400 CIA attached to this Part I, this application shall not be binding:
(a) until approved by Massachusetts Casualty Insurance Company at its Home Office and a policy issued; and
(b) unless the full first premium has been paid.

No agent or medical examiner is authorized to do any of the following:
(a) accept risks or pass upon insurability; (b) make, alter or modify the terms of this Application or any policy issued thereon; or (c) waive any of Massachusetts Casualty Insurance Company rights or requirements.

I agree that if cancellation of other coverage is not completed as stated in Question 6, the policy issued upon this application shall become null and void.

I authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organizations, institution or person that has any records or knowledge of me or my health, to give to Massachusetts Casualty Insurance Company and/or its representative and/or its reinsurers any such information.

A copy of this authorization shall be as valid as the original.

Signed at (City and State) _____Cincinnati, OH_____, on (Date): __4-28__, 19 __96__.

☛ Signature of Proposed Insured: _____

I certify that I have truly and accurately recorded on this Application all the information supplied by the Proposed Insured.

☛ Signature of Licensed Agent or Broker: _____

Part II Application                 DECLARATIONS TO MEDICAL EXAMINER

# MASSACHUSETTS CASUALTY INSURANCE COMPANY
711 Atlantic Avenue, P.O. Box 9099, Boston, Massachusetts 02205-9099, (617) *unreadable*

To Examiner: Examination must be in examiner's own handwriting.

Proposed Insured _*Eric F. Gipson*_     Birth Date: _5_____
        First Name    Middle Initial    Last Name              Month    Day    Year

1. a. Name and address of your personal physician? _*Dr. Dunlap*_
   (If none, so state) _*351 Main Ctr. 04520*_

   b. Date and reason last consulted? _*5/96  N/up*_

   c. What treatment was given or medication prescribed? _*Prescription*_

---

2. Have you ever been treated for or had any known indication or symptom of:                                    **Yes  No**
   (Circle all conditions that apply and give details below)

   (a) Chest pain, high blood pressure, mental, nervous or emotional conditions (to include but not
       limited to anxiety, depression or stress), arthritis, diabetes, cancer, tumor, or fainting spells?      ☐    ☑

   (b) Disease or disorder of the heart or circulatory system, lungs, kidneys, bladder, genital or
       reproductive organs, brain or central nervous system, skin, eyes, ears or speech?                        ☐    ☑

   (c) Disease or disorder of the stomach or intestines, liver, thyroid, bones, muscles, joints, back or
       neck?                                                                                                     ☐    ☑

3. (a) Are you currently pregnant?    If YES, Due Date? _____                                 ☑    ☑
   (b) Any complications of a prior pregnancy?                                                                  ☑    ☑

4. (a) Have you ever used drugs or any controlled substance other than those prescribed by a physician,
       or been counseled or treated for or had counselling or treatment recommended for excess use of
       alcohol or drugs?                                                                                        ☐    ☑

5. In the past ten years, have you:
   (a) had or been told you have Acquired Immune Deficiency Syndrome (AIDS), AIDS related complex
       (ARC) or AIDS related conditions?                                                                        ☐    ☑
   (b) tested positive for antibodies to the AIDS (Human T-Cell Lymphotrophic; Type III; HTLV III) Virus?       ☐    ☑
   (c) received treatment for the AIDS or ARC virus?                                                            ☐    ☑

6. In the past 5 years have you:
   (a) had any insurance application rejected or modified?                                                      ☐    ☑
   (b) received or been refused any disability or medical benefits?                                             ☐    ☐
   (c) had any medical advice, operation, hospitalization, physical exam, treatment, illness, symptom or
       injury not listed above?                                                                                ☑    ☐

7. Are you currently receiving any medical advice or treatment?                                                 ☐    ☑

8. Are you currently taking any medication?                                                                     ☐    ☑

   Give details to all "Yes" answers to 2 thru 8. Include exact diagnoses, dates, duration, physicians and
   address.
   6. _*1/95 off hand fx's — all well — Dr. Dunlap Springfield*_
   _____
   _____

---

To the best of my knowledge and belief, all of the foregoing statements in this Part II (Medical Exam) are true,
complete, and correctly stated. They are offered to Massachusetts Casualty Insurance Company as the basis for any
insurance issued on this Application. *I understand that any false statements may result in the loss of coverage under the
policy.*

No medical examiner is authorized to do any of the following: (a) accept risks or pass upon insurability; (b) make,
alter or modify the terms of this Application or any policy issued thereon; or (c) waive any of Massachusetts Casualty
Insurance Company rights or requirements.

                                    ☛ Signature of Proposed Insured: _____

Signed at (City and State) _*Cinti   (Oh)*_____ on (Date): _*5/8*___ 19_*96*_

I certify that I have truly and accurately recorded on this Application all the information supplied by the Proposed
Insured. _____



**Massachusetts
Casualty
Insurance Company**

*Incorporated 1926*
*A subsidiary of Sun Life of Canada (U.S.)*

711 Atlantic Avenue, P.O. Box 9099
Boston, MA 02205-9099
(617) 728-8000

*A STOCK COMPANY*

INSURED: ERIC L. JEFFRIES
POLICY NUMBER: 0641734

As you read this Policy, remember that the words "you" and "your" mean you, the Insured named in the Policy Schedule on Page 2. The words "we", "our" and "us" mean Massachusetts Casualty Insurance Company.

We will pay benefits due to Total Disability and other covered loss resulting from Injury or Sickness subject to the definitions, exclusions and other provisions of this Policy. Loss must begin while the Policy is in force.

This Policy is a legal contract between you and us. It is issued in consideration of the payment in advance of the required premium and of the statements and representations in the application for this Policy. A copy of the application is attached and made a part of the Policy.

### NON-CANCELLABLE AND GUARANTEED RENEWABLE TO PREMIUM DUE DATE ON OR NEXT FOLLOWING YOUR 65th BIRTHDAY

You shall have the right to continue this Policy in force by the payment of the Total Policy Premium when due subject to the extension of 31 days provided by the grace period in PART 15, until the premium due date on or next following your 65th birthday. During this time if said premiums are paid when due or during the 31 day extension provided by the grace period and the Policy remains in force, we shall not have the right: (1) To cancel this Policy; (2) To change a Policy provision; (3) To add a restrictive rider; or (4) To make an increase in premium.

### CONDITIONAL RIGHT TO RENEW AFTER YOUR 65th BIRTHDAY; PREMIUMS ARE NOT GUARANTEED

Starting with the first premium due date on or after your 65th birthday, this Policy may be renewed on each due date, if it is then in force, subject to timely payments of premiums at the premium rate then in effect on and after age 65, for as long as you continue to be gainfully working full time; there is no age limit. Full time under this provision means at least thirty (30) hours per week.

Any premium paid after your 65th birthday for a period not covered by this Policy will be returned to you. No change will be made in the premium for this Policy unless it applies to all persons of the same age, class and rate group who have policies of this same form. The termination of the Policy shall not affect any continuous loss which started while this Policy was in force.

### NOTICE OF 10-DAY RIGHT TO EXAMINE THIS POLICY

We want you to fully understand and be entirely satisfied with this Policy. If you are not satisfied for any reason, you may return the policy to us, or to the agent through whom it was purchased, within 10 days of its receipt.

We will refund any premiums you have paid after we receive your notice of cancellation and the Policy. It will be considered never to have been issued.

CLAIM 00528

FORM A&S 3000   (REV 8/92)

ORIGINAL POLICY SCHEDULE

INSURED - ERIC L. JEFFRIES
POLICY NUMBER - 0641734
CONTRACT STATE - OHIO

1. INJURY AND SICKNESS - BENEFIT AND BENEFIT PERIOD COMMENCING ON THE
   91ST DAY OF TOTAL DISABILITY.

IF TOTAL DISABILITY COMMENCES:
                        MONTHLY BENEFIT AND MAXIMUM BENEFIT PERIOD
   PRIOR TO AGE 62 YEARS AND 6 MONTHS...$ 5,000.00 FOR 60 MONTHS

   ON OR AFTER 62 YEARS AND 6 MONTHS
   BUT PRIOR TO 63RD BIRTHDAY .........$ 5,000.00 FOR 42 MONTHS

   ON OR AFTER 63RD BIRTHDAY
   BUT PRIOR TO 64TH BIRTHDAY .........$ 5,000.00 FOR 36 MONTHS

   ON OR AFTER 64TH BIRTHDAY
   BUT PRIOR TO 70TH BIRTHDAY .........$ 5,000.00 FOR 30 MONTHS

   ON OR AFTER 70TH BIRTHDAY  .........$ 5,000.00 FOR 15 MONTHS

2. DOUBLE DISMEMBERMENT OR LOSS OF SIGHT OCCURRING PRIOR TO 65TH
   BIRTHDAY - BENEFIT AND BENEFIT PERIOD COMMENCING ON FIRST DAY OF LOSS.
   CAPITAL SUM                 MONTHLY BENEFIT AND MAXIMUM BENEFIT PERIOD
   $ 75,000.00                      $ 5,000.00  FOR 60 MONTHS

3. BENEFIT FOR NON-DISABLING INJURIES - TO $ 1,500.00 MAXIMUM, EACH CLAIM
                     ANNUAL PREMIUM FOR COVERAGE SHOWN ABOVE.... $ 728.02

4. ADDITIONAL COVERAGES -
   RIDER R475 - RIDER PROVIDING RESIDUAL DISABILITY BENEFITS . $  138.46

POLICY DATE: APR.  1, 1996.      TOTAL ANNUAL PREMIUM .... $   866.48

TOTAL POLICY PREMIUM: $   866.48 FOR A TERM OF 12 MONTHS.

CLAIM 00529

## TABLE OF CONTENTS

SUBJECT:                                                                             PAGE:

• Renewal Conditions ...................................................................................................... 1
• Definitions ................................................................................................................... 3
• Monthly Benefits for Total Disability .......................................................................... 3
• Presumptive Total Disability ....................................................................................... 3
• Double Dismemberment or Loss of Sight Prior to Age 65 ........................................ 4
• Increased Benefits if Premiums Paid Annually ......................................................... 4
• Benefit for Non-disabling Injuries .............................................................................. 4
• Transplant and Cosmetic Surgery Benefit ................................................................ 5
• Rehabilitation Benefit ................................................................................................. 5
• Recurrent Disabilities ................................................................................................. 5
• Concurrent Disabilities ............................................................................................... 6
• Waiver of Premiums ................................................................................................... 6
• Military Suspension .................................................................................................... 6
• Exclusions or Limitations ........................................................................................... 7
• Policy Changes ........................................................................................................... 7

• Premiums and Renewals:
         Policy Term ...................................................................................................... 8
         Grace Period .................................................................................................... 8
         Reinstatement .................................................................................................. 8
         Refund of Premium at Death ........................................................................... 8

• Claims:
         Notice of Claim ................................................................................................. 8
         Claim Forms ..................................................................................................... 8
         Proof of Loss .................................................................................................... 9
         Time of Payment of Claims .............................................................................. 9
         Payment of Claims ........................................................................................... 9
         Physical Examinations ..................................................................................... 9
         Misstatement of Age ........................................................................................ 9
         Legal Actions .................................................................................................... 9
         Payment for Part of Month ............................................................................... 9

• General Provisions:
         Entire Contract ................................................................................................. 9
         Time Limit on Certain Defenses ...................................................................... 9
         Conformity with State Laws ............................................................................. 10
         Duty to Cooperate ............................................................................................ 10
         Contract State ................................................................................................... 10

CLAIM 00530

# PART 1

## DEFINITIONS

**INSURED**  The "Insured" is named in the Schedule.

**PHYSICIAN**  "Physician" means any person who is licensed by law, and is acting within the scope of the license, to treat the Injury or Sickness resulting in a covered loss under this Policy. This person cannot be: (a) the Insured; or (b) a member of the Insured's family. "Family" means spouse, parent, son, daughter, brother or sister.

**INJURY**  "Injury" means accidental bodily injury occurring while this Policy is in force.

**SICKNESS**  "Sickness" means illness, disease or physical condition which first manifested itself while this Policy is in force. A Sickness will be considered to have manifested itself when any of the following occurs: (a) symptoms exist that would cause an ordinarily prudent person to seek diagnosis, care or treatment; (b) a Physician makes a diagnosis; or (c) medical advice or treatment is recommended by or received from a Physician.

**TOTAL DISABILITY**  "Total Disability" and "totally disabled" means that due to Injury or Sickness, the Insured:

1. is substantially unable to perform the material duties of his/her occupation; and
2. is receiving care by a Physician which is appropriate for the condition causing the disability. We will waive this requirement when continued care would be of no benefit to the Insured.

**INSURED'S OCCUPATION**  The Insured's "occupation" means the occupation (or occupations, if more than one) in which the Insured is regularly engaged at the start of the Period of Disability. In the event: (a) the Insured shall retire prior to a Period of Disability; and (b) the Insured is also not engaged in any other occupation, the Insured's occupation shall mean the normal activities of a retired person of like age, sex and good health.

**PERIOD OF DISABILITY**  "Period of Disability" means a period of Total Disability starting while this Policy is in force.

**ELIMINATION PERIOD**  "Elimination Period" means the number of days of Total Disability that must elapse in a Period of Disability before benefits become payable. The number of days is shown in Item 1 on the Schedule. Days of Total Disability need not be consecutive; they can be accumulated during a Period of Disability to satisfy an Elimination Period provided there is no break in such days longer than 12 months. Benefits are not payable, nor do they accrue, during an Elimination Period.

## PART 2

## MONTHLY BENEFITS FOR TOTAL DISABILITY

We will pay monthly benefits for a Total Disability which begins while this Policy is in force. The monthly amount is shown in Item 1 of the Schedule on page 2. Benefits: (a) start on the day of Total Disability following the Elimination Period; and (b) will continue while you are totally disabled during the Period of Disability but not beyond the Maximum Benefit Period shown in Item 1 of the Schedule.

## PART 3

## PRESUMPTIVE TOTAL DISABILITY

If, while this Policy is in force and prior to your 65th birthday and as a result of Injury or Sickness, you sustain any of the following losses for at least 90 successive days:

(1) the loss of the entire use of both hands; or
(2) the loss of the entire use of both feet; or

CLAIM 00531

(3)  the loss of the entire use of one hand and one foot; or
(4)  the total loss of power of speech; speech means audible communication of words; or
(5)  the total loss of hearing in both ears; hearing means the capacity to perceive and understand audible sound with or
     without artificial assistance;

you will be presumed totally disabled under PART 2 of this Policy.  Proof of such a loss satisfactory to us must be
furnished.  While such a loss continues, benefits will be payable as provided for under PART 2; EXCEPT that: (a) continued
medical care by a Physician is not required; (b) your ability to engage in any work or occupation will not matter; and (c)
benefits shall begin as of the first day of such loss.

While benefits are payable under this PART 3, you shall not be entitled to receive benefits under any other provision of this
Policy.  Benefits will not be payable for more than one loss at a time under this PART 3.

## PART 4

## DOUBLE DISMEMBERMENT OR LOSS OF SIGHT PRIOR TO AGE 65

(A)  MONTHLY BENEFITS
If, while this Policy is in force and prior to your 65th birthday and as a result of Injury or Sickness, you sustain any of the
following losses we will pay during your lifetime monthly benefits in the amounts and for the maximum benefit period shown
in Item 2 of the Schedule:
(1)  the loss of both hands or feet by physical severance at or above the wrists or ankle joints; or
(2)  the loss of one hand and one foot by physical severance at or above the wrist or ankle joint; or
(3)  the total and permanent loss of sight of both eyes for at least 90 successive days.  The term "permanent loss of sight"
     does not include a loss of sight recovered or recoverable: (1) by artificial means; or (2) by application of generally
     accepted medical procedures.

You do not have to be under the care of a Physician.  Also, benefits will be paid whether or not you engage in any work or
occupation.  While benefits are payable by this PART 4(A) you shall not be entitled to receive monthly benefits under any
other provision of this Policy.  When such benefits cease upon the expiration of the scheduled maximum benefit period no
additional monthly benefits are payable under PART 2.  Benefits will not be payable for more than one loss at a time under
this PART 4(A).

(B)  CAPITAL SUM
If monthly benefits are payable for a loss as described in PART 4(A), we will pay the Capital Sum shown in Item 2 of the
Schedule.  This Sum will be paid in addition to the monthly benefits paid for such loss.  In no event shall the Capital Sum be
payable more than once by this Policy.

## PART 5

## INCREASED BENEFITS IF PREMIUMS PAID ANNUALLY

All dollar amounts shown in Item 1 of the Schedule under "Monthly Benefit" shall be increased by 10% if all premiums
payable on this Policy since its effective date have been paid on an annual basis.

## PART 6

## BENEFIT FOR NON-DISABLING INJURIES

If:  (1)  you sustain an Injury that does not result in a Total Disability or loss for which benefits are payable under another
          provision of this Policy or any attached benefit riders; and
     (2)  at the time of such Injury and during any period before you fully recover from such Injury: (a) you are not already
          totally disabled due to a Sickness or any other Injury; or (b) you are not receiving any benefits under another
          provision of this Policy or any attached benefit riders; and
     (3)  such Injury requires while this Policy is in force:
          (a)  the attendance by a Physician; or
          (b)  outpatient care in a hospital or care in any other medical facility; or
          (c)  x-rays;
we will pay the cost you incurred for such up to the amount shown in Item 3 of the Schedule.

CLAIM 00532

<u>Limitation:</u> If, (1) you have one or more disability income policies issued to you by us prior to, or coincident with, the effective date of this Policy; (2) such policy(ies) contain a benefit provision similar to this PART 6; and (3) under such similar provision(s) you are entitled to payment or reimbursement for the <u>same</u> incurred costs that would be indemnifiable under this PART 6, then no payment for such costs will be made under this PART 6. Payment will be made under this Policy: (a) only to the extent, if any, that the total amount of all such same costs exceeds the total amount payable or reimbursable for such costs under such policy(ies); and (b) only up to the amount as provided for under this PART 6.

## PART 7

## TRANSPLANT AND COSMETIC SURGERY BENEFIT

If:  (1)  while this Policy is in force you undergo surgery: (a) to transplant a part of your body to the body of any other person; or (b) to improve your appearance or to correct a disfigurement; and

(2)  as a result of such surgery you suffer a total disability; and

(3)  such disability commences while this Policy is in force;

we will treat such as a total disability due to a Sickness, subject to all the terms of this Policy.

## PART 8

## REHABILITATION BENEFIT

We will pay for the cost of services incurred in connection with a program of vocational rehabilitation if:

(1)  we enter into an agreement with you on both the program and the services; and

(2)  the cost of services is not covered by another plan or program.

Participation in such a program will not of itself be considered a recovery from Total Disability.

## PART 9

## RECURRENT DISABILITIES

### CONTINUATION OF BENEFIT PERIOD FOR SAME CAUSE OR CAUSES

Two or more total disabilities from the same cause or related causes shall be treated as one continuous claim for benefits if:

(1)  monthly benefits had been paid to you by the Policy for your first disability; and

(2)  after the end of your first disability you were wholly able to do any gainful work for less than 12 successive months; and

(3)  the subsequent disability begins while this Policy is still in force.

In such a case any benefits payable under PART 2 will start on the first day of your subsequent disability and will continue for the balance, if any, of the maximum benefit period of your first disability; subject to all the other terms of the Policy.

### NEW BENEFIT PERIOD FOR SAME CAUSE OR CAUSES

Two or more total disabilities from the same cause or related causes shall be treated as new or separate claims for benefits if:

(1)  monthly benefits had been paid to you by this Policy for your first disability; and

(2)  after the end of your first disability you were wholly able to do any gainful work for at least 12 successive months; and

(3)  the subsequent disability begins while this Policy is still in force.

In such a case any benefits will be payable as for a new claim subject to a new maximum benefit period and elimination period and to all the other terms of the Policy.

CLAIM 00533

PART 10

## CONCURRENT DISABILITIES

Monthly benefits are not payable for two or more disabilities at the same time. A Period of Disability which results from more than one injury, Sickness or medical condition shall be treated: (1) as a single period; and (2) on the basis of only one monthly benefit being payable.

Also, once a Period of Disability starts it will be treated for purposes of this Policy: (1) as a single continuous period regardless of the number of initial, additional or subsequent sicknesses, injuries or medical conditions which cause it to continue; and (2) such continuous period ends when you are no longer totally disabled from any and all such causes, as the case may be.

No benefits are payable for any disability due to Sickness or injury which occurs during a period for which premiums are being waived under PART 11 of this Policy on account of a prior Sickness or Injury.

## PART 11

## WAIVER OF PREMIUMS

### TOTAL DISABILITY FOR 90 OR MORE SUCCESSIVE DAYS

If total disability begins while this Policy is in force and it lasts 90 or more successive days, while you are so disabled we will waive the amount of the premium, which applies to:
(1) the first such 90 days;
(2) the time after the first such 90 days, if any, until monthly benefits are payable;
(3) the time for which monthly benefits are payable; and
(4) the time beyond which monthly benefits are payable if during such time you are unable to engage in any gainful work or occupation because of such disability.

Waiver will apply after the premium due date on or next following your 65th birthday only when monthly benefits are payable.

The payment of a waived-premium amount prior to or during the time for which it is waived will be refunded as follows: (1) the refund covering the first 90 days will be made following the end of such 90 days; and (2) the refund for the balance of any paid premium will be made following the next regular premium due date or following the day you return to work, if earlier.

The Policy shall not lapse for non-payment of premiums which fall due during the period of waiver.

### RESUMPTION OF PREMIUM PAYMENTS FOLLOWING TOTAL DISABILITY

When the Period of Disability for which premiums have been waived ends, we will send you written notice of the premium due from such end to the next due date. You will then have 31 days to pay this premium. The payment of regular premiums will resume on such next due date.

## PART 12

## MILITARY SUSPENSION

In the event:
(1) you enter full-time active duty in any armed forces; and
(2) such duty will last more than 90 successive days;
your Policy will automatically be suspended from the date you start such duty and during the period of such duty. During the time your Policy is suspended: (1) it will not be in force; and (2) no premium need be paid by you.

Upon receipt of proof of such active duty we will refund the portion of any paid premium which applies to a period of such active duty.

INSERT 3000.4                              6

CLAIM 00534

At the end of your active duty if such occurs before your 65th birthday you may reinstate your Policy without proof of insurability ii. (1) you submit a written request to us; and (2) such request plus the required premium payment is received by us within 90 days after the date your active duty ends. The premium rate will be the same as before. Your Policy will not cover any loss which results from an Injury which occurs, or a Sickness which starts during the time the Policy is suspended. All other Policy rights remain the same as before.

## PART 13
## EXCLUSIONS OR LIMITATIONS

This Policy does not cover any loss excluded: (a) by name or description in any elimination rider attached to this Policy; or (b) under the Provision which follows:

Pre-existing Condition Limitation: No benefits are payable for a loss which: (a) starts within 2 years after the effective date of coverage of this Policy; and (b) results from a pre-existing condition that was not disclosed, or that was misrepresented, in answer to a question in the application for this Policy. Pre-existing condition means: (a) a condition for which medical advice or treatment was received from or recommended by a physician within 5 years prior to the effective date of coverage of this Policy; or (b) the existence of symptoms within said 5 years which would have led an ordinarily prudent person to seek medical advice or treatment for the condition.

Also, no benefit shall be payable under this Policy for a loss or disability:
(1) caused by war, whether declared or undeclared;
(2) caused by an act of war;
(3) which results from normal pregnancy or childbirth; EXCEPT that we will pay benefits for a Total Disability which results from normal pregnancy or childbirth commencing on the later of: (a) the 91st successive day of disability; or (b) the day of Total Disability following the Elimination Period; subject to all of the other terms of this Policy.

## PART 14
## POLICY CHANGES

We will consider requests for changes in coverage which are allowable by us under this Policy while it is in force.

Any such changes:
(1) must be requested in writing on a signed application form prescribed by us for such change;
(2) will be subject to our underwriting rules, guidelines and practices in effect at the time of such request;
(3) must be approved by us;
(4) will be effective on a date determined by us to be compatible with the date premiums are then payable under the Policy; and
(5) will be subject to the payment of any additional premium due for such change.

If your requested change requires an additional premium, the additional premium charged will be based on:
(1) our then current rate; and
(2) your then attained age and then current classification of risk.

The change in coverage will apply to a covered loss or disability under the Policy:
(1) which results from a cause which occurs after the effective date of the change; and
(2) the cause of which is not the same as that of a Period of Disability which started prior to the effective date of the change unless separated by a period of at least 6 months during which you are not totally disabled.

Any applied for increase in coverage will be subject anew to the two-year periods stated in General Provision 2(A) of this Policy measured from the effective date of the increase.

CLAIM 00535

It will reflect:
    (1) the change;
    (2) its effective date; and
    (3) any resulting change in premium.

Also furnished for inclusion with your Policy will be: (a) a copy of the application for the change; and (b) any other document required to evidence the change. Upon receipt of the foregoing you shall have a ten-day period to inspect such to see if the change has been made as you requested.

## PART 15

## PREMIUMS AND RENEWALS

**1. POLICY TERM**  The first term of this Policy starts on the Policy Date shown in the Schedule. It is for the term of months also shown. Later terms will be the periods for which you pay renewal premiums when due. All terms will be the periods for which you pay renewal premiums when due. All terms will begin and end at 12:01 A.M., Standard Time, at your home. The renewal premium for each term will be due on the date the preceding term ends, subject to the grace period.

**2. GRACE PERIOD**  This Policy has a 31 day grace period. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the next 31 days. During the grace period, the Policy will stay in force.

**3. REINSTATE-MENT**  If a renewal premium is not paid before the grace period ends, the Policy will lapse. Later acceptance of the premium by us or by our agent authorized to accept payment without requiring an application for reinstatement will reinstate this Policy.

If we or our agent requires an application, you will be given a conditional receipt for the premium tendered. If the application is approved, the Policy will be reinstated as of the approval date. Lacking such approval, the Policy will be reinstated on the 45th day after the date of the conditional receipt unless we have previously written you of our disapproval.

The reinstated Policy will cover only loss that results from Injuries which occur after the date of reinstatement or Sickness which is first manifested more than 10 days after such date. In all other respects, the rights of all parties will remain the same, subject to any provisions noted on or attached to the reinstated Policy. The statements in the application for the reinstated Policy will also be subject anew to the two-year periods stated in General Provision 2(A) of this Policy measured from the date of reinstatement.

**4. REFUND OF PREMIUM AT DEATH**  Upon notice of your death, we will refund to your estate the portion of any premium which applies to a period beyond the date of your death.

## PART 16

## CLAIMS

**1. NOTICE OF CLAIM**  Written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to us at our Home Office, Boston, Massachusetts, or to our agent. Notice should include your name and the Policy number.

**2. CLAIM FORMS**  When we receive notice of claim, we will send you claim forms for filing proof of loss. If these forms are not given to you within 15 days, you will meet the proof of loss requirements by giving us a written statement of the nature and extent of the loss. You must give us this proof within the time set forth in the Proof of Loss section.

INSERT 3000.6        8

CLAIM 00536

**3. PROOF OF LOSS**

If the Policy provides for periodic payments, the claim forms and other information requested by us, all of which is called "written proof of loss", must be furnished within 90 days after the end of each period for which we are liable. For any other loss, written proof of loss must be given within 90 days after such loss. If that is not reasonably possible, we will not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible. In any event, the proof required must be furnished no later than one year after the 90 days unless you are legally unable to do so. You must give us the information which we need to determine if a benefit is payable and how much the benefit should be.

**4. TIME OF PAYMENT OF CLAIMS**

After we receive sufficient written proof of loss to enable us to determine that the claim is payable: (1) we will pay all benefits then due that are not payable periodically; and/or (2) we will pay monthly all benefits then due that are payable periodically. The balance of any unpaid benefits will be paid promptly at the end of the claim.

**5. PAYMENT OF CLAIMS**

All benefits will be paid to you. Benefits due as of time of your death will be paid to your estate.

**6. PHYSICAL EXAMINATIONS**

We, at our own expense, have the right to have you examined by an examiner of our choice as often as is reasonable while a claim is pending.

**7. MISSTATEMENT OF AGE**

If your age has been misstated, all amounts payable under this Policy shall be such as the premium paid would have purchased at the correct age; but if according to the correct age the coverage under this Policy would not have become effective, or would have ceased prior to the acceptance of such premium(s), then our liability shall be limited to the refund of all premiums paid for the period not covered by this Policy.

**8. LEGAL ACTIONS**

You may not start a legal action to recover on this Policy within 60 days after you give us required proof of loss. You may not start such action after three years from the time proof of loss is required.

**9. PAYMENT FOR PART OF MONTH**

If any payment under this Policy is for part of a month, the daily rate will be 1/30th of the payment which would have been made if disability had continued for the whole month.

## PART 17

## GENERAL PROVISIONS

**1. ENTIRE CONTRACT**

This Policy with the application and any attached papers is the entire contract between you and us. Statements by agents or brokers are not part of our contract. No change in this Policy will be effective until approved by one of our executive officers. This approval must be noted on or attached to this Policy. No one else can change this Policy or waive any of its provisions or conditions.

**2. TIME LIMIT ON CERTAIN DEFENSES**

(A) After two years from the effective date of this Policy, only fraudulent misstatements in the application for this Policy may be used to void it or to deny any claim for loss incurred or disability that starts after the two year period.

(B) No claim for loss incurred or disability that starts after two years from the effective date of this Policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the effective date of this Policy.

When under clause (A), above, we contest the validity of the coverage of this Policy, or any portion thereof, based on information given in the application for such coverage, we shall do so by a letter to you. This contest is effective on the date we mail the letter including the refund of any applicable premium to you.

CLAIM 00537

3. **CONFORMITY WITH STATE LAWS**    Any provision of this Policy which, on its effective date, is in conflict with the laws of the state in which you then reside is changed to conform to the minimum requirements of those laws.

4. **DUTY TO COOPERATE**    You have the duty to cooperate with us concerning all matters relating to this Policy and any claims thereunder. This cooperation includes, but is not limited to: (a) submitting all required forms and other documentation according to the Policy provisions; (b) mitigating all covered expenses; and (c) securing appropriate medical treatment for the condition(s) upon which your claim for benefits under the Policy is based; including such corrective/remedial surgery or generally accepted medical procedures which to an ordinarily prudent person would appear medically reasonable for such condition(s).

5. **CONTRACT STATE**    The Contract State is shown in the Schedule. This Policy is issued for delivery in the Contract State. All provisions and claims under the Policy shall be construed according to the laws or rules of the Contract State regardless of where you reside or are domiciled when any claim or dispute under the Policy begins.

SIGNED at the Home Office of the Company as of the Policy Date.


*James R. Lyons*

Secretary


President


Countersigned at _____

Policywriter or Licensed Resident Agent

CLAIM 00538

**MASSACHUSETTS CASUALTY INSURANCE COMPANY**
711 Atlantic Avenue, P.O. Box 9099, Boston, MA 02205-9099
Telephone: (617) 728-8000

## AMENDMENT TO POLICY

This Amendment changes at time of issue the Policy to which it is attached by adding the following provision:

<u>Mental Disorder and/or Substance Use Disorder Limitation</u>: If a Total Disability or other covered loss is due to a Mental Disorder and/or Substance Use Disorder, the number of months for which any benefits for Total Disability shall be payable under the Policy during the lifetime of the Insured shall not exceed in the aggregate a total of 24 months.

"Mental Disorder and/or Substance Use Disorder" means a manifestation of any disorder classified in the then current issue of the Diagnostic and Statistical Manual of Mental Disorders (DSM) published by the American Psychiatric Association (APA). Such disorders include, but are not limited to, personality, psychotic, emotional, or behavioral disorders, or disorders relatable to substance abuse or dependency. If such manual is discontinued, we will use the replacement chosen by APA.

SIGNED at the Home Office of the Company.


*James R. Lyons*
Secretary

President


<u>NOTE</u>:  We will not apply the above limitation during periods of confinement in a medical facility licensed to provide treatment for a Mental Disorder and/or Substance Use Disorder.

CLAIM 00539

## RESIDUAL DISABILITY RIDER

Massachusetts Casualty Insurance Company
Boston, Massachusetts

THIS RIDER is a part of and is subject to all the provisions and conditions of the Policy to which it is attached except as to any modifications herein. The premium for it is shown on the Schedule. Its effective date is the same as the Policy Date unless another date is shown on the Schedule. It ends on the premium due date on or next following your 65th birthday.

PART I

DEFINITIONS

A. RESIDUAL DISABILITY
  (1) The term "residual disability", prior to the Benefit Commencement Date, means that due to Injury or Sickness:
    (a) you are not able to perform one or more of the substantial and material daily duties of your Work; or you are not able to perform such usual daily duties for as much time as it would normally take you to perform such; and
    (b) you have a Loss of Net Income; and
    (c) you are receiving medical care by a Physician which is appropriate for the condition causing your disability. We will waive this requirement if it can be shown that continued care would be of no benefit to you.
  (2) This term, on and after the Benefit Commencement Date, means you are no longer required to have a loss of duties or time. Residual Disability then means that due to the same Injury or Sickness:
    (a) you have a Loss of Net Income; and
    (b) you are receiving medical care by a Physician which is appropriate for the condition causing your Loss of Net Income. We will waive this requirement if it can be shown that continued care would be of no benefit to you.
  (3) Work means your regular occupation, trade or profession as such exists at the start of any period of residual disability.
  (4) Injury means an accidental bodily injury which occurs while this Rider is in force.
  (5) Sickness means a sickness or disease which is not excluded under the pre-existing condition limitation of your Policy.
  (6) A period of residual disability must commence while this Rider is in force.
  (7) Benefit Commencement Date means the day on which the payment of monthly benefits start under this Rider. Benefits start after a number of successive days of residual disability. This is the same number of days required before monthly benefits are payable for total disability as shown in Item 1 of your Policy Schedule. If your residual disability is a continuation of a period of total disability for which benefits are payable, benefits start on the first day of your residual disability. Successive days of total and residual disability due to the same cause(s) may be combined to satisfy the required number of days. Days of total and/or residual disability which are: (1) due to same cause(s); and (2) not separated by a period of more than 12 months are considered successive days.

B. NET INCOME
This term means the sum of all wages, salary, commissions, bonuses, fees and other income or remuneration you earn as a direct result of your personal services in the performance of your regular occupation, trade or profession.

If:  (1) you perform the duties or activities of your regular occupation, trade or profession in or within the form, context or scope of a business entity; i.e., a proprietorship, corporation, partnership or association; and
    (2) you own any portion of such business entity; i.e., you are the sole or part owner of a proprietorship, a stockholder or a partner, as the case may be;

then the term means:

  (1) your share of the gross revenue or income earned by all such business entities;
  (2) less your share of the usual and customary business expenses of those entities which: (a) are incurred on a regular basis; and (b) are deductible for Federal Income Tax purposes. Such expenses do not include salaries, benefits and other forms of remuneration which are payable to you or to any person related by blood or marriage to you unless such person was a regular, full-time employee of such business prior to the start of your period of disability;
  (3) plus your salary, if any, and any contributions to a pension or profit sharing plan made on your behalf by all such business entities.

CLAIM 00540

In all events, the term does not include:

    (1)   any form of unearned income such as dividends, rents, or interest;

    (2)   income from any form of deferred compensation, retirement or pension plan;

    (3)   income in the form of royalties; or

    (4)   disability and loss-of-time benefits from disability income insurance policies.

Net Income for the purpose of computing benefits under this Rider may be credited: (a) to the period in which it is actually earned; i.e., at the time the service or performance giving rise to such is performed; accrual method; or (b) to the period in which it is actually received; cash method. We will use either the cash or accrual accounting method. The same method will be used to determine your Prior Income and your Net Income during a period of disability.

C.   PRIOR INCOME

This term means the greater of:

    (1)   The average of your monthly Net Income for the 12 months just prior to: (a) the month in which your residual and/or total disability starts; or (b) the month in which a continuous period of total and residual disability starts, if such is the case; or

    (2)   The highest average monthly Net Income for any 2 consecutive calendar years of the last 5 calendar years just prior to the start of your disability. This computation will be based on the amount of your Net Income as reported on your filed Federal Income Tax returns for those 5 years. Copies of all such returns must be furnished us by you at the start of any claim under this Rider. If not so furnished, this provision will not apply.

D.   INDEXING OF PRIOR INCOME

If the period of your Residual Disability plus that of a just prior total disability, if any, lasts a year (12 successive months) your Prior Income, as that term is used in this Rider, will be indexed or adjusted.

Definition of terms used in this adjustment:

1.   **Index** means the Consumer Price Index for All Urban Consumers, U.S. City Average, All Items. It is published by the United States Department of Labor. If such an index is not so published or if its method of calculation is changed, we will use a comparable index which has been approved by the proper insurance official in the state where you lived at the time this Rider was issued.

2.   **Claim Review Date** means each yearly anniversary date of the day on which your disability first commences.

3.   **Index Month** means the calendar month 3 months prior to the month in which the Claim Review Date occurs.

4.   **Basic Index Month** means the calendar month 3 months prior to the month in which your disability first commences.

5.   **Initial Prior Income** means your Prior Income as such was determined at the start of a claim under this Rider.

On each Claim Review Date we will compute the Prior Income amount that will be used in calculating any monthly benefit that will be paid under this Rider for the next successive 12 months of disability. This amount, subject to the Minimum Adjustment shown herein, will be:

    (a)   your Initial Prior Income;

    (b)   multiplied by the Index for the applicable Index Month; and

    (c)   divided by the Index for the Basic Index Month;

but will not be less than the then current adjusted amount.

Minimum Adjustment: In all events, we will use a minimum adjustment determined as follows:

    (a)   First, your Initial Prior Income will be multiplied by 5%;

    (b)   Next, the amount so obtained will be multiplied by the then number of prior, full years of continuous disability;

    (c)   Lastly, the resulting amount will be added to your Initial Prior Income to obtain the minimum adjustment.

Each new or separate claim for monthly benefits under this Rider must qualify again for indexing. Any adjustments made for a prior disability will not be included. But, if the monthly benefits for a subsequent claim or disability are payable as a continuation of the benefit period of the prior disability, any prior adjusted level of Prior Income will be used in computing any monthly benefits payable during the first year of the subsequent disability.

E.   LOSS OF NET INCOME

This term means the amount of your Net Income for a given month is at least 20% less than the amount of your Prior Income.

CLAIM 00541

F. RESIDUAL DISABILITY MONTHLY BENEFIT

This term means a percentage of the amount payable for total disability determined as follows:

(1) first, the amount of your Net Income for a given month shall be subtracted from the amount of your Prior Income;

(2) next, the amount so obtained shall be divided by the amount of your Prior Income to obtain a percent;

(3) lastly, the amount of monthly benefit that is payable for total disability as shown in Item 1 on your Policy Schedule shall be multiplied by this percent to obtain the amount of Residual Disability Monthly Benefit.

However, if the amount of your Net Income for a given month is at least 75% less than the amount of your Prior Income, the amount of the benefit for such month shall equal 100% of said scheduled Item 1 amount.

## PART II

### RESIDUAL DISABILITY BENEFITS

We will pay Residual Disability Monthly Benefits as follows:

(1) benefits start as of the Benefit Commencement Date;

(2) will be payable for each month that you are residually disabled;

(3) will be payable for the maximum benefit period for a total disability as shown in Item 1 on your Policy Schedule; but not, however, beyond the premium due date on or next following your 65th birthday; and subject to the overall limit that the combined period, if any, for which benefits are payable for total and residual disability due to the same cause or causes shall not exceed the maximum benefit period shown in said Item 1; and

(4) the first six monthly payments will be the greater of: (a) 50% of the monthly benefit payable for total disability; or (b) the monthly benefit determined for each month under this Rider.

Residual disability benefits will not be paid for any days for which total disability benefits are paid.

Under no circumstances will you be considered to have more than one disability at the same time. The fact that a disability is caused by more than one Injury or Sickness will not matter. We will pay benefits for the disability that pays you the greater benefit.

As part of your required proof of loss for benefits under this Rider, you must furnish us proof of your Net Income in order for us to determine such benefits. Such proof may include: (1) income tax returns; (2) statements from your accountant; (3) fee billings; or (4) such other proof as we may require. At our own expense we have the right to have a financial audit performed. We may do so as often as is reasonably required during a claim.

## PART III

### RECURRENT DISABILITIES

A. CONTINUATION OF BENEFIT PERIOD FOR THE SAME CAUSE OR CAUSES

Two or more residual disabilities from the same cause or causes shall be treated as one continuous claim for benefits if:

(1) monthly benefits had been paid to you by this Rider for your first disability; and

(2) after the end of your first disability you were wholly able to do any gainful work for less than 6 successive months; and

(3) the subsequent disability begins while this Rider is still in force.

In such a case any benefits payable under PART II will start on the first day of your subsequent disability and will continue for the balance, if any, of the benefit period of your first disability; subject to all the other terms of this Rider.

B. NEW BENEFIT PERIOD FOR SAME CAUSE OR CAUSES

Two or more residual disabilities from the same cause or causes shall be treated as new or separate claims for benefits if:

(1) monthly benefits had been paid to you by this Rider for your first disability; and

(2) after the end of your first disability you were wholly able to do any gainful work for at least 6 successive months; and

(3) the subsequent disability begins while this Rider is still in force.

In such a case any benefits payable will be as provided for in PART II; subject to all the terms of this Rider.

CLAIM 00542

C.  SUBSEQUENT TOTAL DISABILITY UNDER THE POLICY

If you suffer a total disability:

(1)  within 6 months after the end of a period of residual disability for which benefits had been paid to you by this Rider; and

(2)  it results from the same cause or causes as that which caused the prior residual disability under this Rider;

two changes in the payment of Policy benefits will occur.  Any benefits due under PART 2 of the Policy:

(1)  will start on the first day of your subsequent total disability; and

(2)  will be payable for the balance, if any, of the maximum benefit period shown in Item I on the Policy Schedule; subject to all the other terms of the Policy.

PART IV

WAIVER OF PREMIUMS

A.  If the period of your residual disability plus that of a just prior total disability, if any, lasts 90 or more successive days, we will waive while you are so disabled the total policy premium, or portion thereof, which applies to: (1) the first such 90 days; (2) the time after the first such 90 days, if any, until monthly benefits are payable under this Rider; and (3) the time for which monthly benefits are payable under this Rider.

B.  The payment of such waived-premium amount prior to, or during the time for which it is waived will be refunded.

C.  Your Policy and this Rider shall not lapse for non-payment of premiums which fall due during the period of waiver.

D.  When the period of disability for which premiums have been waived ends, we will send you written notice of the premium due from such end to the next due date.  You will then have 31 days to pay this premium.  The payment of regular premiums will resume on such next due date.

SIGNED at the Home Office of the Company.

*James R. Lyons*

Secretary

President