**Michael A. Roberts**
**Direct Dial: (513) 629-2799**
**E-Mail: mroberts@graydon.com**

April 5, 2004

**Via Email**
Peter Burrell, Esq.
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2409

    Re:    **Jeffries v. Centre Life**

Dear Peter:

    I suspect another motion to compel is necessary but first desired to see if a reasonable explanation exists to defendant's inadequate production of financial information.  Here are my concerns:

    1.    Rather than providing a complete copy of annual audited financial reports, defendant provided only scant data of DMS financials for the fiscal years 1999 – 2003.  Only 3 brief summary pages of financial data for each year were provided, except for 2001 where its income statement data was omitted.  DMS' complete audited financial reports (including footnotes) are necessary to properly evaluate its financial dealings and to ensure that the information being provided is legitimate.  Audits for Centre Life are also needed.

    2.    Defendant supplied very little financial information concerning Centre Life Insurance Company.  It provided "Boiler Plate" annual statements (1999 – 2003) as required to be provided to various state insurance departments.

    Moreover, defendant selectively removed 5 very important pages from the Annual Statement for the Year 2003 of the Centre Life Insurance Company.  The pages that were removed (19.1, 19.2, 19.3, 19.4, 19.5) contained the only reference to the relationship between Centre and DMS, and they are critical to gaining an understanding of the financial information.  Plaintiff surmises that Defendant obviously did not want to disclose the information contained in financial note #19 on page 19.3 that discusses and quantifies the relationship between Centre and DMS.  It states: "19. Direct Premium Written/Produced by Managing General Agents/Third Party Administrators: Disability Management Services, Inc. ("DMS"), a Massachusetts

corporation, is a third party administrator for the Company. In accordance with the terms of the agreement between the parties, DMS has been granted authority for renewing premiums and claims settlements on behalf of the company with respect to individual disability insurance. As of the statement date, year to date premiums for this business were $49,364,398.

Fortunately for Plaintiff, it had already received Centre's 2003 report from a state department of insurance and recognized that it was being duped.

3. Defendant also only provided Plaintiff with very superficial data of the budgeted and historical operating expenses (rent expense, utilities, postage expense, office supplies, depreciation, repairs and maintenance, parking, travel, etc.). It appears that defendant has willfully and maliciously withheld all other financial reports. The Administrative Services Agreement between Centre and DMS requires that DMS prepare a significant number of financial reports on a regular basis (and in their depositions, Mr. Cohen and Ms. Sweeney each gave detailed descriptions of the reports supplied). The Agreement lists the reporting requirements starting on page 6 ("Consistent with Applicable Law and generally accepted accounting principals"), section 3, items 12, 13i through 13xv (16 reports). Additional reports are identified in Schedule B and C of the Agreement. <u>NONE OF THESE REPORTS WERE PROVIDED.</u>

Let me know by noon tomorrow, April 6, where we go with this.

Sincerely,

GRAYDON HEAD & RITCHEY LLP

/s Michael A Roberts

Michael A. Roberts

MAR/
c:   Mr. Eric Jeffries

380984.1

380984.1