UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERIC L. JEFFRIES,<br><br>    Plaintiff,<br><br>vs.<br><br>CENTRE LIFE INSURANCE COMPANY, et al.,<br><br>    Defendants. | Case No. C-1-02-351<br><br>(Judge Beckwith)<br>(Magistrate Judge Hogan)<br><br>**DEFENDANT CENTRE LIFE INSURANCE COMPANY'S MOTION IN LIMINE TO PRECLUDE MICHAEL ROBERTS FROM SERVING AS BOTH COUNSEL AND AS A WITNESS FOR PLAINTIFF ERIC JEFFRIES** |

Defendant Centre Life Insurance Company ("Centre Life") hereby respectfully moves this Court for an Order *In Limine* to preclude Plaintiff's counsel, Michael Roberts, from offering testimony in the trial of this matter unless he first voluntarily withdraws as counsel or in the alternative is disqualified by this Court.

As a general rule, it is inappropriate for an attorney to testify on behalf of a client because, by doing so, he may breach the ethical requirements of the Ohio Code of Professional Responsibility. The rationale for this general rule is twofold. First, if a lawyer serves as both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Second, opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case.

Here, if Mr. Roberts is permitted to testify on behalf of Mr. Jeffries it will result in prejudice not only to Centre Life but to Mr. Jeffries as well. Thus, if Plaintiff's counsel decides to offer

-2-

testimony in the trial of this matter, he must not be permitted to continue representing Mr. Jeffries. The legal and factual support for this Motion is more fully set forth in the attached Memorandum.

Respectfully submitted,

/s/ Peter M. Burrell
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser-Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

## MEMORANDUM

### I.   Introduction

It is anticipated that Plaintiff's counsel will attempt to offer testimony relating to his involvement in Mr. Jeffries' claim and Center Life's alleged bad faith. As more fully explained below, this testimony would be offered indirectly through Mr. Roberts' cross-examination Disability Management Services ("DMS") employees who were evaluating Mr. Jeffries' claim for benefits. Regardless of the form of Mr. Roberts' offered testimony, the substance should not be admitted without his voluntary withdrawal or his disqualification as counsel for Mr. Jeffries.

## II.  Argument

### A. Mr. Roberts Should Not Be Permitted To Serve As Both An Advocate And A Witness

It is axiomatic that it is inappropriate for an attorney to testify on behalf of his own client because, by doing so, he may breach ethical requirements. See Disciplinary Rule 5-102(A) of the Ohio Code of Professional Responsibility. That section provides:

> "If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue the representation in the trial. ..."

In interpreting this provision, the Ohio Supreme Court in Mentor Lagoons v. Rubin, set forth a two-part test to determine how it applies to situations where attorneys representing a litigant testify on their behalf. 31 Ohio St.3d 256, 259 (1987). First, the court determines whether the attorney's testimony would be admissible without referencing DR 5-102. Id. at 260. If it is, the court must consider whether any of the four exceptions to DR 5-102 contained in DR 5-101(B) apply. Id. If the exceptions do not apply then the general rule of DR 5-102 stands and the testifying attorney must either voluntarily withdraw or be disqualified as counsel.

In this case, Mr. Roberts was intimately involved in the claims process. He began representing Mr. Jeffries in July 2000 -- approximately 16 months after the inception of his claim to Centre Life for disability benefits. He continued this representation throughout the claims handling process from July 2000 until May 2002 when the present case was filed. During the course of this representation, he sent more than 20 letters to DMS and participated in a number of telephone conferences with DMS representatives. It is the content of these letters and the substance of his telephone conversations that will form the basis for Mr. Roberts' testimony.

There is no question under the Mentor Lagoons test that this testimony will be admissible. For that reason, the dispute will center on Mr. Robert's attempt to make an end run around DR 5-102 by offering indirect testimony through the cross-examination of DMS representatives. Because the exceptions contained in DR 5-101(B) are inapplicable in this case, Mr. Roberts must voluntarily withdraw or be disqualified.

### 1.   The Form Of Testimony Offered By Plaintiff's Counsel Should Not Prevent His Withdrawal Or Disqualification

Defendant Centre Life submits that because Plaintiff's Counsel is not permitted to offer direct testimony without first withdrawing or being disqualified as counsel, he should likewise not be allowed to offer indirect testimony through his cross-examination DMS representatives. Throughout the discovery process Plaintiff's counsel questioned deponents about alleged bad faith practices in which he was involved. If a deponent could not recall specifics of a particular situation, Plaintiff's counsel was quick to offer his own version of how an event transpired. This type of testimony can only be made from the witness stand and should not be permitted in this case. See 155 North High, Ltd. v. Cincinnati Insurance Company, 72 Ohio St.3d 423, 428 (1995).

The following excerpts from deposition transcripts illustrate Plaintiff's counsel's willingness to offer indirect testimony:

> (Michael Roberts):   Have you overheard anyone at DMS suggesting that it's their belief that Mr. Jeffries claim is not legitimate?
>
> (Jeffrey Champagne): No.
>
> (Michael Roberts):   You and I have had many discussions about this purported communication, right?
>
> (Jeffrey Champagne): I don't know if we had discussions about it. But you certainly referenced it.

| | |
|---|---|
| (Michael Roberts): | I have referenced it repeatedly in letters and in phone conversations with you, right? |
| (Jeffrey Champagne): | You have referenced it. I don't know repeatedly. |

Deposition of Jeffrey Champagne, p. 195, Lines 4-15.

| | |
|---|---|
| (Michael Roberts): | Okay. You and I had a phone conversation in the afternoon of February 28th. You mentioned nothing about this notice. Right? |
| (Jeffrey Champagne): | I'm not familiar with the process of how this works. I mean, you are showing it to me. I can tell you that if we say terminate this and then you are showing me this after. When we give that instruction to waiver of premium people, this most likely comes out after that because it shows a date of 3-28. |
| (Michael Roberts): | My question was, sir: During our conversation of February 28th, you mentioned nothing about this true? |
| (Jeffrey Champagne): | I would have to look at that message again. |

Deposition of Jeffrey Champagne, p. 214, Lines 11 – 24.

| | |
|---|---|
| (Michael Roberts): | Okay. So when you talk about the financial aspect of the claim, you are just talking about Mr. Jeffries' earnings in '98 or '99? |
| (William Gelardi): | That's correct. |
| (Michael Roberts): | Why was that an issue that the two of you discussed? |
| (William Gelardi): | I believe it stood out for me because that year, either '98 or '99, was the year after he became disabled, so there was some questions as to why there would be earnings shown in that year. |
| (Michael Roberts): | Okay. Don't [you] recall having that conversation with me on many occasions? |
| (William Gelardi): | Oh, we did have a lot of discussions, so we may have touched base on that, yes. |
| (Michael Roberts): | You don't recall me explaining to you over and over that the reason there [were] earnings in '99 was because there was an exercise of options? |

\*\*\*

| | |
|---|---|
| (Michael Roberts): | Do you recall having a conversation with me over and over where you said, gee, I don't understand how he had income in '99 on his tax return, and I said, Bill, that is because he exercised stock options. Do you recall those conversations? |
| (William Gelardi): | I don't recall those situations. |

Deposition of William Gelardi, p. 49, Line 4 – p.50, Line 13.

Mr. Roberts is attempting to establish bad faith by arguing that certain events occurred, did not occur, or should have occurred and ignores the deponents' statements of fact or lack of recollection. Mr. Roberts' contention of bad faith comes from Mr. Roberts' own testimony. It cannot be more clear that Mr. Roberts is offering testimony as a witness in this case as evidence in support of Plaintiff Jeffries' bad faith claim. The fact that he is attempting to accomplish this indirectly through his cross-examination of Defendant's employees does not excuse it.

This type of indirect testimony was criticized by the Supreme Court of Ohio in <u>155 North High Ltd.</u>. 72 Ohio St.3d at 428. The Court noted that because counsel could fill in gaps created by deponents' inability to recall certain events and discussions, his direct testimony at trial became necessary to prove his client's claims. <u>Id.</u> In this case, Mr. Roberts is seeking not just to fill in gaps but add additional facts which he relies upon to support Plaintiff's bad faith claim. If Plaintiff's counsel wishes to divulge such knowledge it should be done on the witness stand, not at counsel table. This matter was brought to Mr. Roberts' attention at the time of these depositions early in this case.

### 2. The Exceptions To Disciplinary Rule 5-102(A) Do Not Apply

Also significant in this case is the second prong of the <u>Mentor Lagoons</u> test as to whether the exceptions to DR 5-102 contained in DR 5-101(B) are appropriate. DR 5-101(B) provides in pertinent part as follows:

"A lawyer shall not accept employment in contemplated or pending litigation if the lawyer knows or it is obvious that the lawyer or a lawyer in the firm ought to be called as witness, except that the lawyer may undertake the employment and the lawyer or a lawyer in the firm may testify:

...

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or the firm as counsel in the particular case." [1]

The above provision was interpreted to require two elements by the Supreme Court of Ohio in 155 North High, Ltd.. 72 Ohio St.3d at 428. Specifically, the Court held that the attorney who intends to invoke this exception has the burden to prove that 1) his or her services provide a *distinctive value* and 2) his or her disqualification would work a *substantial hardship* on his or her client. The Court further held that *neither familiarity with the case nor mere added expenses are sufficient to prove this exception.* Id., at 429-430 (emphasis added).

In 155 North High, Ltd., the Plaintiff filed suit against the Cincinnati Insurance Company alleging, among other things, a bad faith breach of the insurance contract because of the insurance company's alleged delay and intentional mishandling of the insurance claim. Counsel for the Plaintiff was an active participant in dealings and negotiations with the insurance company from shortly after the inception of the claim until the filing of the Complaint. The Court found that this personal knowledge of claim handling practices made it clear that counsel "ought to be called as a witness on behalf of his client." Id. at 428. The Court then addressed whether the DR 5-101(B)(4) exception to the general rule that an attorney cannot serve as both an advocate and a witness applied. The exception did not apply in that case because the bad faith litigation was "neither particularly

---

[1] The first three exceptions contained in DR 5-101(B)(1) – (B)(3) concern uncontested testimony, formalities, and legal fees and have no application in this matter.

complex nor involved." Id. at 430. Further, counsel for the Plaintiff made no showing that he possessed the type of specialized expertise envisioned by DR 5-101(B)(4).[2]

The facts of the instant matter are indistinguishable from 155 North High, Ltd.. Mr. Roberts has been closely involved in the handling of Mr. Jeffries' claim for disability benefits. He has been an active participant in dealings and negotiations with representatives of DMS and holds personal knowledge of the supposed acts of bad faith claims handling. Further, the Supreme Court of Ohio implied in 155 North High, Ltd. that bad faith litigation is neither particularly complex nor involved. 72 Ohio St.3d at 430. Finally, Mr. Roberts does not possess the "specialized expertise" envisioned by DR 5-101(B)(4) as his involvement in this matter is not of the nature of patent law or some other unique practice area.

### III.    Conclusion

Therefore, because none of the exceptions to the general rule that a lawyer cannot be both an advocate and a witness are applicable, Michael Roberts' should not be permitted to offer indirect testimony through cross-examination without his voluntary withdrawal or disqualification as counsel.

---

[2] The Court in 155 North High cited to the Texas appellate court opinion of Warrilow v. Norrell, 791 S.W.2d 515 (Tex. App. 1989) in finding that patent law was of the type of specialized area of law referred to by the "distinctive value" language contained in DR 5-101(B)(4).

       Respectfully submitted,


       /s/ Peter M. Burrell
       William R. Ellis (0012279)
       Peter M. Burrell (0044139)
       Amy Gasser-Callow (0063470)
       Wood & Lamping LLP
       600 Vine Street, Suite 2500
       Cincinnati, OH  45202-2491
       (Telephone) (513) 852-6000
       (Facsimile) (513) 852-6087

       Attorneys for Defendants
       Massachusetts Casualty Insurance Company
       and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion in Limine has been filed with the Court by electronic means on this 12th day of April, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Peter M. Burrell
Peter M. Burrell

204317.1