1 a material misrepresentation, and certainly it did not affect
2 my analysis of the *Daubert* issues, so I'm going to deny that
3 motion.
4     With regard to Dr. Pretorious and the PET and SPECT
5 scans, setting aside for a moment Dr. Pretorious' perhaps
6 scientifically dubious methodology of performing PET and
7 SPECT scans simultaneously, his opinion is still not
8 reasonably reliable.
9     Dr. Pretorious admitted that PET and SPECT scan imaging
10 is not a widely accepted means to diagnose chronic fatigue
11 syndrome.  Furthermore, Dr. Pretorious' use of the terms
12 cerebritis and encephalopathy admittedly were generic terms
13 for a broad range of brain abnormalities.  His testimony
14 would not be helpful to the jury because it does not narrow
15 the possible causes of Plaintiff's deficits.  Moreover, even
16 if PET and SPECT scans could be used as part of the total
17 diagnostic picture, Dr. Pretorious admitted that it is not
18 within his expertise to assemble the medical data to make
19 that diagnosis.  His testimony would not be helpful to the
20 jury.  The motion to exclude Dr. Pretorious' testimony is
21 well-taken and is granted.
22     With regard to Dr. Hyde:  Like Dr. Geier, Dr. Hyde's
23 opinion appears to be in some measure an assemblage of
24 others' medical data, as well as a product of his own
25 examination of the Plaintiff and tests that he performed on

1  the Plaintiff.

2      There exists sufficient medical data and reports from
3  which a doctor could opine with reasonable medical certainty
4  that an adverse reaction to a Hepatitis B vaccination can
5  cause chronic fatigue syndrome and/or similar or related
6  ailments or conditions.

7      Dr. Hyde's use of PET and SPECT scan imagery is only one
8  tool that he has used to develop his diagnosis.  Although PET
9  and SPECT imagery alone is not reliable in the diagnosis of
10 chronic fatigue syndrome, the Court finds that it is helpful
11 in assisting physicians develop a diagnosis of the Plaintiff
12 or a patient which itself is reasonably reliable and would be
13 helpful to the jury.  Accordingly, the motion to exclude Dr.
14 Hyde's testimony is not well-taken and is denied.

15     Dr. Waisbren.  According to his report, Dr. Waisbren
16 reached the conclusion that the Hepatitis B vaccination
17 caused Plaintiff's disability by the process of elimination,
18 or the phrase in medical terminology "differential
19 diagnosis."

20     Differential diagnosis is a generally acceptable method
21 for achieving a diagnosis under *Daubert* and a means by which
22 a medical expert can reach an opinion as to causation.

23     I would draw counsel's attention to the case of Hardyman,
24 H A R D Y M A N, versus Norfolk & Western Railroad Company,
25 which can be found at 243 Fed. 3d, 255, and that particular