FILED
JAMES BONINI
CLERK

04 APR 15 AM 8:01

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-02-351 |
| Plaintiff, | ) | JUDGE BECKWITH |
| | | Magistrate Judge Hogan |
| v. | ) | |
| CENTRE LIFE INSURANCE CO., | ) | |
| Defendant. | ) | STATEMENT |

JOINT FINAL PRETRIAL ~~ORDER~~

This action came before the Court at a final pretrial conference held on Tuesday, April 13, 2004, at 8:00 a.m. pursuant to Rule 16, Federal Rules of Civil Procedure.

I.  **APPEARANCES**:

    For Plaintiff:    Michael A. Roberts (0047129)
GRAYDON HEAD & RITCHEY LLP
511 Walnut St., Suite 1900
Cincinnati, OH 45202
(513) 629-2799
(513) 651-3836 – fax
email: mroberts@graydon.com

Clifford J. Shoemaker, Esq., Admitted *pro hac vice*
9711 Meadowlark Road
Vienna, Virginia 22182
Tel: (703) 281-6395
Fax: (703) 281-5807
Email: cliff@attorneyaccess.net

    For Defendant:    William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH 45202-2491
(513) 852-6000

(513) 852-6087

II.     **Nature Of Action and Jurisdiction.**

    A.     This is an action for individual disability benefits under a contract of disability insurance and bad faith.

    B.     The jurisdiction of this Court is invoked under Title 28, United States Code, Section 1332(a)(1). This is an action in diversity.

    C.     The jurisdiction of the Court is not disputed.

III.     **Trial Information.**

    A.     The estimated length of trial is 2-3 weeks. [Defendant maintains that the trial should be bifurcated and estimates that the liability trial will take 4-5 days].

    B.     Trial to a jury is set for April 19, 2004, pursuant to the General Notice on Trial Assignment.

IV.     **Agreed Statements And Lists.**

    A.     <u>General Nature of the Claims and Parties.</u>

        1)     **PLAINTIFF CLAIMS/DEFENSES**: Plaintiff asserts in Count One that defendant has breached a contract of disability insurance as follows: Plaintiff is entitled to long term disability benefits under a policy of disability insurance issued by the defendant, Centre Life Insurance Company (f/k/a Massachusetts Casualty Insurance Company) because he is "Totally Disabled" as defined by the Policy. Given defendant's admission of total disability from September 1998 through at least August 2003, plaintiff will show at trial that his condition has not improved since the date of the admission.

Plaintiff asserts in Count Two that defendant's conduct constitutes a tort "bad faith" which *inter alia* is as follows: defendant ignored medical evidence and pursued only information on which it could deny the Claim among other things. Plaintiff seeks compensatory damages, punitive damages, attorney fees, and all other relief appropriate.

In defense of defendant's counterclaim, plaintiff will assert that Mr. Jeffries does not have a mental disorder. In addition, to the extent that defendant argues or suggests (contrary to its expert's testimony) that Mr. Jeffries had his illness/disorder prior to April 1996, the effective date of the Policy, that argument entitles Mr. Jeffries to benefits under the Policy. Specifically, the Policy's "Time Limit On Certain Defenses" provision states that "No claim for loss incurred or disability that starts after 2 years from the effective date of this Policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description had existed before the effective date of this Policy." (Part 17, 2, (B)).

2)   **DEFENDANT CLAIMS/DEFENSES:**

Centre Life suspended Mr. Jeffries' payments in March 2002 when he persisted in his refusal to attend a physical examination as required by the clear and unambiguous language of his policy. After receipt of a neuropsychological evaluation and objective testing, Centre Life determined that there was sufficient medical information to support Mr. Jeffries' claim of total disability resulting from a mental disorder. Because Plaintiff had already received the entirety of the benefits to which he was entitled for a disability caused by a mental disorder, his benefits were terminated as of May 2003.

Prior to the neuropsychological evaluation, the medical information submitted by Plaintiff had failed to make clear the existence of any disorder that would render him unable to

3

perform the important duties of his occupation. Nonetheless, Centre Life had continued to pay benefits to Mr. Jeffries while it gathered medical information and investigated his claim. Plaintiff argues that the great volume of medical information submitted by him should have been accepted at face value without evaluation by Centre Life. He ignores the fact that even his own doctors could not determine what caused his medical problems. In fact, despite his subjective complaints, the great majority of Plaintiff's physical test results were normal and quite literally, hundreds of diagnoses had been considered and ruled out. This left the suggestion of a mental disorder, the consideration of which Plaintiff fought at every turn. In the end however, it is a mental disorder, not a physical problem, that impaired Plaintiff.

Under the terms of his policy, payment for a disability caused by a mental disorder or substance abuse problem has a maximum benefit period of 24 months. Plaintiff received benefits for 39 months before the appropriate medical evaluation was obtained. Plaintiff has never met his burden of establishing the existence of any physical cause that impairs him. As such, Centre Life has filed a counterclaim and sought return of the overpaid benefits.

**B**  **Uncontroverted Facts:** The following facts are established by admissions in the pleadings or by stipulations of counsel:

1. Mr. Jeffries purchased a policy of disability insurance from Centre Life which became "effective" in April 1996. At that time Centre Life was known as Massachusetts Casualty Insurance Company. The Company is now known as Centre Life Insurance Company. Before issuing the Policy to Mr. Jeffries, Centre Life secured the medical records of Dr. Donald Nunlist-Young, Mr. Jeffries' primary care doctor.

2. On June 18, 1997 Mr. Jeffries received vaccinations for hepatitis A and B.

4

3. Mr. Jeffries' last day of work was September 25, 1998. Using that date as the date of disability, and factoring in the elimination period, defendant paid Mr. Jeffries 24 months of disability benefits (December 1998 to December 2000). Some of these benefits were paid under a "reservation of rights" but the parties agree that they were paid.

4. Centre Life has paid to Mr. Jeffries 39 months of benefits in total.

5. Mr. Jeffries filed his claim for benefits in February 1999 and provided defendant with the Authorization to obtain information it requested. Centre Life subsequently obtained medical records concerning Mr. Jeffries, interviewed two of Mr. Jeffries' treating physicians, and interviewed Mr. Jeffries' former employer. Defendant also interviewed Mr. Jeffries in Cincinnati.

7. In May 2000, Mr. Jeffries limited the Authorization he gave to Centre Life.

8. In April 1999 and March 2000, Centre Life requested its in-house physician, Dr. Hall, to examine Mr. Jeffries' medical records. In June/July 2000, the defendant retained a consulting physician, Dr. James Garb, to evaluate Mr. Jeffries' medical records.

9. In August 2001, Centre Life asked Mr. Jeffries to submit to a psychological examination. Mr. Jeffries objected and requested that Centre Life first review the medical submission of August 3, 2001.

10. In January 2002, Centre Life again requested that Mr. Jeffries submit to a psychological examination. ~~He would not.~~ [handwritten: by agreement]

C. **Plaintiff's Contested Issues of Fact and Law:**

1). **Plaintiff's Contested Issues of Fact**: The contested issues of fact remaining for decision are

1. Is Mr. Jeffries' undisputed Total Disability caused by a Mental Disorder?

2. If Mr. Jeffries' Total Disability is caused by a Mental Disorder, when did it begin and is any contest time-barred?

3. Did defendant fail to investigate fully the relevant and applicable facts?

4. Did defendant fail to fairly consider all information obtained including that which tends to favor claim payment or continuation as well as that which tends to favor declination or termination?

5. Did defendant fail to promptly and timely pay benefits owed under the Policy?

6. Did the defendant fail to establish and maintain procedures for the purpose of guaranteeing compliance with its obligations to Mr. Jeffries?

7. Has Mr. Jeffries condition improved since August 2003?

8. As the result of Mr. Jeffries' reaction to the first of a series of hepatitis B inoculations, his physician, Dr. Donald Nunlist-Young did not administer any further injection.

2) **Plaintiff's Contested Issues Of Law:**

1. Has defendant breached the Contract since the date it admitted Mr. Jeffries is totally disabled?

2. Is defendant liable for bad faith?

3. Has defendant established unjust enrichment (i.e., that Mr. Jeffries has a mental disorder and has, therefore, been overpaid?).

4. Is defendant barred from limiting benefits based on the "Time Limits" provision of the Policy?

5. There are numerous contested issues of law set forth in Motions In Limine already filed and to be filed by the parties.

D. **Plaintiff's Contested Issues of Fact and Law:**

1) **Defendant's Contested Issues of Fact:**

1. Is Mr. Jeffries currently unable to perform the duties of his occupation due to a physical injury or illness?

2. Centre Life disputes that it has admitted total disability. Centre Life's acceptance of total disability is limited to total disability caused by a mental disorder during those two years.

3. Has Mr. Jeffries established that at any time he suffered a physical disability that rendered him unable to perform the important duties of his occupation?

4. Has Plaintiff received appropriate care for the condition he claims caused his disability?

5. Is Plaintiff currently receiving appropriate care for any condition that caused his disability?

6. Has Plaintiff met his obligations to cooperate and to provide sufficient proof of loss to establish his claim to total disability benefits as required under the terms of his Policy?

2) **Defendant's Contested Issues of Law:**

1. Does Defendant have the burden of proof to establish the lack of evidence for a physical disability when Plaintiff has failed to meet his initial burden of proving a physical disability exists?

2. Who bears the burden of going forward and therefore which party should present its evidence first?

3. Numerous motion in limine issues remain, including:

   a. the admissibility of SPECT/PET test results, in the absence of a witness to testify about procedure and findings;

   b. the admissibility of irrelevant and prejudicial character evidence with regard to Dr. Hartings;

   c. the admissibility of bad faith opinion testimony;

   d. the ability of plaintiff's counsel to act as a witness in this case.

E. **Lay Witnesses**

1. <u>Plaintiff may call</u>: Eric Jeffries, Sue Jeffries, K. Rodger Davis, Rick Turek (on cross - deposition), Jennifer Nichols (deposition), Jeff Champagne and/or other of defendant's employees/agents who have been deposed in the proceeding (on cross), Dr. Michael McClellan, Dr. Devarajan, Dr. Corwin Dunn (on cross), Dr. Michael Luggen (on cross), Dr. Donald Nunlist-Young (on cross), and Dr. Boyd Crafton (on cross).

2. Defendant may call: Eric Jeffries (on cross); Eileen Sweeney, Jeffrey Champagne, Mitchell Clionsky, Andrew Cohen, James Garb, John Graff, Lucinda Palmer, Dr. Calabrese, Dr. Crafton, Dr. Dunn, Dr. Fritz, Dr. Hawkins, Dr. Luggen, Dr. McClellan, Dr. Nunlist-Young, Dr. Reed.

3. The parties reserve the right to call rebuttal witnesses whose testimony could not reasonably be anticipated, who present evidence in rebuttal to Plaintiff's testimony without prior notice to opposing counsel

F. **Expert Witnesses**

1. **Plaintiff may call**: Dr. Michael McClellan, Dr. Byron Hyde, Dr. Burton Waisbren, Dr. Charles Poser, Dr. Harold Pretorius, Dr. Mark Geier, Dr. Michael Hawkins, Dr. Paula Shear, and Ms. Mary Fuller.

2. **Defendant may call**: Dr. Bullard, Dr. Clionsky, Dr. Frey, Dr. Hartings.

Counsel have attached a resume of each expert's qualification as Part of Appendix A herein.

G. **Exhibits:**

See Appendix B Joint Exhibits, Appendix C Plaintiff Exhibits, and Appendix D Defendant Exhibits.

H. **Depositions.**

1. Plaintiff will read the following depositions into evidence: Rick Turek, Jennifer Nichols; Charles Poser, M.D. (with video); depositions of defendant's representatives who do not voluntarily appear for trial (they are all located in Massachusetts), and any trial deposition which takes place between now and the date of the trial to accommodate an expert witness (e.g., Drs. Luggen, Dunn, and Nunlist-Young).

2. Defendant will offer the testimony of the following witness by videotaped deposition: James Garb, Charles Poser (cross-examination), Deborah Fritz, M.D., Donald Nunlist-Young, M.D., Michael Luggen, M.D., Corwin Dunn, M.D., James Hawkins, M.D.

I. **Discovery.**

Several discovery issues remain, including: Defendant's requests to have Plaintiff update responses to discovery.

J. **Pending Motions.**

The following motions are pending at this time:

- Plaintiff's Request For Attorney Fees Associated with 1st Motion To Compel (*Docs. 22, 27, 28, 32, 33 (Order), 35 (Objection), 39 (Application), 40, 41, 69 (Order), 72, 81*);

- Plaintiff's Motion In Limine And Motion For Sanctions: Dr. Fritz. (*Docs. 104, 106, 111, 112, and 126 – fax attached*);

9

- Plaintiff's Motion Concerning Expenses Of Sweeney Deposition. (*Docs. 109 (Order), 110, 113*);

- Plaintiff's Motion To Exclude Trial Testimony Of Previously Undisclosed Fact/Expert Witnesses. (*Doc. 170, 177, 179, 182 (Order), 183 (Objection), 194, and 211*);

- Plaintiff's Motion For Default Judgment (*Doc. 190, 192*);

- Defendant's Motion to Bifurcate Trial (*Doc. 172, 186, and 193*);

- Defendant's Motion For Clarification/Reconsideration (*Doc. 173, 185, 196, and 199*);

- Defendant's Partial Objections to Magistrate Judge's 3/23/04 Order (*Doc. 195 and 210*);

- Plaintiff's Motion To Exclude New Witness Testimony. (*Doc. 198*);

- Plaintiff's Motion In Limine: Medical Records. (*Doc. 200, 207, and 214*);

- Plaintiff's Second Motion In Limine: Omnibus). (*Doc. 213*); and

- Motion To Compel Regarding Financial Records. (*Doc. 204*).

Defendant also anticipates filing a Motion to Compel regarding its request for Plaintiff to supplement his discovery responses pursuant to Rule 26(e) of the Federal Rules of Civil Procedure.

    K.    **Miscellaneous Orders.**

**V.    Modification**

This Final Pretrial Order may be modified at the trial of this action, or prior thereto, to prevent manifest injustice. Such modification may be made by application of counsel or on motion of the Court.

**VI.    Jury Instructions and Trial Briefs**

Trial briefs shall be filed with the Clerk of Courts FIVE DAYS prior to the commencement of trial.

**VII.    Settlement Efforts**

The parties have been unable to settle this matter.

VIII. **Additional Action Taken:**

The foregoing stipulations and statements were amended at the final pretrial conference as follows:

IT IS SO ORDERED.

_____  
Michael A. Roberts  
Counsel for Plaintiff  
513-629-2799  
email: mroberts@graydon.com

_____  
William R. Ellis  
513-852-6000  
wrellis@woodlamping.com

_____  
Sandra J. Beckwith  
United States District Judge

## Appendix A - Expert Witnesses

Resume information on Plaintiff's Experts: Drs. Poser, Hyde, Geier, Pretroius, Waisbren, McClellan, Shear, and Hawkins as well as Mary Fuller are attached.

The C.V.s of Michael F. Hartings, Ph.D., Newton Bullard, M.D., Kirk Frey, M.D. and Mitchell Clionsky are attached.

## Appendix B- Joint Exhibits

**Designation Description**                                              **Identified/Admitted**

DMS Claim File regarding Eric Jeffries' Policy

## Appendix C – Plaintiff's Exhibits

**Designation Description**                                                                  **Identified/Admitted**

1  Various Surveillance/Investigation Reports (including videos)
   May 1999 to and March 2002 (from Claim File)
   - Defendant objects to those surveillance reports and/or videos provided by Plaintiff because they are not authenticated.

2. Physician Records (other than those created by DMS)
   Contained in the Claim File

3  Claim File Medical Records Created By Defendant
   April 1999 to January 2002 (from Claim File)
   - Defendant objects. Unclear to what documents Plaintiff's counsel refers.

4  "Close," Lapse, and Waiver Termination Documents
   February 2002 (from Claim File)
   - Defendant objects. Irrelevant and prejudice outweighs probative value.

5  "Claim System Reports" and DMS' internal memorandum
   February 1999 to March 2002 (from Claim File)
   - Defendant objects. Unclear to what documents Plaintiff's counsel refers.

6  Insurance Policy
   - Defendant objects. Any Policy other than the Joint Exhibit would be irrelevant.

7. Insurance Proposal
   - Defendant objects. Irrelevant and not authenticated.

8. Administrative Services Agreement
   - Defendant objects. This information is irrelevant, proprietary and confidential and prejudice outweighs probative value.

9. Initial Claim Forms Submitted
   February 1999 and March 1999 (from Claim File)

10 Various Correspondence Between Parties
   February 1999 to March 2003 (from Claim File)
   - Defendant Objects. This correspondence is not identified with specificity. The claims file is bates numbered and clear identification is warranted.

11. Electronic "Claim System" printout on Mr. Jeffries
    [Not in Claim File – produced February 2003]
    - Defendant objects. Irrelevant and not authenticated.

12. Jennifer Nichols Deposition With Attached Prudential Phone Log and Correspondence between Prudential and DMS

13. Plaintiff's June 2, 2000, Submission to DMS
    (from Claim File)
    - Defendant objects. No Submission made to DMS on June 2, 2000.

14. Plaintiff's August 3, 2001, Submission to DMS
    (from Claim File)
    - Defendant objects. Submission intended for Vaccine Injury Compensation Fund as argument and not medical information.

15. Other medical Information Contained In Claims File.

16. Abnormal Pet and Spect Scans
    - Defendant objects. Irrelevant and prejudicial. The reports and scans of Dr. Pretorius were excluded by the Court in response to Defendant's Motion. No other witness identified by Plaintiff is competent to offer testimony on any other SPECT/PET scans.

17. Records Of Plaintiff's Thyroid Cancer
    - Defendant objects. Authentication and irrelevant and prejudice outweighs probative value.

18. "Big Brother" Email
    - Defendant objects. Prejudice outweighs probative value.

19. Defendant's Financial Records
    - Defendant objects. Irrelevant, prejudice outweighs probative value and requires bifurcation if allowed.

20. DMS Claim Rep Job Description/Org Chart
    - Defendant objects. Organizational chart is irrelevant.

21. DMS Website Information
    - Defendant objects. Irrelevant.

22. Performance Evaluations of J.M.
    - Defendant objects. Irrelevant and unclear and prejudice outweighs probative value and designed to embarrass and harass a non-party witness.

23. **Defendant's Rule 33, 34, and 36 Interrogatory, Admission, and Document Responses**
    - Defendant objects. These are irrelevant and incomplete without Defendant's supplementation.

24. **Nurse Palmer's Time Records**
    - Defendant objects. Irrelevant and prejudice outweighs probative value.

25. **Dr. Prasad Devarajan Medical Records on Plaintiff's son, Reid**
    - Defendant objects. Irrelevant and prejudice outweighs probative value.

26. **Application File**

27. **DSM Diagnostic Criteria for Somatization Disorder, Obsessive Compulsive Disorder, and Undifferentiated Somatoform Disorder**

28. **Notes Of Rick Turek Not In Claim File**
    - Defendant objects. Irrelevant and prejudice outweighs probative value.

29. **Baris Report**
    - Defendant objects. Authentication, irrelevant and more prejudicial than probative.

30. **Exhibits and Records From Deposition Of Dr. Corwin Dunn**

31. **Exhibits and Records From Deposition Of Dr. Michael Luggen**

32. **Dr. Donald Nunlist-Young Declaration**

33. **Dr. Charles Poser Reports and Exhibits to trial Deposition**

34. **Dr. Harold Pretorius Reports and Exhibits**
    - Defendant objects. Dr. Pretorius has been excluded from testifying at the trial of this matter. His report and exhibits are equally unreliable.

35. **Dr. Mark Geier Reports and Exhibits**
    - Defendant objects. Irrelevant, unsubstantiated and more prejudicial than probative.

36. **Dr. Michael Hawkins Reports**
    - Defendant objects unless Dr. Hawkins testifies.

37. **Dr. Paula Shear Report**
    - Defendant objects unless Dr. Shear testifies. Irrelevant, unsubstantiated and more prejudicial than probative.

38. **Authorizations and APS**

39. **Mary Fuller Report**
    - Defendant objects Ms. Fuller's report is pure argument and not opinion; Irrelevant, unsubstantiated and more prejudicial than probative.

40. **Bob Bonsall Presentation**
    - Defendant objects. Authentication. Not produced in discovery.

41. **Dr. Hartings Suspension Materials.**
    Defendant Objects on the basis that the relevant events occurred nearly 20 years ago and the resolution of the belated claims occurred over 10 years ago; the information is more prejudicial than probative, and is designed only to embarrass Dr. Hartings and mislead the jury as to his qualifications and testing.

42 **Vaccine Insert**
    Defendant objects on the basis that the information is meaningless and misleading without testimony as to the basis and purpose and circumstances of its creation.

43. **Dr. Hartings Critique Of Shear/Hawkins**
    -Defendant objects. Work product.

44. **Dr. Pretorius Filed Declaration and Attached Articles**
    Defendant objects on the basis that Dr. Pretorius has been excluded as an expert in this case on the basis of "Daubert" and his scans are inextricably intertwined with his report and opinions.

45. **Provident Bank "Absence Record"**

17

## Appendix D - Defendant Exhibits

1. 2/7/03 report of Newton Bullard, M.D.
   - **Objection. Not an Expert.** *Daubert*

2. 9/12/03 report of Michael F. Hartings, Ph.D.

3. 5/5/03 report of Mitchell Clionsky, M.D. and all reports and correspondence of Dr. Clionsky contained in the claims file.

4. 11/12/03 report of Kirk Frey, M.D. with attachments and relied upon sources.
   - **Objection. Irrelevant.**

5. Medical Records of Deborah Fritz, M.D. re: Eric Jeffries
   - **Objection. Relevance, Hearsay.**

6. Medical Records of Michael Luggen, M.D. re: Eric Jeffries
   - **Objection. Authentication.**

7. Medical Records of Corwin Dunn, M.D. re: Eric Jeffries
   - **Objection. Authentication.**

8. Medical Records of Donald Nunlist-Young, M.D. re Eric Jeffries
   - **Objection. Authentication.**

9. Medical Records of Wm. Boyd Crafton, M.D.
   - **Objection. Authentication, Relevance, Hearsay.**

10. Medical Records of Robert Reed, M.D. re: Eric Jeffries
    - **Objection. Authentication, Relevance, Hearsay.**

11. 11/6/98 and 12/21/98 correspondence and reports from Leonard Calabrese, M.D.

12. 1/9/99 and 1/21/00 correspondence from Gavin Spikett, M.D.

13. 5/26/99 and 6/2/99 correspondence from Dr. Kovacs

14. Datebook of Eric Jeffries from November 14, 1999 - June 23, 2002 (EJ 0163-0214; EJ 0001-0003)

15. Medical Records of Raymond Roos, M.D.
    - **Objection. Authentication, Relevance, Hearsay, not produced in discovery**

16. Ohio Valley Karting Association Board Minutes 3/2/04
    - **Objection. Authentication, Relevance, Hearsay, and not produced in discovery**

17. Ohio Valley Karting Association Race Participation Ledger
    - **Objection. Authentication, Relevance, Hearsay, and not produced in discovery**

18. Updated Medical Records produced by Plaintiff's counsel 4/6/04

19. Curriculum vitaes of Drs. Bullard, Hartings, Clionsky and Frey

20. Medical Records of Arif Dalvi, M.D.
    - **Objection. Authentication, Relevance, Hearsay, and not produced in discovery**

21. Medical Records of Michael McClellan, M.D.
    - **Objection. Authentication, Hearsay.**

22. Medical Records of James Hawkins, M.D.

23. Copy of March 1999 article from Insight Magazine.

24. DSM IV diagnostic criteria for cognitive disorder not otherwise specified.
    - **Objection. Relevance**

25. Photos of Plaintiff and his various vehicles in show competitions and road rallies.
    - **Objection. Authentication, Relevance, Hearsay, and not produced in discovery**

26. Photos and videotapes of Plaintiff's activities through surveillance.
    - **Objection. Authentication, Relevance, Hearsay, and not produced in discovery**

27. Provident Bank Records produced pursuant to subpoena

28. Letter from Dr. Furlan to Dr. Luggen dated January 28, 2000.

29. Selected claim file documents in chronological order.

30. Selected medical records in chronological order.

31. Letters and court orders relating to medical examinations of Plaintiff