IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-02-351 |
| | : | |
| Plaintiff, | ) | JUDGE  BECKWITH |
| | : | Magistrate Judge Hogan |
| v. | ) | |
| | : | |
| CENTRE LIFE INSURANCE CO., | ) | |
| | : | |
| Defendant. | ) | |

### PLAINTIFF'S MOTION IN LIMINE: RECENT SURVEILLANCE

Since Mr. Jeffries submitted his initial claim for disability benefits in February 1999, he has consistently shared with defendant that his condition oscillates and on good days he can play with his children and bad days he can't function much at all. (*Exh. 1*). It is undisputed that plaintiff's condition waxes and wanes: this is consistent with plaintiff's physicians' assessment and opinions and Mr. Jeffries statements to the defendant throughout the course of his Claim. Even defendant's consulting physicians and experts do not dispute the disabling nature of a waxing and waning autoimmune illness.

Nonetheless, the defendant has conducted essentially non-stop surveillance/investigations of Mr. Jeffries - no less than 18 times.

On March 22, 2004, defendant denied the existence of recent surveillance. Yesterday it was learned that 2 days later, March 24, 2004, investigators (who were no doubt retained prior to March 22) began secret video surveillance of Mr. Jeffries and his wife and child in Florida. The surveillance lasted from March 24-28.

1

On April 7, 2004, 10 days following the conclusion of the surveillance, and the night before the Summary Jury Trial defendant's counsel made reference to videotape from recent surveillance on its proposed Exhibit list for trial. Later that day, plaintiff's counsel demanded the immediate production of the videos. (*Exhs. 3 and 4*). Defendant's counsel denied its existence. *Id.*

On April 13, 2004, defendant's counsel referred to the videotapes in the course of the Final Pretrial Conference – but refused still to produce them. Defendant's counsel indicated that Defendant intended to use the videotape for impeachment and therefore was not required to disclose it's existence prior to plaintiff's testimony at trial.

At the April 15, 2004, continuation of the Pre-Trial Conference, the Court directed Defendant to disclose the videotape. At 5:00 p.m. on April 15, 2004, essentially one business day before the start of trial, Defendant's counsel delivered 18 videotapes, representing 20+ hours of surveillance over a 5 day period between March 24 and March 28, 2004. A review of the bulk of the videotapes reveals that they are irrelevant: they do not prove or disprove a cognitive deficit, nor do they prove or disprove a waxing and waning physical illness. In addition, the tapes are not continuous streams of video: portions of the surveillance of Mr. Jeffries were cut out or not recorded, and some of the tapes have no date or time stamps.

This surveillance evidence should be excluded from trial pursuant to FRE 402 and 403 and as a sanction for Defendant's failure to disclose it until just before trial. The surveillance evidence, showing Mr. Jeffries assisting his child at a go kart competition, is not relevant to the issue of whether Mr. Jeffries can perform the material and substantial duties of his occupation as an investment banker, which is the only issue before the jury. It would be highly unfair to require

Plaintiff's counsel to review 20 hours of newly disclosed videotape on the eve of trial, when

Defendant's counsel had possession of the videotape for weeks and chose to conceal its existence.

Respectfully submitted,

OF COUNSEL

/s Michael A. Roberts
Michael A. Roberts, Esq. (0047129)
GRAYDON HEAD & RITCHEY LLP          GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center             511 Walnut Street, Suite 1900
511 Walnut Street                   Cincinnati, Ohio 45202
Cincinnati, Ohio 45202              (513) 629-2799
(513) 621-6464                      (513) 651-3836 (fax)
                                    email:mroberts@graydon.com

## MEMORANDUM IN SUPPORT

### I.    The Recently Revealed Surveillance Evidence is Not Relevant to the Disability Claim.

In September 1998, Mr. Jeffries was no longer able to perform the material and substantial

duties of his occupation as an investment banker due to a disabling condition which he and his

doctors have always contended "waxes and wanes." (*Exh. 1*). In addition, the duties of his job did

not include manual labor. Rather, they required Mr. Jeffries to perform at a relatively sophisticated

cognitive level, handling complicated and substantial financial transactions. Although there are

additional disabling physical fatigue and pain symptoms to Mr. Jeffries' condition, his inability to

perform his occupational duties, and the ensuing loss, resulted primarily from the diminution in his

cognitive functions.

As first noted on his initial claim form and repeatedly thereafter, the symptoms of Mr.

Jeffries' illness "wax and wane" or "oscillate." (*See, Initial Claim Form attached as Exhibit* 1). Some

days are better than others. *Id.* Some days, he is virtually physical symptom-free. *Id.* Specifically,

Mr. Jeffries reported to Defendant:

3

> **Describe in detail you typical daily activities:** It depends. My illness tends to oscillate. On good days, I try to play with my children. On bad days, I try to conserve energy and rest, as to not further exacerbate the down cycle.

*(Exh. 1).* On June 15, 1999, Defendant suggested that Mr. Jeffries keep a log detailing his daily activities for "a week," but according to Defendant's own records, Mr. Jeffries told Defendant that "he can go for 1 week periods where he is relatively ok," and thus Defendant "suggests keeping it over a two week period." *Id.* On July 30, 1999, Mr. Jeffries noted to Defendant that "the illness continues to wax and wane in severity." *Id.* Defendant's Detail Call report from September 30, 1999 records: "Mr. Jeffries states he gets 'attacks.' These wax and wane and the last bad one that he had was in July of 1999." *Id.* Without question, Defendant has been aware of the oscillating nature of Mr. Jeffries' illness since it was first reported.

Although the videotapes (18 total) were just delivered yesterday evening and have not been fully reviewed by Plaintiff's counsel, in the most recent of its 18-19 separate surveillance and/or investigations of Mr. Jeffries, conducted during the week of March 22, 2004, Defendant has secured videotape showing Mr. Jeffries assisting his child in a go kart competition. Defendant proposes to use that videotape at trial for "impeachment" purposes: WHEN THERE IS NOTHING TO IMPEACH – Mr. Jeffries has disclosed periods of feeling well and his indulgence of his child's passion for go karts.

That surveillance videotape of Mr. Jeffries' physical activity in assisting his child is not relevant to the issues before the Court. It cannot be relevant to Mr. Jeffries' disability claim because his occupational disability is not the result of an inability to ever engage in physical activity – it waxes and wanes, as he has always represented, and the videotape cannot measure the cognitive impairment that is central to the occupational disability claim. Nor can it be relevant for

4

"impeachment" purposes because Mr. Jeffries has been forthright, since the filing of his initial claim, that his symptoms oscillate, and the medical testimony supports that oscillation of symptoms.

The use and value of such surveillance evidence has been criticized by several other courts, particularly where the evidence does not support a conclusion that the plaintiff can engage in the substantial gainful employment that is at issue. In *Clausen v. Standard Insurance Co.*, 961 F.Supp. 1446 (D. Col. 1997), the insurance company surveilled a 47 year old who had been diagnosed with Chronic Fatigue Syndrome and sought to establish that the claimant was a "malingerer whose statement cannot be trusted." *Id.* at 1457. The Court dismissed the evidence as having "little, if any, relevance" to the issue of whether the claimant could perform the duties of her occupation, saying:

> "The surveillance video documents one eight-hour period in Clausen's life. It shows Clausen walking two miles with her dog and driving her car. There is nothing in the record suggesting Clausen was capable of such activity on a sustained basis or that the video documented anything other than a good day or a special day visiting with her mother. Perhaps with the exception of Clausen's statement that she was unable to sit for more than ½ hour at a time, the video is not inconsistent with anything Clausen reported to Standard or to the doctors that evaluated her. Further, the Plan at issue defines 'disability' as being 'unable to perform with reasonable continuity the material duties of you own occupation.' The videotape bears little, if any, relevance to this standard." *[Emphasis added]. Id.*

Similarly, the Disability Income Policy covering Mr. Jeffries defines the term "totally disabled" to mean "substantially unable to perform the material duties of his/her occupation." Videotape of Mr. Jeffries assisting his child with his go kart races does not tend to prove that Mr. Jeffries is substantially able to perform his duties as an investment banker.

In *Cohen v. Secretary of HHS*, 964 F.2d 524 (6th Cir. 1992), the Sixth Circuit held that a claimant's ability to finish one year of Law School in three years, help found a national CFS support

5

group, and on occasions go ballroom dancing was a tribute to her courage and determination in refusing to surrender to the debilitating affects of her illness and not evidence that the claimant was not "totally disabled." *Id.,* at 527. "'Evidence of the limited ability to perform some physical acts on an occasional basis is inadequate to support a reasonable conclusion of ability to engage in substantial gainful activity.'" *Id.,* quoting, *Davis v. Califano,* Unempl. Ins. Rep. (CCH) para. 16,779 (S.D.N.Y. 1979). The Sixth Circuit found that the critical issue in a disability case is the claimant's "capacity for work activity on a regular and continuing basis." *Id.* The Sixth Circuit expressly acknowledged that the claimant's illness, like Mr. Jeffries', was one which is "characterized by exacerbations and remissions which are unpredictable in nature and which make sustained work activity virtually impossible." *Id.*

See, also, *Irwin v. Shalala,* 840 F. Supp 751, 763 (D. Or. 1993) ("the real test is not whether plaintiff could drive . . . (50 miles) on a day which she presumably chose because she was feeling well, but whether she could engage in substantial gainful employment"); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), quoting, *Smith v. Califano*, 637 F.2d 968, 971 (3d. Cir. 1981) ("disability does mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity"); *Irwin,* 840 F.Supp. at 763 ("Nor should an otherwise eligible claimant be penalized for attempting to maintain some sense of normalcy in her life and a modicum of independence").

Nothing depicted in the surveillance videotape is relevant to the only issue for consideration: does Mr. Jeffries' relapsing and remitting physical illness and continuously impaired cognitive functioning capacity prohibit Mr. Jeffries from performing the material and substantial duties of his occupation? Nothing in the videotapes could contradict Mr. Jeffries' cognitive inability to perform his occupation. The videotapes only show that, when feeling well, Mr. Jeffries can be a

6

father and indulge his children in their hobby. Something Mr. Jeffries has affirmatively conceded throughout the 5 year history of his battle with defendant. This is not evidence that he is not "totally disabled," and it should be excluded under FRE 402.

## II.    The Surveillance Evidence Should Also be Excluded as a Sanction for Non-Disclosure.

Just one business day before trial, Defendant disclosed 20 hours of surveillance videotape, unidentified portions of which Defendant seeks to introduce at trial. The videotape was taken between March 23 and March 28, 2004, yet its very existence was not disclosed by Defendant until April 7. And then when pressed defendant's counsel denied its existence.

Previously, on March 17, 2004, Plaintiff specifically requested that Defendant "supplement discovery by providing me with copies of all recent surveillance." *Exh. 2.* In Reply, on March 22, Defendant's counsel indicated, very carefully, that "no surveillance or pretext calls had been performed since the last surveillance in the claims file produced to you." *Exh. 2.* Defendant's 19th surveillance of Mr. Jeffries began just two days later.[1]

On April 7, 2004, Plaintiff's counsel inquired of Defendant regarding the appearance on Defendant's Exhibit List of the item: "Photos and videotapes of Plaintiff's activities through surveillance." *Exh. 2.* When asked to produce the materials comprising that item, Defendant's counsel produced only a document showing a printout of the schedule for the Jeffries children's go-cart races. Defendant's counsel specifically denied that any videotape existed and produced none. That denial was false, as we now know that the videotape in question was created beginning on March 24 and completed on March 28. So at the time of the denial it had been in defendant's possession for 10 days.

---

[1]    Given that the surveillance was to take place in Florida, it had to have been contemplated and arranged prior to Mr. Ellis' March 22 representation.

Defendant was obviously aware of the March 24-28 surveillance and of the desire of Plaintiff's counsel to obtain any new surveillance information. Despite that, Defendant concealed its existence and did not produce it to Plaintiff for over three weeks until the very eve of trial.

Defendant disclosed the surveillance videotape only after the Court directed it to do so.

In addition to this Court's requirements regarding the disclosure of trial exhibits, Rule 26(e) of the Federal Rules of Civil Procedure places upon each party the affirmative duty to supplement its pretrial disclosures and its responses to discovery, including requests for production, "if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Defendant plainly failed to comply with this duty, even after Plaintiff specifically requested that Defendant "supplement discovery."[2]

The sanctions for failing to comply with the Rule 26(e) duty of supplementation are found in Rule 37(c)(1) and include:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. *[Emphasis added]*.

In light of Defendant's intentional concealment of the evidence, Defendant cannot demonstrate "substantial justification" for its failure to disclose the videotape, and accordingly the rule prohibits its use at trial.

Finally, the production of 20 hours of videotape on the eve of trial substantially alters and hampers Plaintiff's counsel's ability to prepare for trial. Trial-by-ambush was long-ago displaced in

---

[2]        In his written Document Requests, Plaintiff specifically requested that Defendant produce all "surveillance" documents, including "videotapes."

the Federal Courts, yet it is precisely the tactic sought to be employed <u>again</u> by Defendant here. The Court should not countenance Defendant's violation of the Rules requiring disclosure, and in light of the extreme prejudice created by this last minute disclosure, the recently disclosed evidence should be excluded.

## III. Conclusion.

Pursuant to FRE 402 and Fed. R. Civ. P. 37(c)(1), Plaintiff respectfully requests that the Court bar Defendant's use of the surveillance evidence.

Respectfully submitted,

OF COUNSEL

GRAYDON HEAD & RITCHEY LLP
1900 Fifth Third Center
511 Walnut Street
Cincinnati, Ohio 45202
(513) 621-6464

/s Michael A. Roberts
Michael A. Roberts, Esq. (0047129)
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202
(513) 629-2799
(513) 651-3836 (fax)
email:mroberts@graydon.com

## CERTIFICATE OF SERVICE

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 16th day of April, 2004.

/s Michael A. Roberts

382579.1