UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, et al., | : | **DEFENDANT'S MOTION FOR RECONSIDERATION AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION REGARDING DR. FRITZ** |
| Defendants. | : | |

**I.     Introduction**

Yesterday this Court ruled that Plaintiff's treating physicians, Drs. Luggen, Reed, Nunlist-Young, as well as Dr. Garb, would not be permitted to testify at the trial of this matter. Today, after an ex parte phone call from Plaintiff's counsel to the Court's clerk, Dr. Dunn was added to the list of excluded treating physicians. In addition, despite the Court's explicit ruling that "Dr. Fritz may testify at trial" Plaintiff has moved to exclude her as well. Defendant opposes Plaintiff's Motion and moves for reconsideration of the Court's previous Order because of Defendant's reliance and conformance with the Final Pretrial Order in the identification of its witnesses. The court's apparent acceptance of Plaintiff's argument that to allow his own doctors to testify in the case without first allowing him the opportunity to depose them is unfair surprise ignores the fact that he is the one who identified them to Defendant. Moreover, Plaintiff's counsel has participated in the discovery depositions of Drs. Nunlist-Young, Dunn and Luggen.

## II.     Argument

### A.     Defendant Complied With The 3/30/04 Final Pretrial Order.

Defendant moves this Court for an Order reconsidering its previous Order which held that Plaintiff's treating physicians, specifically Dr. Luggen, Dr. Nunlist-Young, Dr. Dunn and Dr. Reed may not be called as testifying witnesses at the trial of this matter.  The Court held that although the reports and records of Mr. Jeffries' treating physicians may be considered, these physicians may not be called as witnesses at the trial of this matter because Defendant did not identify them to Plaintiff before it served its April 1, 2004 witness list.  Defendant relied upon the March 30, 2004 Notice issued by this Court regarding the Final Pretrial and Trial regarding the identification of its witnesses.  The Court has now apparently supplanted that Order to hold that Defendant should have instead relied upon the general provisions of Rule 26 of the Federal Rules of Civil Procedure and identified Plaintiff's treating physicians as potential witnesses no less than 30 days before trial.

It is undisputed that neither party complied with the November 29, 2002 deadline for identification of lay witnesses and summarization of their purported testimony.  This deadline was not complied with primarily because at that point the case was only six months old. In addition, Plaintiff had still not completed his IMEs and a claims decision had not been made. Indeed, it was only after the Court ordered Mr. Jeffries to complete the IMEs that Defendant was in a position to make a claims decision (which was made in May 2003). Despite the lack of any claims decision, in April 2003, Plaintiff sent a letter identifying several witnesses he contemplated using at the trial of this matter.  Notably, Plaintiff's disclosure did not include

summaries of these witnesses' testimony as required by the Court's Order. This was long after expiration of the deadline for identification of lay witnesses but before any new deadline was set.

On March 30, 2004, this Court issued a Notice regarding the final pretrial and trial dates. Under Section VI, Witness Lists, the Court required that:

> No witness may be included on a witness list if not identified in connection with initial disclosures required under Federal Rule of Civil Procedure 26 (or reasonably timely supplements thereto) or in response to a discovery request seeking the identity of persons with knowledge regarding the matters at issue (or reasonably timely supplements thereto), unless neither pretrial obligation applies to the action.

*See* Court's Order, attached hereto as Exhibit A, at p. 3. In reliance upon this Order and in light of the fact that there had been no Rule 26 disclosures made by either party, counsel for Defendant sent counsel for Plaintiff a letter dated April 1, 2004 which identified the witnesses it intended to call in this case. *See* Exhibit B. These witnesses had been identified "in response to a discovery request seeking the identity of persons with knowledge regarding the matters at issue." This was in keeping with the mandate of the Court's own Order.

It cannot be disputed that Drs. Luggen, Nunlist-Young, Dunn, Reed and Garb were identified as persons with knowledge in discovery responses. On January 10, 2003, Defendant supplemented its First Set of Interrogatories and Requests for Production. Interrogatory no. 8 asked Defendant to "identify each individual, employed by Defendant or otherwise, whom Defendant believes has knowledge of any information relating to Mr. Jeffries' claim, and, for each such individual, state the facts, action, or conduct of which the individual has knowledge." In its initial answer, Defendant referred Plaintiff to its claims file. The names of all of Plaintiff's treating physicians whom he had previously identified to Centre Life, including Dr. Dunn, Dr. Luggen, Dr. Nunlist-Young, Dr. Crafton and Dr. Reed, as well as Dr. Garb, were all identified in that claims file and identified to Plaintiff as persons who had knowledge. Moreover, in its

January 10, 2003 supplementation, Defendant augmented its answers and referred Plaintiff to Interrogatories 2, 3, and 6. Interrogatory no. 2 specifically identified Plaintiff's treating physicians including Dr. Luggen and Dr. Dunn as well as Dr. Garb. Defendant also incorporated its responses to Interrogatory no. 3 which asked for identification of contacts between DMS, Centre Life and any person with knowledge. Identified on these pages are Dr. Nunlist-Young, Dr. Luggen, Dr. Reed and Dr. Dunn as well as several of Plaintiff's other treating physicians.

There can be no question that in accordance with the Court's March 30, 2004 Order, Defendant only included persons on its witness list who had been identified in response to discovery requests seeking the identification of persons with knowledge. The Court has now ruled contrary to that Order and stated that Defendant should have previously identified Plaintiff's own treating physicians as potential witnesses. This departure from an Order that Defendant relied on to its detriment is extremely prejudicial.

**B.      There Is No Legitimate Risk Of Unfair Surprise To Plaintiff When His Own Doctors Are Called As Witnesses Nor Where Dr. Garb's Reports Are In The Claims File.**

The Court has chosen to exclude relevant and probative evidence from Plaintiff's own treating physicians on what can only be described as procedural technicality. It has done so in spite of Defendant's compliance with the Court's own Order. In excluding this evidence, the Court has accepted Plaintiff's dubious claim of unfair surprise. This violates both the letter and the spirit of the Federal Rules.

Plaintiff objected to Defendant's use of his own treating physicians by arguing that they were not identified to him as potential witnesses in the case. He contends that he did not have an opportunity to take their depositions prior to trial. But Plaintiff has no right to take the depositions of his own treating physicians. If he wants to know their opinions he can simply talk

to them. Moreover, Mr. Roberts in fact *participated* in the discovery depositions of Dr. Nunlist-Young, Dunn and Luggen.

The exclusion of Dr. Garb is equally difficult to accept. In addition to the fact that Plaintiff' counsel has often referred to Dr. Garb's report in the claims file and has made it part of his own exhibits (Exs. 3-4), he now claims surprise. Moreover, this issue was raised and ruled upon by Magistrate Judge Hogan, who conditioned Dr. Garb's testimony on Defendant paying for the luxurious travel and accommodations of Plaintiff's counsel. Defendant had purposely arranged Dr. Garb's trial deposition to coincide with Dr. Poser's deposition in Boston, initially thinking this was a courtesy to Plaintiff's counsel. Dr. Poser was unable to be at trial and on the request of plaintiff's counsel, defense counsel agreed to travel to Boston to accommodate Plaintiff. It also reduced both parties' expense by adding Dr. Garb to the trip. The Court has, in its ruling, overruled Judge Hogan's 3/23/03 Order, stricken a witness to whom Plaintiff's counsel has often referred and whose report he has had from the beginning of the case, but has kept the onerous condition of having Defendant pay for his trip.

The point of identification and the spirit of Rule 26 is to prohibit unfair surprise at trial. There can be no legitimate claim of unfair surprise when it comes to Plaintiff's own doctors. The reason Plaintiff wants to exclude these doctors is because their testimony is extremely probative. One of them will say that Plaintiff's symptoms may have been psychosomatic and that Plaintiff was upset about this diagnosis. Dr. Nunlist-Young depo. at p.109.  Rule 26 is designed to ensure the spirit of open discovery.  "The focus of a preclusion [of testimony not previously disclosed to the opposing party] inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill-effect stemming from the late disclosure." *See Thibeault v. Square D Company*, 960 F.2d 239, 244 (1st Cir. 1992).  As the U.S. Supreme Court has

recognized, disclosure of witnesses is consistent with the federal court's desire to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practical extent." *See United States v. Procter & Gamble Company*, 356 U.S. 677, 682, 78 S. Ct. 983, 986-87 (1958). In this case, the Court's Order only serves to further Plaintiff's concealment of relevant information. There can be no legitimate claim of unfair surprise. With the exception of Dr. Garb, these witnesses are Plaintiff's own treating physicians. Moreover, their depositions were taken during the course of this trial and their opinions are well known to both parties. Plaintiff cannot claim a fear of introduction of new theories or an inability to cross-examine his own doctors.

Added to the fact that Defendant's identification of trial witnesses complied with the Court's own March 30, 2004 Order, the party who brought these many physicians into the case was Plaintiff himself. To now claim prejudice because he brought all these physicians into the case, and to use this claim of prejudice to prevent Defendant from presenting relevant evidence is clear error.

      **C.**      **Plaintiff's Motion To Exclude Dr. Fritz Must Be Denied.**

Plaintiff has now filed what he styled as a Reply Memorandum but what actually seeks to include Dr. Fritz in the list of treating physicians who may not testify at the trial of this matter. The Court's Order explicitly held that "Dr. Fritz may testify at trial." Plaintiff argues that he "never failed to disclose to DMS anything about his medical care." The falsity of this statement will be established at trial. Nonetheless, if Plaintiff's argument that the mention of Dr. Fritz in the claims file is sufficient notice for trial purposes is accepted, then there can be no question that Defendant's prior notice to Plaintiff was sufficient.

Plaintiff now claims that Defendant had notice of Dr. Fritz because of his list of partial chronology of care. Significantly, this list was buried in the middle of a three inch thick submission to DMS in August 2001. What Plaintiff ignores is that when he was asked to identify all doctors who provided treatment to him (and to produce his medical records) in response to Defendant's document requests, Plaintiff refused. Instead of producing the requested records, Plaintiff referred Defendant to the claims file. When Defendant provided the same answer in response to Plaintiff's discovery requests, it was required to undertake a page by page review of the claims file and identify the pages on which the information sought by plaintiff appeared. Defendant did so and was sanctioned for not being sufficiently specific.

More importantly, the submission of a partial chronology of care that fails to identify anything other than Dr. Fritz's name and specialty does not satisfy the requirement of identification sought in Defendant's interrogatories. At no time did Plaintiff identify Dr. Fritz's address. Given that Plaintiff traveled the world seeking diagnoses, tracking down his many treating physicians was no small task. Moreover, Plaintiff withheld Dr. Fritz's medical records which were requested in discovery. Although Plaintiff responded that they were in the claims file, they were not. And Plaintiff did not produce proof of production of these medical records to the Court. As established in Defendant's earlier Motion however, Plaintiff's counsel did make a request to Dr. Fritz for her records. He did not share them with Defendant, however, for obvious reasons.

There can be no question that Plaintiff was acutely aware of his consultation with Dr. Fritz and did whatever he could to conceal it. Burying a one line response relating to Dr. Fritz in the thousands of pages submitted in his claims file is not demonstrative of a good faith effort.

**III.    Conclusion**

Plaintiff has now successfully sought exclusion of the testimony of many of his treating physicians as well as one of its consulting physicians.  Once again, Plaintiff is attempting to tailor the information available to the trier of fact.  He now relies upon a single entry in thousands of pages submitted to DMS as proof of his previous identification of Dr. Fritz.  He ignores the fact that he did not provide information about Dr. Fritz which would have enabled DMS to actually locate her records.  He also ignores his incomplete responses to Defendant's discovery requests during the litigation phase of this case.

More telling however is the fact that Plaintiff is now attempting to rely upon the claims file submission as notice to Defendant. At the same time, he argues that Defendant's explicit identification of treating physicians as persons with knowledge in the claims file was insufficient to put him on notice as to which of his treating physicians would be called as witnesses.

There is a great deal of relevant and probative information at issue here. Plaintiff's counsel is aware of the effect of the Court's rulings as evidenced by his comments in a recent email message to defense counsel. In it, he says "I must say though – that the videos show nothing and only make CLIC look desperate – so I struggled with asking that they be kept out. ***But I thought – while I'm on a roll why let you guys have <u>any evidence at trial</u>***?" *See* 4/1604 email exchange between counsel attached hereto as Exhibit C (emphasis added). This statement makes it obvious that Plaintiff's counsel views the trial as a game he hopes to manipulate, not as a vehicle through which the truth will be revealed. But this court should not become a party to the game. This evidence is probative and relevant and the jury should hear it.

        Respectfully submitted,

s/William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 16th day of April 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                      s/William R. Ellis
                                      William R. Ellis, Esq.

204925.1