UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **DEFENDANT'S MEMORANDUM** |
| et al., | : | **IN OPPOSITION TO PLAINTIFF'S** |
| | : | **MOTION REGARDING RECENT** |
| Defendants. | : | **SURVEILLANCE** |

**I.    Introduction**

Once again the plaintiff's counsel argues that evidence which does not fit his own theme of the case is irrelevant. In his Motion in Limine plaintiff's counsel argues that his theory and his evidence is that Mr. Jeffries' symptoms wax and wane and therefore any evidence that he can do pretty much anything that he wants physically is irrelevant. The Court must remain aware that Mr. Jeffries has settled on the diagnosis of Chronic Fatigue Syndrome ("CFS") with a cognitive deficit as one of his allegedly disabling complaints. Centre Life maintains that he is not physically disabled and that consistent with somatoform disorder his symptoms wax and wane depending on whether or not he is focused on his illness. Given the huge volume of evidence of the plaintiff's lifestyle during the claimed disability, the convenience of the good days coinciding with his preferred events and bad days only reported by Plaintiff but rarely, if ever, seen, is quite relevant. Moreover, given the nature of his claimed debilitating CFS, the four consecutive 10-12-hour days of activity, as shown on the surveillance tapes, is relevant.

Plaintiff's claim of a discovery violation must also be rejected. These tapes were produced the day the Court ordered them produced. These tapes were not the subject of the

earlier discovery order relating to surveillance obtained during the claim investigation phase of this case because they did not exist. These tapes were obtained for defense counsel in anticipation of litigation and in preparation for trial. Fed. R. Civ. P. 26 (a)(3).[1] Assuming Plaintiff honored his obligation to testify truthfully at the trial of this matter there would be no need to introduce the tapes. Rather than be bound by the confines of the truth, Plaintiff seeks to exclude relevant evidence that is extremely probative of the precise issue to be resolved by the jury.

## II.     Argument

### A.     The Surveillance Tapes are Relevant, Probative, and Plaintiff Admits They are not Prejudicial.

As this case now stands, most of the breach of contract issues that the jury needs to address are well defined. First, between the time of his initial claim in February 1999 and May 16, 2003, did Mr. Jeffries have a total disability caused by a mental disorder? The burden here, as determined by the Court, rests with Centre Life to prove that any disability Mr. Jeffries had during this period was a mental one. Although a topic of much debate as to the effect of this concession, Centre Life has agreed that for the first 24 months of his claim Mr. Jeffries was totally disabled by the mental condition known as Somatoform Disorder and that benefits should have been and were paid to him. As an additional consideration, Dr. Hawkins had also diagnosed Mr. Jeffries with Cognitive Disorder NOS which is also a DMS diagnosis.

Second, is Centre Life entitled to a return of overpaid benefits for those payments between the 25th and 39th months of Mr. Jeffries' claim? Centre Life argues that regardless of

---

[1] Defense counsel's belief that these tapes were protected by the work-product privilege was based in part on Judge Hogan's September 4, 2002 Order. (Doc. No. 16). In it he said that the surveillance obtained during the claims process was work product but that production was required and the privilege had been waived when it was seen by third parties.

whether the mental disability continued after the 24th month, the maximum amount of benefits for a mental disorder had been paid.

Third, after May 16, 2003 does Mr. Jeffries continue to have a physical disability that renders him unable to perform the important duties of his occupation and for which he has complied with all other contractual provisions?  Here the burden rests with Mr. Jeffries to prove that he has a physical disorder.  Mr. Jeffries argues that he has Chronic Fatigue Syndrome.

One of the defining features of CFS is severe and chronic fatigue.  *See*, Exhibit A, CDC definition of CFS.  Among other symptoms, people with CFS often have muscle pain and post-exertional malaise that lasts more than 24 hours.  *Id.*    This is consistent with Mr. Jeffries report to Dr. McClellan in February 2004 that he "has stiffness and pain all the time. When he is able to get moving in the morning it gradually improves, **but if he overdoes his activities, the next day his symptoms are even worse"**.  *See*, Exhibit B, McClellan 2-26-04 notes, (emphasis added). The videos to which Plaintiff objects document 4 consecutive days of activity for at least 10-12 hours each day.  At issue in the videos is not his cognitive abilities but his level of fatigue and whether it is in fact consistent with CFS.  Plaintiff can certainly argue that this happened to be a very excellent 4-day period that happened to fortunately coincide with his second planned 4-day trip to the Florida Go-Kart track in a 4-month period, but this activity is inconsistent with his statements during his February 2004 visit to Dr. McClellan and his own testimony in deposition and at the Summary Jury Trial.  For that reason, Centre Life has a right to explore these inconsistencies.

In support of his plea to exclude this evidence and his argument that probative evidence of his actual physical activities is not relevant, Plaintiff cites a district court case from Colorado. Both the facts and the law of that case are distinguishable.  First, the definition of disability at

issue in that case included a requirement of "reasonable continuity." The video at issue there was only 8-hours and therefore did show the entire picture of that person' abilities. Moreover, that video did not show any inconsistent activities. That is not the case here.

Mr. Jeffries argues that the video is irrelevant because his condition waxes and wanes. (It appears fortunate that whenever surveillance is done he is in a waning period.) In the past, Mr. Jeffries has represented that he is no longer able to walk. *See* Exhibit C, Insight Magazine article. Obviously, Mr. Jeffries can walk. Less than a month before his Florida trip he told Dr. McClellan that he is in pain all the time and that if he overdoes it one day his symptoms are even worse the next. *See* Exhibit B. Here, Mr. Jeffries' was observed over a <u>consecutive</u> four-day period and was active at least 10-12 hours <u>each</u> <u>day</u>. The video is clearly inconsistent with his claim of severe and overwhelming fatigue as well as his assertion that if he overdoes it one day, his symptoms are worse the following day.

The surveillance is also totally inconsistent with the testimony of Dr. Hyde whose report speaks to a progressive and debilitating series of disease that rendered Mr. Jeffries so incapacitated as to suggest Parkinson's disease. He describes Mr. Jeffries as "seriously ill" (claim 00721), "clumsy when he walks" (claim 00724), and someone who is so cognitively impaired that he cannot talk normally and frequently cannot complete a sentence without forgetting what he is saying (id). Dr. Hyde finds that Mr. Jeffries has problems with balance and mobility (claim 00725), all confirmed by his view of a January 1999 Prudential video. He describes the plaintiff as having an almost "Frankenstein" walk still being observed 18 months later. Mr. Jeffries' activities in these surveillance videos could not be more at odds with Dr. Hyde's description of his patient.

The surveillance was done in anticipation of litigation and to allow defense counsel to adequately prepare for the cross-examination of Mr. Jeffries. If Mr. Jeffries tells the truth and admits that he has the physical ability to engage in sustained physical activity when he is not focused on his illness, as is consistent with somatoform disorder, then the use of the tapes to impeach him pursuant to Rule 26(a)(3) of the Federal Rules of Civil Procedure will not be required.

Plaintiff's counsel has admitted that these tapes are not prejudicial to Plaintiff and in so doing indicates that his latest motion is yet another fight over nothing. In the e-mail message to Defendant's counsel which attached the motion in limine, plaintiff's counsel states, "**I must say though – that the videos show nothing and only make CLIC look desperate – so I struggled with asking that they be kept out**. But I thought – now that I'm on a roll why let you guys have any evidence at trial?" *See,* Exhibit D, 2-17-04 e-mail correspondence of Mr. Roberts.[2] If nothing else, in this e-mail Plaintiff's counsel concedes that the videos are not prejudicial. In fact, under Mr. Roberts' view, if the videos prejudice anyone, it is Centre Life. In light of the fact that Plaintiff has conceded the lack of prejudice, Centre Life would prefer to allow the jury to consider all relevant and probative evidence considered by the jury.

### B. There Is No Legitimate Risk Of Unfair Surprise To Plaintiff

In addition to arguing irrelevance, Plaintiff falls back on his procedural argument that the surveillance tapes should have been disclosed. Earlier in this case the same issue arose and Magistrate Judge Hogan ruled that the surveillance evidence gathered during the claims portion of this case was work product but that the privilege was destroyed because the tapes were shared with Prudential. Doc. No. 16. The Court recognized that surveillance was work product that would be used to test the credibility of a witness. *See, Snead v. Am. Export-Isbrandpens Lines,*

*Inc.* 59 F.R.D. 148 (1973). For that reason, Defendant was not required to produce the claims surveillance information until after Plaintiff's deposition. Based on this Order, Defendant had good reason to conclude that these videos were work product which would be protected from disclosure despite Plaintiff's discovery request and Defendant's duty to supplement.

Nonetheless, Plaintiff again complains that Defendant has flouted the Civil Rules by failing to produce these tapes. Plaintiff's counsel also takes this opportunity to again assert that defense counsel has misrepresented the existence of the tapes.

Plaintiff's counsel asserts that he called defense counsel and complained that pretext calls had been made to Mr. Jeffries. In response, on March 22, 2004, Mr. Ellis advised Mr. Roberts via e-mail that no additional surveillance or pretext calls had been made since the surveillance conducted during the claims process. Interestingly, this call from Plaintiff's counsel regarding surveillance occurred just days before Mr. Jeffries was scheduled to leave for Florida.

In anticipation of litigation and to prepare for the cross-examination of Mr. Jeffries surveillance was in fact conducted on March 24 –28, 2004. This was evidence which was intended to be used for impeachment purposes, if needed, and was therefore not disclosed in accord with Rule 26(a)(3). Based on Judge Hogan's 9-04-02 Order, defense counsel had good reason to believe this information was protected work product. This Court disagreed, however and ruled that if the tapes were to be used at trial, they had to be produced. Given this ruling, Centre Life has the right to use the tapes at trial.

In its 3-22-04 e-mail, Defense counsel truthfully represented that no surveillance had been done. Plaintiff argues that because he was under surveillance while in Florida, the surveillance must at least have been planned. Even if it was, Defense counsel has no obligation to share his trial strategy with Plaintiff.

---

[2] Reference to counsel's settlement efforts has been redacted for purposes of electronic filing. Fed. R. Evid. 408

The March surveillance was not introduced at the Summary Jury Trial. During the settlement negotiations, Defendant advised Judge Hogan of the existence of evidence which showed activities inconsistent with Mr. Jeffries' claimed limitations. The discussion referenced by plaintiff's counsel in his Motion took place in front of Judge Hogan. Defense counsel affirmed the truth of the 3-22-04 e-mail that no surveillance had been done of which the plaintiff's counsel was not aware. It was then confirmed that there would be no use of any video at the Summary Jury Trial and that the Go-Karting records and perhaps some additional information from the internet would be used and "that's all". The statement of "that's all" concerned the evidence to be used at the Summary Jury Trial.

The Court was again advised of the tapes' existence at the final pre-trial settlement conference. The Court did not agree that the information was protected work product and ruled that the tapes would have to be produced if they were to be used at trial. The tapes were produced that day.

Interestingly, one of Plaintiff's arguments is that the production was made too late for him to review in the tapes while he prepares for trial. Despite the fact that his client can now tailor his testimony to be consistent, and he is therefore not prejudiced, he concedes in both his motion in limine and his reply (which was sent to counsel for Defendant before Defendant even filed its opposing memorandum) that he has in fact reviewed the tapes. Before he filed his motion Plaintiff's counsel advised that he already had a witness and a story to counter the tapes. So any "ambush" as alleged by Plaintiff is undone. Moreover, if ambush was the plan, counsel would not have mentioned it to the plaintiff's counsel at the final pre-trial. Finally, the ultimate defense to surveillance of any kind is to simply tell the truth. Plaintiff can certainly do that and is aided with full knowledge of the contents of the surveillance tapes.

On that note, Plaintiff's reply memorandum cites deposition testimony in which he admits that he attends go-kart races with his children. This testimony was given as an example of his claim that he can borrow from the next day's energy to do these types of activities with his children. (Notably what it does not address is the situation that the tapes depict of several consecutive days of activity over a 10-12 hour period each day.) Nonetheless, the fact that Plaintiff did not know that Defendant was aware of the full extent of his activities does not make the facts exposed unfair surprise. Plaintiff certainly cannot be surprised by what he himself does.

### III. Conclusion

Plaintiff has now successfully sought exclusion of the testimony of many of his treating physicians as well as one of Centre Life's consulting physicians. Once again, Plaintiff is attempting to tailor the information available to the trier of fact.

Plaintiff's activities as depicted in the surveillance is absolutely relevant and Plaintiff's desperate attempt to exclude it should not be permitted by this Court which has already ruled that the information can be used at trial if Defendant produced it.

Respectfully submitted,

s/William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087

Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

- 9 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 17th day of April 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                             s/William R. Ellis  
                                             William R. Ellis, Esq.

204925.1