IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE No. 02-351 |
| | : | |
| Plaintiff, | ) | CHIEF JUDGE BECKWITH |
| | : | |
| v. | ) | |
| | : | MOTION TO ENFORCE |
| CENTRE LIFE INSURANCE CO., | ) | SETTLEMENT AGREEMENT |
| | : | AND SEAL RECORD AND |
| Defendant. | ) | REQUEST FOR ATTORNEY FEES |

This matter was settled by the parties on the first day of trial, April 19, 2004. As identified in the record of the settlement consummated that day (*Doc. 253, Exhibit 1*), the parties agreed that "confidentiality" would be at Mr. Jeffries' "election." (*Id., p. 2*). The defendant, Centre Life Insurance Company, however, has refused to execute a written settlement agreement containing any confidentiality language that Mr. Jeffries' "elects."[1]

At Mr. Jeffries' request, the Court heard oral and written arguments of counsel in chambers on October 8, 2004, on the issue of confidentiality. (*See, Exhibit 2, Letter of Counsel; Doc. 256, transcript of October 8 conference*). The Court concluded that the parties had on April 19, 2004, entered an enforceable agreement which permitted Mr. Jeffries to determine at his election the scope of the confidentiality provision. *Id.* The Court, nonetheless, invited defendants to offer authority indicating that the Court had no authority to compel Centre to execute such an agreement. There is no such authority.

---

[1] Another issue raised earlier, the language of the agreement regarding taxability, is still a subject of discussion between the parties.

Mr. Jeffries hereby moves the Court to compel Centre Life Insurance Company to execute an Agreement that contains Mr. Jeffries election on confidentiality and also moves the Court to seal the record and seeks attorney fees. A memorandum in support is attached.

Respectfully submitted,

/s Michael A. Roberts
Michael A. Roberts, Esq. (0047129)
GRAYDON HEAD & RITCHEY LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202
(513) 629-2799
email:mroberts@graydon.com

**MEMORANDUM IN SUPPORT**

I. **Summary Of The Material Facts Related To Settlement/Confidentiality.**

On the eve of trial, Sunday evening, April 18, 2004, defendant's counsel (attorney Peter Burrell) advised plaintiff's counsel that defendant's in-house General Counsel, Andy Cohen, had requested the opportunity to speak directly and privately with Mr. Jeffries' Counsel for the purpose of discussing settlement. (*See*, *Declaration of Counsel, attached as Exhibit 3*). In response to Attorney Cohen's request, Mr. Jeffries' counsel phoned Attorney Cohen at his home in Connecticut at approximately 8:30 p.m. Sunday, April 18, 2004. *Id.*

The following day, based on Attorney Cohen's promises, Mr. Jeffries accepted the $2,000,000 settlement offer which also came with Centre's promise and agreement that confidentiality would be at Mr. Jeffries' election. (*Exh. 1*).

After reaching this understanding, plaintiff's counsel submitted a written proposed Settlement Agreement to defendant. *Id.* And defendant then offered "redlined" comments. *Id.*

2

Defendant's General Counsel, Andy Cohen, also directly provided additional email and voicemail comments to plaintiff's counsel. *Id*. One voice message from Attorney Cohen on May 20, 2004, states:

> "Hey Mike, Andy Cohen calling, returning your call. I have reviewed the Mutual Settlement and General Release Agreement. There is a few changes that we will need to make to it. Most materially, in the assumptive reinsurance piece . . . the other 2 areas that I think are worthy of at least putting on this voice mail before we move forward is you have referenced an Exhibit A and an Exhibit B in the document, but I don't think, unless I am mistaken, that you attached an Exhibit A or Exhibit B so when you e-mail this over, you may want to e-mail over Exhibit A and Exhibit B as well, or if they don't exist yet, at least the concept of what would be in them. And finally, we need to think through how the confidentiality agreement is going to work in light of the fact that some of the information that we deem confidential and important to us has already been disclosed technically by Jeffries in Kearney obviously from you to you and that information from our point of view is material to the confidentiality agreement, so we need to work through how that is going to remain confidential going forward, since it is already theoretically in the hands to the third party who is not bound by this agreement and that is not to me. So lets figure out what to do and give me a holler when you get a chance, and/or send me the e-mail and we will get the process moving. Talk to you soon." *Id*.

Plaintiff thereafter prepared a 2nd version of the Settlement Agreement and presented it to defendant. *Id*. Attached as Exhibit 4 is defendant's September 16, 2004, "Redlined" comments to that 2nd version of the Settlement Agreement which completely strikes the Confidentiality clause which Mr. Jeffries' elected to include.

Defendant's demanded modifications to the Settlement Agreement are inconsistent with the April 19 understanding and contrary to the promises made on April 18, leading to the settlement of the dispute. The parties then discussed this dispute with the Court on October 8. (*Doc. 256*).

On October 19, 2004, Centre proposed a Confidentiality provision which came with the following introduction: "Mike -- in follow-up to the Court's suggestion, we have redrafted a confidentiality provision which would allow for the "safety valve" referenced by Judge Beckwith.

3

Please let me know your thoughts." (*See*, *Email attached as Exhibit 5*). Centre's proposed Confidentiality provision states:

> "The parties hereto agree to maintain as confidential, all materials relative to this case and not to disseminate any information concerning this case or this settlement. It is understood that this agreement is binding upon the counsel, heirs, successors, and assigns of either party. Such third parties as financial advisors, auditors, governmental agencies, etc. with a right or need to such information, or persons or parties who seek such information by virtue of subpoena, court order or other proper authority, may be provided such information only after reasonable notice to the other parties in this case.
>
> In the event that information or materials from this case, disseminated prior to the date hereof, are used or referenced in any other claim or case, are published in any public document or on the internet , or are referenced in any way to the disadvantage of or in disparity of either party, such party or its counsel in any other matter, is released from this confidentiality to the extent reasonable and necessary to fully respond to the information or material so used or published.
>
> Nothing in this agreement is intended to nor should be interpreted as to release any party or its counsel from any existing or future Orders of Court sealing or restricting use of any document or information in this case. It is agreed that any such orders are binding upon all parties. Any breach of this agreement releases the other party from all obligations of confidentiality." *Id.*

On October 21, 2004, in response, Mr. Jeffries revised (for purposes of the Agreement once executed and going forward) his election of confidentiality and expressed his election that the Confidentiality provision of the Agreement read as follows:

> "<u>CONFIDENTIALITY.</u> By its signature below, Centre affirms that neither it, DMS, their agents (including experts), or their counsel has disseminated information or materials concerning Mr. Jeffries to any third party since April 19, 2004.
>
> Additionally, from the date of this Agreement through the end of the World, Centre, its attorneys, and its agents (including employees and representatives of DMS) shall maintain as confidential all aspects of this Action, Mr. Jeffries' claim, and all other information concerning, referring to, or relating to Mr. Jeffries. An officer of DMS, a partner of Wood & Lamping, Mitchell Clionsky Ph. D., Michael Hartings Ph. D., Dr. Kirk Frey, Dr. Newton Bullard, and all surveillance companies retained by Centre and DMS shall affirm their (and their firm's) confidentiality commitment by

4

executing the Confidentiality covenant attached as Exhibit B. In the absence of one of the exceptions noted below, the only statement that may be communicated by Centre, DMS, or their agents concerning Mr. Jeffries or the Action is that "It is confidential." This covenant is additionally binding upon Centre's and DMS' successors and assigns.

If Mr. Jeffries' Claim file becomes subject of any inquiry or audit of any regulatory body, then prior to the offering of any documents or information in response to the inquiry, Centre or its counsel shall send Mr. Jeffries' counsel, Michael A. Roberts of Graydon Head & Ritchey LLP, a notice by Certified Mail and Fax identifying the inquiring party and the date and time of Centre's intention to respond with information.

If Centre, its counsel, DMS, or any expert retained by Centre or its counsel in the Action receives a subpoena seeking testimony or documents relating to Mr. Jeffries then Centre or its counsel will: (A) notify Mr. Jeffries' counsel, Attorney Michael Roberts at (513) 629-2799 with an email to mroberts@graydon.com and certified letter giving Mr. Jeffries ample time to take whatever action he deems appropriate; and (B) not produce any documents or information to the requesting party until Mr. Jeffries or his counsel has been afforded the opportunity to present any issue he desires to raise with the regulatory agency or other inquiring entity or a Court of competent jurisdiction.

In the event that information or material from this case, disseminated by Mr. Jeffries or his counsel to any third party since April 19, 2004, is used or referenced in any other claim or case, is published in any public document or on the internet, or is referenced in any way to the disadvantage of or in disparity of Centre or DMS or their agents, employees, or representatives, Centre and DMS, or their counsel in such other matter, are released from this confidentiality to the extent reasonably and necessary to fully respond to the information or material so used or published. Centre and DMS, however, must give written notice in advance to Mr. Jeffries and his counsel concerning their intention to so respond.

From the date of his signature below, through the end of the World, Mr. Jeffries shall maintain as confidential all aspects of this Action. In the absence of one of the exceptions noted below, the only statement that may be communicated by Mr. Jeffries concerning the Action is that "It is confidential."

If Mr. Jeffries receives a subpoena seeking testimony or documents relating to the Action he will: (A) notify Mr. William R. Ellis at (513) 852-6000 giving Mr. Ellis ample time to take whatever action he deems appropriate on behalf of his clients. Without advance notice to Centre or DMS, Mr. Jeffries may share

5

information concerning the Action with any of his insurers, tax authorities as necessary, lawyers, physicians, accountants, or family members.

Any breach of this agreement releases the other party from all obligations of confidentiality." (*See, Exhibit 6*).

Centre has not responded to this recent statement of Mr. Jeffries' confidentiality election and presumably refuses to accept it as well.

The defendant's positions on Confidentiality patently contradict the promise and agreement it made to obtain Mr. Jeffries' agreement on April 19, 2004. *Id.* The parties unambiguous agreement was that it was for Mr. Jeffries to elect in his sole and unilateral discretion what the Confidentiality provision of the Agreement would be: whether the confidentiality was complete, partial, unilateral, or mutual. *Id.* Accordingly, it is baseless for defendant to demand any modification to Mr. Jeffries' elected Confidentiality language.

II.   **This Court Has The Authority To And Must Enforce The Settlement Agreement.**

On October 8, 2004, on the basis of the parties' written and oral arguments on this issue, the Court concluded that it intended to compel Centre to execute the Settlement Agreement, unless Centre could offer legal authority identifying that the Court had no such authority. (*Doc. 256, transcript of October 8, 2004, Conference*). For that reason, the sole remaining issue is: Does the District Court have the authority to compel Centre to execute the Settlement Agreement? The answer is Yes.

The Sixth Circuit has long recognized the broad, inherent authority and equitable power of a district court to enforce an agreement in settlement of litigation pending before it. *See e.g.,* **Bostick Foundry Co. v. Lindberg**, 797 F.2d 280, 282-83 (6th Cir.1986). And the Sixth Circuit reviews a district

6

court's substantive decision to enforce or deny enforcement of a settlement agreement under an abuse of discretion standard. *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 418 (6th Cir.2000) ("we join with . . . other circuits and hold that the abuse of discretion standard is the proper guide for our review of a district court's decision to enforce a settlement agreement").[2] A federal court possesses this power even if the agreement has not been reduced to writing. *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir.1988) (*quoting*, *Bowater N. Am. Corp. v. Murray Mach., Inc.*, 773 F.2d 71, 77 (6th Cir.1985)).

In Ohio, a settlement agreement is a binding contract subject to the essential requirements of contract law. *Marshall v. Beach* 143 Ohio App 3d 432, 758 NE 2d 247, 250 (2001). And in Ohio, extrinsic evidence surrounding a contract may only be considered when the language of the contract is unclear or ambiguous or when the circumstances surrounding the agreement invest the language of the contract with a special meaning. *Shifrin v. Forest City Enters., Inc.,* 64 Ohio St 3d 635, 597 NE 2d 499, 501 (1992). Furthermore, when the terms of a contract are unambiguous, courts must not create a new contract by finding an intent not expressed in the clear language employed

---

[2] Centre may argue that this Court should resolve this matter similar to the resolution in *Therma-Scan, Inc. v. Thermoscan, Inc.* 217 F 3d 414 (6th Cir. 2000). However, the relevant facts of *Thera-Scan* simply do not exist here. Specifically, in *Therma-Scan* the district court took it upon itself to summarize on the record the terms of the parties' agreement. But when it did so, the district court used "inconsistent" and "inherently incompatible" language in successive sentences. According to the Sixth Circuit, "the root source of the ambiguity was the district court's own inconsistent language;" and "the basic problem is that, at least as it relates to size, the terms 'prominently displayed' and 'just visible' are inherently incompatible. Yet the district court used both terms in successive sentences." For that reason the Sixth Circuit concluded that it was an abuse of discretion for the court to impose one party's version of the settlement upon the other. This prevailing fact/concern simply does not exist here. The present case is distinguishable just as was *Robinson v. Stegall*, 206 F Supp 2d 859 (E.D. Mi. 2002).

by the parties. *Ibid.* Since the terms of the settlement in this case are clear, no extrinsic evidence can be considered and thus an evidentiary hearing is unnecessary.[3]

Before enforcing a settlement, a district court must conclude (as it did on April 19 and October 8) that an agreement has been reached on all material terms. *Re/Max Int'l*, 271 F.3d at 645-46 (citing *Brock,* 841 F.2d 151, 154 (6th Cir.1988)). The Court has already done this.

III.   The Unambiguous Confidentiality Covenant/Agreement.

In settlement discussions outside the presence of the Court, Centre and Mr. Jeffries agreed that confidentiality could/would be at "Mr. Jeffries' election." *Webster's* defines election to be ""the right, power, or privilege of making a choice." The parties then stated their unambiguous agreement on the record:

> "**THE COURT:** Thank you, folks. Please be seated. Probably the easiest thing to do is ask Mr. Roberts to place upon the record his understanding of the settlement, and then if there are any additions or corrections or refinements, I'll look to Mr. Ellis to fill in the blanks." . . .
>
> **MR. ROBERTS:** Thank you, Your Honor. Prior to the trial, the defendant offered to pay to the plaintiff $2 million in exchange for a return of the disability policy, the return of confidential documents, and <u>left to the plaintiff an election on confidentiality provisions relating to the case and the settlement.</u>". . .
>
> **MR. ELLIS:** <u>Your Honor, the offer that was made is accurately stated</u>". . .
>
> **THE COURT:** <u>And the confidentiality is at the option of the plaintiff; is that correct</u>?"
>
> **MR. ROBERTS:** <u>Yes</u> . . .
>
> **THE COURT:** <u>Okay.</u>

---

[3]   No hearing is required here and summary enforcement of the settlement agreement is appropriate since the agreement is clear and unambiguous and there is no issue of fact material to the agreement which is disputed. *Re/Max Int'l*, 271 F.3d at 645 (no hearing required - all the essential terms had been agreed upon in open court and all that remained was to sort out the non-material details and put the agreement in writing); *Kukla v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 622 (6th Cir.1973); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.1976)).

> **MR. ELLIS:** <u>It's not an issue for us, Your Honor</u>. (*Exhibit 1, Doc. 253, emphasis added*).

Later, consistent with the parties' agreement, the Court sought Mr. Jeffries' consent only to disclose the settlement terms to the jury (without seeking any input from Mr. Ellis):

> **"THE COURT:** Ladies and gentlemen, I'm sorry for keeping you waiting. . . . <u>it's plaintiff's call whether this is a confidential settlement</u> or whether I can share it with you all. I'll ask . . .
>
> **JUROR NO. 1:** May we hear the settlement terms?
>
> **THE COURT:** Mr. Roberts, how does your client feel about it?
>
> **MR. ROBERTS:** He probably thinks their interest is piqued and doesn't care if you share with them.
>
> **THE COURT:** All right. Well, a little background, folks. . . . the parties agreed in the interest of a complete, final, total settlement to -- for <u>the defendant to pay the plaintiff $2 million</u>, and that would be all-inclusive. No further issue of any future payments, no issues about back payments, no issues about bad faith, no issues about punitive damages, no issues about attorneys' fees, no issues about expenses. Two million dollars paid to the plaintiff, and it's up to the plaintiff to decide how to manage that money for his and his family's future benefit. Have I fairly grasped the concept here, Mr. Ellis?
>
> **MR. ELLIS:** Yes, Your Honor. (*Case 02-351, Doc. 253, emphasis added*).[4]

---

[4] The following reveals that Mr. Ellis understood that he was bound to strict confidentiality from April 19, 2004 forward (a promise which it is believed Mr. Ellis has already breached):

> **"MR. ELLIS:** . . . I will agree and we will agree to keep Mr. Jeffries' file and any part of it completely confidential, unless there is a subpoena. . . We will in either event agree to keep that confidential at the plaintiff's request . . . .
>
> **MR. ELLIS:** -- . . . The documents will be kept under seal, and Mr. Roberts will have advanced notice if anybody subpoenas it. I'm willing to work with Mr. Roberts as far as this issue's concerned. I've already told him I will protect this file. I know I can do that, keep it confidential, put it into the settlement agreement that that file will be confidential and not a paper out of it and will include everything through the litigation . . . I will keep it confidential at plaintiff's request. I will not give it up, nor will my clients, unless there is an order of Court . . . .
>
> **THE COURT:** Well, can you agree with the interim position that the defendant will guarantee the confidentiality of plaintiff's various personal information will be maintained in the absence of any specific order of a court of competent jurisdiction to the contrary, with the possibility that those records will be released either to the plaintiff or to this Court for safekeeping?

It is well-settled law that the terms in a contract should be given their plain ordinary meaning. Leaving to Mr. Jeffries' election the extent and degree of the confidentiality is an unambiguous agreement that was for Mr. Jeffries to determine that term in its entirety. Mr. Jeffries could elect complete, partial, mutual, or unilateral confidentiality at his election.

Contrary to Centre's argument, a confidence may be maintained/required unilaterally. For example, a priest must keep information shared in his pastoral role confidential even though a parishioner may chose to share the information unilaterally. The same is true with an attorney-client and a physician-patient (the attorney and doctor are bound by confidence even if the client or patient shares protected information with others).

A party who forfeits his or her right to litigation by entering into an unambiguous settlement agreement may not change course and argue that such an agreement is ambiguous merely because that party failed to clearly negotiate the terms of the agreement. *Hildrofiltros*, 355 F.3d at 930 (noting parties are bound by the plain terms of an unambiguous settlement agreement).

There is simply nothing ambiguous about the term "confidentiality at Mr. Jeffries election." The agreement is unambiguous on this point, and it is not for the court to now create a new settlement based on DMS' current concept of the intent of the parties at the time of the negotiation. Centre made the confidentiality concession as part of its consideration for Mr. Jeffries not pursuing litigation to advance his claims. Centre must now live with the result.

IV.     The Materiality of The Confidentiality Agreement.

```
MR. ELLIS:   . . . if there's any kind of a regulatory agency or anybody
wants to look at this thing, we'll certainly let Mr. Roberts know and
we'll certainly keep it confidential.  We won't voluntarily produce it
to anybody or -- shy of a court order or an order of somebody who can
regulate us and shut us down . . .
```

Although the parties' agreement concerning confidentiality was clear and unambiguous, *assuming arguendo* that the Court concluded it was unclear or ambiguous, the Court may still compel Centre to execute the Agreement because the term to it was not "material."

Specifically, when asked by the Court about its consent to confidentiality being at Mr. Jeffries' election Centre's counsel crisply stated that confidentiality "was not an issue" for Centre. (*Exh. 1, p. 6*).

V.  **The Revelation Of The Settlement To The Jury Shows Centre's Assent To Mr. Jeffries Unilateral Election Of Confidentiality.**

Under Ohio law, expressions of assent are generally sufficient to show a meeting of the minds. See ***Nilavar v. Osborn***, 127 Ohio App.3d 1, 711 N.E.2d 726, 733 (1998). In this matter, prior to the Jury being released, they asked if they could learn the settlement's terms. (*Exh. 1*). The Court then deferred to Mr. Jeffries to seek his permission – notably the Court made no inquiry of Centre or its counsel. Once the Court received Mr. Jeffries approval, the Court disclosed the terms of settlement to the third party jury. Centre did not object. This plain evidence of Centre's assent to a unilateral and case-by-case disclosure by Mr. Jeffries proves that the parties did in fact agree that he and he alone could decide who could learn the terms of settlement. In Ohio, "terms of an oral contract may be determined from 'words, deed, acts, and silence of the parties.'" ***Kostelnik*** at 15, quoting ***Rutledge v. Hoffman*** (1947), 81 Ohio App. 85, 75 N.E.2d 608, paragraph one of the syllabus

Although the terms of the settlement must be reasonably certain and clear for the agreement to be valid, the Ohio Supreme Court has acknowledged that "all agreements have some degree of indefiniteness and some degree of uncertainty. In spite of its defects, language renders a practical service. *In spite of ignorance as to the language they speak and write, with resulting error and

11

*misunderstanding, people must be held to the promises they make."* <u>Kostelnik v. Helper, 2002-Ohio-2985, at 17, 96 Ohio St.3d 1, 770 N.E.2d 58 (2002),</u> quoting 1 Corbin on Contracts (Perillo Rev. Ed.1993) 530, Section 4.1 (Emphasis added)(observing that "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract.").

VI.    **Mr. Jeffries Revised Election - Centre's Motivation.**

In light of Mr. Jeffries continuing requests that the record be sealed, which Centre refuses to adopt, and also in light of Centre's silence following Mr. Jeffries' revised election incorporating joint confidentiality, one must seriously question Centre's motivation. Does it legitimately feel there was no meeting of the minds or: Is Centre in the spirit of ill will heeping greater expense on Mr. Jeffries while also keeping the record open to the public when Centre knows Mr. Jeffries requires confidence.

At the hearing of October 8, Centre argued that it could not accept unilateral confidentiality because there existed no such concept. Since that date, Mr. Jeffries revised his Confidentiality election going forward. (*Exh.* 6). Mr. Jeffries now has stated an election of mutual confidentiality. Centre's silence suggests that it refuses this election. But it has no ability to do so.

Centre must accept Mr. Jeffries' revised election and this Court must compel Centre's execution of the Agreement with the revised term.

It is suspected that Centre is merely making this argument and threatening an appeal of the Court's obvious decision sustaining this motion in order to put greater expense and burden on Mr. Jeffries. In face of the fact that Centre has repeatedly refused to consent to the sealing of the record (thereby keeping all information available for public inspection) its argument that Mr. Jeffries and or his counsel has breached confidence is clearly disengenious.

12

Conclusion

When it agreed that Mr. Jeffries could determine the degree of confidence at his "election," (further unambiguously stating that it "had no issue" with that term) Centre gave up any right to comment on the confidentiality provision. It is compelled to accept Mr. Jeffries' election and his revised election (*Exh. 6*).

*Accordingly,* Mr. Jeffries requests that the Court compel Centre to execute an Agreement containing a confidentiality provision determined exclusively by Mr,. Jeffries, seal the record, and order Centre to reimburse Mr. Jeffries for his attorney fees incurred since April 19, 2004, relating to this dispute.

        Respectfully submitted,

        /s Michael A. Roberts
        Michael A. Roberts, Esq. (0047129)
        GRAYDON HEAD & RITCHEY LLP
        511 Walnut Street, Suite 1900
        Cincinnati, Ohio 45202
        (513) 629-2799
        (513) 651-3836
        email:mroberts@graydon.com

**CERTIFICATE OF SERVICE**

The foregoing was electronically filed and thereby served on William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 25[h] day of October, 2004.

        /s Michael A. Roberts