# Graydon
# Head &
# Ritchey
# LLP

FILE

*Attorneys at Law*

**Michael A. Roberts**
**Direct Dial: (513) 629-2799**
**E-Mail: mroberts@graydon.com**

September 22, 2004



**Via Hand Delivery**

The Honorable Sandra S. Beckwith
United States District Court
Southern District of Ohio, Western Division
810 Potter Stewart Courthouse
100 E. Fifth St.
Cincinnati, OH 45202

   Re: <u>Eric L. Jeffries v. Centre Life Insurance Company</u>
     **Case No. C-1-02-351**

Dear Judge Beckwith:

   Nearly six (6) months ago -- on April 19, 2004 – the parties settled the above matter and recited the principle settlement terms into the record. (*Exh. 1 and Doc. 253*). Since that time, the parties have attempted to reach an accord on the formal written Settlement Agreement. Unfortunately, that effort has failed. Plaintiff is now convinced that despite great effort, he must now ask that the Court assist the parties in bringing this matter to a conclusion.

   Attached as Exhibit 1 is the transcript of the April 19, 2004, Settlement. After reaching that understanding, plaintiff submitted a written proposed Settlement Agreement to defendant. (*Exh. 2, Declaration of Counsel*). And defendant then offered "redlined" comments. *Id.* Defendant's General Counsel, Andy Cohen, also directly provided additional email and voicemail comments to plaintiff's counsel. *Id.*

   Plaintiff thereafter prepared a 2nd version of the Settlement Agreement and presented it to defendant. Attached as Exhibit 3 is defendant's September 16, 2004, "Redlined" comments to that 2nd version of the Settlement Agreement. Defendant's comments to the 2nd version came with a cover message that stated: "Mike, here are the **final** revisions sent to me by Andy last evening. I doubt that there will be any further changes. I hope this meets with your approval so that we can conclude this matter. Sorry I forgot the attachment." (*Exh. 2, emphasis added*).

www.graydon.com  *Mailing Address*  *Cincinnati Office*  *Kentucky Office*
         P.O. Box 6464   1900 Fifth Third Center  2500 Chamber Center Drive
         Cincinnati, Ohio 45201-6464 511 Walnut Street   Suite 300
                    Cincinnati, Ohio 45202-3157 Ft. Mitchell, Kentucky 41017-7070
                    telephone (513) 621-6464  telephone (859) 282-8800
                    fax (513) 651-3836    fax (859) 525-0214

The Honorable Sandra S. Beckwith
September 22, 2004
Page 2

Despite this cover message, because defendant's demanded modifications to the Settlement Agreement are inconsistent with the April 19 understanding and contrary to defendant's promises of April 18, leading to the settlement of the dispute, plaintiff again contacted defendant's counsel on September 17, 2004, to discuss the Agreement, and has contacted defendant's counsel multiple times since September 17. These many efforts to reach an accord have, however, been unsuccessful.

As the attachments, and specifically, Exhibit 3 reflect, the dispute on the terms of the written Settlement Agreement concern two issues: (i) representations concerning tax issues; and (ii) confidentiality. Neither of these issues, however, should be in dispute.

*The Tax Issues.* As indicated in the attached Declaration (*Exh. 2*), on the eve of trial, Sunday evening, April 18, 2004, defendant's counsel (attorney Peter Burrell) advised plaintiff's counsel that defendant's in-house General Counsel, Andy Cohen, had requested the opportunity to speak directly and privately with Mr. Jeffries' Counsel. The stated purpose was to discuss settlement and specifically "tax" issues. Id.

Days earlier, defendant had offered to pay Mr. Jeffries a lump sum payment of $2,000,000. Mr. Jeffries had rejected this offer for several reasons, including, importantly, the tax implications which would arise should Mr. Jeffries attempt to live off of the investment income from the $2,000,000. That is, although no one disputed that a $2,000,000 lump sum settlement was payable tax free to Mr. Jeffries, future dividends and interest income derived from that principal sum, would be taxable.

Accordingly, in response to Attorney Cohen's request, Mr. Jeffries' counsel phoned Attorney Cohen at his home in Connecticut at approximately 8:30 p.m. Sunday, April 18, 2004.

Attorney Cohen began the Sunday evening April 18 phone conference by reasserting the $2,000,000 offer. He then confirmed Mr. Jeffries' concern regarding the future tax implications arising on investment income. Attorney Cohen then stated that defendant would offer Mr. Jeffries a mechanism which would alleviate this concern -- an "Assumptive Reinsurance Agreement." Attorney Cohen explained that if Mr. Jeffries accepted the $2,000,000 it could be transferred to another insurer under an Assumptive Reinsurance Agreement which would provide a tax free stream of annuity payments to Mr. Jeffries in the future, thereby maximizing the net benefit of a $2,000,000 settlement. During the 45 minute conversation which ensued exploring that concept, Attorney Cohen detailed the beneficial tax implications of the Assumptive Reinsurance Agreement and stated that defendant had entered such arrangements previously with policyholders and would do everything it could to make the future payment stream tax free to Mr. Jeffries.

The following day, based on Attorney Cohen's promises, Mr. Jeffries accepted the $2,000,000 settlement offer. (*See, Transcript, p.2:* "Prior to the trial, the defendant offered to pay to the plaintiff $2 million . . . and left to the plaintiff an election on confidentiality provisions

The Honorable Sandra S. Beckwith
September 22, 2004
Page 3

relating to the case and the settlement. On April 18th, Andrew Cohen, on behalf of the
defendant, expressed an additional covenant to allow Mr. Jeffries to direct . . . that amount to an
assumptive reinsurance agreement . . . ").

Notwithstanding defendant's tax issue promises, which Mr. Jeffries relied upon in
agreeing to settle the case and not proceed with a jury trial, defendant's latest non-negotiable
Settlement proposal refuses to make proposed and appropriate tax representations which are
consistent with defendant's April 18 and 19 offer made to obtain Mr. Jeffries' April 19,
agreement.

Exhibit 3 attached (defendant's September 16 Redlined version of the Settlement
Agreement) has the necessary, but stricken language highlighted in Yellow.

Mr. Jeffries requests that the Court order defendant to execute an Agreement containing
the tax issue language as proposed by Mr. Jeffries.

*Confidentiality.* On April 19, the parties agreed that confidentiality would be at Jeffries'
election. The defendant's present position on Confidentiality patently contradicts the promises
it made to obtain Mr. Jeffries' agreement on April 19, 2004. (*Exh. 1, e.g., p. 2*).

As evident in Exhibit 3, Mr. Jeffries has requested that a discreet confidentiality
provision be included in the written agreement, and defendant has completely stricken the
provision (*See, green highlights to Exhibit 3*). The parties unambiguous agreement was that it was
for Mr. Jeffries to elect in his sole and unilateral discretion what the Confidentiality provision of
the Agreement would be. (*See, Yellow Highlighting to Exhibit 1 – the many representations
concerning confidentiality*).

Accordingly, it is baseless for defendant to challenge the confidentiality language.

Defendant now argues that it refuses to enter a confidentiality agreement because Mr.
Jeffries "breached" the confidentiality agreement in May 2004. This allegation is baseless - as
Magistrate Hogan has already determined (*Case No 02-479, Doc. 76*). Mr. Jeffries cannot breach
a term which is his election to determine.

Moreover, as evident at the conclusion of the April 19 hearing, when the Court sought
Mr. Jeffries' permission to share the terms of settlement with the Jury, it was understood and
agreed that defendant would accept whatever confidentiality Mr. Jeffries would elect: whether
the confidentiality was complete, partial, unilateral, or mutual.

Mr. Jeffries has received no money from defendant since the matter was agreed to be
resolved. The delay of the execution of the Settlement Agreement delays payment to Mr.
Jeffries. For this reason, Mr. Jeffries asks that the Court decide these issues at the earliest
possible time, with or without a hearing.

The Honorable Sandra S. Beckwith
September 22, 2004
Page 4

Sincerely,

GRAYDON HEAD & RITCHEY LLP

Michael A. Roberts

MAR
Enclosure
*Copy*:    William R. Ellis, Esq. (via email)
           Mr. Eric L. Jeffries (via email)

418406.1