IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | ) | CASE NO. C-1-02-351 |
| | : | |
| Plaintiff, | ) | JUDGE BECKWITH |
| | : | Magistrate Judge Hogan |
| v. | ) | |
| | : | |
| CENTRE LIFE INSURANCE CO., | ) | |
| | : | |
| Defendant. | ) | |

**DECLARATION OF PLAINTIFF'S COUNSEL
MICHAEL A. ROBERTS**

Upon oath, the Declarant states as follows pursuant to the provisions of 28 U.S.C. §746:

1. My name is Michael A. Roberts. I am an attorney at law licensed to practice in the State of Ohio and am presently in good standing. I am a partner in the law firm of Graydon Head & Ritchey LLP. I serve as the Trial Attorney for the plaintiff in the above matter, Eric L. Jeffries.

2. Nearly six (6) months ago -- on April 19, 2004 – the parties settled the above matter and recited the principle settlement terms into the record.

3. On the eve of trial, Sunday evening, April 18, 2004, defendant's counsel (attorney Peter Burrell) advised plaintiff's counsel that defendant's in-house General Counsel, Andy Cohen, had requested the opportunity to speak directly and privately with Mr. Jeffries' Counsel for the purpose of discussing settlement and specifically "tax" issues.

4. Days earlier, defendant had offered to pay Mr. Jeffries a lump sum payment of $2,000,000. Mr. Jeffries had rejected this offer for several reasons, including, importantly, the tax implications which would arise should Mr. Jeffries attempt to live off of the investment income from the $2,000,000. That is, although no one disputed that a $2,000,000 lump sum settlement was payable tax free to Mr. Jeffries, future dividends and interest income derived from that principal sum, would be taxable.

5. Accordingly, in response to Attorney Cohen's request, Mr. Jeffries' counsel phoned Attorney Cohen at his home in Connecticut at approximately 8:30 p.m. Sunday, April 18, 2004.

6. Attorney Cohen began the Sunday evening April 18 phone conference by reasserting the $2,000,000 offer. He then confirmed Mr. Jeffries' concern regarding the future

EXHIBIT
3

tax implications arising on investment income. Attorney Cohen then stated that defendant would offer Mr. Jeffries a mechanism which would alleviate this concern -- an "Assumptive Reinsurance Agreement." Attorney Cohen explained that if Mr. Jeffries accepted the $2,000,000 it could be transferred to another insurer under an Assumptive Reinsurance Agreement which would provide a tax free stream of annuity payments to Mr. Jeffries in the future, thereby maximizing the net benefit of a $2,000,000 settlement. During the 45 minute conversation which ensued exploring that concept, Attorney Cohen detailed the beneficial tax implications of the Assumptive Reinsurance Agreement and stated that defendant had entered such arrangements previously with policyholders and would do everything it could to make the future payment stream tax free to Mr. Jeffries.

7. The following day, based on Attorney Cohen's promises, Mr. Jeffries accepted the $2,000,000 settlement offer.

8. After reaching that understanding, plaintiff submitted a written proposed Settlement Agreement to defendant. And defendant then offered "redlined" comments. Defendant's General Counsel, Andy Cohen, also directly provided additional email and voicemail comments to plaintiff's counsel. One voice message from Attorney Cohen on May 20, 2004, states:

> "Hey Mike, Andy Cohen calling, returning your call. I have reviewed the Mutual Settlement and General Release Agreement. There is a few changes that we will need to make to it. **Most materially, in the assumptive reinsurance piece because there is a few more things that need to be added in there so that it tracks with what will work for tax purposes for you**. What I think probably makes the most sense is for you to e-mail this over to me so that I can redline the document and we can go forward from there, taking a look at it. My e-mail address is andy_cohen@di-mgmt.com. If you will e-mail it over I will redline it and take it from there. The other 2 areas that I think are worthy of at least putting on this voice mail before we move forward is you have referenced an Exhibit A and an Exhibit B in the document, but I don't think, unless I am mistaken, that you attached an Exhibit A or Exhibit B so when you e-mail this over, you may want to e-mail over Exhibit A and Exhibit B as well, or if they don't exist yet, at least the concept of what would be in them. And finally, we need to think through how the confidentiality agreement is going to work in light of the fact that some of the information that we deem confidential and important to us has already been disclosed technically by Jeffries in Kearney obviously from you to you and that information from our point of view is material to the confidentiality agreement, so we need to work through how that is going to remain confidential going forward, since it is already theoretically in the hands to the third party who is not bound by this agreement and that is not to me. So lets figure out what to do and give me a holler when you get a chance, and/or send me the e-mail and we will get the process moving. Talk to you soon."

9. Plaintiff thereafter prepared a 2nd version of the Settlement Agreement and presented it to defendant. Attached as Exhibit 3 is defendant's September 16, 2004, "Redlined"

comments to that 2nd version of the Settlement Agreement. Defendant's comments to the 2nd version came with a cover message that stated: "Mike, here are the **final** revisions sent to me by Andy last evening. I doubt that there will be any further changes. I hope this meets with your approval so that we can conclude this matter. Sorry I forgot the attachment."

10. Despite this cover message, because defendant's demanded modifications to the Settlement Agreement are inconsistent with the April 19 understanding and contrary to the promises made on April 18, leading to the settlement of the dispute, plaintiff again contacted defendant's counsel on September 17, 2004, to discuss the Agreement, and has contacted defendant's counsel multiple times since September 17. These many efforts to reach an accord have, however, been unsuccessful

11. Notwithstanding the tax issue promises which Mr. Jeffries relied upon in agreeing to settle the case and not proceed with a jury trial, in defendant's latest non-negotiable Settlement proposal, defendant refuses to make proposed and appropriate representations consistent with the offer it made to obtain Mr. Jeffries' April 19, agreement.

12. The defendant's present position on Confidentiality patently contradicts the promises it made to obtain Mr. Jeffries' agreement on April 19, 2004. Mr. Jeffries has requested that a discreet confidentiality provision be included in the written agreement, and defendant has completely stricken the provision  The parties unambiguous agreement was that it was for Mr. Jeffries to elect in his sole and unilateral discretion what the Confidentiality provision of the Agreement would be. As evident at the conclusion of the April 19 hearing, when the Court sought Mr. Jeffries' permission to share the terms of settlement with the Jury, it was understood and agreed that defendant had agreed to accept whatever confidentiality Mr. Jeffries would elect: whether the confidentiality was complete, partial, unilateral, or mutual.

13. Mr. Jeffries has received no money from defendant since the matter was agreed to be resolved.  The delay of the execution of the Settlement Agreement delays payment to Mr. Jeffries.

I declare the foregoing to be true and correct to the best of my knowledge and belief, upon penalty of perjury.

Dated: September 22, 2004

_____
Michael A. Roberts

### CERTIFICATE OF SERVICE

The foregoing was delivered, via fax and regular mail to William R. Ellis, Esq., Wood & Lamping LLP, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202, this 22nd day of September, 2003.

_____

424349.1