UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ERIC L. JEFFRIES, : | |
| : | Case No. C-1-02-351 |
| Plaintiff, : | |
| : | (Judge Beckwith) |
| vs. : | (Magistrate Judge Hogan) |
| : | |
| CENTRE LIFE INSURANCE COMPANY, : | **DEFENDANTS' BRIEF** |
| et al., : | **REGARDING SETTLEMENT** |
| : | **AGREEMENT** |
| Defendants. : | |
| : | |

**I.   INTRODUCTION**

On April 19, 2004, the parties in this case selected a Jury and prepared to give opening statements at Trial. Before the Jury was brought in, counsel for Plaintiff indicated to the Court that Mr. Jeffries intended to accept a settlement offer made by Centre Life a few days prior. The terms of the Settlement Agreement, in general, were memorialized on the record. *See* Exhibit A. One of the key issues in the settlement was confidentiality. This key issue has become a key sticking point in drafting an agreement. Specifically, the parties clearly had different and mutually exclusive concepts of the meaning of "confidentiality" and have thus been unable to agree to any confidentiality provision. All other aspects of the settlement have been agreed upon and should be enforced. Since there is no agreement as to confidentiality, this provision cannot be unilaterally enforced by the Court.

II.     ARGUMENT

    A.     **Mr. Jeffries Has Not Maintained The Settlement In A Confidential Manner.**

When the settlement of this case was being discussed before the Court, Mr. Jeffries indicated that he had not determined whether he wanted it to be confidential or not. The Court confirmed "and the confidentiality is at the option of the Plaintiff; is that correct?" Mr. Roberts answered: "Yes. I think that we will need to take a hard look at that." See Exhibit A at page 6. If the confidentiality is at the whim of the Plaintiff on an ad hoc basis as he now contends, what is it that he needs to "take a hard look at"? There is no dispute that confidentiality was left at the option of Plaintiff. What is in dispute, however, is what confidentiality means.

After the April 19, 2004 decision to settle the case, but before a signed Settlement Agreement had been negotiated, counsel for Plaintiff, Mr. Roberts, took depositions in another case in which he represented another client against the same third party administrator but a different insurer than the one involved in this case. During the course of those depositions, Mr. Roberts referenced the Jeffries settlement in a manner to infer that the settlement was in some way an admission of wrongdoing by DMS, and used performance reviews produced, and subsequently sealed by Court order, in the Jeffries case as deposition exhibits. One of these reviews, the performance review of John Midghall, had been placed under seal by this Court, with specific reference to it's bates numbers. (Doc Nos.174 and 182). Based on Mr. Roberts' actions in both openly discussing the settlement and settlement tools ordered by the Court in the Jeffries case so as to infer liability, and his use of sealed and other confidential documents, Defendants questioned Mr. Roberts about Mr. Jeffries' apparent election that the settlement not be confidential and discussed the use of confidential and sealed information

When confronted with the fact that he had not maintained the settlement in a confidential manner, Mr. Roberts stated for the first time that the confidentiality he had elected was "unilateral confidentiality". Mr. Roberts argues that Mr. Jeffries "could elect to apply it on Tuesdays if he wanted to and not on Wednesdays." *See* Exhibit B, 10-8-04 Transcript of Proceeding. In essence, he argues that whether or not something is confidential means, to him, that at the sole discretion of Mr. Jeffries it is only as confidential as he decides it should be on a day to day basis but that the word has its normal meaning as to the Defendants. Plaintiff has consistently reinterpreted the facts, spoken word and the documents in this case after the fact and attempts to do so again with the settlement conference. To this end, he has submitted a Settlement Agreement which contains a confidentiality clause applicable only to the DMS, CLIC, its agents and employees, and then adds people who are not parties to the agreement such as experts. In it, he even demands that outside counsel's litigation files be turned over to him because although unstated, he intended that as well. Just like the "unilateral" nature of the confidentiality, the idea of counsel surrendering his entire, attorney-client privileged work product, was not verbally expressed at the time of settlement. Also unspoken is the idea that there is no obligation of confidentiality on the part of Mr. Jeffries. In fact, Mr. Jeffries, again through his counsel, has already disseminated information relating to the Jeffries case and has affirmatively used the settlement and the Court ordered settlement tools as an inference of wrongdoing by the Defendants.

These facts are not in dispute. What is in dispute is this unexpressed concept of unilateral confidentiality. It is correct that DMS left confidentiality at the election of Mr. Jeffries. As Mr. Ellis stated during the settlement discussions, "as far as sealing the whole record in this case, that is fine with us, or returning it. It makes no difference to us. <u>We would, of course, ask for the</u>

<u>information Mr. Roberts found concerning us to be sealed, the same with regard to Mr. Jeffries</u>. No problem." *See* Exhibit A at pages 6 – 7. As counsel for DMS and MCIC makes clear, if there is confidentiality to one, there is confidentiality to all. Whether the case was confidential or not confidential was at the discretion of the Plaintiff. Nowhere in the entirety of the settlement transcript is there any discussion of unilateral or selective confidentiality. As comments of CLIC and DMS's counsel makes clear, it was the intention of Defendants that confidentiality, if elected by the Plaintiff, whether it existed or not, would apply equally to each party in keeping with the normal meaning of the word "confidential".

A review of the on-record settlement discussion reveals that the only issue on which there was certain agreement was the total amount of money to be paid to Mr. Jeffries. The way in which the money would be paid and other details of the Agreement were left to negotiation. As Mr. Roberts acknowledged on the record "any other terms of the Agreement that are necessary to be finally documented, I suspect will be negotiated. There might be other issues, but no other monetary issues." *See* Exhibit A at page 3. What has occurred during the course of these negotiations is that it has become clear that there was no meeting of the minds as to confidentiality. Defendants clearly understood the mutual nature of confidentiality by its own definition, however the Plaintiff now claims to have a different interpretation which was never mentioned until after Mr. Roberts was challenged on his use of the settlement and other materials in another, unrelated case. The Plaintiff's unarticulated desire for selective or unilateral confidentiality is not a workable solution, nor is it one that can be enforced by this Court. If the Court chooses to enforce the Settlement Agreement as it appears on the record, it can only do so to the extent that the elements of contract law have been met.

**B.    Ohio Law Prohibits Enforcement of the Agreement Where There Was No Meeting Of The Minds As To Unilateral Confidentiality.**

A District Court may enforce a Settlement Agreement after it has been concluded that agreement has been reached on all material terms. *Brock v. The Scheuner Corporation*, 841 F.2d 151, 154 (6th Cir. 1988). The District Court must determine that agreement has been reached on all material terms before enforcing the settlement. *Id* citing *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983). The District Court must also enforce the settlement as agreed by the parties and is not permitted to alter the terms of the Agreement. *Id citing In Re Air Crash Disaster at John F. Kennedy International Airport*, 687 F.2d 626, 629 (2nd Cir. 1982). In the *Brock* case, the Sixth Circuit Court of Appeals held that the District Court had erred in enforcing a Settlement Agreement when it altered the terms agreed to by the parties. The underlying facts of the case were that the settling parties disagreed about the manner in which payment was to be made. Although there was no dispute as to amount, one party had included a provision in the Settlement Agreement which required payment be made by certified checks. The other party objected to this and argued that this was not a part of the settlement. The District Court held that the Settlement Agreement would be enforced and required payment be made by certified check. The Court also awarded attorneys' fees to the party with whose interpretation it agreed, apparently as a sanction to the other party. On review, the Sixth Circuit Court of Appeals held that the requirement of direct payment by cashier's check to the Department of Labor altered the terms of the Agreement of the parties. The Court thus concluded that although the Settlement Agreement could be enforced as to payment, it could not be enforced as to manner of payment where there had not been agreement. The Court, in reversing the lower Court went on to hold that the District Court had erred in awarding attorneys' fees incurred in the enforcement proceedings. *Id*. at 155.

A Settlement Agreement is considered to be a contract.  See *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 Sup. Ct. 926 (1975).  In a diversity case, the settlement contract must be construed according to State law.  See *Horton Manufacturing Co. v. Tol-O-Matic, Inc.*, 973 F.2d 649, 651 (8th Cir. 1992).  In this case, the law of Ohio will apply.  "Under Ohio law, the result of a valid Settlement Agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof."  *Rulli v. Fan Company*, 79 Ohio St.3d 374, 683. N.E.2d 337, 339 (1997) *citing Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 422 N.E.2d 1302, 1304 (1982).  In the *Rulli* case, there was a dispute as to the meaning of the terms of a Settlement Agreement. In a factually similar situation, counsel for both parties indicated to the Court that a Settlement Agreement had been reached.  When the parties attempted to reduce the agreement to writing however, they could not agree as to the terms.  *Id.* at 339.  The Court acknowledged that in order to constitute a valid Settlement Agreement, the terms of the Agreement must be reasonably certain and clear.  It stated:

> "A Court cannot enforce a contract unless it can determine what it is.  It is not enough that the parties think they have made a contract.  They must have expressed their intentions in a manner that is capable of being understood.  It is not even enough that they had actually agreed, if their expressions, when interpreted in the light of accompanied factors and circumstances, are not such that the Court can determine what the terms of that Agreement are.  The vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract."

[*Id.* at 339 citing One Corbin on Contracts (Rev. Ed. 1993) 525, §4.1.]  The Ohio Supreme Court also acknowledged that "the law disfavors Court enforcement of contracts laden with ambiguity."  *Id.*

In this case, it is clear that no confidentiality provision can be enforced because there was no meeting of the minds as to confidentiality. Confidentiality was left to the election of the Plaintiff. Defendants believed that this election meant confidential or not. The idea of unilateral and selective confidentiality, if such a concept actually exists, was never discussed. Counsel for Defendants stated that he did not care whether the Agreement was confidential or not, but iterated that whatever applied to DMS would also apply to Mr. Jeffries. *See* Exhibit A at page 6. There can be no enforcement of this unilateral confidentiality. As the *Rulli* Court recognized "Where parties dispute the meaning or existence of a Settlement Agreement, a Court may not force an agreement between the parties. To do so would be to deny the parties right to control the litigation and to implicitly adopt (or explicitly, as the trial Court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement." *Id.* at page 339.

In this case, Mr. Jeffries urges the Court to adopt his unspoken and unusual concept of unilateral confidentiality. He argues that the words "mutual confidentiality" do not appear within the body of the on-the-record settlement discussion. By the same token, neither do the words "unilateral confidentiality." It should be painfully obvious to the Court that no one would ever agree to this novel concept, and these Defendants would not have agreed had the concept been expressed at the hearing. It is clear that there was no meeting of the minds as to the unusual meaning of the word "confidentiality" as later defined by Plaintiff's counsel. As such, there can be no enforcement of unilateral confidentiality. Although the Court can enforce the Agreement as to those terms upon which the parties clearly agreed, those terms upon which there has not been agreement cannot be enforced.

The lack of a meeting of the minds as to the issue of confidentiality is further demonstrated by the in-chambers conference held 10-8-04. *See* Exhibit B. Mr. Jeffries argues that the concept of unilateral confidentiality was demonstrated by the fact that the Court asked Mr. Jeffries if the jury could hear the

settlement outcome. He argues that because CLIC was not asked for its assent as to whether the jury could or could not hear the settlement demonstrates that the confidentiality was unilateral. He then argues that Mr. Jeffries made the decision that the jury was a third party to whom he decided to release the information. This circular reasoning clearly does not demonstrate anything about the nature of the confidentiality other than the fact that whether or not the settlement was confidential was left to the Plaintiff. He proposes that the election of confidentiality will be made by him on a case by case, piece by piece basis. In addition to being an unworkable suggestion, unilateral confidentiality is completely unenforceable. Under Mr. Jeffries' interpretation, he can decide that the settlement is confidential to Mr. X but not Mr. Y. The unworkable part is that Mr. Y is then free to disseminate what is now public information. If something is confidential, then it is to be kept in confidence. If something is confidential one day but not the next, however, it renders the confidentiality of the day before a nullity.

This Court has no basis for concluding that there was a meeting of the minds as to the unusual and unworkable concept of unilateral confidentiality.

The post settlement, overreaching, creation of additional and modified terms upon which there was no meeting of the minds is further illustrated by the fact that in the language of the agreement proposed by Plaintiff's counsel added the additional requirement that counsel for DMS and CLIC release his litigation file to him. The Court agreed with the Defendants on the issue and stated "I don't read that as requiring you to give up any of your work-product. Okay, Well, I think it should be modified that your work product, your personal litigation file should not be surrendered. I am sure, I trust that Mr. Roberts did not intend that." *See* Exhibit B at page 49. In fact, Mr. Roberts did intend defense counsel to surrender his litigation file. He replies to the Court that "the language tracks **what I understand the Agreement to be**. There was a forty-five minute discussion of the concern about State regulators; **otherwise, we could have everything.** So it tracks that." *Id* at page 49. Obviously Mr. Roberts perceived an agreement even

though counsel for the Defendants said on 19 separate occasions in the record that he was unable to commit to the requests of Mr. Roberts to surrender claims file material due to a lack of information and authority.[1] Nowhere in the entire transcript is there even a suggestion that the litigation file and work product of the Defendants' attorney be turned over to Mr. Roberts. When one party believes it is entitled to the litigation file of another party under the terms of a unilateral confidentiality agreement that was never articulated, it is clear that there has been no meeting of the minds as to confidentiality. Even the Court acknowledged that it could not accept an agreement which would require one party to turn over its litigation work product to another. The clear and blatant attempts to overreach and reinterpret language have been the hallmark of the Plaintiff in this case. The proposed Settlement Agreement is but the latest example.

Finally, the Court's requirement that a safety valve be put in place illustrates that the confidentiality clause sought by Plaintiff cannot be enforced. The Court has acknowledged that it would need to modify the proposal of Plaintiff in order to enforce it. Specifically, additional language was first needed to allow the disclosure of otherwise confidential information in response to the use of confidential information disseminated by the Plaintiff and his counsel. As has already occurred, material from this case has been used in other litigation against one or more of these Defendants, and the Court recognized the need of these parties to be able to defend them against such use. Secondly, this Court has agreed that it is necessary to modify the proposed language and clarify that Defense counsel's litigation file would not be released to Plaintiff. *See* Exhibit B at 29, 49. These are alterations in the terms of the written

---

[1] The latest decision of the Plaintiff to include physical possession of litigation files and claims file documents was refused by the counsel for the defense on 19 occasions in the transcript. ( see TR p 8 ln 14-15; p11 ln 16-18 and ln 25 to p 12 ln 9; p13 ln 4-14; p14 ln 17-18; p 15 ln 1-2 and 15-25; p16 ln 15-24; p 17 ln11 to p 18 ln 3; p 18 ln 23 to p 19 ln 4; p 20 ln 14-15; p 21 ln 6-18; p 22 ln 7-8 and ln 20-21; p 23 ln 24; p 27 ln 15-17; p 28 ln 2-6; p 29 ln 6-7; and p 30 ln 9-16 ) In spite of this explicit record counsel for the Plaintiff claims he had an agreement on the issue. ( see Exhibit B at p 49)

agreement proposed by the Plaintiff. The Sixth Circuit has held that the District Court cannot alter the terms of the agreement. *Brock,* 841 F.2d at 154. The need to alter the terms in order to accommodate the obvious unfairness expressed by the Defendants is clear evidence that there was never any prior statement of, nor agreement to the terms as now proposed by the Plaintiff.

Finally, it must be noted that this issue has arisen because Mr. Roberts has released documentations he obtained in the Jeffries case to another client of his who has a different lawsuit against the same third party administrator, DMS. In the course of his representation of a different client, Mr. Roberts has given him confidential documents from the Jeffries case. In defense of this action, Mr. Roberts has alleged that he gave the documents to his other client before the Court ordered them sealed, or that he at least disclosed their existence to the other client before they were sealed, and that in any event he is unrestricted in their use because the Jeffries' Settlement Agreement is unilateral as to confidentiality. Setting aside the fact that this issue probably represents a conflict of interest for Mr. Roberts, it is clear that the unilateral confidentiality claim is simply an after-the-fact explanation for his release of confidential documents and use of the settlement tools and agreement in another, unrelated case.[2] By acknowledging that a safety valve would need to be put into place which would allow CLIC and DMS to respond and defend itself when faced with these confidential documents and the settlement tools and terms, the Court has acknowledged that the Settlement Agreement cannot simply be enforced as interpreted by Mr. Roberts. Where the Court has to add additional terms, like adding the term "unilateral" to the term "confidentiality", which was never articulated at the settlement conference, and a protection clause for DMS and CLIC, it is clear that there was no meeting of the minds as to confidentiality.

---

[2] The use of documents ordered sealed by the Court is actually a separate issue beyond the scope of a mere confidentiality agreement, but is used here to demonstrate more clearly the unfettered use, by Plaintiff's counsel of materials, which Defendants believed were clearly confidential.

### C. The Court Cannot Sanction CLIC For Challenging A Settlement Provision To Which It Did Not Agree.

The Court has stated that if the Settlement Agreement fails and this case is placed back on its docket, then a significant sanction will be imposed against Defendants. As the *Brock* case makes clear, a party that legitimately questions a term which was not part of the Settlement Agreement cannot be penalized. In reversing the lower Court the 6th Circuit in *Brock, supra* held that the award of attorney's fees, let alone a significant additional sanction, was an abuse of discretion. Unilateral confidentiality is not something to which Defendants agreed. The Ohio Courts in another setting have recognized that a confidential relationship cannot, by definition, unilateral. *Anchor v. O'Toole,* 94 F.3d 1014, 1023-1024 (6th Cir. 1996). The fact that unilateral confidentiality clauses are not the subject of any reported cases that Defendants can find is telling. If confidentiality is unilateral it is not confidential. CLIC was well within its rights to first question and then challenge this novel theory. Sanctions are therefore not appropriate.

The Court can and should enforce the Agreement between DMS and Mr. Jeffries to the extent that the parties have reached explicit agreement. Where there is ambiguity, such as on the issue of confidentiality, there cannot be unilateral enforcement. The fact that Defendants did not understand and/or agree to Mr. Jeffries' unarticulated and novel concept of unilateral and selective confidentiality is not sanctionable.

### III. CONCLUSION

The Settlement Agreement between Mr. Jeffries and Centre Life can be enforced as to the money to be paid to Mr. Jeffries and the manner in which the money is to be paid and to the dismissal of the current action with prejudice and the release of all Defendants. Other aspects of the Settlement Agreement have similarly been agreed to by both parties. It is clear however that there is no meeting of

the minds as to confidentiality. As such, that portion of the Settlement Agreement which addresses confidentiality cannot be enforced by the Court. Because there was no meeting of the minds as to confidentiality, as belatedly interpreted by the Plaintiff, there can be no unilateral enforcement of this term by the Court.

It is clear that Mr. Jeffries does not want his activities to be known by others against whom he has made a claim for Total Disability for the obvious reason that such activities are inconsistent with his claim. Perhaps he should have considered that issue at the time of settlement and prohibited his counsel from using materials from his case offensively against the Defendants or its agents in other cases. Now that the bridge has been crossed he wishes to, in effect, place a gag order on the Defendants, while permitting his counsel and other Plaintiffs to use whatever materials they choose in any manner that they choose, other than any evidence which is inconsistent with his own remaining claims against Prudential and the United States Vaccine Compensation Fund. Setting aside the obvious ethical quagmire that this position creates for all counsel involved and for the Court, it is apparent that the Defendants did not agree to a unilateral gag order disguised as a confidentiality agreement.

The Court should enforce the settlement without any confidentiality as to either party.

Respectfully submitted,

s/William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087
Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this  25th   day of October 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

s/William R. Ellis
William R. Ellis, Esq.