UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ERIC L. JEFFRIES, | : | |
| | : | Case No. C-1-02-351 |
| Plaintiff, | : | |
| | : | (Judge Beckwith) |
| vs. | : | (Magistrate Judge Hogan) |
| | : | |
| CENTRE LIFE INSURANCE COMPANY, | : | **DEFENDANT'S MEMORANDUM** |
| et al., | : | **IN OPPOSITION TO PLAINTIFF'S** |
| | : | **MOTION FOR ATTORNEY'S** |
| Defendants. | : | **FEES** |
| | : | |

Instead of filing a brief offering authority or lack thereof regarding the Court's question of whether it can enforce the settlement agreement sought by Plaintiff, Mr. Jeffries has instead filed a separate motion to enforce in which he seeks the additional relief of sealing the record and attorney's fees. Centre Life opposes the motion for attorney's fees.[1] With regard to the motion to seal the record, this is part and parcel of the parties' disagreement regarding confidentiality.

In response to the Court's question of whether it can enforce the settlement agreement as desired by Plaintiff, rather than as agreed by the parties, Plaintiff has not surprisingly responded in the affirmative. Plaintiff has correctly articulated the law of the Sixth Circuit and Ohio in that:

---

[1] Centre Life and its counsel have abided by the terms of the Court Order. It was prepared to file its brief at close of business on October 22, 2004. *See*, 10-8-04 Transcript, Doc. No. 256, at p. 57. At the request of Mr. Roberts, who wanted to attend a golf outing, the deadline for filing was moved to the 25th. In accordance with the Court's Order, Centre Life filed a brief. It was not anticipated that there would be responsive documents. By moving for the sanction of attorney's fees, however, Mr. Roberts has necessitated the filing of an opposing brief.

    1.    A District Court may enforce a settlement agreement after it has concluded that agreement has been reached on all material terms. *Brock v. The Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988).

    2.    Ohio law will apply to determine whether the elements of a valid contract have been met. *Rulli v. Fan Co.*, 79 Ohio St. 3d 374, 683 N.E.2d 337, 339 (1997).

Where Plaintiff fails is in his application. Defendant respectfully suggests that the Court review the cases cited by both parties, all of which are applicable as to the law.

Where a term of a contract is not clear or is ambiguous, i.e., there has been no meeting of the minds, it cannot be unilaterally enforced. Although Plaintiff cites *Brock*, he ignores the fact that in that case, the Sixth Circuit held it was error to alter the terms of a settlement agreement to try to create an agreement, where the parties had not reached clear agreement between them. The same conclusion was reached in the *Therma-Scan* case relied on by Plaintiff.[2] In both *Brock* and *Therma-Scan*, the Sixth Circuit was presented with situations where the parties had agreed on the record to settle but had been unable to reach agreement as to how particular terms should be memorialized in a written document. Like the parties in the case at bar, each side had their own interpretation of what the agreement should have been. In both cases, *the Sixth Circuit held that the District Court abused its discretion when it adopted one party's interpretation at the expense of the other*. *See, Brock* 841 F.2d at 155; *Therma-Scan* 217 F.3d at 419. As stated in *Brock*, "Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock*, 841 F.2d at 155. Moreover, even though "summary enforcement of a

---

[2] Although the *Therma-Scan* case applies Michigan contract law, while the *Brock* case applies Ohio law, the result is the same: ambiguous terms cannot be unilaterally enforced.

settlement agreement may very well promote the [policy favoring the settlement of disputes] in cases where there exists no substantial dispute as to the entry into, or the terms of, the agreement, <u>summary proceedings may result in inequalities when . . . such a dispute does exist.</u>" *Therma-Scan* F.3d at 419 (emphasis added). Here, a dispute as to terms does exist. Mr. Jeffries seeks unilateral confidentiality, Centre Life sought total or no confidentiality. Setting aside the fact that the concept of unilateral confidentiality is a misnomer (there is no promise of confidentiality if one party is not bound by it), Plaintiff has already destroyed total confidentiality when his attorney used confidential information in furtherance of another case. The only remaining option is no confidentiality.

In addition to arguing that the Court adopt his idea of the meaning of confidential, Plaintiff has also requested that he be awarded attorney's fees as a sanction. The very fact that this dispute exists illustrates the clear ambiguity with regard to the issue of confidentiality. Sanctions could only be arguably appropriate if the concept of unilateral confidentiality was an everyday concept commonly applied to settlement agreements. It is not. The instances of unilateral confidentiality cited by Plaintiff in his motion are those in which confidentiality is created by the relationship of the parties. In cases of Priest/parishioner, physician/patient and attorney/client, confidentiality is imposed because the relationship of the parties creates the confidential obligation. Here, confidentiality is a negotiated term. The relationship of the parties in this case however, illustrates that unilateral confidentiality is unworkable and unenforceable.

Plaintiff attempts to couch his motion for sanctions on the perceived ill will of Centre Life in finalizing the settlement agreement. Under his theory, it is bad faith for Centre not to blindly accept whatever unworkable and unenforceable agreement he crafts, such as a

confidentiality clause that required Center's counsel to release its litigation file to him. He also infers that Centre Life has already disseminated information and that is why it will not agree to unilateral confidentiality. He claims that Centre has not negotiated with him regarding a post-disclosure confidentiality provision. As confirmed in the e-mail correspondence attached as Exhibit A, Centre did negotiate, but did not agree.[3] In his proposed confidentiality clause, Mr. Jeffries even asks that counsel for Centre, as well as its agents and other experts involved in the case, make an affirmative statement that they have not disseminated information. What is known is the fact that Mr. Jeffries and his counsel have disseminated a great deal of information regarding the Jeffries case. Notably, under the provision sought by Plaintiff he can give any information to his counsel without notice to Centre and his counsel is not bound by confidentiality.

Mr. Roberts has attempted to blame the dissemination of information in part on the fact that the case has not yet been sealed, he admits that the information used in the depositions of his other client came from him. Mr. Roberts also conceded that Mr. Kearney has sent deposition transcripts to counsel in Arizona. (Doc No. 256 at pp. 13-15). The fact that depositions transcripts, which contain reference to the confidential exhibits, have been disseminated is in no way related to Centre. His claim that this information is being disseminated because the case was not sealed is also facious. (*Id.* at p. 15). Deposition transcripts cannot be obtained off PACER so whether the case has been sealed or not does not impact the transcripts. Of greater concern is the fact that Centre has just learned that

---

[3] Among the several concerns Centre has are the fact that any response Centre or its counsel could make to information released by Mr. Jeffries can only be done after written notice to Mr. Jeffries' counsel. Obviously, in a deposition or trial situation, when Centre is most likely to be confronted with this information, written approval before response is impossible. It also requires Centre to give Mr. Jeffries notice of any request by fax, certified mail, e-mail and phone to his counsel and prohibits compliance until after Mr. Jeffries responds. This could create a contempt situation in another case. These concerns are currently being discussed by the parties.

counsel for Mr. Jeffries produced at least a portion of its claims file to Prudential. This material could potentially be disseminated by Prudential, without notice to Centre, but nonetheless expose Centre to a claim of breach. This is another example of how Mr. Jeffries' piecemeal disclosure stands to implicate Centre, and further illustrate just how unworkable "unilateral" confidentiality is in this situation.

The fact that the case has not yet been sealed does not reflect ill will on the part of Centre Life. The reason Centre did not consent to Mr. Jeffries' request that the case be immediately sealed was because it believed that sealing the case would be a part of a confidentiality agreement which Centre Life presumed would be shortly forthcoming. *See* e-mail correspondence between Peter Burrell and Mike Roberts attached as Exhibit B. What actually happened was that instead Mr. Roberts decided to disseminate confidential information before the settlement agreement was put into place. At the time Centre Life was treating the settlement as confidential and believed Mr. Roberts and Mr. Jeffries to be doing the same thing. It has now become apparent that they were not.

The examples of "unilateral" confidentiality cited by Plaintiff can be applied to the arguments of either party. Herein lies the ambiguity, not a sanctionable offense. For example, Mr. Roberts argues that the fact that the Court asked Mr. Jeffries whether he consented to share the findings with the jury shows confidentiality was unilateral. It could also be reasonably argued that Mr. Jeffries' assent to share the information with the jury showed that the settlement would not be confidential. It could also mean that the Court understood that Mr. Jeffries had not yet decided whether he would elect confidentiality or not, since his counsel had already stated they would need to "take a hard look at" that issue. Mr. Jeffries cites Ohio law that the terms of an oral contract may be determined by the

actions of the parties. In this case, Mr. Roberts' and Mr. Jeffries' actions have been to reveal information regarding the Jeffries case and settlement. It can be inferred that their actions demonstrate they did not intend to elect confidentiality.

In another example of the ambiguous nature of the "agreement" on confidentiality, Mr. Jeffries has identified one of the major problems. He reads the word "election" to mean scope. Centre Life interpreted the word "election" more in keeping with the definition cited by Mr. Jeffries as "the right, power or privilege of making a choice." The choice offered by Centre Life was whether the settlement would be confidential or not. A case-by-case, piecemeal choice as to whom and when the confidentiality would in fact apply was never within the scope of the parties' discussions.

The meaning of the word confidentiality is in dispute. The scope of Plaintiff's ability to elect confidentiality is in dispute. What is not in dispute is that the parties cannot agree. As such, there is ambiguity as to what the confidentiality clause would or should be. The Court cannot enforce a clause upon which there was no meeting of the minds. This is a legitimate dispute and therefore not one for which the Court can order sanctions. As the Sixth Circuit held in *Brock*, the District Court erred when it accepted one party's interpretation and sanctioned the other for challenging it. In *Brock*, the Court awarded attorney's fees to the party with whose interpretation it agreed. In reversing the District Court's inclusion of an un-negotiated term in the settlement agreement, the Sixth Circuit also reversed the imposition of attorney's fees. Mr. Jeffries has made unacceptable demands for terms to be included in the settlement agreement which were not expressly agreed to by the parties. Centre Life has the right to dispute this inclusion. There is nothing under Ohio law which requires Centre Life to accept a term on which there was no meeting of the minds, nor

would allow the District Court to sanction Centre Life for failing to accept a term on which there was no meeting of the minds. Mr. Jeffries' motion for sanctions must be denied.

                                              Respectfully submitted,

                                              <u>s/William R. Ellis</u>
                                              William R. Ellis (0012279)
                                              Peter M. Burrell (0044139)
                                              Amy Gasser Callow (0063470)
                                              Wood & Lamping LLP
                                              600 Vine Street, Suite 2500
                                              Cincinnati, OH  45202-2491
                                              (Telephone) (513) 852-6000
                                              (Facsimile) (513) 852-6087
                                              Attorneys for Defendants
                                              Massachusetts Casualty Insurance Company
                                              and Disability Management Services, Inc.

- 8 -

**CERTIFICATE OF SERVICE**

  I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this 2nd day of November, 2004.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

              s/William R. Ellis
              William R. Ellis, Esq.

222589.5