IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ERIC L. JEFFRIES,** | ) : | Case No. C-1-02 351 |
| Plaintiff, | ) : | |
| vs. | ) : | Chief Judge Sandra S. Beckwith |
| **CENTRE LIFE INSURANCE COMPANY,** | ) : | |
| Defendant. | ) | |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF**
**RECUSAL ORDER AND SUBSTITUTION OF COUNSEL**

The plaintiff, Eric L. Jeffries, with the withdrawal of Graydon Head & Ritchey LLP as his counsel, hereby moves the court to reconsider its Order of November 3, 2004, in which Chief Judge Beckwith recused herself in this action. Plaintiff infers from a pattern of recusals in other cases that the Recusal Order is based on the fact that the firm of Graydon Head & Ritchey LLP serves as counsel for Plaintiff in this action and does not have anything to do with the allegations raised by Centre in its recent motion.[1] Based on the unique facts of this case, reconsideration is proper:

1. **The Court's Deep Knowledge.** This is a complex action that was filed more than 2 years ago. The Docket consists of several hundred filings and the Court has conducted a multitude of formal and informal hearings in chambers and in open Court. The Court has devoted considerable time and effort to learning the background law and the facts of the case and importantly the present and sole remaining dispute.

---

[1] The Chief Judge has earlier reconsidered her Recusal in *Angel v. Pace,* USDC, SD Ohio Case 01-467; *Dalesandro et. al., v. International Paper*, USDC, SD Ohio 010109; and *West et. al., v. AK Steel* USDC, SD Ohio *Case No 02-001*.

1

2.   **The Case Is At It's Final Possible Trial Stage.**  Most importantly, the only matter which potentially (See, #3-4 below) remains before the Court is: *What version of a settlement agreement it should enforce?*  The matter settled on the first day of trial, April 19, 2004. On October 25, 2004, defendant Centre Life Insurance Company ("Centre") filed a memorandum (*Doc. 258*) affirming unambiguously the existence of a settlement on the material terms (i.e., the payment of $2 million) and Centre requested that the Court enforce the Agreement.  Centre's "Conclusion" in its Brief seeking enforcement of the Agreement states:

> "The Settlement Agreement between Mr. Jeffries and Centre Life can be enforced as to the money to be paid to Mr. Jeffries and the manner in which the money is to be paid and to the dismissal of the current action with prejudice and the release of all Defendants.  Other aspects of the Settlement Agreement have similarly been agreed to by both parties. It is clear however that there is no meeting of the minds as to confidentiality . . . The Court should enforce the settlement without any confidentiality as to either party." (*Doc. 258, pp. 11-12, attached as Exhibit 1*).

On October 25, 2004, plaintiff also filed a memorandum (*Doc.* 257) which too requested that the Court enforce the Agreement.  Given the status of the case and the parties' respective requests that the Court enforce the enforceable agreement, it is in the interest of judicial economy and in the interest of the parties that the Court reconsider its decision.

3.   **The Sole Issue In Dispute In The Parties' Competing Requests For Enforcement, Confidentiality, Is Not A "Material" Term.**  On April 19, 2004, the Court requested that the parties articulate their agreement on the record.  (*Doc. 257, Exhibit 1*).  The parties agreed to a $2 Million payment to be paid to Mr. Jeffries in a tax free manner, consistent with the tax free nature of his disability payments.  (*Id., pp. 1-6*).  When then asked by the Court for Centre's reaction/affirmation, Centre's counsel made it a point to clarify and restate the only material term of the Agreement– the exchange of $2 Million. (*Id., p. 4, lines 6-20*).  And then explained:

4

> "**Mr. Ellis**: I think Your Honor understands that we're trying to get a set, fixed dollar with nothing beyond that. That's what we have always discussed with them." (*Id., p. 5, lines 1-3*).

And after an additional financial agreement was reached on splitting court costs, the Court inquired:

> "All right. Are there any other issues outstanding that we need to cover on the record as far as the settlement?" (*Id., p. 5, lines 12-14*).

Mr. Jeffries' counsel responded that:

> "I'm sure that, you know, with six lawyers involved, the final settlement agreement's going to say some stuff that we haven't articulated. But I can't imagine that there's anything further that we need to discuss today." (*Id., p. 5, lines 15 – 19*).

Centre's response was again unambiguous and restated the only material term:

> "**Mr. Ellis**: That's fine, Your Honor, as long as there aren't financial additions." (*Id., p. 5, lines 20-21*)(*emphasis added*).

4. **The Sole Issue in The Competing Motions Which Each Seek Enforcement Is Not Only Immaterial, But Was Resolved Prior To The Court's Recusal.** Before concluding the proceedings on April 19 -- but after the Court asked if anything else needed to be covered (p. 5), the Court again revisited the topic of confidentiality and the parties' agreement that it would be at Mr. Jeffries' election. (*Id., p. 6, lines 12-13*).

In response to this further inquiry, Mr. Jeffries' **final** word on confidentiality and his election was "we'll need to take a hard look at that." (*Id., p. 6, line 14-15*)(*emphasis added*). This statement obviously meant that Mr. Jeffries would take some time to consider his election and would later let Centre know what he elected. **This was acceptable and agreeable to Centre.** In direct response, Centre's counsel stated that Mr. Jeffries' further consideration of his election of

4

confidentiality was "not an issue" for Centre. (*Id., p. 6, line 17*). But Centre also "guaranteed" that it would keep the matter confidential going forward. (*Id., passim*).

Following settlement on April 19, Mr. Jeffries initially elected unilateral confidentiality, but then revised his election to require joint confidentiality. And the parties reached agreement on the concept of joint confidentiality in October 2004. And at the time the Court issued its Recusal Order, the parties – having agreed to joint confidentiality were in the process of discussing one ancillary immaterial issue: the timing and effect of "disclosures."

Specifically, on October 21, 2004, and then again on October 27, 2004, following discussions of Counsel, Mr. Jeffries' presented Centre with revisions and refinements regarding joint confidentiality. (*Exhibit 2*). On November 2, 2004, Centre agreed to the joint confidentiality language offered on October 27, but requested additional disclosure provisions. (*Exhibit 3*). On the morning of November 3, 2004, before the Court's recusal, Mr. Jeffries sent the following email to Centre, redlining Centre's response to the joint confidentiality agreement (tweaking slightly the language of the agreed provision regarding the ancillary concept of disclosures of past activities, which at that point was the only issue in dispute: the timing and nature of the disclosure):

> "Carrie: This language may be workable. Mr. Jeffries has 2 concerns and a question. The first concern relates to the timing of disclosures, which only slightly affects the language you propose - not the substance. The second concern (Mr. Jeffries' disclosure) does require a slight qualification to the language of the new paragraph which you added concerning disclosures. And finally, the question is: Why would an "internet or other media publication" require an immediate response from Centre?
>
> **The First Concern**: Mr. Jeffries wants to know now who your side has divulged information to. Your side has been under a covenant of confidentiality since April 19. Depending on Centre's disclosure, there may/may not be any sense in having any ongoing confidentiality clause. Can you have those disclosures to us by Monday?

4

**The Second Concern**:  On the flip side, for the period April 19 - October 8, Mr. Jeffries wasn't bound by confidentiality, and, therefore, hasn't had reason to keep track of who he may have spoken to about this.  While he has kept the Action close to his vest, he wasn't particularly in tune with whom he disclosed the settlement to.  In addition, his memory as you know is impaired.

Mr. Jeffries can provide you with a disclosure to the best of his recollection, but if in his disclosure he overlooks a conversation that he cannot now recall, that circumstance cannot be a basis for a claim of breach or the release of Centre from confidentiality.  The disclosure will be a good faith disclosure only.  Going forward, Centre can be assured that he will abide by the offered confidentiality clause.

The paragraph you added at the end would therefore be revised to read:  "**Prior to executing this Agreement, **he parties ~~agree that contemporaneous with the execution of the Settlement Agreement they will~~ **have** disclose**d** to ~~the other party~~ **each other** all information that has been disseminated by them concerning this Action since April 19, 2004.  This disclosure shall include identification of the documents or materials disseminated, the name and last known address of the person or entity to which the materials were disseminated and the approximate date of dissemination.  To the extent that a party is aware of further disseminated by any third party to whom materials were released is known, the name and last known address of that person shall be identified as well.  **Mr. Jeffries disclosure is made in good faith and to the best of his ability, but any assertion that Mr. Jeffries' disclosure is/was not complete shall not release Centre from its obligations of Confidentiality**. "  (*Exhibit 4*).

Given that: (i) the Court participated in and observed the April settlement discussions; (ii) given that both parties have motions pending asking that the Court enforce the Agreement; (iii) given that the immaterial dispute, confidentiality, was agreed to be joint prior to recusal; (iv) given that the only existing dispute at the time of recusal was the timing and nature of disclosures of activities since April 19 (an ancillary topic that could not have been anticipated on April 19 and which was the very type of immaterial dispute foreseen by all as not material at page 5, line 15 of the April 19 transcript); and (v) given that no one from Graydon Head & Ritchey LLP is to be

4

involved in this case before this Court further, this Court should reconsider its Recusal decision and make the final decision in this case.[2]

5. **Substitution of Counsel**. Substitution of another firm as local counsel in this action will impose no hardship on the Court, the parties, or the Graydon Head & Ritchey LLP firm because Mr. Jeffries has retained new counsel who is fully mindful of the case and dispute to represent him: John C. Murdock, Murdock Goldenberg Schneider & Groh, LPA. Substitution of counsel and reconsideration of the Recusal Order would better serve the interests of justice than the delays and the loss of judicial economy that may occur if the case is reassigned. A new judge (who did not have the advantage of participating in and observing the April 2004 settlement discussions as the Chief Judge did) would have to spend a great deal of time reviewing the docket and familiarizing himself or herself with the governing law and this Court's prior decisions.

Were it not for the above unique and particular facts of this case, plaintiff would not seek reconsideration of the Recusal Order. Under the current circumstances, however, plaintiff submits that reconsideration is warranted. Plaintiff hereby seeks leave to substitute John Murdock for Michael Roberts of Graydon, Head & Ritchey as counsel from this point forward.

Respectfully submitted,

/s Michael A. Roberts  
Michael A. Roberts (0047129)  
Graydon Head & Ritchey LLP  
1900 Fifth Third Center  

/s John C. Murdock  
John C. Murdock  
Murdock Goldenberg Schneider & Groh, LPA  
700 Walnut Street, Suite 400  

---

[2] Additionally, within 15 minutes of the Court's announcement of its decision to Recuse, Mr. Ellis, counsel for Centre, sent an email (*attached as Exhibit 5*) which suggests that Centre may use the Recusal offensively to perhaps get out or renegotiate its agreement and may even attempt to take a position contrary to Centre's Brief seeking enforcement of the Agreement dated October 25, 2004 – Doc. 258. The email purportedly responds to Mr. Roberts' earlier email (*Exhibit 4*) which confirmed the agreement on joint confidentiality and additionally only contained a procedural means to deal with the timing of disclosures of the parties' activities since April 19.

4

| | |
|---|---|
| P.O. Box 6464 | Cincinnati, Ohio 45202 |
| Cincinnati, OH  45201-6464 | (513) 345-8291 |
| (513) 621-6464 | (513) 345-8294  (fax) |
| (513) 651-6981  (fax) | jmurdock@mgsglaw.com |
| mroberts@graydon.com | |
| *Trial Attorney for Defendant* | *Proposed Substitute Trial Attorney for Plaintiff* |

## CERTIFICATE OF SERVICE

    I hereby certify that on this 4th day of November 2004, a true and complete copy of this document was delivered via electronic filing and regular U/.S Mail postage prepaid to William R. Ellis, Wood & Lamping, 600 Vine Street, Suite 2500, Cincinnati, Ohio 45202.

                                                                        s/ Michael A. Roberts

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **ERIC L. JEFFRIES,** | ) : | Case No. C-1-02 351 |
| Plaintiff, | ) : | |
| vs. | ) : | Judge Sandra S. Beckwith |
| **CENTRE LIFE INSURANCE COMPANY,** | ) : | |
| Defendant. | ) | |

### [PROPOSED] ORDER

This matter is before the Court on Plaintiff's Motion for Reconsideration of Recusal Order and Substitution of Counsel. It is hereby **ORDERED** that the Motion is **GRANTED**. The Clerk is directed not to proceed with the reassignment of this case.

Date:_____                     _____
                                          Chief Judge, United States District Court