C.   **The Court Cannot Sanction CLIC For Challenging A Settlement Provision To Which It Did Not Agree.**

The Court has stated that if the Settlement Agreement fails and this case is placed back on its docket, then a significant sanction will be imposed against Defendants. As the *Brock* case makes clear, a party that legitimately questions a term which was not part of the Settlement Agreement cannot be penalized. In reversing the lower Court the 6th Circuit in *Brock, supra* held that the award of attorney's fees, let alone a significant additional sanction, was an abuse of discretion. Unilateral confidentiality is not something to which Defendants agreed. The Ohio Courts in another setting have recognized that a confidential relationship cannot, by definition, unilateral. *Anchor v. O'Toole*, 94 F.3d 1014, 1023-1024 (6th Cir. 1996). The fact that unilateral confidentiality clauses are not the subject of any reported cases that Defendants can find is telling. If confidentiality is unilateral it is not confidential. CLIC was well within its rights to first question and then challenge this novel theory. Sanctions are therefore not appropriate.

The Court can and should enforce the Agreement between DMS and Mr. Jeffries to the extent that the parties have reached explicit agreement. Where there is ambiguity, such as on the issue of confidentiality, there cannot be unilateral enforcement. The fact that Defendants did not understand and/or agree to Mr. Jeffries' unarticulated and novel concept of unilateral and selective confidentiality is not sanctionable.

**III.   CONCLUSION**

The Settlement Agreement between Mr. Jeffries and Centre Life can be enforced as to the money to be paid to Mr. Jeffries and the manner in which the money is to be paid and to the dismissal of the current action with prejudice and the release of all Defendants. Other aspects of the Settlement Agreement have similarly been agreed to by both parties. It is clear however that there is no meeting of


EXHIBIT 1

the minds as to confidentiality. As such, that portion of the Settlement Agreement which addresses confidentiality cannot be enforced by the Court. Because there was no meeting of the minds as to confidentiality, as belatedly interpreted by the Plaintiff, there can be no unilateral enforcement of this term by the Court.

It is clear that Mr. Jeffries does not want his activities to be known by others against whom he has made a claim for Total Disability for the obvious reason that such activities are inconsistent with his claim. Perhaps he should have considered that issue at the time of settlement and prohibited his counsel from using materials from his case offensively against the Defendants or its agents in other cases. Now that the bridge has been crossed he wishes to, in effect, place a gag order on the Defendants, while permitting his counsel and other Plaintiffs to use whatever materials they choose in any manner that they choose, other than any evidence which is inconsistent with his own remaining claims against Prudential and the United States Vaccine Compensation Fund. Setting aside the obvious ethical quagmire that this position creates for all counsel involved and for the Court, it is apparent that the Defendants did not agree to a unilateral gag order disguised as a confidentiality agreement.

The Court should enforce the settlement without any confidentiality as to either party.

Respectfully submitted,

s/William R. Ellis
William R. Ellis (0012279)
Peter M. Burrell (0044139)
Amy Gasser Callow (0063470)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6000
(Facsimile) (513) 852-6087
Attorneys for Defendants
Massachusetts Casualty Insurance Company
and Disability Management Services, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been filed with the Court by electronic means on this __25th__ day of October 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/William R. Ellis
William R. Ellis, Esq.

## Roberts, Michael A.

**From:** Roberts, Michael A.
**Sent:** Thursday, October 21, 2004 7:19 PM
**To:** William R. Ellis
**Cc:** Roberts, Michael A.
**Subject:** Jeffries



Bill

Notwithstanding the clear, enforceable agreement on Confidentiality at Mr. Jeffries' election, which is for him to decide is unilateral below is the revised Confidentiality Covenant Mr. Jeffries is willing to enter now.

10. CONFIDENTIALITY.

By its signature below, Centre affirms that neither it, DMS, their agents (including experts), or their counsel has disseminated information or materials concerning Mr. Jeffries to any third party since April 19, 2004.

Additionally, from the date of this Agreement through the end of the World, Centre, its attorneys, and its agents (including employees and representatives of DMS) shall maintain as confidential all aspects of this Action, Mr. Jeffries' claim, and all other information concerning, referring to, or relating to Mr. Jeffries. An officer of DMS, a partner of Wood & Lamping, Mitchell Clionsky Ph. D., Michael Hartings Ph. D., Dr. Kirk Frey, Dr. Newton Bullard, and all surveillance companies retained by Centre and DMS shall affirm their (and their firm's) confidentiality commitment by executing the Confidentiality covenant attached as Exhibit B. In the absence of one of the exceptions noted below, the only statement that may be communicated by Centre, DMS, or their agents concerning Mr. Jeffries or the Action is that "It is confidential." This covenant is additionally binding upon Centre's and DMS' successors and assigns.

If Mr. Jeffries' Claim file becomes subject of any inquiry or audit of any regulatory body, then prior to the offering of any documents or information in response to the inquiry, Centre or its counsel shall send Mr. Jeffries' counsel, Michael A. Roberts of Graydon Head & Ritchey LLP, a notice by Certified Mail and Fax identifying the inquiring party and the date and time of Centre's intention to respond with information.

If Centre, its counsel, DMS, or any expert retained by Centre or its counsel in the Action receives a subpoena seeking testimony or documents relating to Mr. Jeffries then Centre or its counsel will: (A) notify Mr. Jeffries' counsel, Attorney Michael Roberts at (513) 629-2799 with an email to mroberts@graydon.com and certified letter giving Mr. Jeffries ample time to take whatever action he deems appropriate; and (B) not produce any documents or information to the requesting party until Mr. Jeffries or his counsel has been afforded the opportunity to present any issue he desires to raise with the regulatory agency or other inquiring entity or a Court of competent jurisdiction.

In the event that information or material from this case, disseminated by Mr. Jeffries or his counsel to any third party since April 19, 2004, is used or referenced in any other claim or case, is published in any public document or on the internet, or is referenced in any way to the disadvantage of or in disparity of Centre or DMS or their agents, employees, or representatives, Centre and DMS, or their counsel in such other matter, are released from this confidentiality to the extent reasonably and necessary to fully respond to the information or material so used or published. Centre and DMS, however, must give written notice in advance to Mr. Jeffries and his counsel

concerning their intention to so respond.

From the date of his signature below, through the end of the World, Mr. Jeffries shall maintain as confidential all aspects of this Action. In the absence of one of the exceptions noted below, the only statement that may be communicated by Mr. Jeffries concerning the Action is that "It is confidential."

If Mr. Jeffries receives a subpoena seeking testimony or documents relating to the Action he will: (A) notify Mr. William R. Ellis at (513) 852-6000 giving Mr. Ellis ample time to take whatever action he deems appropriate on behalf of his clients. Without advance notice to Centre or DMS, Mr. Jeffries may share information concerning the Action with any of his insurers, tax authorities as necessary, lawyers, physicians, accountants, or family members.

Any breach of this agreement releases the other party from all obligations of confidentiality.

---

**From:** William R. Ellis [mailto:WREllis@WoodLamping.com]
**Sent:** Thursday, October 21, 2004 11:45 AM
**To:** Roberts, Michael A.
**Subject:** RE: Jeffries

```
Mike, I would be happy to discuss any reasonable solution to the
issue. unilateral confidentiality or additional consideration is not
reasonable in the mind of my client. Our research on the issue
dictates that we cannot be forced to accept a provision in the
settlement agreement to which we did not specifically agree. An order
from this court to the contrary would have to be appealed and
ultimately decided by the 6th circuit. It seems that the best option
is for us to find some possible middle ground or to just forget the
confidentiality.
```

11/3/2004

Effective October 8, 2004, for Mr. Jeffries (including his experts, agents and attorneys as indicated by their signatures attached) and effective April 19, 2004, for Centre (including their experts and agents as indicated in their signatures attached), the parties agree to maintain as confidential, all materials relative to this Action and not to disseminate any information concerning this Action or this settlement. In the absence of one of the exceptions noted below, the only statement that may be communicated to a third party by Centre or Mr. Jeffries (or their counsel, agents, and experts) concerning the Action is that "It is confidential." It is understood that this agreement is binding upon the heirs, successors, and assigns of either party.

In the event that information or materials from this case, disseminated by Centre or its counsel, experts, or agents prior to April 19 or disseminated by Mr. Jeffries or his counsel, agents or experts prior to October 8, are used or referenced in any other claim or case, are published in any public document or on the internet, or are referenced in any way to the disadvantage of or in disparity of either party, such such party or its counsel in any other matter, after reasonable advance Notice (as defined below) to the other party to this Agreement, is released from this confidentiality to the extent the response is a full recitation of all the facts factually reasonable and necessary to fully respond to the information or material so used or published. However, if a third-party's use of the information or material requires an immediate and contemporaneous response, then the responding party may immediately respond and thereafter (with 2 days one week) provide Notice. Situations that require an immediate and contemporaneous response are those in which Notice to the other party is not practical due to the timeliness of the situation such as in a deposition, hearing, settlement conference, internet or other media publication, or trial situation. Situations in which Notice is reasonably anticipated are those in which time is available for a response such as duringresponding to written discoverywritten discovery or after service of a subpoena.

If Mr. Jeffries', his Claim file, or this Action become the subject of any compulsory inquiry or audit of any regulatory body, or the subject of a subpoena or other Court process, then such information may be provided only after Notice (as defined below) to the other parties in this case. In all other respects Centre Life or its third party administrator will continue to maintain its claims file with regard to Mr. Jeffries in the same way its maintains the claims files of its other insureds.

Without advance notice to Centre, Mr. Jeffries may share information concerning the Action with any of his accountants, financial advisors, or immediate family members as designated below.

Notice as used in this Agreement shall mean the provision by email and follow-up letter postage prepaid, to Michael A. Roberts (mroberts@graydon.com) or William R. Ellis (wrellis@woodandlamping.com) which Notice shall detail the general substance of disclosure or request for information, the action/proceeding in which the request has been or was made, and the identity of the third-party and his/her counsel who used, referenced, or seeks such information.

[handwritten margin note: Sent with 10/27 3:46 p.m. Email (Exh. 3 email string)]

<u>The parties agree that contemporaneous with the execution of the Settlement Agreement they will disclose to the other party all information that has been disseminated by them concerning this Action since April 19, 2004. This disclosure shall include identification of the documents or materials disseminated, the name and last known address of the person or entity to which the materials were disseminated and the approximate date of dissemination. To the extent that a party is aware of further disseminated by any third party to whom materials were released is known, the name and last known address of that person shall be identified as well.</u>

<u>Any breach of this agreement releases the other party from all obligations of confidentiality.</u>

<u>223116</u>

**From:** Carrie Barnes [mailto:Carrie_Barnes@di-mgmt.com]
**Sent:** Tuesday, November 02, 2004 4:04 PM
**To:** Roberts, Michael A.
**Cc:** William R. Ellis; Amy Gasser Callow
**Subject:** RE: Confidentiality

EXHIBIT 3

Please see attached thoughts;

Also, Andy tells me that he has not yet heard back or received any correspondence from Mr. Jeffries' financial advisor regarding her suggested revisions subsequent to their telephone conversation about the tax issues in the agreement. Let me know what we can do to wrap up this aspect of the agreement; thanks!

-----Original Message-----
**From:** Roberts, Michael A. [mailto:MRoberts@Graydon.com]
**Sent:** Friday, October 29, 2004 1:39 PM
**To:** Carrie Barnes
**Cc:** William R. Ellis; Roberts, Michael A.
**Subject:** RE: Confidentiality

Carrie:

On Monday I intend to send a letter to J Beckwith bringing her up-to-date on Mr. Jeffries Confidentiality election in advance of our hearing scheduled for Wednesday. I'm contemplating that the letter will simply be a 1/2 sentence cover letter which encloses the email below and its attachments. Let me know if you desire to make it a joint letter.

Kindly respond to this email to let me know if I have your email address correct.

Mike

---

**From:** Roberts, Michael A.
**Sent:** Wednesday, October 27, 2004 3:46 PM
**To:** carrie_barnes@di-mgmt.com
**Cc:** Roberts, Michael A.; William R. Ellis
**Subject:** Confidentiality

Carrie

Below is Mr. Jeffries' revised election on Confidentiality. Although I have orally shared the terms with him, he has not read the document and may add additional comment once he does. I worked from your proposal last week and the language from your proposal is highlighted in yellow. Also below is the transcript from the Settlement hearing of April 19. There were several promises/guarantees that the surveillance tapes would be returned, many of these promises are highlighted. We have not received any tapes or documents from your office or the office of your local counsel. Please see that those tapes are expedited to my attention. An excerpt of the transcript of April 19 from p. 19 that may be helpful in understanding what your local counsel promised is: "I've

11/3/2004

already told him I will protect this file. I know I can do that, keep it confidential, put it into the settlement agreement that that file will be confidential and not a paper out of it and will include everything through the litigation. Not a paper out of it, not a document will be presented except by subpoena, and subpoena only if Mr. Roberts has had an opportunity to go to court and say they can't have this and the court order says they can't have it. I won't give it up without a court order."

Kindly get back to me at your earliest opportunity. Given Bill's latest email, I can't imagine that further direct, exclusive dialogue between he and I has great likelihood of bearing fruit. Can you call me with Bill or Peter Burrell on the line? That would be my preference.

I understand that Judge Beckwith has scheduled a conference on our motions for Wednesday November 3 at 10 a.m. I strongly hope that you are able to participate should we not have this resolved by then.

Regards, Mike
Michael A. Roberts
Graydon Head & Ritchey LLP
511 Walnut Street, Suite 1900
Cincinnati, Ohio 45202
(513) 621-6464
(513) 629-2799 - Direct
(513) 651-3836 - Fax
mroberts@graydon.com
www.graydon.com
Tammy Gozdiff - Assistant
(513) 629-2743
    << File: 474698_1.DOC >>   << File: 474816_1.DOC >>

11/3/2004

Effective October 8, 2004, for Mr. Jeffries (including his experts, agents and attorneys as indicated by their signatures attached) and effective April 19, 2004, for Centre (including their experts and agents as indicated in their signatures attached), the parties agree to maintain as confidential, all materials relative to this Action and not to disseminate any information concerning this Action or this settlement. In the absence of one of the exceptions noted below, the only statement that may be communicated to a third party by Centre or Mr. Jeffries (or their counsel, agents, and experts) concerning the Action is that "It is confidential." It is understood that this agreement is binding upon the heirs, successors, and assigns of either party.

In the event that information or materials from this case, disseminated by Centre or its counsel, experts, or agents prior to April 19 or disseminated by Mr. Jeffries or his counsel, agents or experts prior to October 8, are used or referenced in any other claim or case, are published in any public document or on the internet, or are referenced in any way to the disadvantage of or in disparity of either party, such such party or its counsel in any other matter, after reasonable advance Notice (as defined below) to the other party to this Agreement, is released from this confidentiality to the extent the response is a full recitation of all the facts factually reasonable and necessary to fully respond to the information or material so used or published. However, if a third-party's use of the information or material requires an immediate and contemporaneous response, then the responding party may immediately respond and thereafter (with 2 days one week) provide Notice. Situations that require an immediate and contemporaneous response are those in which Notice to the other party is not practical due to the timeliness of the situation such as in a deposition, hearing, settlement conference, internet or other media publication, or trial situation. Situations in which Notice is reasonably anticipated are those in which time is available for a response such as duringresponding to written discoverywritten discovery or after service of a subpoena.

If Mr. Jeffries', his Claim file, or this Action become the subject of any compulsory inquiry or audit of any regulatory body, or the subject of a subpoena or other Court process, then such information may be provided only after Notice (as defined below) to the other parties in this case. In all other respects Centre Life or its third party administrator will continue to maintain its claims file with regard to Mr. Jeffries in the same way its maintains the claims files of its other insureds.

Without advance notice to Centre, Mr. Jeffries may share information concerning the Action with any of his accountants, financial advisors, or immediate family members as designated below.

Notice as used in this Agreement shall mean the provision by email and follow-up letter postage prepaid, to Michael A. Roberts (mroberts@graydon.com) or William R. Ellis (wrellis@woodandlamping.com) which Notice shall detail the general substance of disclosure or request for information, the action/proceeding in which the request has been or was made, and the identity of the third-party and his/her counsel who used, referenced, or seeks such information.

*[Handwritten margin note: Attachment to Nov. 2 email from Carrie Bornes, DUS In-House Counsel]*

      The parties agree that contemporaneous with the execution of the Settlement Agreement they will disclose to the other party all information that has been disseminated by them concerning this Action since April 19, 2004. This disclosure shall include identification of the documents or materials disseminated, the name and last known address of the person or entity to which the materials were disseminated and the approximate date of dissemination. To the extent that a party is aware of further disseminated by any third party to whom materials were released is known, the name and last known address of that person shall be identified as well.

      Any breach of this agreement releases the other party from all obligations of confidentiality.

223116

Message

**Roberts, Michael A.**

| | |
|---|---|
| **From:** | Roberts, Michael A. |
| **Sent:** | Wednesday, November 03, 2004 7:48 AM |
| **To:** | Carrie Barnes |
| **Cc:** | Amy Gasser Callow; Roberts, Michael A. |
| **Subject:** | RE: Confidentiality |

EXHIBIT 4

Carrie:

This language may be workable. Mr. Jeffries has 2 concerns and a question. The first concern relates to the timing of disclosures, which only slightly affects the language you propose - not the substance. The second concern (Mr. Jeffries' disclosure) does require a slight qualification to the language of the new paragraph which you added concerning disclosures. And finally, the question is: Why would an "internet or other media publication" require an immediate response from Centre?

**The First Concern:**
Mr. Jeffries wants to know now who your side has divulged information to. Your side has been under a covenant of confidentiality since April 19. Depending on Centre's disclosure, there may/may not be any sense in having any ongoing confidentiality clause. Can you have those disclosures to us by Monday?

**The Second Concern:**
On the flip side, for the period April 19 - October 8, Mr. Jeffries wasn't bound by confidentiality, and, therefore, hasn't had reason to keep track of who he may have spoken to about this. While he has kept the Action close to his vest, he wasn't particularly in tune with whom he disclosed the settlement to. In addition, his memory as you know is impaired.

Mr. Jeffries can provide you with a disclosure to the best of his recollection, but if in his disclosure he overlooks a conversation that he cannot now recall, that circumstance cannot be a basis for a claim of breach or the release of Centre from confidentiality. The disclosure will be a good faith disclosure only. Going forward, Centre can be assured that he will abide by the offered confidentiality clause.

The paragraph you added at the end would therefore be revised to read: "Prior to executing this Agreement, the parties ~~agree that contemporaneous with the execution of the Settlement Agreement they will~~ have disclosed to ~~the other party~~ each other all information that has been disseminated by them concerning this Action since April 19, 2004. This disclosure shall include identification of the documents or materials disseminated, the name and last known address of the person or entity to which the materials were disseminated and the approximate date of dissemination. To the extent that a party is aware of further disseminated by any third party to whom materials were released is known, the name and last known address of that person shall be identified as well. Mr. Jeffries disclosure is made in good faith and to the best of his ability, but any assertion that Mr. Jeffries' disclosure is/was not complete shall not release Centre from its obligations of Confidentiality."

Are you participating in this morning's call with J Beckwith?

Regards, Mike

11/3/2004

### Roberts, Michael A.

**From:** William R. Ellis [WREllis@WoodLamping.com]
**Sent:** Wednesday, November 03, 2004 10:53 AM
**To:** Roberts, Michael A.
**Cc:** carrie_barnes@di-mgmt.com; Amy Gasser Callow
**Subject:** Jeffries



Mike, I spoke with Carrie. She is going to be in Springfield tomorrow and should have a chance to meet with Andy. Until she does we have no agreement on the confidentiality and any offered language to attempt to come to such agreement is no longer on the table. After she and Andy meet and have a chance to discuss the issue with me we will contact you with our position.

*William R. Ellis*